IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

The Kroger Company,                )
                                   )
        Plaintiff,                 )  Case No. C-1-02-439
                                   )
   vs.                             )
                                   )
Malease Food Corporation,          )
                                   )
        Defendant.                 )

O R D E R

This matter is before the Court on Defendant Malease Food Corporation's motion to dismiss pursuant to Rule 12(b)(2) for lack of jurisdiction over the person (Doc. No. 12). For the reasons set forth below, Defendant's motion is not well-taken and is **DENIED**.

I. Background

This case involves a somewhat complex series of real estate transactions and assignments of contracts and leases.

According to the complaint, on April 1, 1983, Plaintiff The Kroger Company ("Kroger"), an Ohio corporation, executed three sale-leaseback transactions with Balkhouse Properties Corporation, a Tennessee corporation, involving industrial complexes located in Bowling Green, Kentucky, Murfreesboro, Tennessee, and San Marcos, Texas. Complaint ¶ 11. In a sale-leaseback transaction, the owner sells the property to the buyer and then leases the same property from the owner. Id. The sale-leaseback contracts contained

provisions which allowed Kroger to re-purchase these properties at fair market value on April 1, 2003.  See id. ¶ 16.

On June 1, 1983, Balkhouse Properties conveyed each of its interests in the properties to Balkhouse Associates, a Tennessee limited partnership, in fee simple title.  Id. ¶ 17.  Then, Balkhouse Properties entered into a lease agreement ("the June lease") wherein it leased the properties from Balkhouse Associates.  Id.  Simultaneously, Balkhouse Properties assigned all of its rights under the June lease to Defendant Malease Foods Corporation ("Malease"), a Tennessee corporation with its principal place of business located in New York.  Id.

Then, also on June 1, 1983, Malease and Balkhouse Associates entered into three agreements, each entitled "Two Party Agreement," in which the parties agreed that Malease would become Kroger's landlord under the terms of the leases entered into by Kroger and Balkhouse Properties.  See id. ¶ 20.  According to Kroger, under the Two Party Agreements, Malease was to receive all of the rent payments from Kroger.  Id.  Moreover, Kroger alleges, the Two Party Agreements required Malease to acknowledge Kroger's right to repurchase the properties at the expiration of the leases.  Id.

As if this series of transactions were not already complicated enough, the complaint alleges that on June 24, 2001, Kroger acquired from Balkhouse Associates fee simple title to each of

the properties and also acquired by assignment all of Balkhouse Associates' interest in the Two Party Agreements between Malease and Balkhouse Associates. Id. ¶ 24. If the Court understands this series of transactions correctly, the upshot was that eventually Kroger was paying rent on the properties to Malease by virtue of its original leaseback with Balkhouse Properties and the Two Party Agreements, but because Malease had become Balkhouse Associates' tenant after Balkhouse Properties assigned its least to Malease, Malease in turn became Kroger's tenant after Balkhouse Associates transferred fee simple interest in the properties to Kroger. In other words, Malease was Kroger's landlord, but at the same time Kroger was Malease's landlord.

On February 18, 2002, Kroger notified Malease by letter that it intended to repurchase the properties under the terms of the original lease between Kroger and Balkhouse Properties at the expiration of the lease on April 1, 2003. Complaint ¶ 25. Malease, however, rejected Kroger's attempt to exercise its repurchase options, stating that by purchasing the properties from Balkhouse Associates, Kroger had acted outside the scope of its rights under the agreements and had violated certain rights of Malease under the series of agreements. Id. ¶ 27; Complaint Ex. 2.

On June 14, 2002, Kroger filed the instant complaint against Malease for a declaratory judgment that Malease is in breach

of the lease agreements and that Malease is required to sell the properties to Kroger. The complaint also contains claims for specific performance of the lease agreements, anticipatory breach of contract, and unjust enrichment. The subject matter jurisdiction of the Court is based on diversity in that the parties are citizens of different states and the amount in controversy is in excess of $75,000. Complaint ¶ 3.

Malease now moves to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction over the person. In its motion, Malease argues that it is not amenable to personal jurisdiction under Ohio's long-arm statute and that this Court's exercise of personal jurisdiction over it would violate due process.

## II. Analysis

To determine if personal jurisdiction exists over a nonresident defendant, the court applies the law of the forum state subject to the limits of the Due Process Clause of the Constitution. Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998). If personal jurisdiction is authorized under the state's long-arm statute, the court must then determine whether the defendant's contacts with the forum state are sufficient so that the court's exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945)).  In making this determination, the court asks whether the defendant purposefully availed himself of the privilege of conducting activities in the forum state, whether the cause of action arises from his activities there, and whether the defendant's acts or the consequences of his acts have a substantial enough connection with the forum state to make the exercise of jurisdiction fundamentally fair.  Id.  When the Court does not hold an evidentiary hearing on the issue of personal jurisdiction, it must construe all the facts in the affidavits and pleadings in the plaintiff's favor.  Compuserve Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  In such a case, the plaintiff need only make a prima facie showing of jurisdiction.  Id.

Under Ohio law, a court may exercise personal jurisdiction over a defendant where the cause of action arises out of the defendant's transacting business within the state.  Ohio Rev. Code § 2307.382(A)(1).  In Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 559 N.E.2d 477, 480 (Ohio 1990), cert. denied, 499 U.S. 975 (1991), the Ohio Supreme Court concluded that "transact business" encompasses "carry on business" and "have dealings."

In support of personal jurisdiction over Malease, Kroger submits a copy of the notice it sent to Malease when it repurchased the properties from Balkhouse Associates (Doc. No. 14, Ex. A) and the

affidavit of its Assistant Secretary, Thomas P. O'Brien. O'Brien's affidavit states in its entirety:

> 1. Beginning in or around June 1983, Malease Foods Corp. entered into contracts that created a landlord-tenant/ sub-tenant relationship between Malease and Kroger, and that business relationship has gone uninterrupted for nearly twenty years.
>
> 2. During that nearly twenty years, Kroger has been obligated to pay rents to Malease, and has made payments of those rents with orders to pay originating from Ohio.
>
> 3. During that nearly twenty years, Kroger has corresponded with Malease wherein Kroger has sent correspondence to Malease, and received correspondence from Malease.
>
> 4. In or around July 2001, Kroger entered into contracts that created an owner/landlord-tenant relationship with Malease and that additional business relationship has gone interrupted since that time.
>
> 5. As a result of this relationship, Malease has been obligated to pay rents to Kroger, and has made payments of those rents to Kroger's headquarters in Ohio. (See Notice to Malease Foods Corp., dated July 24, 2001 attached to this affidavit).
>
> 6. During this period, Kroger has corresponded with Malease wherein Kroger has sent correspondence from Ohio to Malease, and received correspondence in Ohio from Malease.

Doc. No. 14, O'Brien Aff.

At the outset, the Court notes that Kroger's repurchase of the properties from Balkhouse Associates, which then apparently required Malease to send rent payments to Kroger in Ohio, is not relevant in deciding the jurisdictional issue. Kroger's repurchase

of the properties constitutes the "unilateral activity of others" and is not counted as a contact with the forum state. Reynolds v. International Amateur Ath. Fed., 23 F.3d 1110, 1118 (6th Cir. 1994). The Court further observes that there was no direct contractual relationship between Kroger and Malease. The contracts to which Malease is a party were negotiated and executed in the state of New York. Doc. No. 12, Kadish Aff. ¶ 2. The properties in question are located in states other than Ohio. Malease does not otherwise do business in Ohio. Id. ¶ 3. According to Kadish, the only thing Malease has done since June 1983 is accept rent payments from Kroger. Id. ¶ 10.

Thus, the jurisdictional issue in this case essentially comes down to whether Malease's acceptance of an assignment of a lease from Balkhouse Properties and consequent collection of rent payments from Kroger through operation of the Two Party Agreements come within the long-arm statute and satisfy the requirements for due process. Although it is a close question, given that Kroger is only required to establish a prima facie case of jurisdiction, the Court finds that both requirements are met in this case.

The Court notes that although Malease and Kroger did not have a formal contractual relationship, according to the complaint, when it entered into the Two Party Agreements, Malease acknowledged Kroger's rights under the terms of the original leases and agreed

that it would operate as Kroger's landlord under the original terms. Complaint ¶ 20. Malease's acknowledgment of Kroger's rights and assumption of duties to Kroger as a landlord put Malease and Kroger in a quasi-contractual relationship or perhaps even makes Kroger a third-party beneficiary to the Two Party Agreements. In any event, there was some kind of business relationship between Malease and Kroger. In addition, Malease's receipt of rent payments from Kroger over a twenty-year period means that Malease "had dealings" with Kroger within the meaning of the long arms statute. See Kentucky Oaks, supra. Therefore, the Court concludes that Malease transacted business within the state of Ohio and thus is subject to personal jurisdiction under Ohio's long-arm statute.

      The Court's next task is to determine whether the exercise of personal jurisdiction over Malease comports with due process. In order to establish specific jurisdiction over Malease, Kroger must make a prima facie showing that : 1) Malease purposefully availed itself of acting in Ohio or of causing a consequence here; 2) the causes of action arise out of the Malease's activities in Ohio; and 3) Malease's acts and consequences have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000). If the first two elements are satisfied, the exercise of jurisdiction over the defendant is normally deemed reasonable under the third

element.  American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988).  In this case, the Court finds that all three due process requirements are satisfied.

"Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)(quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984) and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980)).  The key to this inquiry is whether the defendant has reached out beyond the borders of his state to create an ongoing relationship with a citizen of the forum state.  See Burger King, 471 U.S. at 473.  A contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant.  Burger King, 471 U.S. at 478.  Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."  Id. at 479.

In this case, with regard to the first element while Malease's direct contractual relationships were with Balkhouse Properties and Balkhouse Associates, Malease entered into agreements requiring it to become Kroger's landlord.  Although the properties in

question were not located in Ohio, Malease certainly knew that the responsible tenant was located in Ohio.  Moreover, as a result of those agreements, Malease and Kroger had a twenty year relationship as landlord/tenant, and as a landlord to Kroger, Malease voluntarily assumed obligations toward Kroger.  In addition, because Malease acknowledged that Kroger retained certain rights under the terms of the original leases it was certainly foreseeable that any breach of its duties would have consequences in Ohio.  Thus, Malease's overall contacts with Ohio were substantial and not random or fortuitous.  Accordingly, the Court concludes that Kroger has made a prima facie showing that Malease purposefully directed its activities toward Ohio.

   The second element requires the cause of action to arise out of the defendant's contacts with the forum state.  The Sixth Circuit has determined that this part of the test is satisfied when the defendant's transaction of business in the forum state has given rise to the cause of action.  See <u>In-Flight Devices Corporation v. Van Dusen Air, Inc.</u>, 466 F.2d 220, 229 (6th Cir. 1972).  In this case, as noted above, Malease has transacted business in Ohio for purposes of the long-arm statute.  In addition, the causes of action stem from Malease's alleged refusal to acknowledge Kroger's right to repurchase the properties, as Malease agreed it would do in the Two Party Agreements.  The Two Party Agreements and the relationship

10

between Malease and Kroger is the basis for finding that Malease has transacted business in Ohio. Therefore, Kroger's causes of action arise out of Malease's contacts with Ohio. Accordingly, Kroger has made a prima facie showing that the causes of action arise out of Malease's contacts with Ohio.

The final element requires that the exercise of jurisdiction be reasonable. An inference of reasonableness arises when the first two elements have been met - it is only the unusual case where this third criterion will not be satisfied. <u>American Greetings Corp. v. Cohn</u>, 839 F.2d 1164, 1170 (6th Cir. 1988). Kroger has established a prima facie case that personal jurisdiction is proper under the first two elements of the test. Thus, this Court's exercise of jurisdiction over Malease is presumptively reasonable. Although this series of assignments of leases seems unusual, given that Malease willingly assumed obligations toward an Ohio resident, the Court does not find it unreasonable that Malease would be called into Ohio to answer for its alleged breaches of those obligations. Accordingly, the Court finds that the third due process element is satisfied as well.

In summary, the Court finds in this case that Kroger has established a prima facie case that the exercise of personal jurisdiction over Malease is appropriate. As stated, the requirements of Ohio's long-arm statute and federal due process are

satisfied.  Accordingly, Malease's motion to dismiss pursuant to Rule 12(b)(2) is not well-taken and is **DENIED**.

**IT IS SO ORDERED**

Date September 22, 2003          /s Sandra S. Beckwith
                                                  Sandra S. Beckwith
                                       United States District Judge