## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: 0-1-02 439 |
| | : | |
| Plaintiff, | : | Judge Beckwith |
| | : | |
| v. | : | **ANSWER TO THE COMPLAINT** |
| | : | **AND COUNTERCLAIMS_____** |
| Malease Foods Corp., formerly | : | |
| known as Malese Foods Corp., | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |

_____

Defendant Malease Foods Corp. for its answer to the complaint:

### PARTIES, JURISDICTION AND VENUE

1.  Denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 1, 4, 5, 6, 7 and 9.

2.  Denies the allegations contained in paragraphs 2, 3 and 10 of the complaint.

3.  Neither admits nor denies the allegations contained in paragraph 8 of the complaint but begs leave to refer to the Leases for a complete recitation of their terms.

### FACTUAL ALLEGATIONS, ALL COUNTS

4.  Neither admits nor denies the allegations contained in paragraphs 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27 and 28 of the complaint but begs leave to refer to the agreements, leases, notices and documents for a complete and accurate recitation

of their terms.

5. Denies the allegations contained in paragraphs 23, 29 and 30 of the complaint.

## COUNT I

### (REQUEST FOR A DECLARATORY JUDGMENT)

6. Denies the allegations contained in paragraphs 32, 33 and 35 of the complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 34.

## COUNT II

### (REQUESTS FOR PERMANENT INJUNCTIONS)

8. Denies the allegations contained in paragraphs 37, 38 and 39 of the complaint.

## COUNT III

### (ACTUAL AND ANTICIPATORY BREACH)

9. Denies the allegations contained in paragraphs 41, 43 and 44 of the complaint.

## COUNT V

### (UNJUST ENRICHMENT)

10. Denies the allegations contained in paragraphs 46, 47 and 48 of the

complaint.

### FIRST AFFIRMATIVE DEFENSE

11. The Court lacks jurisdiction of the person of defendant.

2

## SECOND AFFIRMATIVE DEFENSE

12. By its conduct, plaintiff has waived and forfeited any and all rights it may have had to exercise the purchase options as alleged in the complaint.

## THIRD AFFIRMATIVE DEFENSE

13. Plaintiff has been guilty of unclean hands and is therefore barred from obtaining any relief in this action.

## FOURTH AFFIRMATIVE DEFENSE

14. Maintenance of this action is barred by the principles of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

15. By its conduct, plaintiff has forfeited all rights to purchase the subject properties.

## SIXTH AFFIRMATIVE DEFENSE

16. Plaintiff has failed to exercise any of its purchase options in accordance with relevant agreements among Malease, Balkhouse Associates and Balkhouse Properties.

## FIRST COUNTERCLAIM

## (DECLARATORY JUDGMENT)

17. Defendant incorporates by reference the agreements to which reference is made in paragraphs 11 through 21 of the complaint.

18. As alleged in the complaint, Kroger originally owned the fee simple interest

in the three parcels (the "Leased Property"). Pursuant to a sale-leaseback transaction,

Kroger sold a fee simple estate in the three sites to Balkhouse Properties Corp., a

Delaware corporation, ("Balkhouse Properties") and took back a separate lease

covering each of the properties each dated as of April 1, 1983 between Balkhouse

Properties and Kroger (collectively, the "Occupancy Leases, and each singly as an

Operating Lease").

19.   The rights which Kroger attempts to assert in this action trace their origins

to Article XXXV of the Operating Lease.

20.   As a basic proposition, the rights, duties and obligations of Balkhouse

Properties, Balkhouse Associates, Kroger and Malease under each of the Occupancy

Leases and related Two-Party Agreements could not be modified or changed without

their written consent. This is especially true of the exercise of the Purchase Option

embodied in paragraph XXXV of the Occupancy Leases which provides:

> 35. <u>Lessee's Purchase Option.</u>   Provided no Event of
> Default has occurred which has not been waived on or prior
> to April 1, 2003, or the date of expiration of any renewal term
> hereof for which Lessee has exercised its renewal option, as
> the case may be, and provided further, that this Lease is in
> full force and effect on such date, on the day following the
> expiration date of the Fixed Term or of any renewal term of
> this Lease for which Lessee has exercised its option, Lessee
> may, at its option, upon at least three hundred sixty (360)
> days' prior notice to Lessor, purchase the Leased Property
> on such date for an amount equal to the fair market value

thereof determined without regard to this Lease established
by appraisal as set forth in Article XXXVI.  Any such
purchase shall be completed in the manner provided in
Article XIX.

21.  Subsequent to the creation of the Occupancy Leases, Balkhouse Properties

engaged in a sale-leaseback transaction with Balkhouse Associates and took back a

single blanket lease of the three Leased Properties (the "Master Lease"), together with

an assignment of the landlord's interest in each of the Occupancy Leases.  The Master

Lease and the landlord's interest in the Occupancy Leases were transferred by

Balkhouse Properties to Malease as of June 1, 1983.

22.  The Leased Property is defined  in each of the Occupancy Leases as "all of

the Lessor's rights and interest" in the particular parcel involved.

23.  The provisions concerning the Purchase Option embodied in each of the

Occupancy Leases must be read in conjunction with the Two-Party Agreements

between Malease in its capacity as "Master Lessee" and Balkhouse Associates (to be

distinguished from Balkhouse Properties - the lessor under the Kroger Occupancy

Lease) which at paragraph 3 provides in relevant part:

3.  If Purchase Option Exercised.  If a Purchase Option is
exercised pursuant to Article XXXV of the Occupancy
Lease, Partnership shall be obligated to sell and convey
Partnership's Interest in the Premises to Occupancy Tenant
simultaneously with the sale of the Master Lessee's Interest

in the Premises to Occupancy Tenant by the Master
Lessee....

24.  Kroger failed to exercise its Purchase Option in accordance with the relevant

agreements among Malease, Balkhouse Associates, and Balkhouse Properties.  For

example, paragraph 3 of the Two-Party Agreement specifically provides that a valid

exercise of a Purchase Option must occur "simultaneously with the sale of the Master

Lessee's [Malease's]  Interest in the Premises to Occupancy Tenant [Kroger] by the

Master Lessee."

25.  Rather than exercise the Purchase Option and acquire the leased properties

in accordance with the provisions of the various governing agreements, on July 24,

2001 Kroger purported to enter into a series of transactions with Balkhouse Associates

involving a "sale" of the three Sites as well some form of assignment of rights in the

Master Lease and each of the Two-Party Agreements.  Malease was not notified of the

contemplated transaction nor was it given copies of any of the operative documents.

26.  Rather, Malease was simply told after the fact that Kroger had purported to

validly exercise the Purchase Option.

27.  As alleged in paragraph 25 of the complaint, despite the fact that Kroger had

secretly attempted to exercise, modify or abrogate the Purchase Option without notice

to Malease in July of 2001, Kroger again attempted to exercise "all of the Kroger

Purchase Options" on February 18, 2002 and unilaterally "informed Defendant Malease

of the contractually determined purchase price to be paid by Kroger to Defendant

Malease" (Complaint ¶25, Ex. 1).  As further alleged in paragraph 27 of the complaint, by

notice dated March 14, 2002, Malease rejected Kroger's second attempted exercise of

the Purchase Options.  In relevant part, Malease's notice of rejection informed Kroger

that:

> By your actions in purchasing these properties, and without
> regard to and outside the scope of the Purchase Options,
> and in disregard of the interests of Malease Foods Corp.,
> you negated and repudiated and rendered the Purchase
> Options meaningless, null and void.  We regard your
> purported exercise of these Purchase Options as no more
> than an attempt to avoid the consequences of your actions
> in previously purchasing the properties, and to frustrate the
> rights and options of Malease Food Corp. (as Assignee)
> Tenant under the Leases dated as of April 1, 1983 ("Master
> Leases").
> (Complaint ¶27, Ex. 2).

28.  At all relevant times, it was the intent of the parties that if a Purchase Option

were exercised in accordance with paragraph 3 of the Two-Party Agreement as provided

in Article XXXV of the Occupancy Lease, then in order to be valid, such a transaction

had to occur simultaneously with the sale of the Master Lessee's Interest in the

premises to the Occupancy Tenant by the Master Lessee, i.e., Malease.  Moreover, in

order to be effective, the Purchase Option had to have been exercised strictly in

accordance with the notice and timing provisions which were conditions precedent to a valid exercise of the option.

29. Kroger failed to comply with the terms of the provisions of the various documents and has therefore forfeited its Purchase Option.

30. Had Kroger and Balkhouse given Malease notice of Kroger's attempt to circumvent the Purchase Option in July of 2001, the written consent of Malease would have been required since this would represent a modification or alteration of the terms of the Occupancy Leases and the Two-Party Agreements. Such consent was never requested or obtained.

31. By reason of the foregoing, the Master Lease remains in full force and effect for at least an additional period of five years during which Malease is entitled to receive the rent reserved under that Lease. This is so because Article XX of the Master Lease provides for six (6) five (5) year optional renewal terms which renewals shall be "automatic without any action" required of Kroger. If Kroger desired to refrain from the automatic exercise of that option to renew, then it was obligated to give written notice to Malease at least three hundred thirty (330) days prior to the termination of the then current Term.

32. Kroger failed to give such notice and accordingly the Leases for each of the three Sites will continue at least until April of 2008.

33.  A justiciable controversy exists between the parties, and Malease is entitled to a declaration concerning its rights and obligations under the agreements to which it is a party.  The declaration should include a specific finding that Kroger has failed to validly exercise its option to purchase the Sites and by reason thereof the Master Lease remains in full force and effect for at least an additional period of five years during which Malease is entitled to receive the rent reserved under that lease.

34.  By reason of Article XX of the Master Lease and the failure of Kroger to give at least 330 days notice prior to the expiration of the then current Term the leases for each of the three sites are now automatically renewed and Kroger is now obligated to pay rent until at least April of 2008.

## SECOND COUNTERCLAIM

### (RESCISSION)

35.  Defendant repeats and realleges each and every allegation contained in paragraphs 17 through 34.

36.  By reason of the foregoing, the purported sale of the Tennessee, Kentucky and Texas properties by Balkhouse Associates to Kroger of July 24, 2001 are null and void and all transactions should be rescinded.

## THIRD COUNTERCLAIM

### (MONEY DAMAGES - RENT OWED)

37. Defendant repeats and realleges each and every allegation contained in paragraphs 17 through 36.

38. By reason of the foregoing, Malease is entitled to the rent owed by Kroger and not paid since April 2003 to the date of the judgment to be entered in this action.

WHEREFORE, Malease prays for judgment against Kroger as follows:

1. Dismissing the complaint herein;

2. Declaring the rights and obligations of the parties under the Leases and other transaction documents and finding that:

(a) Kroger has failed to exercise any of its Purchase Options in accordance with the terms of the Leases;

(b) Kroger has now forfeited any and all rights under said Purchase Options;

(c) that each of the Leases for the three Sites continues in full force and effect at least until April of 2008 and that Kroger is obligated to pay to Malease all rent provided thereunder.

3. For an award of compensatory damages in favor of Malease.

4. For rescission of the purported sale of the three Sites by Balkhouse Associates to Kroger on July 24, 2001.

10

5. For rent owed by Kroger pursuant to each of the Leases.

6. For an award of Malease's costs and attorneys fees.

7. For such other and further relief both in law and in equity that may be just and proper in the premises.

Respectfully submitted,

/s/ R. Gary Winters
R. Gary Winters  0018680

Attorney for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building

632 Vine Street
Cincinnati, OH  45202-2442
(513)  421-4646 Telephone
(513) 421-7929 Facsimile

Of Counsel:

Robert W. Cinque, Esq.
Cinque & Cinque, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone #:  (212) 759-5515
Facsimile #:  (212) 759-7737

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2003, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ R. Gary Winters

R. Gary Winters   0018680

Attorney for Defendant
Suite 900 Provident Building
632 Vine Street
Cincinnati, OH 45202-2442
(513) 421-4646 Telephone
(513) 421-7929 Facsimile
rgarywinters@zoomtown.com