**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: C-1-02 439 |
| | : | |
| Plaintiff, | : | Judge Beckwith |
| | : | |
| v. | : | **AMENDED ANSWER TO THE** |
| | : | **COMPLAINT AND COUNTERCLAIMS** |
| Malese Foods Corp., formerly | : | |
| known as Malese Foods Corp., | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |

_____

Defendant Malese Foods Corp. for its answer to the complaint:

### PARTIES, JURISDICTION AND VENUE

1. Denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 1, 4, 5, 6, 7 and 9.

2. Denies the allegations contained in paragraphs 2, 3 and 10 of the complaint.

3. Neither admits nor denies the allegations contained in paragraph 8 of the complaint but begs leave to refer to the Leases for a complete recitation of their terms.

### FACTUAL ALLEGATIONS, ALL COUNTS

4. Neither admits nor denies the allegations contained in paragraphs 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27 and 28 of the complaint but begs leave to refer to the agreements, leases, notices and documents for a complete and accurate recitation of their terms.

5. Denies the allegations contained in paragraphs 23, 29 and 30 of the complaint.

## COUNT I

## (REQUEST FOR A DECLARATORY JUDGMENT)

6.  Denies the allegations contained in paragraphs 32, 33 and 35 of the complaint.

7.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

## COUNT II

## (REQUESTS FOR PERMANENT INJUNCTIONS)

8.  Denies the allegations contained in paragraphs 37, 38 and 39 of the complaint.

## COUNT III

## (ACTUAL AND ANTICIPATORY BREACH)

9.  Denies the allegations contained in paragraphs 41, 43 and 44 of the complaint.

## COUNT V

## (UNJUST ENRICHMENT)

10.  Denies the allegations contained in paragraphs 46, 47 and 48 of the complaint.

## FIRST AFFIRMATIVE DEFENSE

11.  The Court lacks jurisdiction of the person of defendant.

## SECOND AFFIRMATIVE DEFENSE

12.  By its conduct, plaintiff has abrogated, repudiated, waived and forfeited any and all rights it may have had to exercise the purchase options contained in the Leases.

## THIRD AFFIRMATIVE DEFENSE

13.  By its conduct, Plaintiff is estopped from exercising the purchase options contained in the Leases and Defendant is excused from any further duty pursuant to

2

such purchase options.

## FOURTH AFFIRMATIVE DEFENSE

14.  Plaintiff may exercise the purchase options only in strict compliance with the express terms of such options, and may exercise only such options for which express provision has been made, and Plaintiff has placed itself in such a position that it is unable to fulfill and is incapable of fulfilling any of such required conditions and of complying with any of such requirements.

## FIFTH AFFIRMATIVE DEFENSE

15.  The purchase options were extinguished by merger upon Plaintiff's acquisition of the interest of Balkhouse in each of the Leased Properties.

## SIXTH AFFIRMATIVE DEFENSE

16.  Plaintiff has failed to exercise any of the purchase options in accordance with relevant agreements among Malese, Balkhouse Associates and Balkhouse Properties.

## FIRST COUNTERCLAIM
## (DECLARATORY JUDGMENT)

17.  Defendant incorporates by reference the agreements, leases, notices and documents to which reference is made in paragraphs 11 through 21 of the complaint.

18.  The rights which Kroger attempts to assert in this action trace their origins to Article XXXV of the Operating Lease.

19.  The rights, duties and obligations of Balkhouse Properties, Balkhouse Associates, Kroger and Malese under each of the Occupancy Leases and related Two-Party Agreements could not be modified or changed without their written consent.

This is especially true of the exercise of the Purchase Option embodied in paragraph

XXXV of the Occupancy Leases which provides:

35. Lessee's Purchase Option.  Provided no Event of Default has occurred which has not been waived on or prior to April 1, 2003, or the date of expiration of any renewal term hereof for which Lessee has exercised its renewal option, as the case may be, and provided further, that this Lease is in full force and effect on such date, on the day following the expiration date of the Fixed Term or of any renewal term of this Lease for which Lessee has exercised its option, Lessee may, at its option, upon at least three hundred sixty (360) days' prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI.  Any such purchase shall be completed in the manner provided in Article XIX.

20.  The Leased Property is defined in each of the Occupancy Leases as "all of the Lessor's rights and interest" in the particular parcel involved.

21.  The provisions concerning the Purchase Option embodied in each of the Occupancy Leases are wholly consistent with and should be read in conjunction with the Two-Party Agreements between Malese in its capacity as "Master Lessee" and Balkhouse Associates (to be distinguished from Balkhouse Properties - the lessor under the Kroger Occupancy Lease) which at paragraph 3 provides in relevant part:

3.  If Purchase Option Exercised.  If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease, Partnership shall be obligated to sell and convey Partnership's Interest in the Premises to Occupancy Tenant simultaneously with the sale of the Master Lessee's Interest in the Premises to Occupancy Tenant by the Master Lessee....

5

22. Kroger failed to exercise the Purchase Option provided for in the Lease and failed to exercise the option Kroger purported to exercise in accordance with the relevant agreements among Malese, Balkhouse Associates, and Balkhouse Properties. For example, paragraph 3 of the Two-Party Agreement specifically provides that a valid exercise of a Purchase Option must occur "simultaneously with the sale of the Master Lessee's [Malese's] Interest in the Premises to Occupancy Tenant [Kroger] by the Master Lessee."

23. Rather than exercise the Purchase Option which, regardless of when exercised, could not cause the purchase to be consummated prior to April 2, 2003, and acquire the Leased Properties in accordance with the provisions of the various governing agreements, on July 24, 2001 Kroger purported contemporaneously to enter into a series of transactions with Balkhouse Associates. Kroger purchased Balkhouse Associates' interest in each of the Leased Properties, together with an assignment of the Landlord's interest in the Master Lease and in each of the Two Party Agreements. That made Kroger both the tenant and the landlord of Defendant. Malese was not notified of the contemplated transaction nor was it given copies of any of the operative documents.

24. As alleged in paragraph 25 of the complaint, despite the fact that Kroger had secretly purchased the three Leased Properties and the Landlord's interest in the Master Lease, Kroger again attempted to exercise "all of the Kroger Purchase Options" on February 18, 2002 and unilaterally "informed Defendant Malese of the contractually determined purchase price to be paid by Kroger to Defendant Malese" (Complaint 25, Ex. 1). By notice dated March 14, 2002, Malese rejected Kroger's attempted exercise of

6

the Purchase Options.  In relevant part, Malese's notice of rejection informed Kroger
that:

> By your actions in purchasing these properties, and without
> regard to and outside the scope of the Purchase Options,
> and in disregard of the interests of Malese Foods Corp., you
> negated and repudiated and rendered the Purchase Options
> meaningless, null and void.  We regard your purported
> exercise of these Purchase Options as no more than an
> attempt to avoid the consequences of your actions in
> previously purchasing the properties, and to frustrate the
> rights and options of Malese Food Corp. (as Assignee)
> Tenant under the Leases dated as of April 1, 1983  ("Master
> Leases").
>
> (Complaint 27, Ex. 2).

25.  At all relevant times, it was the intent of the parties that if a Purchase Option
were exercised in accordance with paragraph 3 of the Two-Party Agreement as provided
in Article XXXV of the Occupancy Lease, then in order to be valid, such a transaction
had to occur simultaneously with the sale of the Master Lessee's Interest in the
premises to the Occupancy Tenant by the Master Lessee, i.e., Malese, and had to cover
the entire estate owned by Balkhouse Properties Corp. at the time of the creation of the
Operating Lease, to wit:  the combined estate owned by both Plaintiff and Defendant.
Moreover, in order to be effective, the Purchase Option had to have been exercised
strictly in accordance with the notice and timing provisions which were conditions
precedent to a valid exercise of the option.

26. Kroger failed to comply with the terms of the provisions of the various documents and has, therefore, repudiated, abrogated, waived and forfeited its Purchase Option.

27. Had Kroger sought to modify the option to accelerate the time for closing of title pursuant to the exercise of the option, the written consent of Malese would have been required since this would represent a modification or alteration of the terms of the Occupancy Leases and the Two-Party Agreements. Such consent was never requested or obtained, and could not have been obtained, because Malese was at such times in negotiations with Balkhouse Associates to purchase from them the fee of the Leased Properties.

28. Malese was in negotiations with Balkhouse for the purchase of the Balkhouse estate in the Leased Properties before Kroger acquired the Balkhouse estates on July 24, 2001. In fact, Malese entered into a written agreement ("Agreement Related to Sublease") for the sale of the San Marcos, Texas property to H. E. Butt Grocery Company (the occupant of such Leased Property under a Sublease from Kroger - hereinafter "Butt") if Malese were to acquire such Leased Property from Balkhouse. Butt approached Malese concerning such Leased Property at the time it was in negotiations with Balkhouse for the purchase of the Leased Properties. Kroger did not acquire the Balkhouse estates pursuant to the options contained in Article XXXV of the Leases (a) because under such Article, Kroger could not acquire such estates earlier than April 2, 2003, and (b) because Kroger did not pay the fair market value for such purchase. Malese was demonstrably prepared at such time to pay substantially more for the Balkhouse estates, particularly in the face of its agreement to resell the San

8

Marcos, Texas property to Butt.  Malese acted to its monetary detriment in reliance on the fact that the Kroger could not exercise the purchase options so as to cause the sale of each of such Leased Properties prior to April 2, 2003.

29.  The Agreement Related to Sublease dated as of November 15, 1999, between Malease and Butt, expressly provided at Section 4(b) as follows:

> (d)  HEB shall not at any time prior to April 1, 2003 exercise any right or direct the exercise by Kroger or any other person or entity of any right that would interfere with or prevent the purchase of the Premises by Malese and the exercise or performance by Malese of its rights or obligations under this Agreement; provided, however, nothing in this sentence contained shall limit the right of HEB to acquire the Premises from Malese pursuant to the terms of this Agreement.  In the event either (A) Malese acquires the Premises or enters into a contract of sale to acquire fee title to the Premises at any time prior to November 1, 2001, but (i) Malese does not require HEB to purchase the Premises from Malese, and (ii) HEB does not require Malese to sell the Premises to HEB, in either instance, pursuant to this Agreement, or (B) Malese fails to acquire fee title to the Premises or fails to enter into a contract of sale to acquire fee title to the Premises, in either case prior to November 1, 2001, then and in either such event, nothing contained herein shall impair the rights of HEB to exercise the Purchase Option (as hereinafter defined) or to enter into negotiations and to acquire the Premises at any time on or after November 1, 2001.

30.  By Agreement Regarding Additional Facility dated as of November 1, 1999, among Balkhouse, Malese, Kroger and Butt, the parties (other than Butt) (i) consented

to Butt's construction on the San Marcos, Texas property of an Additional 268,000 square foot Warehouse Facility, subject to Butt's duty to comply with the provision of Article 16 of the Sublease to Butts, governing construction of additions and alterations; (ii) confirmed to Butts that the Occupancy Lease was in effect and there were no existing defaults by Lessee under the Occupancy Lease, and (iii) agreed to modify the Lease as follows:

5.    **MODIFICATION OF OCCUPANCY LEASE**

The Occupancy Lease is hereby modified and supplemented, effective as of the date hereof, by adding the following at the end of Article XXXV:

"Notwithstanding anything to the contrary contained herein, and solely for purposes of this Article XXXV and Article XXXVI of this Lease if the Additional Warehouse Facility is constructed, the fair market value of the Leased Property shall be an amount equal to the greater of:

(i)  the appraised value (as determined by Article XXXVI below) of the Leased Property, determined as if the Additional Warehouse Facility (as defined below) did not exist and had never been erected on the Land, and

(ii)  the appraised value (as determined by Article XXXVI below) of the Leased Property, inclusive of the Additional Warehouse Facility (but excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), minus the Costs of Construction (as hereinafter defined) incurred by or on behalf of H.E. Butt Grocery Company in connection with constructing the Additional Warehouse Facility.

10

This meant that Article XXXV of the Occupancy Lease, which contained the Kroger Purchase Option was modified by changing the manner in which the purchase price payable upon the exercise of the Option was computed in such a way that the purchase price could not be reduced, but might well be increased, by reason of the construction by Butt on the San Marcos, Texas Leased Property of the 268,000 square foot addition. By purchasing the Leased Properties outside the option (and without the effect of exercising the option) Kroger avoided the effect of the Agreement Regarding Additional Facility upon the purchase price calculation under Article XXXV of the Operating Lease.

31. Balkhouse acquired its estates in the Leased Properties in 1983, as part of a tax shelter syndication transaction. By April, 2001, the Balkhouse investors were facing phantom income on their investment, since the mortgage loans affecting the Leased Properties now called for heavy amortization payments and there was no longer sufficient depreciation to shelter the rental income from the Leased Properties required to service such amortization payments. This would mean that the investors would be charged with taxable income for which they would not receive corresponding cash distributions, and would therefore have no source of funds to pay the tax. This situation would thereafter continue into the future. It was, therefore, timely for Balkhouse to sell its entire interest in the three Leased Properties. Malese had completed the purchase of four (4) similarly situated properties from entities controlled by affiliates of [Merrill Lynch] and of the general partner of Balkhouse and was in discussion with Balkhouse concerning such purchase.

32. Malese does not contend that the existence of the option contained in Article

XXXV of the Leases prevented Kroger from purchasing the Balkhouse estates in the Leased Properties, but does assert that Kroger having, purchased the Balkhouse Estates outside the option, Kroger repudiated, abrogated, waived and forfeited the option and is estopped from thereafter attempting to exercise the option or asserting the provision of Section 3 of the Two Party Agreement.

## SECOND COUNTERCLAIM

33.  Defendant repeats and realleges each and every allegation contained in paragraphs "17 through "30."

34.  The Master Lease remains in full force and effect for at least an additional period of five years during which Malese is entitled to receive the rent reserved under that Lease.  Article XX of the Lease provides for renewal terms which shall be "automatic without any action" required by Kroger.  If Kroger desired to refrain from the automatic exercise of that option to renew, then it was obligated to give written notice to Malese at least three hundred thirty (330) days prior to the termination of the then current Term.

35.  Kroger failed to give such notice, and accordingly the Leases for each of the three Sites will continue at least until April of 2008.

36.  A justiciable controversy exists between the parties, and Malese is entitled to a declaration concerning its rights and obligations under the various agreements. The declaration should include a specific finding that Kroger has failed to validly exercise its option to purchase the Sites and that the Master Lease remains in full force and effect for at least an additional period of five years during which Malese is entitled to receive the rent reserved under that lease.

37.  By reason of Article XX of the Master Lease and the failure of Kroger to give at least 330 days notice prior to the expiration of the then current Term the leases for each of the three sites are automatically renewed, and Kroger is now obligated to pay rent until at least April of 2008.

## THIRD COUNTERCLAIM

## (UNJUST ENRICHMENT AND IMPOSITION OF CONSTRUCTIVE TRUST)

38.  Defendant repeats and realleges each and every allegation contained in paragraphs 17 through 35.

39.  The Purchase and Sale transaction between Kroger and Balkhouse resulted in Kroger's paying a substantially discounted price from the fair market value of the leased properties.

40. As a result, Kroger was unjustly enriched at the expense of Malese.

41. A constructive trust should be imposed by this Court upon Kroger for the benefit of Malese for the amount of this discount.

## FOURTH COUNTERCLAIM

## (MONEY DAMAGES AND RENT OWED)

42. Defendant repeats and realleges each and every allegation contained in paragraphs 17 through 35.

43.  By reason of the foregoing, Malese is entitled to the rent owed by Kroger and not paid since April 2003 to the date of the judgment to be entered in this action, together with interest as permitted by law.

44.  Plaintiff has no adequate remedy at law.

WHEREFORE, Malese prays for judgment against Kroger as follows:

1.  Dismissing the complaint herein;

2.  Declaring the rights and obligations of the parties under the Leases and other transaction documents and finding that:

(a) Kroger has failed to exercise any of its Purchase Options in accordance with the terms of the Leases;

(b) Kroger has now forfeited, waived, abrogated and repudiated any and all rights under said Purchase Options;

(c) that each of the Leases for the three Sites continues in full force and effect and that Kroger is obligated to pay to Malese all rent and additional rent provided thereunder.

3.  For the imposition of a constructive trust upon Kroger as a result of its unjust enrichment at the expense of Malese for the amount of the discount below fair market value as a result of the purchase and sale to Balkhouse.

4.  For an award of compensatory damages in favor of Malese together with rent and additional rent owed by Kroger pursuant to each of the leases with interest thereon at the rate permitted by law.

5.  For an award of Malese's costs and attorneys fees.

6.  For such other and further relief both in law and in equity that may be just and proper in the premises.

Respectfully submitted,

/s/ R. Gary Winters
R. Gary Winters  0018680
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, OH  45202-2442
(513)  421-4646 Telephone
(513) 421-7929 Facsimile
rgwinters@mimlaw.com

Robert W. Cinque, Esq.
Cinque & Cinque, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone #:  (212) 759-5515
Facsimile #:  (212) 759-7737
CINQUE845@aol.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th  day of November, 2003, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ R. Gary Winters
R. Gary Winters   0018680
Attorney for Defendant
Suite 900 Provident Building
632 Vine Street
Cincinnati, OH 45202-2442
(513) 421-4646 Telephone
(513) 421-7929 Facsimile
rgarywinters@zoomtown.com

15