# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

THE KROGER CO.,                             :    Case No.: C-1-02-439
                                            :
                 Plaintiff,                 :    Beckwith, J.
                                            :    Perelman, M.J.
                                            :
          v.                                :    **THE KROGER CO'S MOTION FOR**
                                            :    **SUMMARY JUDGMENT ON ALL CLAIMS**
                                            :    **AND MEMORANDUM IN SUPPORT**
MALEASE FOODS CORP.,                        :
                                            :
                 Defendant.                 :

Plaintiff The Kroger Co. ("Kroger") moves for summary judgment on its declaratory

judgment, breach of contract and unjust enrichment claims. Kroger respectfully requests that

this Court grant a declaration that Defendant Malease Foods Corp. ("Malease") is in material

breach of its obligations under three April 1983 Leases; that Kroger fulfilled its obligations under

those leases—including the valid exercise of Kroger's right to purchase all interests in three

parcels of real property; and that Malease is required to sell its interest in the parcels to Kroger.

Kroger requests injunctive relief requiring Malease to sell its interests in the three parcels

in accordance with the terms of the three April 1983 Leases.

Kroger requests an award of compensatory damages, costs and fees due to the delay in

Malease executing its duties in relinquishing its interests in the three parcels under the April

1983 Leases in the amount of $670,392.94 with pre and post judgment interest compounding as

of October 30, 2003 plus an additional $95,770.42 per month after October 30, 2003 with pre

and post judgment interest compounding on each additional amount, plus costs and fees.

Kroger further requests that the Court grant summary judgment on all Malease counterclaims: that Malease is not entitled to a declaratory judgment, renewable rents; funds held by the Court in escrow; or damages under an unjust enrichment claim.

This Motion for Summary Judgment is supported by the attached Memorandum in Support, attached deposition and affidavit testimony and attached contracts and documents.

Respectfully submitted,

Scott D. Phillips  (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:
Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      Summary**

This is a simple breach of contract action based on a large and complex set of sale and leaseback contracts.  The main operative set of contracts that determine the rights and responsibilities of Kroger and Malease are three leases, all dated April 1, 1983 ("April 1983 Leases" attached as Exhibit A).  These three April 1983 Leases are identical, with the exception of the property descriptions, amount of rent, and other miscellaneous matters related to the specific real estate in question, with one property in Kentucky, one in Tennessee and one in Texas.  See April 1983 Leases, (Exhibit A).  Under these three April 1983 Leases, Kroger retained a purchase option to acquire fee title to the properties upon proper notice to the interest owners.  See April 1983 Leases at p. 50, (Exhibit A).

Kroger provided the proper notice to Malease, but Malease chose to repudiate that notice and refused to relinquish its interest in the three properties, in violation of its obligations.  See letter of February 18, 2002 from Kroger to Malease (and others) and letter of March 14, 2002 from Malease to Kroger, ("Notice and Repudiation Letters" attached as Exhibit B).  In this action, Kroger seeks to obtain its rights to the properties, as set out in those April 1983 Leases, and compensatory damages caused by Malease's refusal to live up to its contractual obligations.

**II.     Undisputed Facts**

**A. April 1983 Leases and Kroger's Purchase Options**

On April 1, 1983, Kroger closed three (3) sale-leaseback transactions with an entity known as Balkhouse Properties ("Balkhouse Properties") for three of Kroger's existing industrial facilities located in Bowling Green, Kentucky, Murfreesboro, Tennessee, and San Marcos, Texas, (collectively, the "Sites").  April 1983 Leases, (Exhibit A).  A sale-leaseback transaction

is a commonly used device whereby a high-credit owner sells a parcel of real estate on which it operates a part of its business to an investor and then enters into a long-term lease for the property. See deposition of Robert Howard, January 20, 2004 at pp. 4-6, (attached as Exhibit C); Expert Report of Scott Butler and James Price, October 30, 2003 at pp. 2-4, (attached as Exhibit D, supported by the affidavit attached at Exhibit O).

As a result of the sale-lease back transactions, Balkhouse Properties became the owner of fee simple title to the Sites and Kroger became a tenant of each of the Sites. April 1983 Leases, (Exhibit A).

Each of the April 1983 Leases had a primary term that began on April 1, 1983 and ends April 1, 2003, with Kroger reserving rights to extend the terms of each of the April 1983 Leases for a total of thirty (30) years. April 1983 Leases, (Exhibit A).

Article 35 of each of the April 1983 Leases grants Kroger an option to purchase the subject property as follows (the "Kroger Purchase Options"):

> 35.    Lessee's Purchase Option.  Provided no Event of Default has occurred which has not been waived on or prior to April 1, 2003, or the date of expiration of any renewal term hereof for which Lessee has exercised its renewal option, as the case may be, and provided further, that this Lease is in full force and effect on such date, on the day following the expiration date of the Fixed Term or of any renewal term of this Lease for which Lessee has exercised its option, **Lessee may, at its option, upon at least three hundred sixty (360) days' prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI.** Any such purchase shall be completed in the manner provided in Article XIX.

[Emphasis added].  April 1983 Leases, p. 50, (Exhibit A).

At the time of this contract, Kroger was the Lessee and Balkhouse Properties was the Lessor. April 1983 Leases, (Exhibit A). Subsequent to this contract, Balkhouse Properties conveyed its interests in the Sites to other entities—including Malease. But Kroger retained this purchase option with respect to Balkhouse Properties' successors in interest—including Malease.

4

**B.    How Malease Came to Own an Interest in the Sites**

On June 1, 1983, Balkhouse Properties entered into three identical conveyance transactions and one lease agreement related to each of the Sites with a related entity, Balkhouse Associates, a Tennessee Limited Partnership ("Balkhouse Associates").  *See* June 1983 Lease for all three Sites from Balkhouse Associates to Balkhouse Properties, ("June 1983 Lease," attached as Exhibit E).  In the June 1983 transactions, (1) Balkhouse Properties conveyed fee simple title to each of the Sites to Balkhouse Associates; and (2) Balkhouse Properties leased each of the Sites from Balkhouse Associates under a single lease agreement.  June 1983 Lease (Exhibit E).  These transactions had the net effect of making Kroger a subtenant at each of the Sites.  At this point, Balkhouse Associates was the "fee owner," Balkhouse Properties was the "master lessee" and Kroger was the "occupancy tenant."[1]

On June 1, 1983, Balkhouse Properties assigned all of its rights as "master lessee" under the June Lease to Defendant Malease.[2]  June 1983 assignment from Balkhouse Properties to Malease, (attached as Exhibit F).

Immediately thereafter, Malease and Balkhouse Associates entered into three separate agreements, each captioned "Two-Party Agreement," one for each of the Sites.  June 1983 Two-Party Agreements between Balkhouse Associates and Malease ("Two-Party Agreements", attached as Exhibit H).  All three of the Two-Party Agreements were identical in form and paralleled the April 1983 Leases.  Two-Party Agreements, (Exhibit H).

Under the terms of the Two-Party Agreements, Malease and Balkhouse Associates each acknowledged that their interests in all three Sites remained subject to the terms of the April

---

[1] These are the terms for these relationship positions in the contracts stated by Defendant's expert witness, Robert Howard.  Howard deposition, pg. 6 (Exhibit C).
[2] "Malease" in fact, gets its name from its position as "master lessee" in this contractual arrangement.  Deposition of Lawrence Kadish, January 21, 2004 at p. 29, (Exhibit G).

1983 Leases and subject to Kroger's rights under the April 1983 Leases.  Two-Party Agreements, pp. 1-2, (Exhibit H).  Malease agreed that as "master lessee," it would remain the landlord under the terms and conditions of the April 1983 Leases and would be entitled to receive all rents due from Kroger under the April 1983 Leases.  Two-Party Agreements, pp. 1-2, 12-14 (Exhibit H).

Most importantly, under the Two-Party Agreements, Malease and Balkhouse Associates acknowledged the existence of the Kroger Purchase Options contained in the April 1983 Leases.  Two-Party Agreements, pp. 9-11, (Exhibit H).  The Two-Party Agreements allocated the rights and responsibilities with respect to the Kroger Purchase Options between Malease and Balkhouse Associates, in the event that Kroger exercised the options.  Two-Party Agreements, pp. 9-11, (Exhibit H).

Under the Two-Party Agreements, Malease and Balkhouse Associates are obligated as follows:

> 3. If Purchase Option Exercised.  **If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease,** Partnership [Balkhouse Associates] shall be obligated to sell and convey Partnership's interest in the Premises to Occupancy Tenant [Kroger] simultaneously with the sale of the Master Lessee's [Malease's] Interest in the Premises to Occupancy Tenant by the Master Lessee.  Partnership and **Master Lessee shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease**.  Partnership's Interest and Master Lessee's Interest in the Premises shall be sold and conveyed in accordance with Article XIX of the Occupancy Lease, subject however, to compliance with the following: * * * [the rest discusses the determination and pay out of the purchase price].

[Emphasis added].  Two-Party Agreements at pp. 9-10, (Exhibit H).

Additionally, the three Two-Party Agreements and the June Lease each provided that they bind and inure to the benefit of the successors and assigns of the original parties. Two-Party Agreements at p. 13, (Exhibit H).  Therefore, Malease is bound by the terms of the April 1983 Leases and the Two-Party Agreements.  For example, under Section 3(a) of the Two-Party

Agreements, Malease waived any rights it may have had relative to the determination of the fair market value of the Sites. Two-Party Agreements at p. 10, (Exhibit H).

### C.    Kroger Purchased Balkhouse Associates "Fee Owner" Interests in the Sites

On July 24, 2001 Kroger acquired the Fee Owner Interest to each of the Sites from Balkhouse Associates and acquired by assignment all of Balkhouse Associates' rights under the Two-Party Agreements.  Kroger and Balkhouse Associates Purchase Contracts, dated July 24, 2001 ("July 24, 2001 Contracts," attached at Exhibit I).

This set of transactions placed Kroger into the position as the Fee Owner, Malease as the Master Lessee and Kroger as the Occupying Tenant for all three Sites.

### D.    Kroger Properly Exercised its Purchase Options

By written notice dated February 18, 2002, Kroger, in its capacity as the occupying tenant under the April Leases, notified Malease that it was exercising all of the Kroger Purchase Options.  Notice and Repudiation Letters (attached as Exhibit B).  Kroger further informed Malease of the contractually determined purchase price to be paid by Kroger to Malease for its master lease interest.  Notice and Repudiation Letters (attached as Exhibit B).  This notice was timely—more than 360 days prior to the April 1, 2003 purchase option closing, per the terms of the April 1983 Leases.  Notice and Repudiation Letters (attached as Exhibit B).

Kroger notified Malease of Kroger's calculation of the present value amount that would become due on April 1, 2003.  Notice and Repudiation Letters (attached as Exhibit B).  Because Kroger owned the Fee Owner Interest formerly held by Balkhouse Associates under the Two-Party Agreements, Kroger was entitled to the difference between the purchase price properly payable under the April 1983 Leases and the liquidated amount established under the terms of

Section 3(b) of the Two-Party Agreements. Notice and Repudiation Letters (attached as Exhibit B).

### E.    Malease Refused to Honor Kroger's Purchase Options

Surprisingly, Malease "rejected" Kroger's exercise of the Kroger Purchase Options for the purported reason that Kroger's purchase of the Balkhouse Associates' interest "rendered the Purchase Options meaningless, null and void." Notice and Repudiation Letters (attached as Exhibit B).

In response, Kroger re-affirmed Kroger's exercise of the Kroger Purchase Options and inquired as to the substantive basis for Defendant Malease's rejection of such exercise, but received no further reply. Kroger letter to Malease dated March 27, 2002, (attached as Exhibit J).

Ultimately, Kroger filed this action to protect its contractual rights under the April 1983 Leases and obtain compensatory damages for Malease's breach of the Two-Party Agreements, which require Malease to perform duties in accordance with the April 1983 Leases. Complaint, (attached as Exhibit K).

## III.    Standard of Review

This Motion for Summary Judgment under Civil Rule 56(B) seeks judgment as a matter of law. The legal standard for decisions based on motions for summary judgment is well known and need not be presented here in depth. In essence, the evidence is to be construed in a light most favorable to the non-moving party, and the non-moving party is entitled to any favorable inferences that can be drawn. *United States v. Diebold*, 369 U.S. 654 (1962). However, "[t]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there

be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1968) (emphasis in original). To avoid a summary judgment motion, there must be sufficient

evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson*,

477 U.S. at 250. A motion for summary judgment is an integral part of the rules of procedure

and is not merely a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317,

327 (1986).

## IV.    Breach of Contract

### A.    The Contracts' Terms Are Clear and Unambiguous

This entire case hinges on whether Malease breached the terms of the April 1983 Leases

and the corresponding Two-Party Agreements when it failed to honor Kroger's exercise of the

purchase options. The determination of whether Malease breached the terms of these

agreements hinges on the meaning of certain terms in those agreements.

The meaning of the terms of a contract is a question of law, ripe for summary judgment.

*Anderson v. AT&T Corp.*, 147 F.3d 467, 476, (6th Cir. 1998) citing *Tamarind Resort Assocs. v.

Government of the Virgin Islands*, 138 F.3d 107, 109 (3d Cir. 1998). Even when parties

dispute the meaning of a contract term, the term is not considered ambiguous if the Court is

able to determine the correct meaning of disputed contract terms using common sense and

ordinary principles of construction. *See Kerns, Inc. v. Wella Corp.*, 114 F.3d 566, 569-70 (6th

Cir. 1997) Whether a contract term is ambiguous is itself a question of law, ripe for summary

judgment. *See Tennessee Consolidated Coal Co. v. United Mine Workers of America*, 416

F.2d 1192, 1198 (6th Cir. 1969), cert. denied, 397 U.S. 964, 25[*13] L. Ed. 2d 256, 90 S. Ct.

999 (1970).

The only contracts needed to examine Kroger's rights are the April 1983 Leases. The only contracts needed to examine Malease's obligations are the corresponding Two-Party Agreements and the April 1983 Leases.

Each of the April 1983 Leases stated in Paragraph XXXV that "Lessee [Kroger] may, at its option, upon at least three hundred sixty (360) days' prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI." April 1983 Leases, p.50, (Exhibit A).

Pursuant to the April 1983 Leases Kroger validly exercised its option to purchase the Sites when it provided notice to Malease of its intentions to purchase the leased property more than 360 days before April 1, 2003. Notice and Repudiation Letters (attached as Exhibit B).

Each of the Two-Party Agreements stated that upon Kroger's exercise of its purchase options under Article XXXV of the Occupancy Lease, "Partnership [formerly Balkhouse Associates, now Kroger] shall be obligated to sell and convey Partnership's interest in the Premises to Occupancy Tenant [Kroger] simultaneously with the sale of the Master Lessee's [Malease's] Interest in the Premises to Occupancy Tenant by the Master Lessee." Two-Party Agreements, (Exhibit H). Most importantly, "Partnership and Master Lessee shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease." Two-Party Agreements, (Exhibit H).

It is simply a matter of Malease performing its obligations to transfer its interest in the Sites to Kroger. Malease's failure to do so is a breach of these obligations.

**B.      Malease Refusal to Perform is a Breach of the Contracts' Express Terms**

Malease has refused to execute or deliver a surrender of the leases. Malease not only refuses to release the Sites from the Master Lease, but is asserting that Kroger owes additional rents after April 1, 2003 and beyond because the purchase option is "meaningless, null and void." Malease's Answer and Counterclaims, (attached as Exhibit L).

Malease takes this position, even though the Two-Party Agreement very precisely states: "WHEREAS, Article XXXV of the Occupancy Lease [April 1983 Leases] grants the Occupancy Tenant [Kroger] a purchase option which the Master Lessee [Malease] may not reject; * * * Two-Party Agreements, (Exhibit H).

Malease's expert witness, Robert Howard explained that the reason that the purchase option became void simply because Kroger purchased Balkhouse Associates interest ahead of the exercise of the purchase option. Howard deposition at pp. 33-34, (Exhibit C). Mr. Howard claims that "leased property" can only mean all of the Fee Owner Interest and Master Lessee Interest combined. Howard deposition at pp. 33-34, (Exhibit C). Mr. Howard reasons that Kroger could not purchase the Fee Owner Interest from itself on April 1, 2003, therefore the purchase option must be void. Howard deposition at pp. 33-34, (Exhibit C). Mr. Howard stated that any rights that Malease is asserting stem from this one definition of "leased property" being the sum of these parts. Howard deposition at pp. 33-34, (Exhibit C).

This position is untenable. Article XXXI of the April 1983 Leases states:

No Merger of Title. There shall be no merger of this Lease or of the leasehold estate created hereby by reason of the fact that the same person, firm, corporation or other entity may acquire, own, hold, directly or indirectly, (a) the Lessee's interest in this Lease or the leasehold estate created hereby or any interest in this Lease or such leasehold estate and (b) the Lessor's interest in this Lease or the fee estate in the Leased Property or any interest therein. April 1983 Leases at p. 49, (Exhibit A).

Thus, Kroger, as Fee Interest Owner is not the same as Kroger, as Occupying Tenant, under the April 1983 Leases. The interests are kept expressly separate. The very outcome that Malease complains of—that Kroger owns part of the Lessor Interest at the same time that it owned the Lessee Interest—was expressly contemplated by the April 1983 Leases and the positions are kept apart. These parts remain separate until the various parts—including the Master Lessee Interest held by Malease—are put back together. In this case, the parts remain separate until the exercise of the purchase options in the agreement is consummated.

There is nothing explicit or implicit in either the April 1983 Leases or the Two-Party Agreement that suggest that Kroger could only exercise the Purchase Options over these interests "so long as Kroger did not own the fee interest." To the contrary, the April 1983 Leases made no restriction upon ownership of the various interests. The only restriction was that the lessor interests be kept separate and distinct from the lessee interests unless purchased back by the Occupying Tenant. These interests have been kept separate and distinct. Even Malease's expert admits that there is no merger of title. Howard deposition at pp. 15-16 (Exhibit C).

Nothing in the April 1983 Leases required the tortured and constricted definition that Mr. Howard and Malease would put on "leased property" in the Purchase Option. It merely allowed Kroger to purchase its leased property on April 1, 2003 for an amount equal to the fair market value as determined by the express contract terms. Nothing in the April 1983 Leases or in the Two-Party Agreements prevents Kroger from acting in the shoes of Balkhouse Associates as Fee Owner.

Kroger as Fee Owner is certainly separate from Kroger as Occupying Tenant under the terms of the April 1983 Leases. The April 1983 Leases contemplated this very possibility. Kroger as Fee Owner is capable and willing to convey its interest to Kroger as Occupying

Tenant, simultaneously with Malease conveying its Master Lessee interest on April 1, 2003. Kroger has never stated that it was unable to do so. It is a simple matter to put these pieces back together at the same time that Malease relinquishes its interest under the Purchase option.

The Two-Party Agreement was written for the express purpose of defining and dividing the responsibilities owed by the Fee Owner and the Master Lessee to Kroger as Occupying Tenant under the April 1983 Leases. Howard deposition at p. 20 (Exhibit C); Butler and Price expert report at p. 5, (Exhibit D). The Two-Party Agreement requires that Kroger as Fee Owner is obligated to convey its interest to Kroger as Occupying Tenant simultaneously with the sale of the Master Lessee's Interest in the Premises to Occupying Tenant by the Master Lessee [Malease]. Two-Party Agreements, (Exhibit H). It does not say that the Purchase Option is rendered meaningless.

Accordingly, Malease's refusal to honor its obligations under the Two-Party Agreement is a breach of that agreement. It also causes the lessor position in the April 1983 Leases [Kroger as Fee Owner and Malease as Master Lessee] to be in breach of these leases. Accordingly, Malease is liable for the damages caused by the delay in this refusal and Malease is obligated to relinquish its Master Lessee rights to Kroger as Occupying Tenant.

## V.    Declaratory Judgment

### A. Sixth Circuit Law Under the Declaratory Judgment Act

Kroger, in its Complaint, and Malease in its Counterclaim, have each asked for declaratory judgment in this action. The Declaratory Judgment Act provides that this Court may declare the rights and other legal relations of "any interested party seeking such declaration." 28 U.S.C. §2201.

13

The Sixth Circuit provided two principal criteria for guiding courts: (1) when the judgment will serve a useful purpose in clarifying the legal relations at issue and (2) when the judgment will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990). There are five factors to consider when examining these two principal criteria: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would clarify the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" in another case; (4) whether the declaratory remedy would encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is more effective. *Commercial Union Ins. Co. v. Cannelton Industries, Inc.*, 828 F. Supp. 504, 507 (W.D. Mich. 1993), (*citing Mercier, supra*, 913 F. 2d at 277).

### B.    Kroger Meets the Criteria; Declaratory Judgment Should Be Granted to Kroger

Kroger fully performed all of its obligations under the April Leases, the contract to acquire fee simple title of the Sites, and the assignment of Balkhouse Associates' rights under the Two-Party Agreements. Pursuant to the April Leases and the agreements Kroger was party to, Kroger validly exercised its right to purchase the Sites. As such, Kroger is entitled to a declaration concerning its rights under the April 1983 Leases.

Kroger's request for declaratory judgment meets these criteria. A declaration of rights under the April 1983 Leases and the Two-Party Agreements would settle the controversy and clarify the legal relations at issue. There is no state case or other case pending in another jurisdiction that creates a "procedural fencing" or encroachment on another court's jurisdiction. Accordingly, Kroger is entitled to a declaratory judgment stating that:

(1) Kroger has validly exercised its purchase options to purchase the Sites,

(2) there is no evidence that Kroger defaulted on the April 1983 Leases or any agreements with Malease,

(3) Malease is in material breach for its failure to sell to Kroger the Sites pursuant to the purchase options in the April 1983 Leases, and

(4) Malease is required to sell to Kroger the sites.

### C.    Declaratory Judgment Should Be Denied to Malease

In its Counterclaim, Malease sought a declaratory judgment as well.  Malease seeks a declaration that "Kroger repudiated, abrogated, waived and forfeited the option and is estopped from thereafter attempting to exercise the option or asserting the provision of Section 3 of the Two-Party Agreement."  Because there was no waiver or "modification" of the purchase option, and because the Two-Party Agreement that Malease is bound under requires Malease to relinquish its rights as Master Lessee to the Sites, Malease is not entitled to a declaratory judgment.  Malease's request for one should accordingly be denied.

## VI.    Kroger is Entitled to Injunctive Relief

Kroger has validly exercised its option to purchase the Sites.  But money damages are inadequate to remedy Malease's breach of contract because the Sites are unique and in the best location for Kroger's industrial facilities.  Accordingly, Kroger is entitled to injunctive relief specifically ordering Malease to relinquish its interest in the Sites to Kroger, in addition to the money damages caused by the delay.

## VII.    Kroger is Entitled to Compensatory Damages

Kroger has validly exercised its option to purchase the Sites.  Malease's refusal to convey its interest in the Sites has cost Kroger a great deal of money.

Kroger entered into a sublease on its San Marcos, Texas property with a company named H.E. Butt. Expert Report of Jonathan Libbert, dated October 30, 2003, and attached agreements between Kroger and H.E. Butt, (attached at Exhibit M, supported by the affidavit attached at Exhibit O). Subsequent to that sublease, Kroger entered an agreement with H.E. Butt in which H.E. Butt would purchase the Texas property from Kroger. Libbert expert report, (Exhibit M).

First, if the sublease between Kroger and H.E. Butt had been renewed under normal business conditions for the San Marcos, Texas property, Kroger would have received $237,267.94 more in rent just between April 1, 2003 and October 30, 2003, with compounded interest. Libbert expert report, (Exhibit M).

Second, Kroger was unable to have access to an $11,000,000 purchase price from H.E. Butt for the San Marcos property. The loss of the use of this money at a reinvestment rate of 12 percent, minus the actual rent received in lieu of the lost use of this money was a monthly net loss of $61,875.00 and $433,125.00 for April 1, 2003 through October 30, 2003 with compounded interest. Libbert expert report, (Exhibit M).

Third, the continuing cost of these losses until the sale is closed is $95,770.42 per month for each month after October 30, 2003, with compounding interest. Libbert expert report, (Exhibit M).

Finally, there is the risk that Kroger could incur an even greater loss if the $11,000,000 sale of the San Marcos property is not completed due to the delay introduced by Malease's refusal to relinquish the Master Lessee interest in the San Marcos property. Malease would be liable for $11,000,000 minus any future sale price of that property. Libbert expert report, (Exhibit M).

Accordingly, as of the date of this Motion, Kroger is entitled to an award of compensatory damages in favor of Kroger in the amount of $670,392.94 with pre and post judgment interest compounding as of October 30, 2003 plus an additional $95,770.42 per month after October 30, 2003 with pre and post judgment interest compounding on each additional monthly amount. Libbert expert report, (Exhibit M).

## VIII.  Malease's Counterclaims for Rents and Unjust Enrichment Should Be Denied

### A.     Malease's Counterclaim for the Automatic Renewal of the Lease Terms under Article XX of the April 1983 Leases Should Be Denied

Malease claims that Kroger was required to give written notice at least 330 days prior to April 1, 2003 if it wished to terminate the April 1983 Lease Agreements, to avoid automatic renewal for an additional five years, under Article XX of the April 1983 Leases. Kroger sent a letter more than 360 days before April 1, 2003. That letter expressly informed Malease that Kroger was exercising its purchase options on the three Sites. Clearly, Kroger was not renewing the April 1983 Lease terms for an additional five years with this letter. Kroger was exercising the purchase options, which served to end the April 1983 Leases.

Accordingly, Malease is not entitled to have any declaration that the April 1983 Leases were automatically renewed for an additional five years.

### B.     Malease's Counterclaim for Unjust Enrichment Should Be Denied

Malease claims that Kroger received a discounted price from Balkhouse Associates when Kroger purchased the Fee Owner interest in 2001. Malease claims that this discounted price unjustly enriched Kroger at Malease's expense, without any explanation, rationale or evidence that Kroger received a discounted price, that Kroger was in any way enriched, or that the transaction was in any way unjust.

The Two-Party Agreement states that "the law of the state in which the Premises are located shall govern this document." Thus, Texas, Tennessee and Kentucky law govern Malease's unjust enrichment claim.

In Texas, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person that the claimant was expected to be paid. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990) (attached as Exhibit O). A party may only recover when there is no express contract covering the services or materials furnished. *Vortt Exploration Co., Inc.,* 787 S.W.2d at 944 (Exhibit O). Tennessee and Kentucky have similar elements. *See ,e.g., Asbury v. Lagonia-Sherman*, LLC, 2002 Tenn App. LEXIS 731 (Oct. 15, 2002), unreported (no contract between the parties and defendant unjustly enriched via quasi-contractual obligation); *Bogan v. Finn*, 298 S.W.2d 311 (Ky. 1957) (attached as Exhibit N).

Here, Kroger's purchase of Balkhouse Associates' interest involved no valuable services or materials furnished to Kroger by Malease. Kroger entered into and consummated an arms-length transaction with Balkhouse Associates to purchase their interest.

Further, Kroger and Malease were contractually related through the April 1983 Leases. These leases defined their relationship with respect to the Sites and the Lessor and Lessee interests. These leases do not provide any compensation to Malease should Kroger purchase the Fee Owner interest. Furthermore, the Two-Party Agreement between Balkhouse Associates and Malease did not provide any compensation to Malease should Kroger purchase the Fee Owner interest.

Finally, there is nothing here that is unjust. Kroger had the right to negotiate and purchase the Balkhouse Associates interest. Balkhouse Associates was not restricted in whom it could sell its interest in the Sites. These parties made an arms-length transaction. There is no evidence showing that Kroger received a discounted price at all, much less that it enriched Kroger at Malease's expense.

For these reasons, Malease's claim for unjust enrichment should be denied.

### C.    Malease's Counterclaim for Money Held in Escrow with the Court Should be Denied

Malease claims that it is entitled to rent for dates after April 1, 2003. However, Malease was required to relinquish its interest as Master Lessee on April 1, 2003, pursuant to the purchase options contained in the April 1983 Leases. Therefore, Malease is not entitled to any rents after that date. This claimed money is currently in escrow with the Court, and should be returned to Kroger at the conclusion of this case.

## IX.    Conclusion

Kroger states its prayer for judgment against the Defendant Malease for a declaration of parties' rights and obligations under the April Leases, including the following specific declarations:

    (a)    That Malease is in material breach of the April 1983 Leases,

    (b)    That Kroger has validly exercised its right to purchase the Sites pursuant to the Kroger Purchase Options, and

    (c)    That Malease is required to sell to Kroger the Sites;

For permanent injunctive relief requiring Defendant Malease to sell to Kroger the Sites;

For an award of compensatory damages in favor of Kroger in the amount of $670,392.94 with pre and post judgment interest compounding as of October 30, 2003 plus an additional

$95,770.42 per month after October 30, 2003 with pre and post judgment interest compounding

on each additional amount;

For an award of Kroger's costs and attorney fees;

For a denial of all of Malease's counterclaims; and

For any other relief in law or equity that the Court may deem just and proper.

Respectfully submitted,

Scott D. Phillips  (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:
Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2004, a copy of the foregoing was mailed regular

U.S. Mail to the following:

Gary R. Winters, Esq.
McCaslin, Imbus & McCaslin
900 Provident Bank Building
632 Vine Street
Cincinnati, OH 45202-2442

Robert W. Cinque, Esq.
Cinque & Cinque
845 3rd Avenue, Suite 1400
New York, NY 10022

CinLibrary/1368030.1