## AGREEMENT REGARDING ADDITIONAL FACILITY

### BY AND AMONG

### BALKHOUSE ASSOCIATES,

### MALESE FOODS CORP.,

### THE KROGER CO.,

### AND

### H.E. BUTT GROCERY COMPANY

Dated as of __November__ __1__ , 1999

## AGREEMENT REGARDING ADDITIONAL FACILITY

   AGREEMENT REGARDING ADDITIONAL FACILITY (the "Agreement"), dated as of ___November___ __1_, 1999, by and among BALKHOUSE ASSOCIATES, a Tennessee limited partnership having an address c/o Merrill Lynch & Co., World Financial Center, South Tower, 14th Floor, New York, NY 10080 (the "Partnership"), MALESE FOODS CORP., a Delaware corporation having an office at c/o Lawrence Kadish Real Estate, 135 Jericho Turnpike, Old Westbury, New York 11568 ("Master Lessee"), THE KROGER CO., an Ohio corporation having an address at 1014 Vine Street, Cincinnati, Ohio 45202 ("Lessee"), and H.E. BUTT GROCERY COMPANY, a Texas corporation having an address at P.O. Box 83995, San Antonio, Texas 78283-3955 ("Sublessee").

## W I T N E S S E T H:

   **WHEREAS**, Balkhouse Properties Corp. ("Balkhouse"), as lessor, and Lessee entered into that certain Lease dated as of April 1, 1983, as amended by (i) that certain Consent to Sublease, dated January 18, 1992 and (ii) that certain Consent to Conveyance Agreement (the "Conveyance Agreement") among the Partnership, Master Lessee, Lessee, Sublessee and Trustee (as defined below), dated as of August (undated), 1998 (collectively, the "Occupancy Lease"), covering certain real property (the "Leased Premises") located in the City of San Marcos, Hays County, Texas, as more particularly described in the Occupancy Lease;

   **WHEREAS**, as of June 1, 1983 (i) Balkhouse conveyed its fee interest in the Leased Premises to the Partnership, subject to the Occupancy Lease, and (ii) the Partnership entered into that certain lease dated as of June 1, 1983 between the Partnership, as lessor, and Balkhouse, as lessee, which lease covered, among other things, the Leased Premises (such Lease, as amended, the "Master Lease");

   **WHEREAS**, as of June 1, 1983 Balkhouse assigned to Master Lessee (i) its interest as lessor under the Occupancy Lease and (ii) its interest as lessee under the Master Lease;

   **WHEREAS**, the Partnership and Master Lessee entered into that certain Two Party Agreement dated as of June 1, 1983 (the "Two Party Agreement");

   **WHEREAS**, Lessee, as sublessor, and Sublessee, as sublessee, entered into that certain Sublease Agreement dated as of December 4, 1990 (such Sublease Agreement, as amended by the Conveyance Agreement, the "Sublease"), pursuant to which Lessee subleased the Leased Premises to Sublessee;

WHEREAS, the Leased Premises contains an existing warehouse facility, and Sublessee desires to erect and construct an additional warehouse facility and related site improvements on the Leased Premises, which additional warehouse facility and related site improvements are described on Exhibit A annexed hereto and made a part hereof and are hereinafter collectively referred to as the "Additional Warehouse Facility"; and

WHEREAS, Sublessee has requested that Lessee confirm Sublessee's right to construct the Additional Warehouse Facility (as defined below) pursuant to the Sublease, Lessee has requested Master Lessee's consent to the construction of the Additional Warehouse Facility, and Master Lessee has requested that the Partnership consent to Master Lessee's consent to the construction of the Additional Warehouse Facility.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the Partnership, Master Lessee, Lessee and Sublessee hereby agree as follows:

## 1.    CONSENT BY LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Lessee hereby confirms Sublessee's right to construct the Additional Warehouse Facility at the Leased Premises, subject to (i) Sublessee's obligations to comply with Article 16 of the Sublease and (ii) the terms and conditions set forth herein (the "Lessee Consent").

## 2.    CONSENT BY MASTER LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Master Lessee hereby consents to the construction by Sublessee of the Additional Warehouse Facility at the Leased Premises, subject to (i) Lessee's obligations to comply with Sections 10.1 and 10.3 of the Occupancy Lease (including, without limitation, Lessee's obligation to obtain Master Lessee's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Master Lessee Consent").

## 3.    CONSENT BY THE PARTNERSHIP TO MASTER LESSEE CONSENT

Pursuant to Paragraphs 4 and 6 of the Two Party Agreement, the Partnership hereby consents to Master Lessee granting the Master Lessee Consent, subject to (i) Master Lessee's obligation to comply with Section 10.1 of the Master Lease (including, without limitation, Master Lessee's obligation to obtain the Partnership's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Partnership's Consent"; the Lessee Consent, the Master Lessee Consent and the Partnership Consent are sometimes herein referred to collectively as the "Consents").

4.    **REPRESENTATIONS AND COVENANTS**

(a)    Sublessee Representations. Sublessee hereby represents, warrants and covenants that (i) the value of the Leased Premises will not be reduced, nor its value impaired, as a result of the construction and completion of the Additional Warehouse Facility, (ii) Sublessee shall pay in full the cost of construction of the Additional Warehouse Facility, (iii) Sublessee shall not enter into any loan secured by a lien encumbering the Leased Premises or any part thereof or any interest therein, and (iv) following approval of the plans and specifications for the Additional Warehouse Facility, as provided for in Paragraph 4(b) below, Sublessee may commence and, if commenced, shall diligently prosecute to completion the construction of the Additional Warehouse Facility.

(b)    Compliance with Occupancy Lease and Consents. Lessee and Sublessee hereby acknowledge and agree that the Additional Warehouse Facility constitutes an Additional Facility (as such term is defined in the Occupancy Lease) under Section 10.3 of the Occupancy Lease. Lessee and Sublessee covenant and agree that they will each comply with all of the requirements of Section 10.3 of the Occupancy Lease (including, without limitation, the requirements of Section 10.1 of the Occupancy Lease referenced thereby and relating to, *inter alia*, plan approval) in commencing and completing the construction of the Additional Warehouse Facility. Without limiting the foregoing, prior to Sublessee's commencing construction of the Additional Warehouse Facility (i) Sublessee shall submit plans and specifications for the Additional Warehouse Facility to Master Lessee and the Partnership, and (ii) Sublessee shall obtain the Partnership's consent to such plans and specifications, pursuant to Paragraphs 4 and 6 of the Two Party Agreement, and Master Lessee's consent to such plans and specifications, pursuant to Section 10.1 of the Occupancy Lease.

(c)    Reimbursement. Lessee and Sublessee each hereby acknowledge and agree that they will not seek or otherwise request that the Partnership and/or Master Lessee reimburse Lessee or Sublessee for all or any portion of the cost of the Additional Warehouse Facility, pursuant to Article 11 of the Occupancy Lease or otherwise and Lessee and Sublessee each hereby waive any and all such reimbursement rights and/or claims.

(d)    Construction Related Covenants. Prior to commencing construction of the Additional Warehouse Facility, Sublessee shall:

(i)    Comply with all Legal Requirements (as defined in the Occupancy Lease) in connection with commencing construction of the Additional Warehouse Facility, including but not limited to obtaining any and all requisite building permits and approvals, and deliver satisfactory evidence of such compliance to the Partnership, Master Lessee and Lessee;

(ii)    Comply with all Insurance Requirements (as defined in the Occupancy Lease) and deliver satisfactory evidence thereof to the Partnership, Master Lessee and Lessee in the form of certificates of insurance as required by the Occupancy Lease evidencing the

fact that the insurance required under Section 14.1 of the Occupancy Lease (including, without limitation, Section 14.1(f)) is in effect and conforms to the requirements of Section 14.2 of the Occupancy Lease and naming Lessee, the Partnership and Master Lessee as named insureds and as loss payees under such insurance.

(e)     Estoppel.  Lessee represents and warrants to the Partnership and Master Lessee that: (i) the Occupancy Lease is in full force and effect and has not been amended, modified or supplemented, except as set forth herein; (ii) there are no existing defaults by Lessee under the Occupancy Lease, nor is Lessee aware of any event or condition which, with the giving of notice or passage of time, would constitute a default under the Occupancy Lease or otherwise against Master Lessee in connection with the Lease or the Leased Premises; and (iii) the Leased Premises and Lessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises.  Sublessee represents and warrants to the Partnership, Master Lessee and Lessee that: (i) there are no existing defaults by Sublessee under the Sublease, nor is Sublessee aware of any event or condition which, with the giving of notice or the passage of time, would constitute a default under the Sublease or otherwise against the Lessee in connection with the Sublease or the Leased Premises and (ii) the Leased Premises and Sublessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises.

(f)     Additional Warehouse Facility Costs.  Sublessee shall pay all costs and expenses incurred in connection with the construction of the Additional Warehouse Facility and shall pay or discharge any and all liens arising therefrom or in connection therewith.

(g)     Costs of the Partnership and Trustee.  Sublessee hereby expressly covenants and agrees to pay and/or reimburse the Partnership, the Trustee and the Master Lessee, within thirty (30) days following the receipt of an invoice therefor, for any and all reasonable costs and expenses incurred by the Partnership, the Trustee and the Master Lessee in connection with this Agreement and the review and approval of plans and specifications for the Additional Warehouse Facility (including, without limitation, their respective reasonable attorneys' fees, architects' fees, engineers' fees and construction consultants' fees).

(h)     Costs of Construction.  Within ninety (90) days following substantial completion of the Additional Warehouse Facility, Sublessee shall deliver to the Partnership and Lessee a detailed and itemized written statement (the "Cost Statement") setting forth the Costs of Construction (as hereinafter defined) for the Additional Warehouse Facility.  The Cost Statement shall be certified by Sublessee.  Sublessee shall deliver to the Partnership and Lessee copies of such invoices, receipts and other documentation as may be reasonably requested from time to time in writing by the Partnership or Lessee or their respective authorized representatives in order for the Partnership and Lessee to confirm the information set forth on the Cost Statement. During the term of the Occupancy Lease, Sublessee shall keep and make available to the

Partnership books and records in reasonable detail evidencing the Costs of Construction for the Additional Warehouse Facility. Sublessee shall permit the Partnership and Lessee and their respective authorized representatives to examine, copy and audit such books and records at reasonable times following reasonable notice.

## 5.    MODIFICATION OF OCCUPANCY LEASE

The Occupancy Lease is hereby modified and supplemented, effective as of the date hereof, by adding the following at the end of Article XXXV:

"Notwithstanding anything to the contrary contained herein, and solely for purposes of this Article XXXV and Article XXXVI of this Lease if the Additional Warehouse Facility is constructed, the fair market value of the Leased Property shall be an amount equal to the greater of:

(i) the appraised value (as determined by Article XXXVI below) of the Leased Property, determined as if the Additional Warehouse Facility (as defined below) did not exist and had never been erected on the Land, and

(ii) the appraised value (as determined by Article XXXVI below) of the Leased Property, inclusive of the Additional Warehouse Facility (but excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), minus the Costs of Construction (as hereinafter defined) incurred by or on behalf of H.E. Butt Grocery Company in connection with constructing the Additional Warehouse Facility.

For purposes hereof, (i) the "Additional Warehouse Facility" shall mean the approximately 268,000 square foot new warehouse facility to be erected on the Land by H.E. Butt Grocery Company, as more particularly described on Exhibit A to that certain Agreement Regarding Additional Facility, dated as of __November __1_, 1999, among Balkhouse Associates, Malese Foods Corp., The Kroger Co. and H.E. Butt Grocery Company, together with all Fixtures and site improvements hereafter made a part of such new warehouse facility or constructed on the Land by H.E. Butt Grocery Company as described on said Exhibit A or in the plans and specifications for such new warehouse facility consented to by both Master Lessee (pursuant to Sections 10.1 and 10.3 of the Occupancy Lease) and the Partnership (pursuant to Section 10.1 of the Master Lease); provided, however, that for purposes hereof, the Additional Warehouse Facility shall not include any Fixtures that are hereafter made a part of, and any improvements that are hereafter made to, the existing Leased Improvements located on the Land as of the date of this Agreement, including, without limitation, the improvements titled "Building Renovation" described on said Exhibit A; and (ii) "Costs of Construction" shall mean all actual out-of-pocket costs and expenses incurred by H.E. Butt Grocery Company for materials, fixtures, contractors, subcontractors, labor, architects' and engineers' fees (but

10283-00012/740447.1D                          -5-

excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), in connection with the construction of the Additional Warehouse Facility."

## 6.  CONDITIONS TO CONSENTS

The Consents are expressly given subject to and on the condition that: (a) Trustee (as defined below), by executing this Agreement, shall have consented to the transactions contemplated herein; and (b) Lessee's and Sublessee's representations and warranties herein contained shall be true and correct. For purposes of this Agreement, "Trustee" shall mean SunTrust Bank, Nashville, National Association, formerly named Third National Bank in Nashville.

## 7.  MISCELLANEOUS

All capitalized terms which are used in this Agreement shall have the meanings ascribed to them in the Occupancy Lease, except as otherwise defined herein. This Agreement may be executed in counterparts, all of which taken together shall be deemed to be a fully executed Agreement, and such counterparts may be executed by facsimile signature, which shall bind the party so executing this Agreement. This Agreement contains the entire agreement of the parties hereto with respect to subject matter hereof, supersedes all oral statements and prior writings related thereto, and may not be amended, waived or canceled, except by an agreement in writing signed by the parties hereto or their respective successors in interest. Except as specifically amended hereby, the terms, covenants, provisions and conditions of the Occupancy Lease shall remain unmodified and continue in full force and effect and, as amended hereby, all of the terms, covenants, provisions and conditions of the Occupancy Lease are hereby ratified and confirmed in all respects. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors in interest and permitted assigns.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

By:    _____
       Michael A. Giobbe
       President

Master Lessee:
**MALESE FOODS CORP.**

By:    _____
       Name:
       Title:

Lessee:
**THE KROGER CO.**

By:    _____
       Name:
       Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:    _____
       Name:
       Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

        By: _____
                Michael A. Giobbe
                President

Master Lessee:
**MALESE FOODS CORP.**

By: _____
    Name: Lawrence Kadish
    Title: Vice Pres

Lessee:
**THE KROGER CO.**

By: _____
    Name:
    Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By: _____
    Name:
    Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:   ML Balkhouse Properties Corp., its general partner

By:   _____
        Michael A. Giobbe
        President

Master Lessee:
**MALESE FOODS CORP.**

By:   _____
        Name:
        Title:

Lessee:
**THE KROGER CO.**

By:   _____
        Name:  James E. Hodge
        Title:  Vice President

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:   _____
        Name:
        Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:   ML Balkhouse Properties Corp., its general partner

By:   _____
       Michael A. Giobbe
       President

Master Lessee:
**MALESE FOODS CORP.**

By:   _____
       Name:
       Title:

Lessee:
**THE KROGER CO.**

By:   _____
       Name:
       Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:   _____
       Name:  Todd A. Piland
       Title:  Senior Vice President

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

SunTrust Bank, Nashville, National Association
formerly known as Third National Bank in
Nashville hereby executes this Agreement for the
purposes of consenting to the terms and conditions
hereof

**SUNTRUST BANK, NASHVILLE, NATIONAL
ASSOCIATION** formerly named Third National
Bank in Nashville

By:     _____
        Name: Faye McCuistion
        Title: Assistant Vice President

# ACKNOWLEDGMENTS

STATE OF NEW YORK

                 ss:

COUNTY OF NEW YORK

Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates. Given under my hand and seal of office this *16* day of *December*, 1999.

                                    Notary Public

                                      ARLENE GORMAN
                            Notary Public, State of New York
                                No. 01GO5020996
                              Qualified in Nassau County
                            Commission Expires Dec. 6, 1999

STATE OF          _____                                     2001

                                  ss:

COUNTY OF       _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                                    _____

                                    Notary Public

## ACKNOWLEDGMENTS

STATE OF NEW YORK

ss:

COUNTY OF NEW YORK

Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates. Given under my hand and seal of office this __ day of _____, 1999.

_____
Notary Public

STATE OF       *Tennessee*

ss:

COUNTY OF       *Davidson*

Before me on this day personally appeared *Faye McQuiston*, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the *Assistant Vice President* of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this *2nd* day of *November*, 1999.

*Susan J. Cunningham*
Notary Public

My Commission Expires MAY 26, 2002

10283-00012/740447 9

STATE OF      *New York*

COUNTY OF      *NASSAU*                    ss:

Before me on this day personally appeared *Lawrence Knoish* known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the *Vice President* of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this *2* day of *December*, 1999.

**ROBERT W. NIELSEN**
**NOTARY PUBLIC STATE OF NEW YORK**
**NO. 01NI5073128**
**QUALIFIED IN SUFFOLK COUNTY**
**COMMISSION EXPIRES** *2-18-01*

_____
Notary Public

STATE OF      _____

COUNTY OF      _____            ss:

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this ___ day of _____, 1999.

_____
Notary Public

STATE OF      _____

COUNTY OF      _____            ss:

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed. and as the act of said corporation. Given under my hand and seal of office this ___ day of _____. 1999.

_____
Notary Public

10283-00012/740447.9

STATE OF  _____

ss:

COUNTY OF  _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

_____
Notary Public

STATE OF  ____Ohio_____

ss:

COUNTY OF  ____Hamilton_____

Before me on this day personally appeared __James E. Hodge__, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the __Vice President__ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this 3rd day of _December_, 1999.

_Deborah J. Campbell_
Notary Public

DEBORAH J. CAMPBELL
Notary Public, State of Ohio
My Commission Expires Sept. 7, 2004

STATE OF  _____

ss:

COUNTY OF  _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument. and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed. and as the act of said corporation. Given under my hand and seal of office this __ day of _____. 1999.

_____
Notary Public

10283-00012/740447 9

STATE OF     _____

                              ss:

COUNTY OF    _____

      Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                                  _____

                                  Notary Public

STATE OF     _____

                              ss:

COUNTY OF    _____

      Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                                  _____

                                  Notary Public

STATE OF     **TEXAS**

                              ss:

COUNTY OF    **BEXAR**

      Before me on this day personally appeared _Todd A. Piland_, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the **Senior Vice President** of H.E. Butt Grocery Company, a _corporation_, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this /5 day of _December_, 1999.

CYNTHIA M. MORAN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-05 2001

                            _____
                            Notary Public

10283-000·2 ¯40447.9

## AGREEMENT REGARDING ADDITIONAL FACILITY

### BY AND AMONG

### BALKHOUSE ASSOCIATES,

### MALESE FOODS CORP.,

### THE KROGER CO.,

### AND

### H.E. BUTT GROCERY COMPANY

Dated as of __November   1__, 1999

10283-00012/740447.10

## AGREEMENT REGARDING ADDITIONAL FACILITY

AGREEMENT REGARDING ADDITIONAL FACILITY (the "Agreement"), dated as of  November  1, 1999, by and among BALKHOUSE ASSOCIATES, a Tennessee limited partnership having an address c/o Merrill Lynch & Co., World Financial Center, South Tower, 14th Floor, New York, NY 10080 (the "Partnership"), MALESE FOODS CORP., a Delaware corporation having an office at c/o Lawrence Kadish Real Estate, 135 Jericho Turnpike, Old Westbury, New York 11568 ("Master Lessee"), THE KROGER CO., an Ohio corporation having an address at 1014 Vine Street, Cincinnati, Ohio 45202 ("Lessee"), and H.E. BUTT GROCERY COMPANY, a Texas corporation having an address at P.O. Box 83995, San Antonio, Texas 78283-3955 ("Sublessee").

## W I T N E S S E T H:

WHEREAS, Balkhouse Properties Corp. ("Balkhouse"), as lessor, and Lessee entered into that certain Lease dated as of April 1, 1983, as amended by (i) that certain Consent to Sublease, dated January 18, 1992 and (ii) that certain Consent to Conveyance Agreement (the "Conveyance Agreement") among the Partnership, Master Lessee, Lessee, Sublessee and Trustee (as defined below), dated as of August (undated), 1998 (collectively, the "Occupancy Lease"), covering certain real property (the "Leased Premises") located in the City of San Marcos, Hays County, Texas, as more particularly described in the Occupancy Lease;

WHEREAS, as of June 1, 1983 (i) Balkhouse conveyed its fee interest in the Leased Premises to the Partnership, subject to the Occupancy Lease, and (ii) the Partnership entered into that certain lease dated as of June 1, 1983 between the Partnership, as lessor, and Balkhouse, as lessee, which lease covered, among other things, the Leased Premises (such Lease, as amended, the "Master Lease");

WHEREAS, as of June 1, 1983 Balkhouse assigned to Master Lessee (i) its interest as lessor under the Occupancy Lease and (ii) its interest as lessee under the Master Lease;

WHEREAS, the Partnership and Master Lessee entered into that certain Two Party Agreement dated as of June 1, 1983 (the "Two Party Agreement");

WHEREAS, Lessee, as sublessor, and Sublessee, as sublessee, entered into that certain Sublease Agreement dated as of December 4, 1990 (such Sublease Agreement, as amended by the Conveyance Agreement, the "Sublease"), pursuant to which Lessee subleased the Leased Premises to Sublessee;

**WHEREAS**, the Leased Premises contains an existing warehouse facility, and Sublessee desires to erect and construct an additional warehouse facility and related site improvements on the Leased Premises, which additional warehouse facility and related site improvements are described on Exhibit A annexed hereto and made a part hereof and are hereinafter collectively referred to as the "Additional Warehouse Facility"; and

**WHEREAS**, Sublessee has requested that Lessee confirm Sublessee's right to construct the Additional Warehouse Facility (as defined below) pursuant to the Sublease, Lessee has requested Master Lessee's consent to the construction of the Additional Warehouse Facility, and Master Lessee has requested that the Partnership consent to Master Lessee's consent to the construction of the Additional Warehouse Facility.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, the Partnership, Master Lessee, Lessee and Sublessee hereby agree as follows:

## 1.    CONSENT BY LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Lessee hereby confirms Sublessee's right to construct the Additional Warehouse Facility at the Leased Premises, subject to (i) Sublessee's obligations to comply with Article 16 of the Sublease and (ii) the terms and conditions set forth herein (the "Lessee Consent").

## 2.    CONSENT BY MASTER LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Master Lessee hereby consents to the construction by Sublessee of the Additional Warehouse Facility at the Leased Premises, subject to (i) Lessee's obligations to comply with Sections 10.1 and 10.3 of the Occupancy Lease (including, without limitation, Lessee's obligation to obtain Master Lessee's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Master Lessee Consent").

## 3.    CONSENT BY THE PARTNERSHIP TO MASTER LESSEE CONSENT

Pursuant to Paragraphs 4 and 6 of the Two Party Agreement, the Partnership hereby consents to Master Lessee granting the Master Lessee Consent, subject to (i) Master Lessee's obligation to comply with Section 10.1 of the Master Lease (including, without limitation, Master Lessee's obligation to obtain the Partnership's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Partnership's Consent"; the Lessee Consent, the Master Lessee Consent and the Partnership Consent are sometimes herein referred to collectively as the "Consents").

## 4.  REPRESENTATIONS AND COVENANTS

(a)  <u>Sublessee Representations</u>. Sublessee hereby represents, warrants and covenants that (i) the value of the Leased Premises will not be reduced, nor its value impaired, as a result of the construction and completion of the Additional Warehouse Facility, (ii) Sublessee shall pay in full the cost of construction of the Additional Warehouse Facility, (iii) Sublessee shall not enter into any loan secured by a lien encumbering the Leased Premises or any part thereof or any interest therein, and (iv) following approval of the plans and specifications for the Additional Warehouse Facility, as provided for in Paragraph 4(b) below, Sublessee may commence and, if commenced, shall diligently prosecute to completion the construction of the Additional Warehouse Facility.

(b)  <u>Compliance with Occupancy Lease and Consents</u>. Lessee and Sublessee hereby acknowledge and agree that the Additional Warehouse Facility constitutes an Additional Facility (as such term is defined in the Occupancy Lease) under Section 10.3 of the Occupancy Lease. Lessee and Sublessee covenant and agree that they will each comply with all of the requirements of Section 10.3 of the Occupancy Lease (including, without limitation, the requirements of Section 10.1 of the Occupancy Lease referenced thereby and relating to, *inter alia*, plan approval) in commencing and completing the construction of the Additional Warehouse Facility. Without limiting the foregoing, prior to Sublessee's commencing construction of the Additional Warehouse Facility (i) Sublessee shall submit plans and specifications for the Additional Warehouse Facility to Master Lessee and the Partnership, and (ii) Sublessee shall obtain the Partnership's consent to such plans and specifications, pursuant to Paragraphs 4 and 6 of the Two Party Agreement, and Master Lessee's consent to such plans and specifications, pursuant to Section 10.1 of the Occupancy Lease.

(c)  <u>Reimbursement</u>. Lessee and Sublessee each hereby acknowledge and agree that they will not seek or otherwise request that the Partnership and/or Master Lessee reimburse Lessee or Sublessee for all or any portion of the cost of the Additional Warehouse Facility, pursuant to Article 11 of the Occupancy Lease or otherwise and Lessee and Sublessee each hereby waive any and all such reimbursement rights and/or claims.

(d)  <u>Construction Related Covenants</u>. Prior to commencing construction of the Additional Warehouse Facility, Sublessee shall:

(i)  Comply with all Legal Requirements (as defined in the Occupancy Lease) in connection with commencing construction of the Additional Warehouse Facility, including but not limited to obtaining any and all requisite building permits and approvals, and deliver satisfactory evidence of such compliance to the Partnership, Master Lessee and Lessee;

(ii)  Comply with all Insurance Requirements (as defined in the Occupancy Lease) and deliver satisfactory evidence thereof to the Partnership, Master Lessee and Lessee in the form of certificates of insurance as required by the Occupancy Lease evidencing the

fact that the insurance required under Section 14.1 of the Occupancy Lease (including, without limitation, Section 14.1(f)) is in effect and conforms to the requirements of Section 14.2 of the Occupancy Lease and naming Lessee, the Partnership and Master Lessee as named insureds and as loss payees under such insurance.

(e)    Estoppel. Lessee represents and warrants to the Partnership and Master Lessee that: (i) the Occupancy Lease is in full force and effect and has not been amended, modified or supplemented, except as set forth herein; (ii) there are no existing defaults by Lessee under the Occupancy Lease, nor is Lessee aware of any event or condition which, with the giving of notice or passage of time, would constitute a default under the Occupancy Lease or otherwise against Master Lessee in connection with the Lease or the Leased Premises; and (iii) the Leased Premises and Lessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises. Sublessee represents and warrants to the Partnership, Master Lessee and Lessee that: (i) there are no existing defaults by Sublessee under the Sublease, nor is Sublessee aware of any event or condition which, with the giving of notice or the passage of time, would constitute a default under the Sublease or otherwise against the Lessee in connection with the Sublease or the Leased Premises and (ii) the Leased Premises and Sublessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises.

(f)    Additional Warehouse Facility Costs. Sublessee shall pay all costs and expenses incurred in connection with the construction of the Additional Warehouse Facility and shall pay or discharge any and all liens arising therefrom or in connection therewith.

(g)    Costs of the Partnership and Trustee. Sublessee hereby expressly covenants and agrees to pay and/or reimburse the Partnership, the Trustee and the Master Lessee, within thirty (30) days following the receipt of an invoice therefor, for any and all reasonable costs and expenses incurred by the Partnership, the Trustee and the Master Lessee in connection with this Agreement and the review and approval of plans and specifications for the Additional Warehouse Facility (including, without limitation, their respective reasonable attorneys' fees, architects' fees, engineers' fees and construction consultants' fees).

(h)    Costs of Construction. Within ninety (90) days following substantial completion of the Additional Warehouse Facility, Sublessee shall deliver to the Partnership and Lessee a detailed and itemized written statement (the "Cost Statement") setting forth the Costs of Construction (as hereinafter defined) for the Additional Warehouse Facility. The Cost Statement shall be certified by Sublessee. Sublessee shall deliver to the Partnership and Lessee copies of such invoices, receipts and other documentation as may be reasonably requested from time to time in writing by the Partnership or Lessee or their respective authorized representatives in order for the Partnership and Lessee to confirm the information set forth on the Cost Statement. During the term of the Occupancy Lease, Sublessee shall keep and make available to the

Partnership books and records in reasonable detail evidencing the Costs of Construction for the Additional Warehouse Facility. Sublessee shall permit the Partnership and Lessee and their respective authorized representatives to examine, copy and audit such books and records at reasonable times following reasonable notice.

## 5.    MODIFICATION OF OCCUPANCY LEASE

The Occupancy Lease is hereby modified and supplemented, effective as of the date hereof, by adding the following at the end of Article XXXV:

"Notwithstanding anything to the contrary contained herein, and solely for purposes of this Article XXXV and Article XXXVI of this Lease if the Additional Warehouse Facility is constructed, the fair market value of the Leased Property shall be an amount equal to the greater of:

(i) the appraised value (as determined by Article XXXVI below) of the Leased Property, determined as if the Additional Warehouse Facility (as defined below) did not exist and had never been erected on the Land, and

(ii) the appraised value (as determined by Article XXXVI below) of the Leased Property, inclusive of the Additional Warehouse Facility (but excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), minus the Costs of Construction (as hereinafter defined) incurred by or on behalf of H.E. Butt Grocery Company in connection with constructing the Additional Warehouse Facility.

For purposes hereof, (i) the "Additional Warehouse Facility" shall mean the approximately 268,000 square foot new warehouse facility to be erected on the Land by H.E. Butt Grocery Company, as more particularly described on Exhibit A to that certain Agreement Regarding Additional Facility, dated as of __November__ 1, 1999, among Balkhouse Associates, Malese Foods Corp., The Kroger Co. and H.E. Butt Grocery Company, together with all Fixtures and site improvements hereafter made a part of such new warehouse facility or constructed on the Land by H.E. Butt Grocery Company as described on said Exhibit A or in the plans and specifications for such new warehouse facility consented to by both Master Lessee (pursuant to Sections 10.1 and 10.3 of the Occupancy Lease) and the Partnership (pursuant to Section 10.1 of the Master Lease); provided, however, that for purposes hereof, the Additional Warehouse Facility shall not include any Fixtures that are hereafter made a part of, and any improvements that are hereafter made to, the existing Leased Improvements located on the Land as of the date of this Agreement, including, without limitation, the improvements titled "Building Renovation" described on said Exhibit A; and (ii) "Costs of Construction" shall mean all actual out-of-pocket costs and expenses incurred by H.E. Butt Grocery Company for materials, fixtures, contractors, subcontractors, labor, architects' and engineers' fees (but

excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), in connection with the construction of the Additional Warehouse Facility."

## 6. CONDITIONS TO CONSENTS

The Consents are expressly given subject to and on the condition that: (a) Trustee (as defined below), by executing this Agreement, shall have consented to the transactions contemplated herein; and (b) Lessee's and Sublessee's representations and warranties herein contained shall be true and correct. For purposes of this Agreement, "Trustee" shall mean SunTrust Bank, Nashville, National Association, formerly named Third National Bank in Nashville.

## 7. MISCELLANEOUS

All capitalized terms which are used in this Agreement shall have the meanings ascribed to them in the Occupancy Lease, except as otherwise defined herein. This Agreement may be executed in counterparts, all of which taken together shall be deemed to be a fully executed Agreement, and such counterparts may be executed by facsimile signature, which shall bind the party so executing this Agreement. This Agreement contains the entire agreement of the parties hereto with respect to subject matter hereof, supersedes all oral statements and prior writings related thereto, and may not be amended, waived or canceled, except by an agreement in writing signed by the parties hereto or their respective successors in interest. Except as specifically amended hereby, the terms, covenants, provisions and conditions of the Occupancy Lease shall remain unmodified and continue in full force and effect and, as amended hereby, all of the terms, covenants, provisions and conditions of the Occupancy Lease are hereby ratified and confirmed in all respects. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors in interest and permitted assigns.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general
      partner

By:    _____
      Michael A. Giobbe
      President

Master Lessee:
**MALESE FOODS CORP.**

By:    _____
      Name:
      Title:

Lessee:
**THE KROGER CO.**

By:    _____
      Name:
      Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:    _____
      Name:
      Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

By:    _____
       Michael A. Giobbe
       President

Master Lessee:
**MALESE FOODS CORP.**

By:    _____
       Name: Lawrence Kadish
       Title: Vice Pres

Lessee:
**THE KROGER CO.**

By:    _____
       Name:
       Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:    _____
       Name:
       Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

By: _____

Michael A. Giobbe
President

Master Lessee:
**MALESE FOODS CORP.**

By: _____

Name:
Title:

Lessee:
**THE KROGER CO.**

By: _____

Name:    James E. Hodge
Title:    Vice President

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By: _____

Name:
Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:   ML Balkhouse Properties Corp., its general partner

By:   _____
       Michael A. Giobbe
       President

Master Lessee:
**MALESE FOODS CORP.**

By:   _____
       Name:
       Title:

Lessee:
**THE KROGER CO.**

By:   _____
       Name:
       Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:   _____
       Name:   Todd A. Piland
       Title:   Senior Vice President

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

SunTrust Bank, Nashville, National Association formerly known as Third National Bank in Nashville hereby executes this Agreement for the purposes of consenting to the terms and conditions hereof

**SUNTRUST BANK, NASHVILLE, NATIONAL ASSOCIATION** formerly named Third National Bank in Nashville

By:      _____

Name: Faye McClinston

Title: Assistant Vice President

# ACKNOWLEDGMENTS

**STATE OF NEW YORK**

ss:

**COUNTY OF NEW YORK**

Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates. Given under my hand and seal of office this 16 day of December, 1999.

_____
Notary Public

ARLENE GORMAN
Notary Public, State of New York
No. 01GO6020996
Qualified in Nassau County
Commission Expires Dec. 6, ~~1998~~ 2001

**STATE OF** _____

ss:

**COUNTY OF** _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this ___ day of _____, 1999.

_____
Notary Public

10283-00012/740447.9

## ACKNOWLEDGMENTS

STATE OF NEW YORK

           ss:

COUNTY OF NEW YORK

    Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates.  Given under my hand and seal of office this __ day of _____, 1999.

 

                                       _____

                                        Notary Public

STATE OF       *Tennessee*

                                ss:

COUNTY OF     *Davidson*

    Before me on this day personally appeared *Faye McQuiston*, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the *Assistant Vice President* of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation.  Given under my hand and seal of office this *2nd* day of *November*, 1999.

                                  *Susan J. Cunningham*
                                  Notary Public

My Commission Expires MAY 26, 2002

10283-00012/740447.9

STATE OF     _New York_

                                 ss:

COUNTY OF    _NASSAU_

Before me on this day personally appeared _Lawrence Knoish_ known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _Vice President_ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this _2_ day of _December_, 1999.

ROBERT W. NIELSEN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01NI5073128
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES _2-18-01_

                              Notary Public

STATE OF     _____

                                 ss:

COUNTY OF    _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                              Notary Public

STATE OF     _____

                                 ss:

COUNTY OF    _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____. 1999.

                              Notary Public

10283-00012/740447.9

STATE OF    _____

                                  **ss:**

COUNTY OF   _____

    Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this \_\_ day of _____, 1999.

                                        _____
                                        Notary Public

STATE OF       Ohio_____

                            **ss:**

COUNTY OF     Hamilton_____

    Before me on this day personally appeared \_\_James E. Hodge\_\_, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the Vice President\_\_ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this 3rd day of December, 1999.

                              *Deborah J. Campbell*
                              Notary Public

                                      DEBORAH J. CAMPBELL
                                    Notary Public, State of Ohio
STATE OF    _____            My Commission Expires Sept. 7, 2004

                            **ss:**

· COUNTY OF   _____

    Before me on this day personally appeared _____. known to me to be the person whose name is subscribed to the foregoing instrument. and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this \_\_ day of _____. 1999.

                                          _____
                                        Notary Public

10253-00012/740447 9

STATE OF _____

                                                    ss:

COUNTY OF _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                              _____
                              Notary Public


STATE OF _____

                                                    ss:

COUNTY OF _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                              _____
                              Notary Public


STATE OF    TEXAS

                                                    ss:

COUNTY OF    BEXAR

Before me on this day personally appeared _Todd A. Piland_, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _Senior Vice President_ of H.E. Butt Grocery Company, a _corporation_, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this/_9_ day of _December_ 1999.

CYNTHIA M. MORA
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-09-2001

                              _____
                              Notary Public

10283-0001 2 40447.9

## AGREEMENT REGARDING ADDITIONAL FACILITY

### BY AND AMONG

### BALKHOUSE ASSOCIATES,

### MALESE FOODS CORP.,

### THE KROGER CO.,

### AND

### H.E. BUTT GROCERY COMPANY

Dated as of ___November   1__, 1999

## AGREEMENT REGARDING ADDITIONAL FACILITY

AGREEMENT REGARDING ADDITIONAL FACILITY (the "Agreement"), dated as of November 1, 1999, by and among BALKHOUSE ASSOCIATES, a Tennessee limited partnership having an address c/o Merrill Lynch & Co., World Financial Center, South Tower, 14th Floor, New York, NY 10080 (the "Partnership"), MALESE FOODS CORP., a Delaware corporation having an office at c/o Lawrence Kadish Real Estate, 135 Jericho Turnpike, Old Westbury, New York 11568 ("Master Lessee"), THE KROGER CO., an Ohio corporation having an address at 1014 Vine Street, Cincinnati, Ohio 45202 ("Lessee"), and H.E. BUTT GROCERY COMPANY, a Texas corporation having an address at P.O. Box 83995, San Antonio, Texas 78283-3955 ("Sublessee").

## WITNESSETH:

WHEREAS, Balkhouse Properties Corp. ("Balkhouse"), as lessor, and Lessee entered into that certain Lease dated as of April 1, 1983, as amended by (i) that certain Consent to Sublease, dated January 18, 1992 and (ii) that certain Consent to Conveyance Agreement (the "Conveyance Agreement") among the Partnership, Master Lessee, Lessee, Sublessee and Trustee (as defined below), dated as of August (undated), 1998 (collectively, the "Occupancy Lease"), covering certain real property (the "Leased Premises") located in the City of San Marcos, Hays County, Texas, as more particularly described in the Occupancy Lease;

WHEREAS, as of June 1, 1983 (i) Balkhouse conveyed its fee interest in the Leased Premises to the Partnership, subject to the Occupancy Lease, and (ii) the Partnership entered into that certain lease dated as of June 1, 1983 between the Partnership, as lessor, and Balkhouse, as lessee, which lease covered, among other things, the Leased Premises (such Lease, as amended, the "Master Lease");

WHEREAS, as of June 1, 1983 Balkhouse assigned to Master Lessee (i) its interest as lessor under the Occupancy Lease and (ii) its interest as lessee under the Master Lease;

WHEREAS, the Partnership and Master Lessee entered into that certain Two Party Agreement dated as of June 1, 1983 (the "Two Party Agreement");

WHEREAS, Lessee, as sublessor, and Sublessee, as sublessee, entered into that certain Sublease Agreement dated as of December 4, 1990 (such Sublease Agreement, as amended by the Conveyance Agreement, the "Sublease"), pursuant to which Lessee subleased the Leased Premises to Sublessee;

**WHEREAS,** the Leased Premises contains an existing warehouse facility, and Sublessee desires to erect and construct an additional warehouse facility and related site improvements on the Leased Premises, which additional warehouse facility and related site improvements are described on Exhibit A annexed hereto and made a part hereof and are hereinafter collectively referred to as the "Additional Warehouse Facility"; and

**WHEREAS,** Sublessee has requested that Lessee confirm Sublessee's right to construct the Additional Warehouse Facility (as defined below) pursuant to the Sublease, Lessee has requested Master Lessee's consent to the construction of the Additional Warehouse Facility, and Master Lessee has requested that the Partnership consent to Master Lessee's consent to the construction of the Additional Warehouse Facility.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, the Partnership, Master Lessee, Lessee and Sublessee hereby agree as follows:

## 1.    CONSENT BY LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Lessee hereby confirms Sublessee's right to construct the Additional Warehouse Facility at the Leased Premises, subject to (i) Sublessee's obligations to comply with Article 16 of the Sublease and (ii) the terms and conditions set forth herein (the "Lessee Consent").

## 2.    CONSENT BY MASTER LESSEE TO CONSTRUCTION OF ADDITIONAL FACILITY

Master Lessee hereby consents to the construction by Sublessee of the Additional Warehouse Facility at the Leased Premises, subject to (i) Lessee's obligations to comply with Sections 10.1 and 10.3 of the Occupancy Lease (including, without limitation, Lessee's obligation to obtain Master Lessee's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Master Lessee Consent").

## 3.    CONSENT BY THE PARTNERSHIP TO MASTER LESSEE CONSENT

Pursuant to Paragraphs 4 and 6 of the Two Party Agreement, the Partnership hereby consents to Master Lessee granting the Master Lessee Consent, subject to (i) Master Lessee's obligation to comply with Section 10.1 of the Master Lease (including, without limitation, Master Lessee's obligation to obtain the Partnership's consent to the plans and specifications for such Additional Warehouse Facility) and (ii) the terms and conditions set forth herein (the "Partnership's Consent"; the Lessee Consent, the Master Lessee Consent and the Partnership Consent are sometimes herein referred to collectively as the "Consents").

## 4.    REPRESENTATIONS AND COVENANTS

(a)    <u>Sublessee Representations</u>. Sublessee hereby represents, warrants and covenants that (i) the value of the Leased Premises will not be reduced, nor its value impaired, as a result of the construction and completion of the Additional Warehouse Facility, (ii) Sublessee shall pay in full the cost of construction of the Additional Warehouse Facility, (iii) Sublessee shall not enter into any loan secured by a lien encumbering the Leased Premises or any part thereof or any interest therein, and (iv) following approval of the plans and specifications for the Additional Warehouse Facility, as provided for in Paragraph 4(b) below, Sublessee may commence and, if commenced, shall diligently prosecute to completion the construction of the Additional Warehouse Facility.

(b)    <u>Compliance with Occupancy Lease and Consents</u>. Lessee and Sublessee hereby acknowledge and agree that the Additional Warehouse Facility constitutes an Additional Facility (as such term is defined in the Occupancy Lease) under Section 10.3 of the Occupancy Lease. Lessee and Sublessee covenant and agree that they will each comply with all of the requirements of Section 10.3 of the Occupancy Lease (including, without limitation, the requirements of Section 10.1 of the Occupancy Lease referenced thereby and relating to, *inter alia*, plan approval) in commencing and completing the construction of the Additional Warehouse Facility. Without limiting the foregoing, prior to Sublessee's commencing construction of the Additional Warehouse Facility (i) Sublessee shall submit plans and specifications for the Additional Warehouse Facility to Master Lessee and the Partnership, and (ii) Sublessee shall obtain the Partnership's consent to such plans and specifications, pursuant to Paragraphs 4 and 6 of the Two Party Agreement, and Master Lessee's consent to such plans and specifications, pursuant to Section 10.1 of the Occupancy Lease.

(c)    <u>Reimbursement</u>. Lessee and Sublessee each hereby acknowledge and agree that they will not seek or otherwise request that the Partnership and/or Master Lessee reimburse Lessee or Sublessee for all or any portion of the cost of the Additional Warehouse Facility, pursuant to Article 11 of the Occupancy Lease or otherwise and Lessee and Sublessee each hereby waive any and all such reimbursement rights and/or claims.

(d)    <u>Construction Related Covenants</u>. Prior to commencing construction of the Additional Warehouse Facility, Sublessee shall:

(i)    Comply with all Legal Requirements (as defined in the Occupancy Lease) in connection with commencing construction of the Additional Warehouse Facility, including but not limited to obtaining any and all requisite building permits and approvals, and deliver satisfactory evidence of such compliance to the Partnership, Master Lessee and Lessee;

(ii)    Comply with all Insurance Requirements (as defined in the Occupancy Lease) and deliver satisfactory evidence thereof to the Partnership, Master Lessee and Lessee in the form of certificates of insurance as required by the Occupancy Lease evidencing the

fact that the insurance required under Section 14.1 of the Occupancy Lease (including, without limitation, Section 14.1(f)) is in effect and conforms to the requirements of Section 14.2 of the Occupancy Lease and naming Lessee, the Partnership and Master Lessee as named insureds and as loss payees under such insurance.

(e)     Estoppel.  Lessee represents and warrants to the Partnership and Master Lessee that: (i) the Occupancy Lease is in full force and effect and has not been amended, modified or supplemented, except as set forth herein; (ii) there are no existing defaults by Lessee under the Occupancy Lease, nor is Lessee aware of any event or condition which, with the giving of notice or passage of time, would constitute a default under the Occupancy Lease or otherwise against Master Lessee in connection with the Lease or the Leased Premises; and (iii) the Leased Premises and Lessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises.  Sublessee represents and warrants to the Partnership, Master Lessee and Lessee that: (i) there are no existing defaults by Sublessee under the Sublease, nor is Sublessee aware of any event or condition which, with the giving of notice or the passage of time, would constitute a default under the Sublease or otherwise against the Lessee in connection with the Sublease or the Leased Premises and (ii) the Leased Premises and Sublessee's use thereof and operations thereat comply with all Legal Requirements (including those relating to the environment) and Insurance Requirements in respect of the use, operation, maintenance, repair and restoration of the Leased Premises.

(f)     Additional Warehouse Facility Costs.  Sublessee shall pay all costs and expenses incurred in connection with the construction of the Additional Warehouse Facility and shall pay or discharge any and all liens arising therefrom or in connection therewith.

(g)     Costs of the Partnership and Trustee.  Sublessee hereby expressly covenants and agrees to pay and/or reimburse the Partnership, the Trustee and the Master Lessee, within thirty (30) days following the receipt of an invoice therefor, for any and all reasonable costs and expenses incurred by the Partnership, the Trustee and the Master Lessee in connection with this Agreement and the review and approval of plans and specifications for the Additional Warehouse Facility (including, without limitation, their respective reasonable attorneys' fees, architects' fees, engineers' fees and construction consultants' fees).

(h)     Costs of Construction.  Within ninety (90) days following substantial completion of the Additional Warehouse Facility, Sublessee shall deliver to the Partnership and Lessee a detailed and itemized written statement (the "Cost Statement") setting forth the Costs of Construction (as hereinafter defined) for the Additional Warehouse Facility.  The Cost Statement shall be certified by Sublessee.  Sublessee shall deliver to the Partnership and Lessee copies of such invoices, receipts and other documentation as may be reasonably requested from time to time in writing by the Partnership or Lessee or their respective authorized representatives in order for the Partnership and Lessee to confirm the information set forth on the Cost Statement. During the term of the Occupancy Lease, Sublessee shall keep and make available to the

Partnership books and records in reasonable detail evidencing the Costs of Construction for the Additional Warehouse Facility. Sublessee shall permit the Partnership and Lessee and their respective authorized representatives to examine, copy and audit such books and records at reasonable times following reasonable notice.

## 5.    MODIFICATION OF OCCUPANCY LEASE

The Occupancy Lease is hereby modified and supplemented, effective as of the date hereof, by adding the following at the end of Article XXXV:

"Notwithstanding anything to the contrary contained herein, and solely for purposes of this Article XXXV and Article XXXVI of this Lease if the Additional Warehouse Facility is constructed, the fair market value of the Leased Property shall be an amount equal to the greater of:

(i) the appraised value (as determined by Article XXXVI below) of the Leased Property, determined as if the Additional Warehouse Facility (as defined below) did not exist and had never been erected on the Land, and

(ii) the appraised value (as determined by Article XXXVI below) of the Leased Property, inclusive of the Additional Warehouse Facility (but excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), minus the Costs of Construction (as hereinafter defined) incurred by or on behalf of H.E. Butt Grocery Company in connection with constructing the Additional Warehouse Facility.

For purposes hereof, (i) the "Additional Warehouse Facility" shall mean the approximately 268,000 square foot new warehouse facility to be erected on the Land by H.E. Butt Grocery Company, as more particularly described on Exhibit A to that certain Agreement Regarding Additional Facility, dated as of __November__ __1__, 1999, among . Balkhouse Associates, Malese Foods Corp., The Kroger Co. and H.E. Butt Grocery Company, together with all Fixtures and site improvements hereafter made a part of such new warehouse facility or constructed on the Land by H.E. Butt Grocery Company as described on said Exhibit A or in the plans and specifications for such new warehouse facility consented to by both Master Lessee (pursuant to Sections 10.1 and 10.3 of the Occupancy Lease) and the Partnership (pursuant to Section 10.1 of the Master Lease); provided, however, that for purposes hereof, the Additional Warehouse Facility shall not include any Fixtures that are hereafter made a part of, and any improvements that are hereafter made to, the existing Leased Improvements located on the Land as of the date of this Agreement, including, without limitation, the improvements titled "Building Renovation" described on said Exhibit A; and (ii) "Costs of Construction" shall mean all actual out-of-pocket costs and expenses incurred by H.E. Butt Grocery Company for materials, fixtures, contractors, subcontractors, labor, architects' and engineers' fees (but

excluding the value of any Lessee's Equipment, as defined in Section 6.2 of this Lease), in connection with the construction of the Additional Warehouse Facility."

## 6.    CONDITIONS TO CONSENTS

The Consents are expressly given subject to and on the condition that: (a) Trustee (as defined below), by executing this Agreement, shall have consented to the transactions contemplated herein; and (b) Lessee's and Sublessee's representations and warranties herein contained shall be true and correct. For purposes of this Agreement, "Trustee" shall mean SunTrust Bank, Nashville, National Association, formerly named Third National Bank in Nashville.

## 7.    MISCELLANEOUS

All capitalized terms which are used in this Agreement shall have the meanings ascribed to them in the Occupancy Lease, except as otherwise defined herein. This Agreement may be executed in counterparts, all of which taken together shall be deemed to be a fully executed Agreement, and such counterparts may be executed by facsimile signature, which shall bind the party so executing this Agreement. This Agreement contains the entire agreement of the parties hereto with respect to subject matter hereof, supersedes all oral statements and prior writings related thereto, and may not be amended, waived or canceled, except by an agreement in writing signed by the parties hereto or their respective successors in interest. Except as specifically amended hereby, the terms, covenants, provisions and conditions of the Occupancy Lease shall remain unmodified and continue in full force and effect and, as amended hereby, all of the terms, covenants, provisions and conditions of the Occupancy Lease are hereby ratified and confirmed in all respects. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors in interest and permitted assigns.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

By:    _____
       Michael A. Giobbe
       President

Master Lessee:
**MALESE FOODS CORP.**

By:    _____
       Name:
       Title:

Lessee:
**THE KROGER CO.**

By:    _____
       Name:
       Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:    _____
       Name:
       Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:     ML Balkhouse Properties Corp., its general partner

        By:     _____
                Michael A. Giobbe
                President

Master Lessee:
**MALESE FOODS CORP.**

By:     _____
        Name: _Lawrence Kadish_
        Title: _Vice Pres_

Lessee:
**THE KROGER CO.**

By:     _____
        Name:
        Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By:     _____
        Name:
        Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:    ML Balkhouse Properties Corp., its general partner

       By: _____
             Michael A. Giobbe
             President

Master Lessee:
**MALESE FOODS CORP.**

By: _____
    Name:
    Title:

Lessee:
**THE KROGER CO.**

By: _____
    Name:  James E. Hodge
    Title:   Vice President

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By: _____
    Name:
    Title:

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Partnership, Master Lessee, Lessee and Sublessee have executed this Agreement on the date set forth above.

The Partnership:
**BALKHOUSE ASSOCIATES**

By:   ML Balkhouse Properties Corp., its general partner

        By: _____
            Michael A. Giobbe
            President

Master Lessee:
**MALESE FOODS CORP.**

By: _____
    Name:
    Title:

Lessee:
**THE KROGER CO.**

By: _____
    Name:
    Title:

Sublessee:
**H.E. BUTT GROCERY COMPANY**

By: _____
    Name:  Todd A. Piland
    Title:   Senior Vice President

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

SunTrust Bank, Nashville, National Association formerly known as Third National Bank in Nashville hereby executes this Agreement for the purposes of consenting to the terms and conditions hereof

**SUNTRUST BANK, NASHVILLE, NATIONAL ASSOCIATION** formerly named Third National Bank in Nashville

By:  _____

Name: Faye McWhiston

Title: Assistant Vice President

## ACKNOWLEDGMENTS

STATE OF NEW YORK

               ss:

COUNTY OF NEW YORK

    Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates. Given under my hand and seal of office this _16_ day of _December_, 1999.

                                     Notary Public

                                       ARLENE GORMAN
                          Notary Public, State of New York
                          No. 01GO5020986
                          Qualified in Nassau County
                          Commission Expires Dec. 6, ~~1998~~
                                         2001

STATE OF     _____

                      ss:

COUNTY OF     _____

    Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                                  _____

                                  Notary Public

10283-00012/740447.9

# ACKNOWLEDGMENTS

STATE OF NEW YORK

ss:

COUNTY OF NEW YORK

Before me on this day personally appeared Michael Giobbe, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the president of ML Balkhouse Properties Corp., the general partner of Balkhouse Associates, a limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation, as the general partner of Balkhouse Associates. Given under my hand and seal of office this ___ day of _____, 1999.

_____
Notary Public

STATE OF    _Tennessee_

COUNTY OF    _Davidson_    ss:

Before me on this day personally appeared _Faye McQuiston_, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _Assistant Vice President_ of SunTrust Bank, Nashville, N.A., and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this 2nd day of _November_, 1999.

_Susan L. Cunningham_
Notary Public

My Commission Expires MAY 26, 2002

10283-00012/740447.9

STATE OF _New York_

COUNTY OF _NASSAU_                          ss:

Before me on this day personally appeared _Lawrence Knoish_ known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _Vice President_ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this _2_ day of _December_, 1999.

ROBERT W. NIELSEN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01NI5073128
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES _2-18-01_

_____
Notary Public

STATE OF _____

COUNTY OF _____          ss:

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this ___ day of _____, 1999.

_____
Notary Public

STATE OF _____

COUNTY OF _____          ss:

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this ___ day of _____, 1999.

_____
Notary Public

10283-00012/740447.9

STATE OF    _____

                                      SS:

COUNTY OF    _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this \_\_ day of _____, 1999.

                                  _____

                                  Notary Public

STATE OF    <u>Ohio</u>

                               SS:

COUNTY OF    <u>Hamilton</u>

Before me on this day personally appeared <u>James E. Hodge</u>, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the <u>Vice President</u> of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this 3rd day of <u>December</u>, 1999.

                               *Deborah J. Campbell*

                               Notary Public

                                 DEBORAH J. CAMPBELL
                                 Notary Public, State of Ohio
                                 My Commission Expires Sept. 7, 2004

STATE OF    _____

                               SS:

COUNTY OF    _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of H.E. Butt Grocery Company, a _____, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this \_\_ day of _____. 1999.

                                  _____

                                  Notary Public

Oct-21-2003  11:43am  From-   T-456  P.033/033  F-978

STATE OF _____

                                                    ss:

COUNTY OF _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of Malese Foods Corp., a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                              _____
                              Notary Public


STATE OF _____

                                                    ss:

COUNTY OF _____

Before me on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ of The Kroger Company, a corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this __ day of _____, 1999.

                              _____
                              Notary Public


STATE OF ___TEXAS___

                                                    ss:

COUNTY OF ___BEXAR___

Before me on this day personally appeared ___Todd A. Piland___, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the __Senior Vice President__ of H.E. Butt Grocery Company, a __corporation__, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation. Given under my hand and seal of office this _4_ day of _December_, 1999.

CYNTHIA M. McRA:
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-03 2001

                              _____
                              Notary Public

10283-000:2 ~40447.9