UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE KROGER CO., | : | Case No.: C-1-02-439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | Perelman, M.J. |
| | : | |
| v. | : | **THE KROGER CO.'S REPLY** |
| | : | **MEMORANDUM IN SUPPORT OF ITS** |
| | : | **MOTION FOR SUMMARY** |
| MALEASE FOODS CORP., | : | **JUDGMENT ON ALL CLAIMS** |
| | : | |
| Defendant. | : | |

**I.   Whether Kroger Properly Executed Its Purchase Options Is A Question of Contract Interpretation, Ripe For This Court On Kroger's Motion For Summary Judgment**

The parties agree that the main operative set of contracts is three leases, all dated April 1, 1983. Kroger's Motion for Summary Judgment, Exhibit A. The parties agree that the issue before this Court is the interpretation of contract language at page 50 of the April 1983 Leases regarding the Purchase Options that Kroger retained in order to permit Kroger to acquire unencumbered title to the properties upon proper notice to the Lessor. Kroger's Motion for Summary Judgment, Exhibit A at p. 50. This language states:

> 35.   <u>Lessee's Purchase Option</u>.  Provided no Event of Default has occurred which has not been waived on or prior to April 1, 2003, or the date of expiration of any renewal term hereof for which Lessee has exercised its renewal option, as the case may be, and provided further, that this Lease is in full force and effect on such date, on the day following the expiration date of the Fixed Term or of any renewal term of this Lease for which Lessee has exercised its option, **Lessee may, at its option, upon at least three hundred sixty (360) days' prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI**. Any such purchase shall be completed in the manner provided in Article XIX.

[Emphasis added]. Kroger's Motion for Summary Judgment, Exhibit A at p. 50.

There is no dispute that the Lessor was divided into two interests—the Master Lease Interest, owned by Malease, and the Fee Interest, owned by Balkhouse Associates. There is no dispute that Kroger, the Lessee, provided proper notice to the Lessor. At the time Kroger provided its timely notice, Kroger owned the Fee Interest and Malease owned the Master Lease interest. Kroger notified Malease at least 360 days prior to April 1, 2003 that it intended to exercise the options and acquire the properties.

The only dispute is the effect of Two-Party Agreements, through which the rights and responsibilities were divided between the Fee Interest and the Master Lease Interest with respect to the Kroger Purchase Options. Kroger's Motion for Summary Judgment, Exhibit H at p. 9-11.

Under the Two-Party Agreements, the owner of the Master Lease Interest and the owner of the Fee Interest are obligated as follows:

> 3. If Purchase Option Exercised. **If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease,** Partnership[1] shall be obligated to sell and convey Partnership's interest in the Premises to Occupancy Tenant simultaneously with the sale of the Master Lessee's Interest in the Premises to Occupancy Tenant by the Master Lessee. Partnership and **Master Lessee shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease**. Partnership's Interest and Master Lessee's Interest in the Premises shall be sold and conveyed in accordance with Article XIX of the Occupancy Lease, subject however, to compliance with the following:
> * * * [the rest discusses the determination and pay out of the purchase price].

[Emphasis added]. Kroger's Motion for Summary Judgment, Exhibit H at p. 9-10.

There is no dispute that Kroger acquired the Fee Owner Interest to each of the Sites from Balkhouse Associates and acquired by assignment all of Balkhouse Associates' rights under the Two-Party Agreements. Kroger's Motion for Summary Judgment, Exhibit I.

This set of transactions placed Kroger into the position as the Fee Interest Owner, Malease as the Master Lease Interest Owner and Kroger as the Lessee or Occupying Tenant for

---

[1] "Partnership" was, at the time of the Two-Party Agreement, Balkhouse Associates, the owner of the Fee Interest.

2

all three Sites. There is no disputing that at the time Kroger attempted to exercise its purchase option, Kroger owned the Fee Owner Interest.

Unfortunately, Mr. Lawrence Kadish, the owner of Malease, has attempted to add a lengthy amount of parol evidence, hearsay and opinion testimony by way of affidavit to cast a cloud over these contract provisions.[2] But there is no claim by anyone that these provisions are ambiguous. Therefore, parol evidence is improper. *See, e.g., American Anodco, Inc. v. Reynolds Metal Co.*, 743 F.2d 417, 422 (6th Cir. 1984).

There is no claim that Mr. Kadish is an expert witness—he was never presented as an expert and never produced a report. Therefore, it is a violation of this Court's local rules and Rule 26 to permit Mr. Kadish to opine on the import or intent of these documents.

The vast bulk of Mr. Kadish's affidavit either repeats the undisputed facts stated above—or tries to color them improperly with parol evidence, hearsay and opinions. The bottom line is—the only thing that matters is the court's interpretation of the Purchase Options and the clause in the Two-Party Agreement addressing the Purchase Options. This is a question of pure law for the Court. Even Malease's expert Mr. Howard admits "It's a question of contract interpretation and the law." Kroger's Motion for Summary Judgment, Exhibit C at p.35:3-4.

Thus, we have a pure question of law—contract interpretation, under a set of undisputed facts. Whether Kroger properly executed its Purchase Options is a question of pure contract

---

[2] In its Memorandum to the Court, Malease embarks on a five-page diatribe about alleged conduct by Kroger and Jim Price—based on two innocuous letters—and then supposed conduct by Kroger and Jim Price during discovery and during depositions. These allegations are not relevant to the claims or defenses in this case. Kroger relied on Mr. Price to approach Malease to purchase the Master Lessee interests before the April 1, 2003 date set by the Purchase Options. Mr. Kadish was well aware that Mr. Price was approaching him on behalf of Kroger in September 2001. Kroger's Motion for Summary Judgment, Exhibit G at p.94-99. Malease rebuffed Kroger's attempt to buy the Master Lessee interest early. Kroger's Motion for Summary Judgment, Exhibit G at p. 99. Therefore, Kroger was forced to wait until February 2003, when it provided proper notice that on April 1, 2003, it would exercise its Purchase Options. Even though Kroger properly gave notice and met the requirements of the Purchase Options, Malease wrongly refused to relinquish its interests. This malfeasance caused Kroger to bring this action.

interpretation, ripe for this Court to decide on Kroger's motion for summary judgment. The answer to this question is dispositive of the entire action.

**II.     Kroger's Purchase Options Were Valid**

Kroger and Malease differ sharply over the interpretation of these two contract provisions, given that Kroger is the Fee Owner, Malease is the Master Lessee and Kroger is the Occupying Tenant for all three Sites.

Malease argues that "Kroger's option exercise had to occur simultaneously with its acquisition of the Balkhouse Partnership's interest in the premises as well as that of the Master Lessee." Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at 3. Malease offers no evidence that Kroger's option could only be exercised "simultaneously with its acquisition of the Balkhouse Partnership's interest."

The plain language of the two operative documents clearly makes no such limitation on Kroger's purchase of Balkhouse's Fee Interest. The language of the Purchase Options does not limit in any way Kroger's acquisition of Balkhouse's Fee Interest outside of the option. It states: "Lessee may, at its option, upon at least three hundred sixty (360) days' prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI." Here, Lessee is Kroger, and Lessor is split between Malease as Master Lessee and Kroger as Fee Interest. There is no dispute that Kroger provided at least 360-days prior notice to Malease as Master Lessee.

And the language of the two-party agreement does not limit in any way Balkhouse's ability to sell its Fee Interest to Kroger outside of the option. What Malease fails to realize, is that here, the Fee Interest Owner is no longer Balkhouse (or "Partnership"). Balkhouse sold its

Fee Interest to Kroger and assigned its Fee Interest Owner's rights under the Two-Party Agreement to Kroger. So "Partnership" at the time that Kroger (as Lessee), exercised its Purchase Options, is Kroger as Fee Interest Owner.

The Two-Party Agreement states: "If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease, Partnership shall be obligated to sell and convey Partnership's interest in the Premises to Occupancy Tenant simultaneously with the sale of the Master Lessee's Interest in the Premises to Occupancy Tenant by the Master Lessee." Thus, Kroger as Fee Interest Owner, now standing in the shoes of "Partnership," is obligated to convey the Fee Interests simultaneously with Malease's conveyance of the Master Lease Interests to Kroger as Occupying Tenant/Lessee.

These interests are separate and distinct. Malease admits this—acknowledging as it must, that there is no merger of title between Kroger as holder of the Fee Interests, and Kroger as holder of the Lessee Interests and the Purchase Options. Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at p.11.

Put into this legal box, Malease argues that Kroger exercised the Purchase Option twice. Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at 11. This is clearly not the case, since Kroger purchased the Balkhouse Fee Interests outside of the Purchase Options. Exhibit I to Kroger's Motion for Summary Judgment. Malease states that "the option could only be exercised once—simultaneously against the entirety of the interests of both Malease and Balkhouse." Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at p.11.

This is exactly what Kroger did. Balkhouse's interest is the Fee Interests. Kroger, as owner of the Fee Interests, which, as we know because there is no merger of title, is separate

from Kroger as owner of the the Lessee Interests. Kroger, as owner of the Lessee Interests, has exercised its Purchase Options once—simultaneously against the entirety of the interests of both Malease's Master Lessee Interests and the Fee Interests that Balkhouse conveyed to Kroger outside of the Purchase Options.

Malease then argues that Kroger's purchase of the Balkhouse Fee Interests outside of the Purchase Option somehow "extinguished" the Purchase Options. But Malease cites no law or contract term that supports this assertion. Malease merely cites to Lawrence Kadish's self-serving parol evidence statements about what "he meant" and what "he thought" when the Two-Party Agreement was executed.

But there is no ambiguity here, and therefore, parol evidence is improper. Malease's mistake is its belief that Balkhouse could not alienate its interests outside of the Purchase Option. No contract provision prevented that. Malease's other mistake is its belief that Kroger could not own two separate interests, where there is no merger of title, and perform its obligations for each interest separately. No contract provision prevented that either.

Thus, there is no question that Kroger's Purchase Options were valid after Kroger purchased the Fee Interests from Balkhouse.

**III.     Kroger Validly Exercised Its Purchase Options**

There has been no dispute by Malease that Kroger validly exercised its Purchase Options. The only contention that Malease makes is that the Purchase Options were invalidated when Kroger purchased the Fee Interests from Balkhouse.

By written notice dated February 18, 2002, Kroger, notified Malease that it was exercising all of the Kroger Purchase Options. Kroger's Motion for Summary Judgment, Exhibit

B. This is more than 360 days prior to the April 1, 2003 Purchase Option closing, per the terms of the April 1983 Leases. Kroger's Motion for Summary Judgment, Exhibit A at p. 50.

Because Kroger owned the Fee Interest formerly held by Balkhouse Associates under the Two-Party Agreements, Kroger was entitled to the difference between the purchase price properly payable under the April 1983 Leases and the liquidated amount established under the terms of Section 3(b) of the Two-Party Agreements. Kroger's Motion for Summary Judgment, Exhibit B.

**IV.    Malease Refusal to Perform is a Breach of the Contracts' Express Terms**

There is no dispute that Malease refused to execute or deliver a surrender of the leases. Exhibit L to Kroger's Motion for Summary Judgment; Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at p.6. This is a direct breach of Malease's obligations under the April 1983 Leases and the Two-Party Agreement. Kroger's Motion for Summary, Exhibits A, H.

**V.     Damages Are Proper**

Malease alleges that Kroger's damages "proceed from the entirely unsupported hearsay report of Jonathan Libbert, C.P.A." Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at p.17. Of course, Mr. Libbert provided a timely expert report to Malease and explains his conclusions therein. Kroger's Motion for Summary Judgment, Exhibit M, supported Exhibit O. There is no requirement that an expert rely solely on admissible evidence. There is no countervailing evidence to his report, or the information he received from Kroger. Malease had every opportunity to depose Mr. Libbert, but chose to ask only a couple questions for a couple of minutes, depriving itself from taking any meaningful discovery. See, generally, Deposition of Jonathan Libbert, Attached to this Reply Memorandum

as Exhibit B. Therefore, for Malease to say that "at his deposition, Libbert did not review any documents or independently verify anything" reflects the lack of care or questioning of Malease—not the preparation of Mr. Libbert.

In his expert report, Mr. Libbert sets out the basis for his conclusions. Expert Report of Jonathan Libbert, dated October 30, 2003, and attached agreements between Kroger and H.E. Butt. Kroger's Motion for Summary Judgment at Exhibit M, supported by Exhibit O. First, if the sublease between Kroger and H.E. Butt had been renewed under normal business conditions for the San Marcos, Texas property, Kroger would have received $237,267.94 more in rent just between April 1, 2003 and October 30, 2003, with compounded interest. Kroger's Motion for Summary Judgment at Exhibit M.

Second, Kroger was unable to have access to an $11,000,000 purchase price from H.E. Butt for the San Marcos property. The loss of the use of this money at a reinvestment rate of 12 percent, minus the actual rent received in lieu of the lost use of this money was a monthly net loss of $61,875.00 and $433,125.00 for April 1, 2003 through October 30, 2003 with compounded interest. Kroger's Motion for Summary Judgment at Exhibit M.

Third, the continuing cost of these losses until the sale is closed is $95,770.42 per month for each month after October 30, 2003, with compounding interest. Kroger's Motion for Summary Judgment at Exhibit M.

Finally, there is the risk that Kroger could incur an even greater loss if the $11,000,000 sale of the San Marcos property is not completed due to the delay introduced by Malease's refusal to relinquish the Master Lessee interest in the San Marcos property. Malease would be liable for $11,000,000 minus any future sale price of that property. Kroger's Motion for Summary Judgment at Exhibit M.

All of this is uncontroverted by any evidence or testimony of any expert presented by Malease. In fact, the most Malease could muster was an allegation that Mr. Libbert did not take into account any tax consequences.

But Kroger's Mr. Edward N. Waldvogel explained during his deposition that there was no tax liability to Kroger. Deposition of Edward N. Waldvogel, attached to this Reply Memorandum as Exhibit A. Mr. Waldvogel is the Vice President of Capital Management for Kroger. Waldvogel deposition, attached at Exhibit A, p. 4. Mr. Waldvogel stated that Kroger would not have had to pay any taxes because Kroger's tax basis for its acquisition of the properties would be higher than the value received from H.E. Butt in the sale, and therefore there would be no income tax. Waldvogel deposition, attached at Exhibit A, pp.17-22. Therefore, it is disingenuous for Malease to suggest that "there would be income tax consequences to Kroger involved in the receipt of that $11 million . . ." Malease Foods Corp.'s Cross-Motion for Summary Judgment and Memorandum in Support at p.18.

Malease simply failed to depose Mr. Libbert in any meaningful way. See Deposition of Jonathan Libbert, attached to this Reply Memorandum as Exhibit B. Arm waving about Mr. Libbert's expertise or claims that it could not find hard data (when in fact, Malease never bothered to ask) does not help Malease.

Accordingly, as of the date of this Motion, Kroger is entitled to an award of compensatory damages in favor of Kroger in the amount of $670,392.94 with pre and post judgment interest compounding as of October 30, 2003 plus an additional $95,770.42 per month after October 30, 2003 with pre and post judgment interest compounding on each additional monthly amount. Kroger's Motion for Summary Judgment at Exhibit M.

**VI.    Conclusion**

Kroger fully performed all of its obligations under the April Leases, the contract to acquire fee simple title of the Sites, and the assignment of Balkhouse Associates' rights under the Two-Party Agreements. Kroger validly exercised its right to purchase the Sites. As such, Kroger is entitled to a declaration concerning its rights under the April 1983 Leases.

Accordingly, for reasons stated more fully in Kroger's Motion for Summary Judgment and Memorandum in Support, Kroger is entitled to a declaratory judgment stating that:

(1) Kroger has validly exercised its Purchase Options to purchase the Sites,

(2) Malease is in material breach for its failure to sell to Kroger the Sites pursuant to the Purchase Options in the April 1983 Leases, and

(3) Malease is required to sell to Kroger the sites.

Kroger is also entitled to permanent injunctive relief requiring Defendant Malease to sell to Kroger the Sites; an award of compensatory damages in favor of Kroger in the amount of $670,392.94 with pre and post judgment interest compounding as of October 30, 2003 plus an additional $95,770.42 per month after October 30, 2003 with pre and post judgment interest compounding on each additional amount; an award of Kroger's costs and attorney fees; a denial of all of Malease's counterclaims; and any other relief in law or equity that the Court may deem just and proper.

        Respectfully submitted,

        /s/ Douglas R. Dennis
        Scott D. Phillips (0043654)
        Trial Attorney for Plaintiff
        FROST BROWN TODD LLC
        2200 PNC Center
        201 East Fifth Street
        Cincinnati, Ohio 45202
        (513) 651-6983

OF COUNSEL:
Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

## CERTIFICATE OF SERVICE

      I hereby certify that on May 5, 2004, a copy of the foregoing was mailed regular U.S. Mail to the following:

| | |
|---|---|
| Gary R. Winters, Esq. | Robert W. Cinque, Esq. |
| McCaslin, Imbus & McCaslin | Cinque & Cinque |
| 900 Provident Bank Building | 845 3rd Avenue, Suite 1400 |
| 632 Vine Street | New York, NY 10022 |
| Cincinnati, OH 45202-2442 | |

        /s/ Douglas R. Dennis

CinLibrary/1388867.1