# EXHIBIT B

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF OHIO
 3                    WESTERN DIVISION
 4                       - - -
 5   THE KROGER CO.,              :
 6              PLAINTIFF,:
 7      -VS-                      : CASE NO.: C-1-02-439
 8   MALEASE FOODS CORP.,         :
 9              DEFENDANT.:
10                       - - -
11        Deposition of JONATHAN D. LIBBERT, CPA,
12   CFE, a witness herein, taken by the defendant as
13   upon cross-examination pursuant to the Federal
14   Rules of Civil Procedure, and pursuant to agreement
15   and stipulations hereinafter set forth at the
16   offices of Frost, Brown & Todd, LLC, 2200 PNC
17   Center, 201 East Fifth Street, Cincinnati, Ohio at
18   1:48 p.m. on Wednesday, March 3, 2004, before
19   Britney L. Fisher, a notary public within and for
20   the State of Kentucky.
21                       - - -
22
23
24
```

Page 2

1  APPEARANCES:
2  On behalf of the Plaintiff:
3      Douglas R. Dennis, Esq.
4        and
5      Scott D. Phillips, Esq.
6        of
7      Frost, Brown & Todd, LLC
8      2200 PNC Center
9      201 East Fifth Street
10     Cincinnati, Ohio 45202
11 On behalf of the Defendant:
12     Robert W. Cinque, Esq.
13       of
14     Cinque & Cinque, P.C.
15     845 Third Avenue
16     New York, New York 10022
17         - - -
18      STIPULATIONS
19   It is stipulated by and between counsel
20 for the respective parties that the deposition of
21 JONATHAN D. LIBBERT, CPA, CFE, a witness herein,
22 may be taken as upon cross-examination pursuant to
23 the Federal Rules of Civil Procedure, and pursuant
24 to agreement; that the deposition may be taken in

Page 3

1  stenotypy by the notary public-court reporter and
2  transcribed by her out of the presence of the
3  witness; that the jurisdiction of the notary
4  public-court reporter is waived; and that the
5  transcribed deposition is to be submitted to the
6  witness for his examination and signature, and that
7  signature may be affixed out of the presence of the
8  notary public-court reporter.
9         - - -
10         I N D E X
11 WITNESS                    CROSS-EXAMINATION
12 Jonathan D. Libbert, CPA, CFE        4
13         - - -
14       E X H I B I T S
15 DEPOSITION EXHIBITS              MARKED
16 Y, report of Mr. Libbert.            5
17         - - -

Page 4

1      (Witness sworn.)
2     JONATHAN D. LIBBERT, CPA, CFE
3  of lawful age, a witness herein, being first duly
4  sworn as hereinafter certified, was examined and
5  deposed as follows:
6        CROSS-EXAMINATION
7  BY MR. CINQUE:
8      Q. Mr. Libbert, who engaged you on
9  behalf of Kroger?
10     A. The law firm of Frost, Brown & Todd.
11     Q. Which person in the law firm?
12     A. It's been a while, I believe it may
13 have been Mr. Phillips.
14     Q. Is this the first time you've done
15 any work with Mr. Phillips' law firm?
16     A. No.
17     Q. How many times have you done work
18 with the Frost, Brown firm?
19     A. Probably four or five times.
20     Q. And you're receiving a fee of $175
21 per hour; is that correct?
22     A. Yes, at the time I was engaged. We
23 update that the first of the year each year.
24     Q. Well, how much?

Page 5

1      A. $190.
2      Q. Bargain. How much have you billed so
3  far?
4      A. It's been pretty minimal. I didn't
5  bring the billing records, but my guess would be
6  six, eight hours.
7      Q. And in connection with the
8  preparation of your report, which I happen to have
9  here, we'll mark that as our next exhibit.
10 (Deposition Exhibit Y was marked for
11 identification.)
12 BY MR. CINQUE:
13     Q. Okay. This is your report, correct?
14     A. Yes.
15     Q. Who typed it?
16     A. I did.
17     Q. So that's your Word processor?
18     A. Yes.
19     Q. All right. And did you review any
20 documents in connection with this report?
21     A. Yes.
22     Q. Okay. What did you look at?
23     A. Well, it's stated right here in my
24 report I reviewed the complaint, the sale lease

Page 6

1  back document, and that there were other items that
2  were furnished to me.
3      (Mr. Phillips left the room.)
4    Q.  Okay.  Now, you state here on the
5  second page or the page with your opinions if the
6  lease for the San Marcos property had been renewed
7  under normal business conditions, basically the
8  rent would have been substantially higher, et
9  cetera.  Do you see that?
10   A.  Yes.
11   Q.  Did you review the lease?
12   A.  I believe I did.
13   Q.  You believe you did or did you?
14   A.  Well, there's a complete copy of my
15 file that's here, we can look at the file.
16   Q.  I want to know what you remember?
17   A.  I believe that I did.
18   Q.  Okay.  And what did you determine
19 when you reviewed the lease with respect to this
20 finding?
21   A.  There was what I call the original
22 sublease under the renewal for that sublease, that
23 the monthly rent was a little bit over $8,200 per
24 month.

Page 7

1    Q.  Okay.  And, therefore, what did you
2  conclude?
3    A.  That beginning April 1st of 2003
4  there was an additional agreement between Kroger
5  and the H.E. Butt Company that provided for the
6  payment of $48,125 per month.
7    Q.  Okay.  So that's almost a reduction
8  of 50 percent, correct?
9    A.  It's probably about 40 percent.
10   Q.  Okay.
11   A.  I think it's closer to 50, but my
12 arithmetic may be wrong.
13   Q.  And what was the reason for that
14 reduced rent?
15   A.  It was my understanding that this was
16 in recognition of, I'll call it, the deal to sell
17 the property not being able to be closed.
18   Q.  What's the basis of your
19 understanding.
20   A.  The basis was conversations with
21 people from Kroger.
22     (Mr. Phillips entered the room.)
23   Q.  Which people?
24   A.  Primarily Ed Waldvogel.

Page 8

1    Q.  What did he tell you?
2    A.  He told me that was the reason why
3  they reduced the rent.
4    Q.  What did he say?
5    A.  I think I just answered that.
6    Q.  You can answer it again.  I don't
7  know that I heard your answer entirely, but go
8  ahead.
9    A.  He said that's the reason the rent
10 was reduced, because as it states right here on the
11 document failure -- decrease in rent due to failure
12 to close.
13   Q.  So you're basing your opinion on
14 information that Waldvogel gave you; is that
15 correct?
16   A.  Well, I did review the documents
17 myself as well.
18   Q.  Okay.  And did your review of the
19 documents furnish you with any information that you
20 used in your conclusion?
21   A.  Well, it was a result of all of the
22 work that I've done, both the conversation and the
23 review of the documents.
24   Q.  Okay.  Is there anything in the

Page 9

1  document that led you to believe that the reason
2  the rent was reduced was dependency of the
3  transaction?
4    A.  I would have to go back and look at
5  the document.
6    Q.  Go ahead.
7      THE WITNESS:  Do we have it here?
8      MR. PHILLIPS:  Yeah.
9      THE WITNESS:  Are these the
10 documents from my file?
11     MR. DENNIS:  I think so.
12     THE WITNESS:  I don't see the
13 document I'm looking for here.
14     (Mr. Phillips left the room.)
15 BY MR. CINQUE:
16   Q.  What document are you looking for?
17   A.  I'm looking for the document that was
18 the agreement effective April 1st, 2003.
19   Q.  Is that something that you looked at
20 to form the basis for your conclusion about the
21 reduction in rent?
22   A.  That was one of the documents that I
23 looked at, yes.
24   Q.  You don't have it here?

Page 10

1  A. I don't see it here.
2  Q. Okay. The annual threshold rate that
3  you reflect on your report, did you put those
4  quotations around threshold?
5  A. Yes.
6  Q. Why did you do that?
7  A. That's the terminology that Mr.
8  Waldvogel used.
9  Q. What does it mean?
10  A. Well, it can mean a couple of
11  different things.
12  Q. What did it mean to you in your
13  report?
14  A. The rate that was used here was an
15  attempt to kind of hit the middle ground between
16  what Kroger would use when they invested the money
17  to build new properties, and the rates that they
18  were paying on current debt.
19  Q. Twelve percent, is that what you're
20  saying?
21  A. That's the number that's on this
22  piece of paper.
23  Q. I'm trying to understand. Explain
24  the relationship between the so-called threshold

Page 11

1  rate and any calculations to which it applies?
2  A. Well, once again, the 12 percent is
3  sort of the middle ground between what Kroger
4  normally would achieve in investing new money,
5  which I believe is around 18 percent.
6  Q. So you're basing your conclusion on
7  the fact that invariably when Kroger has money to
8  invest, it earns a yield of what?
9  A. Well, they have told me it was 18
10  percent.
11  Q. Did you do anything to independently
12  verify that?
13  A. Not at this time.
14  Q. Okay. Now, you use the figure $11
15  million, do you see that?
16  A. Yes.
17  Q. Where did you get that figure?
18  A. I believe that was from a document
19  for the sale of that property. I believe there
20  were three different properties in the sale
21  agreement, and each price was spelled out
22  separately.
23  Q. Did somebody give you that number or
24  did you find it somewhere?

Page 12

1  A. I think both. I think somebody gave
2  it to me and it was in the documents.
3  Q. And who's that someone, Waldvogel?
4  A. Yes.
5  Q. Now, the $11 million figure, what
6  does that represent?
7  A. I was told that was the selling price
8  of the warehouse in San Marcos, Texas.
9  Q. Did you factor in any income tax
10  consequences in any of these calculations?
11  A. No.
12  Q. So the way you did this is you
13  assumed that, if it sold for $11 million, Kroger
14  would have the $11 million available for
15  investment; is that correct?
16  A. Yes.
17  Q. Why didn't you consider income tax
18  consequences?
19  A. I didn't think it was appropriate.
20  Q. And what made you not think it was
21  appropriate?
22  A. If Kroger had been able to sell this
23  warehouse when they thought they were going to,
24  they would have had the $11 million in cash. And

Page 13

1  they would have been able to invest that money or
2  to pay off the existing debt.
3  Q. And when was this money to be
4  available to Kroger as you've just described it?
5  A. I believe it would have been some
6  time around April 1st of 2003.
7  Q. And we're sitting here in the
8  beginning of March of 2004, are there any income
9  tax consequences involved in the receipt of that
10  $11 million, as you sit here today?
11  A. I'm not a tax expert, but I'm sure
12  there would be.
13  Q. Okay. You didn't factor in anything
14  for income tax one way or the other, correct?
15  A. That's correct.
16  Q. In your experience has Kroger ever
17  lost any money on any investment its ever made?
18  A. I've never had any previous dealings
19  with Kroger.
20  Q. So what is your assumption then that
21  Kroger would have earned how much on $11 million,
22  is it 12 percent?
23  A. Yes, it is.
24  Q. Okay. And that's based simply upon

Page 14

1  the discussion you had with Waldvogel, correct?
2  A. Primarily, yes.
3  MR. CINQUE: All right. That's all
4  I have for the witness.
5  MR. DENNIS: Okay.
6  MR. CINQUE: Thank you.

11  JONATHAN D. LIBBERT, CPA, CFE
12  - - -
13  DEPOSITION CONCLUDED AT 2:03 P.M.
14  - - -

Page 15

1  CERTIFICATE
2  STATE OF KENTUCKY:
3  : SS
4  STATE AT LARGE :
5  I, BRITNEY L. FISHER, the undersigned, a duly
6  qualified and commissioned notary public within and
7  for the State of Kentucky, do hereby certify that
8  before the giving of his aforesaid deposition, the
9  said JONATHAN D. LIBBERT, CPA, CFE was by me first
10  duly sworn to tell the truth, the whole truth and
11  nothing but the truth; that the foregoing is the
12  deposition given at said time and place by the said
13  JONATHAN D. LIBBERT, CPA, CFE; that said deposition
14  was taken in all respects pursuant to agreement;
15  that said deposition was taken by me in stenotypy
16  and transcribed by computer-aided transcription
17  under my supervision; that the transcribed
18  deposition is to be submitted to the witness for
19  his examination and signature; that I am neither a
20  relative of nor attorney for any of the parties to
21  this cause, nor relative of nor employee for any of
22  their counsel, and have no interest whatever in the
23  result of the action.

Page 16

1  IN WITNESS WHEREOF, I hereunto set my hand
2  and official seal of office at Cincinnati, Ohio,
3  this       day of       , 2004.

7  MY COMMISSION EXPIRES: BRITNEY L. FISHER
8  JULY 3, 2005.    NOTARY PUBLIC-STATE OF
9  KENTUCKY

Page 17

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF OHIO
2  WESTERN DIVISION
   - - -
3  THE KROGER CO.,   :
   PLAINTIFF,:
4  -VS-    : CASE NO. C-1-02-439
   MALEASE FOODS CORP.,  :
5  DEFENDANT.:
   - - -
6
   Britney L. Fisher, a court reporter, first
7  duly cautioned and sworn, testifies and affirms
   that JONATHAN D. LIBBERT, CPA, CFE, a witness
8  herein, was notified that the transcript was ready
   for review and signature on Wednesday, March 17,
9  2004 2004, by forwarding a copy of the transcript
   to Mr. Scott Phillips, Esq.
10
   Within thirty-one days (pursuant to Rule
11 (30)E of the Federal Rules of Civil Procedure),
   JONATHAN D. LIBBERT, CPA, CFE, a witness herein,
12 did not present signature of said deposition.
13    The original transcript is now being
   tendered into the hands of Mr. Robert W. Cinque,
14 Esq.
15    Further affiant sayeth naught.
16
17    _____
   Britney L. Fisher
18 Sworn to me and subscribed in my presence this
   day of       , 2004.
19
20    _____
   Pamela Sue Spangler
21 Notary Public: State of Ohio
   My commission expires:
22 April 29, 2007

**A**
able 7:17 12:22 13:1
about 7:9 9:20
achieve 11:4
action 15:23
additional 7:4
affiant 17:15
affirms 17:7
affixed 3:7
aforesaid 15:8
again 8:6 11:2
age 4:3
agreement 1:14 2:24 7:4 9:18 11:21 15:14
ahead 8:8 9:6
almost 7:7
annual 10:2
answer 8:6,7
answered 8:5
anything 8:24 11:11 13:13
APPEARANCES 2:1
applies 11:1
appropriate 12:19,21
April 7:3 9:18 13:6 17:22
arithmetic 7:12
around 10:4 11:5 13:6
assumed 12:13
assumption 13:20
attempt 10:15
attorney 15:20
available 12:14 13:4
Avenue 2:15

**B**
B 3:14
back 6:1 9:4
Bargain 5:2
based 13:24
basically 6:7
basing 8:13 11:6
basis 7:18,20 9:20
before 1:18 15:8
beginning 7:3 13:8
behalf 2:2,11 4:9
being 4:3 7:17 17:13
believe 4:12 6:12,13 6:17 9:1 11:5,18,19 13:5
between 2:19 7:4 10:15,24 11:3
billed 5:2
billing 5:5
bit 6:23
both 8:22 12:1
bring 5:5
Britney 1:19 15:5 16:7 17:6,17

Brown 1:16 2:7 4:10 4:18
build 10:17
business 6:7
Butt 7:5

**C**
C 15:1,1
calculations 11:1 12:10
call 6:21 7:16
CASE 1:7 17:4
cash 12:24
cause 15:21
cautioned 17:7
Center 1:17 2:8
certified 4:4
certify 15:7
cetera 6:9
CFE 1:12 2:21 3:12 4:2 14:11 15:9,13 17:7,11
Cincinnati 1:17 2:10 16:2
Cinque 2:12,14,14 4:7 5:12 9:15 14:3,6 17:13
Civil 1:14 2:23 17:11
close 8:12
closed 7:17
closer 7:11
CO 1:5 17:3
commission 16:7 17:21
commissioned 15:6
Company 7:5
complaint 5:24
complete 6:14
computer-aided 15:16
conclude 7:2
CONCLUDED 14:13
conclusion 8:20 9:20 11:6
conditions 6:7
connection 5:7,20
consequences 12:10 12:18 13:9
consider 12:17
conversation 8:22
conversations 7:20
copy 6:14 17:9
CORP 1:8 17:4
correct 4:21 5:13 7:8 8:15 12:15 13:14,15 14:1
counsel 2:19 15:22
couple 10:10
court 1:1 17:1,6
CPA 1:11 2:21 3:12

4:2 14:11 15:9,13 17:7,11
cross-examination 1:13 2:22 3:11 4:6
current 10:18
C-1-02-439 1:7 17:4

**D**
D 1:11 2:5,21 3:10,12 4:2 14:11 15:9,13 17:7,11
day 16:3 17:18
days 17:10
deal 7:16
dealings 13:18
debt 10:18 13:2
decrease 8:11
defendant 1:9,12 2:11 17:5
Dennis 2:3 9:11 14:5
dependency 9:2
deposed 4:5
deposition 1:11 2:20 2:24 3:5,15 5:10 14:13 15:8,12,13,15 15:18 17:12
described 13:4
determine 6:18
different 10:11 11:20
discussion 14:1
DISTRICT 1:1,2 17:1 17:1
DIVISION 1:3 17:2
document 6:1 8:11 9:1,5,13,16,17 11:18
documents 5:20 8:16 8:19,23 9:10,22 12:2
done 4:14,17 8:22
Douglas 2:3
due 8:11
duly 4:3 15:5,10 17:7

**E**
E 3:10,14 15:1,1
each 4:23 11:21
earned 13:21
earns 11:8
East 1:17 2:9
Ed 7:24
effective 9:18
eight 5:6
employee 15:21
engaged 4:8,22
entered 7:22
entirely 8:7
Esq 2:3,5,12 17:9,14
et 6:8
ever 13:16,17

examination 3:6 15:19
examined 4:4
exhibit 5:9,10
EXHIBITS 3:15
existing 13:2
experience 13:16
expert 13:11
expires 16:7 17:21
Explain 10:23

**F**
F 15:1
fact 11:7
factor 12:9 13:13
failure 8:11,11
far 5:3
Federal 1:13 2:23 17:11
fee 4:20
Fifth 1:17 2:9
figure 11:14,17 12:5
file 6:15,15 9:10
find 11:24
finding 6:20
firm 4:10,11,15,18
first 4:3,14,23 15:9 17:6
Fisher 1:19 15:5 16:7 17:6,17
five 4:19
follows 4:5
FOODS 1:8 17:4
foregoing 15:11
form 9:20
forth 1:15
forwarding 17:9
four 4:19
from 7:21 9:10 11:18
Frost 1:16 2:7 4:10,18
furnish 8:19
furnished 6:2
Further 17:15

**G**
gave 8:14 12:1
give 11:23
given 15:12
giving 15:8
go 8:7 9:4,6
going 12:23
ground 10:15 11:3
guess 5:5

**H**
H 3:14
hand 16:1
hands 17:13
happen 5:8
heard 8:7

her 3:2
hereinafter 1:15 4:4
hereunto 16:1
higher 6:8
hit 10:15
hour 4:21
hours 5:6
H.E 7:5

**I**
identification 5:11
income 12:9,17 13:8 13:14
independently 11:11
information 8:14,19
interest 15:22
invariably 11:7
invest 11:8 13:1
invested 10:16
investing 11:4
investment 12:15 13:17
involved 13:9
items 6:1

**J**
Jonathan 1:11 2:21 3:12 4:2 14:11 15:9 15:13 17:7,11
JULY 16:8
jurisdiction 3:3
just 8:5 13:4

**K**
Kentucky 1:20 15:2,7 16:9
kind 10:15
know 6:16 8:7
Kroger 1:5 4:9 7:4,21 10:16 11:3,7 12:13 12:22 13:4,16,19,21 17:3

**L**
L 1:19 2:18 15:5 16:7 17:6,17
LARGE 15:4
law 4:10,11,15
lawful 4:3
lease 5:24 6:6,11,19
led 9:1
left 6:3 9:14
Libbert 1:11 2:21 3:12,16 4:2,8 14:11 15:9,13 17:7,11
little 6:23
LLC 1:16 2:7
look 5:22 6:15 9:4
looked 9:19,23
looking 9:13,16,17

lost 13:17

**M**
made 12:20 13:17
MALEASE 1:8 17:4
many 4:17
March 1:18 13:8 17:8
Marcos 6:6 12:8
mark 5:9
marked 3:15 5:10
may 2:22,24 3:7 4:12 7:12
mean 10:9,10,12
middle 10:15 11:3
million 11:15 12:5,13 12:14,24 13:10,21
minimal 5:4
money 10:16 11:4,7 13:1,3,17
month 6:24 7:6
monthly 6:23
much 4:24 5:2 13:21
myself 8:17

**N**
N 2:18 3:10
naught 17:15
neither 15:19
never 13:18
new 2:16,16 10:17 11:4
next 5:9
normal 6:7
normally 11:4
notary 1:19 3:1,3,8 15:6 16:8 17:21
nothing 15:11
notified 17:8
number 10:21 11:23

**O**
O 2:18
off 13:2
office 16:2
offices 1:16
official 16:2
Ohio 1:2,17 2:10 16:2 17:1,21
Okay 5:13,22 6:4,18 7:1,7,10 8:18,24 10:2 11:14 13:13,24 14:5
once 11:2
one 9:22 13:14
opinion 8:13
opinions 6:5
original 6:21 17:13
other 6:1 13:14
out 3:2,7 11:21
over 6:23

**P**
P 2:18
page 6:5,5
Pamela 17:20
paper 10:22
parties 2:20 15:20
pay 13:2
paying 10:18
payment 7:6
people 7:21,23
per 4:21 6:23 7:6
percent 7:8,9 10:19 11:2,5,10 13:22
person 4:11
Phillips 2:5 4:13,15 6:3 7:22 9:8,14 17:9
piece 10:22
place 15:12
Plaintiff 1:6 2:2 17:3
PNC 1:16 2:8
preparation 5:8
presence 3:2,7 17:18
present 17:12
pretty 5:4
previous 13:18
price 11:21 12:7
Primarily 7:24 14:2
probably 4:19 7:9
Procedure 1:14 2:23 17:11
processor 5:17
properties 10:17 11:20
property 6:6 7:17 11:19
provided 7:5
public 1:19 15:6 17:21
public-court 3:1,4,8
PUBLIC-STATE 16:8
pursuant 1:13,14 2:22 2:23 15:14 17:10
put 10:3
P.C 2:14
p.m 1:18 14:13

**Q**
qualified 15:6
quotations 10:4

**R**
R 2:3 15:1
rate 10:2,14 11:1
rates 10:17
ready 17:8
reason 7:13 8:2,9 9:1
receipt 13:9
receiving 4:20
recognition 7:16
records 5:5
reduced 7:14 8:3,10 9:2
reduction 7:7 9:21
reflect 10:3
relationship 10:24
relative 15:20,21
remember 6:16
renewal 6:22
renewed 6:6
rent 6:8,23 7:14 8:3,9 8:11 9:2,21
report 3:16 5:8,13,20 5:24 10:3,13
reporter 3:1,4,8 17:6
represent 12:6
respect 6:19
respective 2:20
respects 15:14
result 8:21 15:23
review 5:19 6:11 8:16 8:18,23 17:8
reviewed 5:24 6:19
right 5:19,23 8:10 14:3
Robert 2:12 17:13
room 6:3 7:22 9:14
Rule 17:10
Rules 1:14 2:23 17:11

**S**
S 2:18,18 3:14
sale 5:24 11:19,20
San 6:6 12:8
sayeth 17:15
saying 10:20
Scott 2:5 17:9
seal 16:2
second 6:5
see 6:9 9:12 10:1 11:15
sell 7:16 12:22
selling 12:7
separately 11:22
set 1:15 16:1
signature 3:6,7 15:19 17:8,12
simply 13:24
sit 13:10
sitting 13:7
six 5:6
sold 12:13
some 13:5
somebody 11:23 12:1
someone 12:3
something 9:19
somewhere 11:24
sort 11:3
SOUTHERN 1:2 17:1
so-called 10:24

Spangler 17:20
spelled 11:21
SS 15:3
state 1:20 6:4 15:2,4,7 17:21
stated 5:23
states 1:1 8:10 17:1
stenotypy 3:1 15:15
stipulated 2:19
stipulations 1:15
Street 1:17 2:9
sublease 6:22,22
submitted 3:5 15:18
subscribed 17:18
substantially 6:8
Sue 17:20
supervision 15:17
sure 13:11
sworn 4:1,4 15:10 17:7,18

**T**
T 2:18,18 3:14 15:1,1
taken 1:12 2:22,24 15:14,15
tax 12:9,17 13:9,11,14
tell 8:1 15:10
tendered 17:13
terminology 10:7
testifies 17:7
Texas 12:8
Thank 14:6
their 15:22
things 10:11
think 7:11 8:5 9:11 12:1,1,19,20
Third 2:15
thirty-one 17:10
thought 12:23
three 11:20
threshold 10:2,4,24
time 4:14,22 11:13 13:6 15:12
times 4:17,19
today 13:10
Todd 1:16 2:7 4:10
told 8:2 11:9 12:7
transaction 9:3
transcribed 3:2,5 15:16,17
transcript 17:8,9,13
transcription 15:16
truth 15:10,10,11
trying 10:23
Twelve 10:19
typed 5:15

**U**
U 2:18
under 6:7,22 15:17
undersigned 15:5
understand 10:23
understanding 7:15 7:19
UNITED 1:1 17:1
update 4:23
use 10:16 11:14
used 8:20 10:8,14

**V**
verify 11:12
VS 1:7 17:4

**W**
W 2:12 17:13
waived 3:4
Waldvogel 7:24 8:14 10:8 12:3 14:1
want 6:16
warehouse 12:8,23
way 12:12 13:14
Wednesday 1:18 17:8
well 4:24 5:23 6:14 8:16,17,21 10:10 11:2,9
were 6:1,2 10:18 11:20 12:23
WESTERN 1:3 17:2
we'll 5:9
we're 13:7
WHEREOF 16:1
while 4:12
whole 15:10
witness 1:12 2:21 3:3 3:6,11 4:1,3 9:7,9 9:12 14:4 15:18 16:1 17:7,11
Word 5:17
work 4:15,17 8:22
wrong 7:12

**X**
X 3:10,14

**Y**
Y 3:16 5:10
Yeah 9:8
year 4:23,23
yield 11:8
York 2:16,16

**$**
$11 11:14 12:5,13,14 12:24 13:10,21
$175 4:20
$190 5:1
$48,125 7:6
$8,200 6:23

**1**

**1**
1st 7:3 9:18 13:6
1:48 1:18
10022 2:16
12 11:2 13:22
17 17:8
18 11:5,9

**2**
2:03 14:13
2003 7:3 9:18 13:6
2004 1:18 13:8 16:3 17:9,9,18
2005 16:8
2007 17:22
201 1:17 2:9
2200 1:16 2:8
29 17:22

**3**
3 1:18 16:8
30)E 17:11

**4**
4 3:12
40 7:9
45202 2:10

**5**
5 3:16
50 7:8,11

**8**
845 2:15