UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: 0-1-02 439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | Black, M.J. |
| v. | : | |
| | : | **MALEASE FOOD CORP.'S REPLY** |
| Malease Foods Corp., formerly | : | **MEMORANDUM IN SUPPORT OF** |
| known as Malese Foods Corp., | : | **ITS CROSS-MOTION FOR** |
| Defendant. | : | **SUMMARY JUDGMENT** |

### PRELIMINARY STATEMENT

In support of its cross-motion for summary judgment, Malease carefully explained the background and rationale for the requirement of a simultaneous transfer of the Balkhouse and Malease positions through the declaration of Malease's President Lawrence Kadish who had first-hand knowledge as a result of his direct involvement in the 1983 transactions. In addition, Kadish showed how Kroger and its "expert" on this motion, James Price, deceived and misled him back in September of 1991 – all in an effort to cause Malease to agree to an Option Exercise in favor of Kroger which no longer existed.

Rather than meet the Kadish statements and Malease arguments head on, Kroger now resorts to deflection and obfuscation.

First of all, neither Kroger, Price nor any of the Kroger employees involved in the transactions offers any factual refutation of Kadish's detailed explanation of the significance and effect of the requirement of a simultaneous conveyance. Similarly, Kroger refuses to address

1

any aspect of its guilty knowledge and Price's and Hodge's knowing and willful deception of Kadish. Employing the device of a singe footnote at page 3 of its memorandum, Kroger blithely characterizes the false and misleading letters as "innocuous" while at the same time offering absolutely nothing from Price or Hodge to explain their duplicitous conduct in 2001 or Kroger's discovery abuses in suppressing Price's letter as well as Price's knowing misstatements at his deposition. Kroger thus offers no meaningful rebuttal to the entirely reasonable conclusion put forth by Malease that all of this conduct occurred as part of a plan and scheme to induce Malease to consent to a second Option Exercise as to the remainder of the Leased Property at a time when Kroger well knew that Malease had no obligation to do so.

Now, in what can surely be characterized as a desperate attempt at avoiding summary judgment, Kroger creates a new argument of a "single option exercise" grounded upon the absurd contention found at pages 5-6 of its reply memorandum that the accelerated exercise of the Purchase Options in July of 2001 was not really the exercise of Purchase Options at all, and therefore the first and <u>only</u> time Kroger exercised a Purchase Option was via the Kroger notice to Malease dated February 18, 2002.

## ARGUMENT

In its reply memorandum, Kroger concocts an argument whereby form is not merely exaulted over substance but rather is manipulated by Kroger to obliterate it. Significantly, Kroger finally <u>admits</u> that Malease is correct in its contention that the Purchase Options could only be exercised once – simultaneously against the entirety of the interests of both Malease and Balkhouse, and now in a startling reversal of position argues at page 5 that: "This is exactly what Kroger did."

2

In support of this contention that there was one and only one Option Exercise, Kroger simply dismisses its accelerated exercise of the Purchase Option with respect to the Balkhouse interest as a legally meaningless purchase "outside of those options." According to Kroger, this is so simply because Kroger says it is so.  However, it is not the label or characterization that Kroger conveniently manufactures which is dispositive here but rather an analysis of the essence of the transaction in light of the governing provisions of the relevant agreements.

As demonstrated in Malease's memorandum in support of its motion for summary judgment, the Occupancy Leases read in conjunction with the Two Party Agreements  provided for a well-defined scheme for Kroger's acquisition of the "Leased Property."  As the cases cited at pages 13-14 of Malease's memorandum make clear, an optionee must exercise the option strictly in accordance with its terms within the time and within the manner specified in the option.  Failure to do so will cause the optionee to loose his bargain. *West Texas Transmission, LP v. Enron Corp.*, 907 F.2d 1554, 1565 (5th Cir. 1990).

It is undisputed that on July 24, 2001 Balkhouse Associates conveyed all of its rights in the Leased Properties to Kroger.  In doing so, Balkhouse and Kroger attempted to unilaterally modify the terms of the various agreements by conveying only the Balhouse position without a simultaneous sale of the Malease interests.

As Malease explained in its memorandum, the provisions concerning Kroger's purchase option embodied in the three Occupancy Leases were wholly consistent with and are to be read in conjunction with the Two Party Agreements between Malease in its capacity as "Master Lessee" and Balkhouse Associates (to be distinguished from Balkhouse Properties – the lessor under the Kroger Occupany Lease) which at paragraph 3 provide in relevant part:

3

> If Purchase Option Exercised.  If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease, Partnership shall be obligated to sell and convey Partnership's Interest in the Premises to Occupancy Tenant <u>simultaneously</u> with the sale of the Master Lessee's Interest in the Premises to Occupancy Tenant by the Master Lessee....  (emphasis added).

As set forth in the Kadish declaration, it was always the intent of the parties that if a Purchase Option were exercised in accordance with paragraph 3 of the Two Party Agreement as provided in Article XXXV of the Occupancy Lease, then in order to be valid, such a transaction had to occur simultaneously with the sale of its Master Lessee's Interest in the Premises to the Occupancy Tenant by Malease and had to cover the entire estate owned by Balkhouse Properties Corp. at the time of the creation of the Operating Lease.

Clearly, Malease, Balkhouse and Kroger could have provided for a series of options exercisable at different times and upon different terms, but they did not do this.  Instead,  the parties provided for a simultaneous transaction.  In complete derogation of the rights of Malease and this requirement of simultaneous transaction, Kroger and Balkhouse unilaterally accelerated Kroger's exercise of the Purchase Option via the July 24, 2001 Option Exercise.

Forced into acknowledging that the operative documents required a simultaneous transfer of both the Balkhouse and Malease interests which did not occur, Kroger attempts to avoid the impact of these provisions by arguing that since it and it alone has decreed that its acquisition of the Balkhouse position was not an acceleration of the Purchase Option but rather a purchase "outside of the Purchase Options" (Kroger Mem. P. 5), then the first and only time that a Purchase Option was exercised was in February of 2002 when Kroger attempted to buy the Malease position.

In short, Kroger attempts to defeat summary judgment by the simple expedient of inventing a form or label for a transaction and then using it to mask the substance of what really occurred. The July 2001 transaction between Kroger and Balkhouse was unquestionably the first Option Exercise, and the second attempted Option Exercise by Kroger which occurred the following year was legally insufficient and quite properly rejected by Malease.

The one option Kroger had to purchase the Leased Property is contained in the Occupancy Lease, and that Option was a single Option to purchase the <u>entire</u> Leased Property. When Kroger purchased the interests of Balkhouse Associates on an accelerated basis by agreement between Kroger and Balkhouse, they were perfectly free to do this with respect to the Balkhouse position only. Since Kroger did not obtain a simultaneous conveyance from Malease as required by paragraph 3 of the Two Party Agreements, it no longer had the right to claim a second option.

Were the situation otherwise, then all the rules of strict construction of options would fly out the window as parties in the position of Kroger and Balkhouse could always abrogate or frustrate the rights of other contracting parties (Malease) by simply agreeing to unilaterally modify a purchase option and then claiming that since the language of the option itself had not been complied with, the purchase occurred "outside the Option."

Viewed in its totality, the Kroger acquisition of the Balkhouse interests was clearly an early exercise of the purchase option provided in Article XXXV of each of the Occupancy Leases. We stress here that the last sentence of Article XXXV specifically provides: "Any such purchase shall be completed in the manner provided in Article XIX." Turning to Article XIX of the Occupancy Lease we see that it deals with a situation: "In the event Lessee purchases the Leased Property <u>or any portion thereof</u>…."

5

Kroger's acquisition of the Balkhouse interest was clearly an acquisition of "a portion" of the Leased Property, and as the Kadish declaration and the relevant provisions of the agreements make clear, in order to obtain a conveyance of the Malease interest in the Leased Property, a simultaneous transaction was required.

As noted by the Court in Zeidman v. Davis, 161 Tex. 496, 342 S.W.2d 555 (1961), if an attempted option exercise varies from the terms which govern it, the optionee will lose his bargain. This is precisely what happened here, and the failure of Kroger to acquire the Malease interest simultaneously with that of Balkhouse renders Kroger's second attempted Option Exercise a nullity.

## **CONCLUSION**

The cross-motion by Malease for summary judgment that:

(a) by its conduct in purchasing the Balkhouse interests outside the option and in plain violation of the operative agreements Kroger has forfeited, abrogated and waived its right to maintain this action for a declaratory judgment;

(b) Malease is entitled to a declaration that each of the leases for the three sites automatically renewed on April 1, 2003 and that Kroger is obligated to pay the rent due Malease to be established at a hearing to be held on the issue of damages;

(c) this Court sever Malease's third counterclaim and direct a hearing on the issue of damages for unjust enrichment and imposition of a constructive trust against Kroger by reason of its wrongful use of confidential information imparted by Kadish to Price and then used by Kroger in connection with the Merrill Lynch/Balkhouse and Butt transactions;

(d) the Kroger complaint should be dismissed in its entirety together with an award of reasonable attorneys' fees and such other and further relief as the Court may deem just and proper; and should in all respects be granted.

        Respectfully submitted,

        /s/ R. Gary Winters
        R. Gary Winters 0018680
        Attorneys for Defendant
        McCASLIN, IMBUS & McCASLIN
        Suite 900 Provident Bank Building
        632 Vine Street
        Cincinnati, Ohio 45202-2442
        Telephone No.: 513-421-4646
        Telefax No.:    513-421-7929
        Email:    RGWinters@mimlaw.com

OF COUNSEL:

Robert W. Cinque, Esq.
CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.:    212-759-7737
Email:    CINQUE845@aol.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 13TH day of May, 2004, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    McCaslin, Imbus & McCaslin

    By: /s/ R. Gary Winters _____