# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

The Kroger Co.,                    :      Case No.: C-1-02 439
                                   :
              Plaintiff,           :       Judge Beckwith
                                   :
v.                                 :
                                   :
Malease Foods Corp., formerly      :
known as Malese Foods Corp.,       :
                                   :
              Defendant.           :
_____

# DEFENDANT'S MOTION
## FOR LEAVE TO FILE MOTION
## TO DISMISS KROGER'S DAMAGE CLAIM

Now comes defendant, Malease Foods Corp., and for the reasons set forth in the attached memorandum, moves the Court for leave to file the within motion to dismiss Kroger's damage claim.

Respectfully submitted,

s/ R. Gary Winters
R. Gary Winters 0018680
Attorneys for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, Ohio 45202-2442
Telephone No.: 513-421-4646
Telefax No.:     513-421-7929
Email:      RGWinters@mimlaw.com

OF COUNSEL:

Robert W. Cinque, Esq.
CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.:     212-759-7737
Email:          CINQUE845@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2004, a copy of the foregoing document was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

 s/ R. Gary Winters
R. Gary Winters 0018680
Attorneys for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, Ohio 45202-2442
Telephone No.: 513-421-4646
Telefax No.:     513-421-7929
Email:        RGWinters@mimlaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: C-1-02 439 |
| | : | |
| Plaintiff, | : | Judge Beckwith |
| | : | |
| vi. | : | |
| | : | |
| Malease Foods Corp., formerly | : | |
| known as Malese Foods Corp., | : | |
| | : | |
| Defendant. | : | |

_____

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION**
**FOR LEAVE TO FILE MOTION**
**TO DISMISS KROGER'S DAMAGE CLAIM**

**BACKGROUND**

In its Order dated July 27, 2004 disposing of the Kroger and Malease motions for summary judgment, this Court denied Kroger's motion for summary judgment on the issue of damages and set the matter for trial.  In the interest of justice and in order to avoid an unnecessary burden upon the Court, Malease now seeks permission to move to dismiss Kroger's damage claim upon several grounds: (a) application of the well-settled principle of Hadley v. Baxendale which precludes a recovery of damages not within the contemplation of the parties at the time the contract was made; (b) Kroger has failed to allege special damages in accordance with Texas law; and (c) pursuant to FRCP 26(a)(1) (Bb) and 37 Kroger is precluded from relying upon the Butt contract which is the sole predicate for its claim for consequential damages.

## ARGUMENT

**(A)     Application of the Rule of <u>Hadley</u> v. <u>Baxendale</u> Precludes
      a Damage Recovery**

**(i)  Kroger's Claim for Lost Profits May Not
      Be Maintained as a Matter of Law**

It is a bedrock principle of contract law that a breaching a party is only responsible for consequential damages flowing from a breach of contract to the extent those damages are within the contemplation of the parties at the time the contract was made.  <u>Hadley</u> v. <u>Baxendale</u>, 9 Ex. 341, 156 Eng. Rep. 145 (1854).

<u>Kenford Co., Inc.</u> v. <u>County Erie</u>, 73 N.Y.2d 312, 322, 537 N.E.2d 176 (N.Y. 1989):

> Thus, the constant refrain which flows throughout the legion of breach of contract cases dating back to the leading case of *Hadley v. Baxendale* (9 Exch. 341, 156 Eng.Rep. 145, *supra*) provides that damages which may be recovered by a party for breach of contract are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed. The evident purpose of this well-accepted principle of contract law is to limit the liability for unassumed risks of one entering into a contract and, thus, diminish the risk of business enterprise (*see*, McCormick, Damages § 138, at 566-*supra*).

The Kroger facility involved here is located in San Marcos, Texas, and under the operative lease, the law of that state is to be applied. A succinct summary of the principles applicable here is found in <u>Beasley Motor Co., Inc.</u> v. <u>Woodward</u>, 154 S.W.2d 691, 693 (Tex.Civ.App., 1941):

> It is elementary that in cases of this kind the damages which the plaintiff is entitled to recover are such as arise according to the ordinary course of the matters involved which bring about the consequences resulting from the breach of the contract, or such damages as reasonably may have been in the contemplation of the parties at the time the contract was made. This rule in reference to the contemplation of the parties at the time the contract was made applies to damages that may result from the loss of profits of business or business activities such as those in which appellee was engaged when the contract with appellant to repair the truck was executed. *American Ry. Express Co. v. Bean*, Tex.Civ.App., 233 S.W. 561).
>
> The loss of profits under the circumstances alleged here constitute special damages and, unless it is shown by allegation and proof that the remuneration for them was provided in the contract or was in the contemplation of the parties at the time it was made, or that notice of their probable loss was given to the defendant and that he entered into the contract in contemplation of such possibility, they are not recoverable. *Pacific Express Co. v. Darnell Bros.*, 62 Tex. 639; *Kenedy Town & Improvement Co. v. First Nat. Bank*, Tex.Civ.App., 136 S.W. 558, 559; *Davis v. Guitar*, Tex.Civ.App., 248 S.W. 759; *J.I. Case Threshing Mach. Co. v. O'Keefe*, Tex.Civ.App., 259 S.W. 222; *Conn v. Texas & N.O. Ry. Co.*, Tex.Civ.App., 4 S.W.2d 193; *Cross v. Wilson*, Tex.Civ.App., 33 S.W.2d 575.

Tested by the rule laid down by the above cited authorities and many others, appellee was not entitled to recover anything, under the pleadings and proof, for the loss of profits in his business and the general demurrer urged by appellant should have been sustained. *Varner v. Dexter Gin & Mill Co-op. Ass'n*, Tex.Civ.App., 39 S.W. 206. Even if the question of notice to appellant of the special damages that might accrue from its failure to comply with the contract had been properly alleged and proved, still its special exceptions to the allegations of the petition should have been sustained. The pleading was too general and did not inform appellant upon what facts appellee based his allegations of loss of profits. It was entitled to know, from the pleading, the details concerning the manner in which the profits arose; the gross receipts of appellee from each of the trips that would have been made by him but for the failure of appellant to comply with its contract; the expenses that would have been incurred on each trip and other items of a similar nature that would have been involved so that appellant could prepare its defense to the contention that certain profits resulted from the enterprise. *Community Public Service Co. v. Gray*, Tex.Civ.App., 107 S.W.2d 495.

The sole evidentiary predicate for Kroger's damage claim is a purported agreement dated April 12, 2002 between Kroger and its subtenant Butt which was first produced on February 27, 2004 as an exhibit attached to the report of Jonathan D. Libbert, C.P.A. (LIB000031 - 000039) as part of Kroger's summary judgment motion. **Exhibit A** Based upon the claimed existence of this agreement, Kroger contended at pages 15-17 of its summary judgment motion that because of the agreement to sell it: (a) renewed Butt's sublease at a lower rate than it otherwise have changed, and (b) lost investment opportunity as it did not receive the purchase price due under the agreement to sell which Kroger claims it would have invested at a large profit.

The speculative nature of these claims aside, application of the well-settled principles of Texas law and the rule of <u>Hadley</u> v. <u>Baxendale</u> preclude any recovery for these lost profits based upon these extraordinarily remote circumstances which were not within the contemplation of the parties at the time the Lease Agreement was made. The following chronology is instructive.

**<u>CHRONOLOGY</u>**

| | |
|---|---|
| April 1, 1983 | Sale/lease back transaction between Kroger and Balkhouse whereby Balkhouse became the owner of fee simple title to the Site and Kroger became the tenant. |
| | Article XXXV of the lease contained the provision which allowed Kroger to re-purchase the Site at fair market value on April 1, 2003 (Complaint ¶ 16). |
| June 1, 1983 | A series of transactions by which Balkhouse assigned its rights under the lease for the Site to Malease, and the parties execute the "Two-Party Agreement" relating to the Site (Complaint ¶¶ 17-20). |
| July 24, 2001 | Kroger acquires fee simple title to the Site together with the rights of Balkhouse under the Two-Party Agreement (Complaint ¶ 23). |
| February 18, 2002 | Kroger as tenant under the April 1, 2003 lease notifies Malease that it is exercising all of the Kroger Purchase Options (Complaint ¶ 25). |
| March 14, 2002 | Malease provides written rejection of Kroger's exercise of the Purchase Option (Complaint ¶ 27). |
| March 27, 2002 | Kroger provides written notice of its re-affirmation of exercise of the Purchase Option to which Malease does not respond. |
| April 12, 2002 | Kroger enters into an agreement with H.E. Butt Grocery Company LP, its sub-lessee of the Site to sell and convey the property on April 1, 2003 (LIB 000031-000039). |

February 7, 2004            Kroger first produces the April 12, 2002 agreement with
                           Butt as an exhibit on its summary judgment motion.


The April 1, 1983 lease gave Kroger the right to re-acquire the San Marcos site at fair market value on April 1, 2003 (Complaint, § 16). On February 18, 2002, Kroger gave notice under the lease that it was exercising all of the Kroger Purchase Options (Complaint, § 25). By notice dated March 14, 2002 Malease rejected Kroger's exercise of the Purchase Option (Complaint, § 27).

Subsequent to Malease's rejection, and on April 12, 2002 Kroger purported to enter into an agreement with Butt to sell and convey the San Marcos site on April 1, 2003 (LIB 000031-000039).

We thus have a situation where some 19 years after the original lease transaction in 1983, and after Kroger becomes aware of a breach on the part of Malease by its rejection of the Kroger purchase option, Kroger goes out into the market place and manufactures a claim for consequential damages by making an agreement to sell the San Marcos site knowing full well that Malease has rejected Kroger's attempted option exercise in the first place. No legal authority supports the proposition that following a breach the aggrieved party can create a claim by entering into a contract after the breach and then claiming consequential damages for its inability to conclude that contract.

Under the principles of Texas law cited in this memorandum and application of the fundamental rule of Hadley v. Baxendale, it is clear that Kroger is not entitled as a matter of law to recover profits purportedly lost as a result of a contract entered into some 20 years after the initial transaction with Malease and at a time when Kroger knew that Malease had rejected Kroger's option exercise.

Indeed, the Kroger/Butt agreement is highly suspect in that as of April 12, 2002, the date that agreement was purportedly made, Kroger already knew that Malease had rejected its attempted exercise of the purchase option a month earlier but never disclosed

this to Butt. While the "Whereas" clause on page 2 states that Kroger had given notice to Malease of its intention to exercise the option, there is absolutely no mention of the fact that Malease had previously rejected the attempted option exercise (LIB 000032).

Since this contract was never produced in accordance with FRCP 26, Butt was never deposed. Given the peculiarities surrounding Kroger's withholding of this document coupled with the incomplete recitation, there is ample reason to believe that Kroger deliberately concealed the fact that Malease had already rejected the purchase option in order to manufacture the present claim for consequential damages.

**(B)    The Language of the Lease Clearly Precludes a Recovery of Lost Profits**

As a starting point, we look to the language of the lease itself to see whether the parties expressed their intentions with respect to the liability for lost profits, specifically Articles XXII and XXIII (Lease, p. 44) **Exhibit B** which provide:

<u>ARTICLE XXII</u>

22. <u>No Recourse To Lessor.</u>   No recourse shall be had against the Lessor, or its employees, officers, directors or shareholders for any claim based on any failure by the Lessor in the performance of observance of any of the agreements, covenants or provisions contained in this Lease. In the event of any such failure, recourse shall be had solely against the Leased Property.

<u>ARTICLE XXIII</u>

23. <u>Loss of Benefit.</u>   The loss of or decrease in the enjoyment and beneficial use of the Leased Property in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosures, attachments, levies or executions (other than by Lessor and those claiming from, through or under Lessor) shall be borne by Lessee, and Lessor shall in no event be answerable or accountable therefor. None of the events mentioned in this Section shall entitled Lessee to any abatement of Basic Rent or Additional Rent, except as specifically provided herein.

The plain language of Article XXII is diametrically opposed to any notion that the parties contemplated that Kroger could make a claim of future lost profits.  This provision expressly states that Kroger has <u>no recourse</u> against the lessor [Malease] for any claim for breach of the lease and that such recourse is available <u>solely</u> against the Leased Property.  Clearly, had the parties intended liability for Kroger's loss of profits in the event of a breach by Malease of the Purchase Option, then the No Recourse provision would never have been drafted the way it was.

Similarly, Article XXIII provides that if Kroger suffers a loss as a result of a foreclosure, attachment, levy or execution against the lessor, such loss "shall be borne by the Lessee [Kroger], and Lessor shall in no event be answerable or accountable therefor."  Indeed, in the event of foreclosure, levy or execution by a third-party as a result of a default on the part of Malease, the obligation of Kroger to pay rent continues without abatement.  Once again, a provision of this type is entirely inconsistent with the argument that the parties contemplated that Malease might be liable for lost profits.

The survival of claims language in Article XXXVIII (Lease, p. 53) **Exhibit B** is again consistent with the fact that the parties did not contemplate a claim for consequential damages in favor of Kroger at the time of the drafting of the lease.  The relevant language is as follows:

> Anything contained in this Lease to the contrary notwithstanding, all claims against, and liabilities of the Lessee arising prior to any date of termination of this Lease shall survive such termination.

It is important to note that this survival of claims language operates entirely in favor of Malease and against Kroger.  There is no corresponding provision concerning survival of a consequential damages claim (or any other claim for that matter) in favor of

Kroger. If the parties contemplated or intended that Kroger might have a claim for lost profits from a resale of the property as a result of Malease's objection of its option, then there would have been some language somewhere in the lease consistent with such a right.

A recent decision of the Southern District applying New York law (which is the same as Texas law) is instructive. In <u>Great Earth Int'l Franchising Corp.</u> v. <u>Milks Development</u>, 311 F. Supp. 419, 432-433 (S.D.N.Y. 2004), the Court noted that "Most of the leading cases which have decided on claims of future lost profits have ruled that they are not recoverable." The Court then went on to look at the contract itself to see if any provision discussed such a remedy. Where, as here, the contract was silent on the point, the Court then applied the "commonsense" rule to consider what the parties would have concluded had they considered the subject and found that the relevant or analogous language of the contract was totally inconsistent with recovery of lost profits.

The same result obtains here. Had the parties even remotely considered or intended that Kroger might recover lost profits, we would not see provisions expressly denying a right of recovery to Kroger in the event of a breach by Malease of any of the agreements, covenants or provisions in the Lease nor would we see language denying Kroger any recovery (not even an abatement of rent) in the event Malease suffered a foreclosure, attachment, levy or execution against it. To be sure, if the intent of the parties was for Kroger to have a consequential damages claim, then the survival of claims language in the lease would have been drafted entirely differently.

As noted by the Court in <u>Great Earth</u>:

> Every party entering into a commercial contract does so with the intention of earning profits, and if courts adopted defendants' logic, they would essentially nullify the limitation, imposed by the Court of Appeals, that the parties must have specifically contemplated a claim for lost profits when they entered into the contract. The critical distinction which defendants fail to make is that the parties must

contemplate, not turning a profit, but "the particular damages" owing to lost profits should the deal turn sour. While the defendants may have had an expectation of profits, they have not shown that they and plaintiffs considered appropriate, at the time they signed the contract, a suit for lost profits, and the categories of lost profits, should the contract be breached.

(311 F.Supp.2d at 434-435).

**(C)    Under Texas Law Kroger's Claim Is Manifestly Deficient**

Kroger's damage claim is found in Count III  **Exhibit C** of its complaint which alleges:

## COUNT III

### (ACTUAL AND ANTICIPATORY BREACH)

41.  Pursuant to the April Leases and the agreements Kroger was party to, Kroger validly exercised its right to purchase the Sites.

42.  Defendant Malease has refused to acknowledge Kroger's exercise of Kroger's Purchase Options.

43.   Defendant Malease's actions are in violation of the April Leases and constitute a breach of the Leases.

44.   Because of Defendant Malease's breaches, Kroger has been damaged in an amount to be determined at trial.

This is Kroger's entire damage claim; there is no further specification.  As previously explained in this memorandum, under Texas law as summarized in Beasley, supra, pp. 6-7, Kroger was required to inform Malease of the facts upon which Kroger based its allegations of loss of profits.  Malease was entitled to know from the complaint the details concerning the manner in which the profits arose, the receipts that Kroger allegedly would have received but for the failure of Malease to comply with the contract as well as the expenses incurred so that Malease could properly prepare its defense to the contention that Kroger sustained a loss of profits from its contemplated transaction with Butt.

The bare bones allegations in Count III of the complaint show that none of the specifics required by Texas law was furnished.  Kroger merely alleged that by its refusal to acknowledge the exercise of the Purchase Option, Malease committed a breach which resulted in unspecified damages in an undescribed amount to be determined at trial.

Standing alone, Kroger's failure to comply with the basic requirements of Texas law concerning the allegation of special damages requires dismissal of its claim.

**(D)    Pursuant to FRCP 26(a)(1)(B) and 37, Kroger is Precluded
       From Relying Upon the Butt Contract**

This action was commenced on June 14, 2002.  The first time the Kroger/Butt agreement was produced was as an attachment to the Libbert declaration in support of Kroger's motion for summary judgment which was filed on February 27, 2004.

The provisions of the Federal Rules applicable here were reviewed in King v. Pension Trust Fund, 2003 WL 22071612 (E.D.N.Y. 2003) where as here defendant on a motion for summary judgment included an IRS letter that it had never produced before. As noted by the Court:

> It is undisputed that the IRS letter should have been disclosed under the automatic disclosure rules of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 26(a)(1)(B) ("a party must, without awaiting a discovery request, provide to other parties: ...(B) a copy of, or a description by category and location of, all documents...that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment").

> It is also undisputed that the letter was never produced. Under Rule 37 of the Federal Rules: *A party that without substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

The Butt agreement is the linchpin for Kroger's entire claim for consequential damages. This is a critical document which should unquestionably have been produced at the outset of the litigation in accordance with FRCP 26 without Kroger's awaiting a discovery request from Malease. As we have seen, the Butt contract is highly suspect in that although it was entered into almost a month after Malease rejected Kroger's attempted exercise, the document makes no reference to this rejection but simply refers to the Kroger notice of February 18, 2002. There is every reason to believe that Kroger realized that it was acting in bad faith here by attempting to manufacture a damages claim by making an agreement to sell the subject real property at a time when it knew that its right and ability to do so had been challenged.

Kroger can offer no justification for its failure to produce this document which it obviously had at the time it drafted its complaint. Consistent with the

sanction imposed in <u>King</u>, the Butt contract should be stricken, and Kroger precluded from relying upon it in support of any claim.

<u>**CONCLUSION**</u>

Malease respectfully submits that Kroger's claim for consequential damages of future lost profits is precluded by the rule of <u>Hadley</u> v. <u>Baxendale</u> as uniformly applied by the Texas courts.  In addition, Malease has demonstrated that the provisions of the lease are directly opposed to and manifestly inconsistent with any claim that the parties contemplated Kroger's possible entitlement to consequential damages at the time of contracting in 1983.  Kroger's damage claim itself is subject to dismissal in that it contains none of the specifications required by Texas law.  Finally, Kroger has blatantly failed to comply with the mandatory disclosure requirement of FRCP 26 by withholding this critical document for a period of almost two years and first producing it as an exhibit to its summary judgment motion.

Malease respectfully requests that in the interest of justice it be permitted to file this motion to dismiss prior to any trial on the issue of damages.

Respectfully submitted,

<u>s/ R. Gary Winters</u>
R. Gary Winters 0018680
Attorneys for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, Ohio 45202-2442
Telephone No.: 513-421-4646
Telefax No.:    513-421-7929
Email:    RGWinters@mimlaw.com

OF COUNSEL:

Robert W. Cinque, Esq.
CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.:     212-759-7737
Email:          CINQUE845@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2004, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s R. Gary Winters
R. Gary Winters 0018680
Attorneys for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, Ohio 45202-2442
Telephone No.: 513-421-4646
Telefax No.:     513-421-7929
Email:        RGWinters@mimlaw.com