UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE KROGER CO., | : | Case No.: C-1-02-439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | |
| | : | |
| v. | : | **THE KROGER CO'S MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANT'S** |
| | : | **MOTION FOR LEAVE TO FILE ITS** |
| MALEASE FOODS CORP., | : | **MOTION TO DISMISS THE KROGER** |
| | : | **CO'S DAMAGES CLAIM** |
| Defendant. | : | |

**I.    Introduction**

This case involves The Kroger Co.'s ("Kroger") option to purchase three industrial facilities in Texas, Kentucky and Tennessee in which Malease Foods Corp. ("Malease") has leasehold interests. This court has already ordered in summary judgment that Malease breached its obligations under the terms of the options, to relinquish these facilities to Kroger at a closing that was to occur on April 1, 2003—nearly 16 months ago. Malease still retains those interests, and now claims that Kroger suffered no damages at all from its conduct and should not be compensated. Meanwhile, as each day passes with Malease's refusal to relinquish its interest in the properties, Kroger suffers damages. Kroger is unable to sell the property in San Marcos, Texas, where Kroger has an agreement to sell the property that is frustrated by Malease's refusal to relinquish its interests. Kroger is bereft of its ability to use the proceeds of that sale until the closing is consummated, and an additional amount of damages is accrued each day that Malease delays. Further, Kroger does not enjoy clear title to the Kentucky and Tennessee properties as it should have since April 1, 2003.

## II.     Malease is Out of Time to File this Motion by Six Months

As a threshold issue, Malease's motion is six months late, according to the Court's trial schedule. (See Calendar Order, attached as Exhibit A). Dispositive motions were to be filed no later than March 1, 2004. (See Calendar Order, attached as Exhibit A).

Malease tries to create the excuse that it was sandbagged on key damages evidence—specifically, documents that Kroger's expert relied upon to render his opinion. However, the record shows that Kroger complied with this schedule fully.

Kroger asked specifically for damages in the Complaint; Malease did nothing except deny in its Answer that damages were due. (Amended Answer and Counterclaim of Defendant Malease Foods Corp., dated October 31, 2003, attached as Exhibit B).

Kroger identified its experts on September 30, 2003, including Kroger's damages expert, Jonathan Libbert, one month before Malease even answered the Complaint. (See Plaintiff's Designation of Experts, attached as Exhibit C). Kroger provided Malease with Jonathan Libbert's expert report on damages on October 30, 2003, a day before Malease's Amended Answer, per the Court's Order, plus a granted two-week extension. (See cover letter on Plaintiffs' Expert Reports, including Jonathan Libbert report, dated October 30, 2003, attached as Exhibit D). Jonathan Libbert's report discusses the damages that Kroger is claiming in detail. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E). In the report, Mr. Libbert made specific reference to a "signed agreement is in place for $11,000,000.00" and thus, it is disingenuous for Malease to suggest that it had no idea that there was any such agreement.

The fact is, Malease made no effort to obtain the agreement until after the discovery cut-off. From October 30, 2003 to the close of discovery, on February 1, 2004, Malease could have

requested documents related to Jonathan Libbert's report at any time, but did not do so. Malease did request that the discovery deadline be extended, having wasted the entire period between October 30, 2003 to February 1, 2004. Kroger acquiesced to an extension, entered by the Court to give Malease through February 27, 2004. (See Letter dated February 5, 2004, attached as Exhibit F). Malease, however, still did not request any documents pertaining to damages until February 13, 2004—two weeks past the discovery deadline, and even then, the request was made informally in a telephone call. These documents were provided early—on February 25, 2004—prior to Malease's deposition of Mr. Libbert. (See Letter dated February 25, 2004, attached as Exhibit G). Malease deposed Mr. Libbert for exactly fifteen minutes, but did not ask any questions with respect to the damages calculations, or the consummated transactions that were the basis for the damages calculations. Malease instead asked only about potential tax implications to the requested damages. (Transcript of Deposition of Jonathan Libbert, dated February 27, 2004, attached as Exhibit H). Subsequently, Malease filed its Motion for Summary Judgment, but failed to address damages in any way. (Malease's Motion for Summary Judgment, dated April 9, 2004, attached as Exhibit I).

**III.    It Is Within the Court's Discretion to Deny Malease's Motion for Untimeliness**

Rule 16 of the Federal Rules of Civil Procedure declares that once a court-ordered schedule is in place, and a party fails to comply with the scheduling order, the district court has the discretion to "make such orders with regard thereto as are just." The pertinent law to apply on procedural matters is Sixth Circuit law and the law of this Court. See, e.g., *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998), cert. denied, 525 U.S. 810, 142 L.Ed.2d 32, 119 S.Ct. 42 (1998).

The Sixth Circuit has clearly stated on numerous occasions that it will uphold the district court's exercise of its discretion under Rule 16. *Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749 (6th Cir. 2003). The *Estes* court stated, "Rule 16 of the Federal Rules of Civil Procedure . . . grants district courts wide latitude to impose sanctions for failure to comply with their scheduling orders." Citing *Clarksville-Montgomery County School System v. United States Gypsum Co.,* 925 F.2d 993, 998 (6th Cir. 1991), the *Estes* court stated, "The district court has discretion to impose whatever sanction it feels is appropriate, under the circumstances."

In *Riley v. Littell Intl, Inc*., 1999 U.S. App. LEXIS 15130 (6th Cir., July 1, 1999),[1] the Sixth Circuit stated, "If a party fails to comply with the scheduling order, the district court, upon motion or sua sponte, may make such orders with regard thereto as are just."

In *Pena v. Hamilton & McDonald, P.C*., 1987 U.S. Dist. LEXIS 15739 (E.D. Mich., Nov. 24, 1987),[2] the court held, "Due to the untimeliness of the instant motion, the Court must first determine whether it should consider the motion. Fed. R. Civ. P. 16(f) governs the failure to comply with scheduling orders. Under that rule, the Court "may make such orders with regard [to the noncompliance] as are just." The court considered whether a delay of less than a day due to circumstances beyond the control of the defendant filing the motion would make dismissal of defendant's slightly untimely motion just. Here, the delay is six months and inexcusable.

This long delay was caused purely by Malease's lack of diligence. Malease failed to inform itself of the contents of Mr. Libbert's expert report, which included ample reference to the contract for $11,000,000.00. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E). Malease failed to request documents it believed that it needed in discovery. Malease failed to depose Mr. Libbert in a meaningful way. Malease was not even

---

[1] Opinion attached as Exhibit J.
[2] Opinion attached as Exhibit K.

able to comply with the discovery deadline set four months after Mr. Libbert's expert report was provided to Malease.

Malease had Kroger's Motion for Summary Judgment on February 27, 2004. Malease completed its own Motion and Memorandum Contra to Kroger's motion on April 7, 2004—a month later than the original scheduling order required—and filed its reply on May 17, 2004. Malease had all of this additional time to make its arguments on damages, but did not do so. There is nothing raised in this out-of-time filing that could not have been asserted by April 7, 2004. In fact, it was incumbent upon Malease to raise its defenses in that Motion. Nothing new has been discovered since then.

Now, six months later, Malease wants to assert defenses that it had never raised before and file yet another allegedly dispositive motion on damages issues that it had never addressed in any pleading, never obtained experts to discuss and never adequately prepared for during the schedule the court set.

All of this continual delay is prejudicial to Kroger. Kroger incurs a constant daily amount of damages because it is deprived from the use of the $11 million dollars that it should possess from its consummated deal with H.E. Butt. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E). Malease, no doubt, believes that by delaying the closing on the properties, it puts pressure on Kroger to negotiate some kind of settlement. But Kroger has already won on its Motion for Summary Judgment. It is Malease that should be made to feel the pressure from its delaying the closing on its interest in the properties, since it is Malease's bad conduct that created and continues to create these damages.

For these reasons, Malease's Motion to File Out of Time should be denied and a trial for damages should be set at the court's earliest convenience.

IV.   **Malease's Motion Lacks Merit Regardless of its Untimeliness**

While Malease's gross untimeliness should end the discussion, Malease saw fit to include the Motion that it hopes to file with the court to dismiss the damages. In that Motion, Malease claims that (1) these damages are not within the contemplation of the parties at the time the contract was made; (2) Kroger is required to allege special damages; and (3) Kroger violated the Rules of Civil Procedure and therefore is somehow estopped from presenting evidence of damages. All three of these predicates are false and will be dealt with in turn.

Because Malease should be denied permission to file its tardy motion, and because its tardy motion would be doomed to failure in any event upon Texas case law and the pertinent contract, trial should be set as soon as possible for damages as a result of Malease's continued failure to relinquish its interest in Kroger's three properties.

**A.   Kroger's Damages Were Reasonably Foreseeable Under the Contract**

Kroger agrees with Malease that under the applicable choice of law, Texas law applies to matters of substantive law in this case. See, e.g., *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998), cert. denied, 525 U.S. 810, 142 L.Ed.2d 32, 119 S.Ct. 42 (1998). Malease cites *Beasley Motor Co., Inc. v. Woodward*, 154 S.W.2d 691, 693 (Ct. App. Tex. 1941). This Texas Court stated, "the damages which the plaintiff is entitled to recover are such as arise according to the ordinary course of the matters involved which bring about the consequences resulting from the breach of the contract, or such damages as reasonably may have been in the contemplation of the parties at the time the contract was made."

Malease then goes on to say that Malease could not have contemplated these damages when it entered its contract with Balkhouse because it could not anticipate that Kroger would enter a sale contract with H.E. Butt after Malease breached its obligation to relinquish its

interests under the purchase option. This is tantamount to saying that Malease should be permitted to hold Kroger and H.E. Butt hostage with its willful breach of the lease because it could not anticipate that Kroger would want the unalienable use of its property—including the opportunity to sell it.

The fact is, and contrary to Malease's disingenuous suggestions, Malease was well aware of the fact that H.E. Butt wanted to purchase the San Marcos, Texas property. Mr. Kadish has been an owner and developer of similar properties for more than 40 years and owns similar properties in more than 30 states. (See Declaration of Lawrence Kadish dated April 7, 2004 at ¶2, attached as Exhibit K). Mr. Kadish was well aware that H.E. Butt wanted to buy the San Marcos, Texas property. In fact, Mr. Kadish entered a contract to sell the property to H.E Butt subject to Mr. Kadish acquiring clear title to that property. (See Deposition of Lawrence Kadish dated January 21, 2004 at p.97-98, attached as Exhibit L). It is a discredit to Mr. Kadish to suggest that he could not have possibly contemplated the possibility that Kroger would enter an sales agreement with H.E. Butt with respect to the San Marcos, Texas property, and that sales agreement would be executed when Kroger obtained clear title.

### B. "No Recourse" Provision Does Not Mean "No Damages"

Malease makes reference to Article XXII of the Leases between Balkhouse Properties and Kroger. Article XXII is a clause that, in essence, states that "No recourse shall be had against the Lessor or its employees, officers, directors or shareholders for any claim based on failure by the Lessor in the performance or observance of any of the agreements, covenants or provisions contained in this Lease. In the event of any such failure, recourse shall be had solely against the Leased Property." (See Lease Between Balkhouse Properties and Kroger, dated April 1, 1983 at Article XXII, attached as Exhibit M).

The key limiting language here is that "recourse shall be had solely against the Leased Property." More specifically stated, Kroger can obtain recourse against Malease's interest in the properties. To determine Malease's rights and obligations, one must look to the Assignment of Interest between Balkhouse Properties and Malease (attached as Exhibit N) and the Two-Party Agreement between Balkhouse Associates[3] and Malease (attached as Exhibit O).

Malease's interest in the "Leased Property" is currently (1) its Master Lessee interest—which it is obliged to relinquish under the Purchase Options and this Court's July Order, and (2) the payment Malease anticipates at closing, as calculated under the formula located in the Two-Party Agreement.

The Two-Party Agreement states at page 10 that the purchase price paid to the Master Lessee (Malease) shall be "an amount equal to: the then present value (based on the Overdue Rate of the right to receive, for the 2 year period immediately following the Fixed Term, the difference between (A) the fixed rent under such Occupancy Lease as though the Occupancy Tenant had extended the term of such Lease for the first renewal term, and (B) the Basic Rent payable for such period for the Premises under the Master Lease; * * * ." (attached as Exhibit O).

Accordingly, the only relevant contract language limits, but does not prevent Kroger from claiming and obtaining damages against Malease for its costly refusal to relinquish its interests as required by the Leases and the Two-Party Agreements and subsequently ordered by this Court. To the extent proven at trial, Kroger can obtain a judgment against Malease's retained interests in the subject properties—including the money Malease would have been entitled to receive

---

[3] Balkhouse Properties broke its interest in the properties into two distinct parts; one owned by a newly created entity, Balkhouse Associates, which obtained the Ownership interest, and a Master Lease interest that remained with Balkhouse Properties and was then assigned to Malease.

under the Two-Party Agreement, had Malease honored its obligations under the Purchase Option.[4]

Even under Malease's theory, there is nothing in the contract language that precludes Kroger from asserting damages against Malease, and to the extent that Malease retains any interest in the subject properties, Kroger has the right to set out its damages and obtain a judgment against Malease's interest in the subject properties.

### C. Kroger's Damages Are Direct Damages, Not Special Damages, Under Texas Law

Malease asserts that the damages in this case are speculative at best, and therefore, "special" damages. Again, Kroger agrees with Malease that Texas law applies to the issue of the type of damages Kroger demands. Kroger agrees with Malease that under Texas law, breach of contract damages fall into one of two categories: (1) "direct" or "general" damages or (2) "consequential" or "special" damages. *Hycel, Inc. v. American Airlines, Inc.,* 328 F.Supp. 190, 193 (S.D. Tex. 1971).

But Kroger disagrees about the categorization of the damages that it asserts against Malease. The damages are not "speculative lost profits"—the damages are the lost use of Kroger's money plus compound interest. Under any name, money lost on the breached contract itself are classified as "direct" damages. *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471 (Ct. App. Tex. Eastland 2003).

Here, the money that Kroger lost is clearly explained in Mr. Libbert's expert report. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E). Mr. Libbert's report asserts two areas of loss—(1) the difference in rent that Kroger could collect based on Malease's refusal to relinquish its interest in the San Marcos, Texas property, and (2) the loss

---

[4] Malease also cites Article XXIII of the Lease, which is applicable only to acts of God, foreclosures, attachments, levies or executions—none of which are involved here.

associated with the fact that Kroger did not have access to the $11,000,000.00 sale price for purposes of reinvesting it in the market place. Both of these losses are the direct result of Malease's breach.

Because Malease has directly caused these losses with its breach of the lease, specifically, the purchase option, it is classified as "direct" damages. These damages are neither speculative nor imagined. They are the direct result of Malease's breach and can be easily measured based on the rents and the purchase price of the property.

### D. Kroger Did Not Violate the Rules of Civil Procedure, and Kroger is Not Estopped From Presenting Damages Evidence

Malease asserts that Kroger violated Rule 26 of the Federal Rules of Civil Procedure by failing to produce the contract between Kroger and H.E. Butt until February, and therefore, Kroger is precluded from making its damages claims. This is factually incorrect—Kroger did not violate Rule 26.

Rule 26(a) of the Federal Rules of Civil Procedure requires that an expert witness provide a written report containing (1) "a complete statement of all opinions to be expressed and the basis and reasons therefor," and (2) "any exhibits to be used as a summary of or support for the opinions." *See, also, Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882 (6th Cir. 2004).

Mr. Libbert's report contains a complete statement of his opinions that he will express at the damages trial, and his summary spreadsheet exhibit to support those opinions—just as the rule requires. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E).

Kroger provided everything that it was required to provide under the rules. Kroger provided this document as well as all other documents required by Rule 26 or requested by Malease--including many documents that were completely irrelevant but nevertheless requested

in a long and wild fishing expedition for some nefarious purpose on Kroger's part. Kroger complied in every way with Rule 26 and Rule 37, Malease's baseless accusations notwithstanding. Malease cannot hide its head in the sand like an ostrich and expect to gain a benefit. It had every opportunity to request the contract with H.E. Butt and every opportunity to take a meaningful deposition of both Mr. Libbert and Mr. Waldvogel. Malease did none of these things. It is not Kroger's job to make Malease's case for it.

### E. Malease Waived Its New Damages Arguments

This case has been pending a long time, considering that Kroger has had the reasonable expectation that Malease would honor its obligations and would relinquish the three properties under the purchase options on April 1, 2003.

As set out in great detail above, Malease had all of its discovery and Kroger's Motion for Summary Judgment on February 27, 2004 and completed its own Motion and Memorandum Contra to Kroger's motion on April 7, 2004. Malease had all of this time to make its arguments on damages, but did not do so. There is nothing raised in this out-of-time filing that could not have been asserted April 7, 2004.

Now, six months later, Malease wants to assert defenses that it had never raised before and file yet another allegedly dispositive motion on damages issues that it had never addressed in any pleading, never obtained experts to discuss and never adequately prepared for during the schedule the court set. Malease's many failures served to waive these arguments it now tries to assert at this late date.

Waiver is "abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This Court enjoys discretion to find a waiver "if a defendant fails to assert the defense within time limits set by the court or if the court otherwise

finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994); See, also, *Brown v. Crowley*, 312 F.3d 782, 787-88 (6th Cir. 2002). In *Kennedy v. City of Cleveland,* 797 F.2d 297, 300 (6th Cir. 1986), cert. denied, 479 U.S. 1103 (1987), the Sixth Circuit stated, "It also follows that the right is one which can be lost by failure to timely assert it." In a footnote, the Sixth Circuit noted, "Even the exercise of constitutional rights may be limited by procedural rules." *Kennedy,* 797 F.2d 297, 300 at fn. 5. "It is entirely proper for a trial judge in such cases as this to establish a time for the filing of motions challenging the sufficiency of pleadings * * * ." *Kennedy, supra*. "Plainly, if the trial judge places reasonable limits upon the time within which to challenge the sufficiency of the pleadings, the failure of the defendant to take advantage of the opportunity can and should normally work as a waiver of the right, at least absent some appealing reason for making an exception." *Kennedy, supra*.

Here there is no reason for such an exception. Malease had ample opportunity to assert every defense it wished before the March 1, 2004 dispositive motion deadline that was extended to April 7, 2004 at Malease's request. To try to file a new motion at the end of August is absurd and prejudicial to Kroger's rights to end this case and obtain its properties under its properly executed purchase options.

All of this continual delay introduced by Malease is prejudicial to Kroger. Kroger incurs a constant daily amount of damages because it is deprived from the use of the $11 million dollars that it should possess from its consummated deal with H.E. Butt. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E). For these reasons, Malease should be deemed to have waived its arguments asserted in its proposed Motion to Dismiss the damages, and its proposed Motion should be denied.

**V.    Conclusion**

Malease's tardy motion should be dismissed under Rule 16 of the Federal Rules of Civil Procedure for being filed six months past the deadline for dispositive motions. Malease's motion should be denied in any event because these damages were foreseeable at the time the contracts were made, and all the more foreseeable at the time that Malease breached the contracts by failing to honor the purchase options. Malease is incorrect that Kroger is required to allege special damages because these direct damages relate specifically and tangibly to Malease's breach and are neither speculative nor imaginary. Kroger did not violate Rule 26 of the Rules of Civil Procedure and therefore cannot be estopped from presenting its expert, Mr. Libbert, and evidence of damages as stated in Mr. Libbert's report. All of Malease's predicates for its motion are false and accordingly, this Court should deny Malease's motion to dismiss the damages claim.

Respectfully submitted,

/s/ Scott D. Phillips
Scott D. Phillips (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:

Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

**CERTIFICATE OF SERVICE**

       This is to certify that a copy of the foregoing has been sent by ordinary United States mail, postage prepaid on this 16th day of September, 2004 to:

| | |
|---|---|
| R. Gary Winters, Esq. | Robert W. Cinque, Esq. |
| McCaslin, Imbus & McCaslin | Cinque & Cinque |
| 900 Provident Bank Building | 845 3rd Avenue, Suite 1400 |
| 632 Vine Street | New York, NY  10022 |
| Cincinnati, OH 45202-2442 | |

                                          /s/ Scott D. Phillips

CINlibrary/1428997.1