# L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

THE KROGER CO., )
) 
Plaintiff, ) Case No.
)
vs. ) 0-1-02 439
)
MALEASE FOODS CORP., formerly )
known as MALESE FOODS CORP., )
)
Defendant. )
-------------------------------)

DEPOSITION OF LAWRENCE KADISH
Old Westbury, New York
Wednesday, January 21, 2004

Reported by:
KRISTIN KOCH, RPR
JOB NO. 731

Page 94

Kadish

A. I don't recall what -- I don't recall. I might have been very involved with other situations or I may have just been waiting to see what Kroger would do and then I would respond appropriately. I don't remember. It was a few years back.

**Q. Mr. Giobbi, why didn't you contact him at some point in time and say "I am ready to put an offer in to buy Merrill Lynch's position"?**

A. I did. I got sluffed off.

**Q. Why didn't you send a formal demand to him or a formal offer?**

A. I don't recall.

**Q. Do you recall at any point in time after learning that Kroger had bought out Merrill Lynch's position learning either from Mr. Price or some other source that in 2001 or early 2002 Kroger was interested in buying out the master lease?**

A. I'm sorry, I lost you. You have to say it again.

**Q. Any time in late 2001 or 2002 after Kroger bought out Merrill Lynch's position, did**

Page 95

Kadish

**you learn either from Mr. Price or from some other source that Kroger was interested at that point in time in buying out the master lease early?**

A. Yes.

**Q. Your response was what to that inquiry?**

A. Jim Price contacted me.

**Q. And you told him that you weren't interested?**

A. I said, "I don't know. What are they going to offer me?" He said, "well, they will offer you" -- oh, I think I got a letter, or I don't remember if it was a letter or orally. "Well, they will give you the discounted value of the rent you are gonna receive, a few dollars there. They computed it, what you are going to get." And I told him that I am not interested.

**Q. Why weren't you interested?**

A. I couldn't understand what had occurred from the Merrill Lynch standpoint, why I didn't get an opportunity to bid, why I was bypassed. I was under the impression that Kroger may have paid 20 million bucks above the

Page 96

Kadish

mortgage to buy Merrill Lynch's position and the people at Merrill Lynch said, "what are you bothering? What are you going to go to Kadish for? He is never going to pay this kind of money. We got a great price out of Kroger. Don't even bother looking for bids." That's what I assumed happened. Why -- Merrill Lynch has an Achilles heel. They are always concerned about getting criticized for not trying to get the -- and it was -- I was confused on the subject. I didn't understand what had occurred and I was just giving a lot of thought to the subject and wondering if I should explore it further with legal action against Merrill Lynch to find out why I wasn't given an opportunity to bid and had Merrill Lynch done anything improper with the inducement to me of buying four K-Mart properties with a promise that I would be given an opportunity to bid on the Kroger, and that's as clear as I can remember and I think it's accurate as to what went -- what I -- I assumed that Kroger paid such an outrageously high price and I assumed that it had to be like 20 million above the mortgage, 20 million cash above the

Page 97

Kadish

mortgage, that the people at Merrill Lynch said, "what are we going through this bidding process? Kadish will never come close to that. Let's not waste our time. Let's just convey to Kroger."

**Q. You know, don't you, that Kroger want to sell the San Marcos property to Butt?**

A. I found that out recently.

**Q. You knew based on your conversations with Butt that they wanted to buy the property; correct?**

A. Yes.

**Q. Was it your thought that you would refuse to go along with Kroger's purchase option demand in order to demand a premium for them buying out your interest so that they could convey clean title to Butt?**

A. No, I did not track the HE Butt situation. I didn't place any thought as to what HE Butt wanted to do or didn't want to do. I know that they had signed a contract with me to buy the property subject to me delivering, and if that didn't occur, I really didn't know if Butt was still interested in purchasing or would be happy just continuing on with their

Kadish

lease. I had no way of knowing that, nor was I concerned about it.

**Q. So the thought of getting a premium from Kroger so they could convey clean title to Butt --**

A. I don't know what you mean by a "premium." Could you say that question a little clearer?

**Q. Sure. The thought of you being compensated in order to allow Kroger to convey clean title to Butt, that never came into your thought processes; correct?**

A. Correct.

**Q. I think this is clear, but I just want to clarify for the record, and I understand from your counsel that you are still investigating looking into this. Do you know by name anyone from Kroger that did anything improper, either with Mr. Price or someone from Merrill Lynch, that adversely affected your interest?**

A. It appears to me that the party that signed -- what is that, Exhibit 2?

MR. CINQUE: Are you talking about



Kadish

these letters that we marked.

A. (Continuing) James E. Hodge.

**Q. Do you know Mr. Hodge?**

A. No.

**Q. Do you know what, if any, conversations or interaction he was having with Mr. Price or anyone else from Merrill Lynch separate and apart from the fact that his name is on that letter?**

A. I don't remember. The only memory of anybody that I -- other than looking at this letter and this letter signed by Waldvogel, the only name that I remember at Kroger was Keller, who used to work there years ago and then worked for K-Mart and then retired. He was the head of the real estate department, and I didn't know him until he worked for K-Mart, but I don't remember any names at Kroger.

**Q. And, again, just so it is clear, other than the two names that appear on Exhibits 1 and 2, you don't have any other information or knowledge at this point in time as to anything that any individual person from Kroger did or should have done; is that fair?**



**Kadish**

MR. CINQUE: Just to make it clear, we haven't deposed Kroger yet.

MR. PHILLIPS: You have made that crystal clear.

A. As of today, no.

(Kadish Exhibit 7, Complaint for Declaratory Judgement, Injunction, and Breach of Contract, marked for identification.)

**Q. Mr. Kadish, I have handed you Exhibit 7, which is a copy of the Complaint that we filed in this action. I am not going to ask you any questions about the Complaint. I am really interested in the letters that are attached, Exhibits 1 through 3 towards the end. Do you see those? There is a letter from Kroger dated February 18, 2002. Do you have that document in front of you, sir?**

A. Yes.

**Q. This is a letter dated February 18, 2002, to, among others, yourself, and other parties, and it's sent by James Hodge, vice president of Kroger; is that correct?**

A. Yes.



Kadish

**Q. Do you recall receiving this document or this letter on or about February 18, 2002?**

A. Well, it says "certified mail," so I must have received it.

**Q. This is Kroger's attempt to exercise the purchase option, Article 35, of the April 1983 lease; correct?**

A. Yes.

**Q. Then if you turn to the next letter, it is a letter dated March 14, 2002, and this is a letter that you sent to Kroger on or about March 14, 2002; is that correct?**

A. Yes.

**Q. I notice in this letter, if you want to review it, take all the time you need, but I notice in this letter there is nothing in here about -- there is no objection to Kroger improperly taking out Merrill Lynch's position; is that correct?**

MR. CINQUE: Objection to the form. Look at the third paragraph. That's not fair.

MR. PHILLIPS: I agree with your counsel. Let me rephrase the question.