M

# L E A S E

BALKHOUSE PROPERTIES CORP.

Lessor

AND

THE KROGER CO.

Lessee

Dated as of April 1, 1983

Covering Property Located in

San Marcos, Texas

PM 00888

# TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| I. | Leased Property; Term...................... | 1 |
| II. | Definitions............................... | 2 |
| III. | Basic Rent; Additional Rent; Prepayment of Basic Rent........................... | 8 |
| IV. | Payment of Impositions; Notice of Impositions; Adjustment of Impositions; Utility Charges; Insurance Premiums...................... | 11 |
| V. | No Termination, Abatement, etc............. | 13 |
| VI. | Ownership of the Leased Property; Lessee's Equipment...................... | 14 |
| VII. | Condition of the Leased Property; Use of the Leased Property............... | 14 |
| VIII. | Compliance with Legal and Insurance Requirements, Instruments, etc........... | 15 |
| IX. | Maintenance and Repair; Encroachments, Restrictions, etc.......... | 16 |
| X. | Alterations, Substitutions and Replacements; Salvage; Construction of Additional Facilities.................... | 17 |
| XI. | Reimbursement of Additional Facility Cost... | 19 |
| XII. | Liens........................................ | 23 |
| XIII. | Permitted Contests........................ | 25 |
| XIV. | Insurance; Policy Provisions and Certificates; Subrogation; Other Insurance................................ | 26 |

(i)

PM 00889

TABLE OF CONTENTS
(Continued)

| Article | | Page |
|---|---|---|
| XV. | Notice of Damage, Destruction or Taking; Condemnation Awards; Taking for Temporary Use; Other Taking; Damage or Destruction; Repair or Replacement...................... | 29 |
| XVI. | Termination of Lease upon Discontinuance of Operations on the Leased Property................... | 34 |
| XVII. | Events of Default........................... | 35 |
| XVIII. | Lessor's Right to Cure Lessee's Default................................. | 42 |
| XIX. | Provisions Relating to Purchase of the Leased Property................... | 43 |
| XX. | Renewal Terms.............................. | 43 |
| XXI. | Holding Over............................... | 44 |
| XXII. | No Recourse to Lessor...................... | 44 |
| XXIII. | Loss of Benefit............................ | 44 |
| XXIV. | Indemnification by Lessee.................. | 45 |
| XXV. | Subletting and Assignment; Attornment....... | 46 |
| XXVI. | Officer's Certificates and Financial Statements...................... | 47 |
| XXVII. | Lessor's Right to Inspect.................. | 48 |
| XXVIII. | No Waiver by Lessor; Foreclosure .......... | 48 |
| XXIX. | Remedies Cumulative........................ | 48 |
| XXX. | Acceptance of Surrender.................... | 49 |
| XXXI. | No Merger of Title......................... | 49 |

(ii)

PM 00890

# TABLE OF CONTENTS
## (Continued)

| Article | | Page |
|---|---|---|
| XXXII. | Conveyance by Lessor | 49 |
| XXXIII. | Quiet Enjoyment | 49 |
| XXXIV. | Notices | 50 |
| XXXV. | Lessee's Purchase Option | 50 |
| XXXVI. | Appraisers | 51 |
| XXXVII. | Investment Tax Credit | 52 |
| XXXVIII. | Miscellaneous | 53 |
| XXXIX. | Memorandum of Lease | 53 |

PM 00891

LEASE

LEASE (this "Lease") is dated as of the 1st day of April, 1983, and is between BALKHOUSE PROPERTIES CORP. ("Lessor"), a Tennessee corporation, having its principal address c/o Merrill Lynch Leasing Inc., One Liberty Plaza, 165 Broadway, New York, New York 10080 and THE KROGER CO. ("Lessee"), an Ohio corporation having its principal executive offices at 1014 Vine St., Cincinnati, Ohio 45202.


ARTICLE I


1. Leased Property; Term. Upon and subject to the terms and conditions hereinafter set forth, Lessor leases to Lessee and Lessee rents from Lessor all of Lessor's rights and interest in and to the following real property (collectively, the "Leased Property"):

(a) the parcel of land located in the City of San Marcos, County of Hays, State of Texas, more particularly described in Schedule A hereto (the "Land"),

(b) all buildings, structures, Fixtures (as hereinafter defined) and other land improvements (except as provided in Section 10.3) including, but not limited to, alleyways and connecting tunnels, sidewalks, utility pipes, conduits and lines (on-site and off-site), parking areas and roadways appurtenant to such buildings and structures presently or hereafter situated upon the Land (collectively, the "Leased Improvements"),

(c) all easements, rights and appurtenances relating to the Land and the Leased Improvements, and

(d) all equipment, machinery, fixtures, and other items of property, including all components thereof, now or hereafter located in, on or used in connection with, the Leased Improvements and necessary to the operation or maintenance thereof,

PM 00892

including, without limitation, all furnaces, boilers, heaters, electrical equipment, heating, plumbing, ventilating, refrigerating, waste disposal, air-cooling and air-conditioning apparatus, sprinkler systems and fire and theft protection equipment (other than Lessee's Equipment, as described in Article VI) and which are hereby deemed by the parties hereto to constitute real estate under the laws of the state in which the Leased Property is located, together with all replacements, modifications, alterations and additions thereto (collectively, the "Fixtures"),

SUBJECT, HOWEVER, to the matters set forth in Schedule A; to have and to hold for a fixed term of twenty (20) years (the "Fixed Term") commencing on and as of April 1, 1983 (the "Commencement Date") and ending at midnight on April 1, 2003, and the renewal terms provided for in Article XX, unless this Lease is sooner terminated as hereinafter pro-vided.

## ARTICLE II

2. Definitions. For all purposes of this Lease, except as otherwise expressly provided or unless the context otherwise requires, (i) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular, (ii) all account-ing terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles as at the time applicable, (iii) all references in this instrument to designated "Articles", "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of this instrument and (iv) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Lease as a whole and not to any particular Article, Section or other subdivision:

Additional Basic Rent:  As defined in Section 11.2.

Additional Facilities:  One or more new buildings or one or more additional structures annexed to any portion

2.

PM 00893

of any of the Leased Improvements which are constructed on
any parcel of the Land during the Term.  No replacement,
restoration or rebuilding of the Leased Improvements or any
portion thereof shall be deemed an Additional Facility.

Additional Facility Cost:  As defined in Section
11.1.

Additional Rent:  As defined in Article III.

Alterations:  As defined in Section 10.1.

Bank:  As defined in Section 15.1.

Basic Rent:  As defined in Article III.

Business Day:  Each Monday, Tuesday, Wednesday, Thursday
and Friday which is not a day on which national banks in the
City of New York, New York or the City of Nashville, Tennessee
are authorized, or obligated, by law or executive order to
close.

Code:  As defined in Article XXXVII.

Commencement Date:  As defined in Article I.

Consent:  A Consent and Agreement being executed
by Lessee contemporaneously herewith, as the same may from
time to time be supplemented or amended.

Consolidated Net Worth:  The aggregate of capital
and surplus of Lessee and its consolidated Subsidiaries,
as consolidated in accordance with generally accepted
accounting principles, including in surplus the balance
of the current profit and loss account not transferred
to surplus, all determined in accordance with generally
accepted accounting principles, but excluding from capital
any stock subscribed for but unissued and deducting from
such aggregate any stock discount and expense and any
unamortized debt discount and expense in respect of any
surplus deficit, and not including any surplus resulting
from any write-up of assets (i.e., any increase over book
value for any reason other than good will).

Cost:  The aggregate cost to Lessor of the Leased
Property, including capitalized legal, financial and miscel-
laneous expenses incurred in connection with the purchase,
construction and financing thereof, which at the time is
subject to this Lease.

3.

PM 00894

Default:  Any condition or event which constitutes or would constitute an Event of Default either with or without notice or lapse of time, or both.

Deferred Rent:  As defined in Section 3.1.

Economic Termination Purchase Date:  As defined in Article XVI.

Event of Default:  As defined in Article XVII.

Fair Market Value:  The fair market value of the Leased Property assuming the same is unencumbered by this Lease and determined in accordance with the appraisal procedures set forth in Article XXXVI.

Fixed Term:  As defined in Article I.

Fixtures:  As defined in Article I.

Impositions:  Collectively, all taxes (including, without limitation, all ad valorem, sales and use, single business, gross receipts, transaction privilege or similar taxes) and all taxes irrespective of the entity levying same including, but not limited to, hospital districts, junior college districts, community college districts, municipal utility districts, water improvement districts, public school districts, the Lower Colorado River Authority, underground water conservation districts, drainage districts, conservation and reclamation districts, fresh water supply districts, irrigation districts, and levee improvement districts, assessments (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Term), ground rents, water, sewer or other rents and charges, excises, levies, fees (including, without limitation, license, permit, inspection, authorization and similar fees), and all other governmental charges, in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen, of every character in respect of the Leased Property and/or the Basic Rent or Additional Rent (including all interest and penalties thereon), which at any time prior to, during or in respect of the Term hereof may be assessed or imposed on or in respect of or be a lien upon (a) Lessor or Lessor's Assignees, if any, (b) the Leased Property or any part thereof or any rent therefrom or any estate, right, title or interest therein, or (c) any occupancy, operation, use or possession of, or sales from, or activity conducted on, or in connection with the Leased Property or the leasing or use of the Leased Property or any part thereof, or the acquisition or financing of the acquisition of the Leased Property.  Except as therein described, the taxes, assessments, levies or charges referred to in the last sentence of Article XXIV do not constitute "Impositions" and are not intended to fall within the scope of the foregoing definition.

4.

PM 00895

<u>Indenture</u>:  Any mortgage, deed of trust or other security agreement constituting a mortgage lien on, or deed of trust of, the Leased Property, as the same may be modified, amended or supplemented from time to time, which may be executed as security for any indebtedness of Lessor.

<u>Insurance Requirements</u>:  All terms of any insurance policy required by this Lease or applicable to the Leased Property, all requirements of the issuer of any such policy, and all regulations and then current standards applicable to or affecting the Leased Property or any use or condition thereof, which may, at any time, be recommended by the National Fire Protection Association (or any other body exercising similar functions).

<u>Land</u>:  As defined in Article I.

<u>Lease Amendment</u>:  As defined in Section 11.2.

<u>Leased Improvements; Leased Property</u>:  Each as defined in Article I.

<u>Legal Requirements</u>:  All federal, state, county, municipal and other governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions affecting either the Leased Property or the construction, use or alteration thereof, whether now or hereafter enacted and in force, including any which may (i) require repairs, modifications or alterations in or to the Leased Property or (ii) in any way limit the use and enjoyment thereof, and all permits, licenses and authorizations and regulations relating thereto, and all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Lessee, at any time in force affecting the Leased Property.

<u>Lending Institution</u>:  Any insurance company, commercial or savings bank, national banking association, savings and loan association, employees' welfare, pension or retirement fund or system, corporate profit sharing or pension trust, college or university or real estate investment trust having a net worth of at least $50,000,000.

<u>Lessee's Equipment</u>:  As defined in Article VI.

<u>Lessor's Note</u>:  The mortgage note issued by Lessor to Merrill Lynch Corporate Pass-Through Securities, Inc. and secured by the lien of a first mortgage or deed of trust of the Leased Property.

5.

PM 00896

Officer's Certificate:  A certificate of Lessee signed by (i) the president or (ii) any vice president or (iii) the treasurer, or (iv) another officer authorized to so sign by the board of directors or regulations of Lessee.

Overdue Rate:  On any date, the rate of 13.375% per annum.

Payment Date:  Any due date for the payment of the installments of Basic Rent.

Purchase Date:  As defined in Section 15.3(b).

Rent:  Collectively, the Basic Rent, Deferred Rent and Additional Rent.

Request:  As defined in Section 11.1.

Shareholders' Equity:  The sum of the outstanding common and preferred stock of Lessee valued at par plus any additional paid in capital and retained earnings.

Significant Subsidiary:  A Subsidiary consolidated for financial reporting purposes with Lessee in accordance with generally accepted accounting principles meeting any one of the following conditions:

a)  the assets of the Subsidiary, or the investments in and advances to the Subsidiary by Lessee and the Lessee's other Subsidiaries, exceed twenty-five (25) percent of the assets of the Lessee and its Subsidiaries on a consolidated basis;

b)  the sales and operating revenues of the Subsidiary exceed twenty-five (25) percent of the sales and operating revenues of the Lessee and the Lessee's Subsidiaries on a consolidated basis; or

c)  the Subsidiary is the parent of one or more Subsidiaries and, together with such subsidiaries would, if considered in the aggregate, constitute a Significant Subsidiary.

Subsidiaries:  Corporations, each of which Lessee owns, directly or indirectly, more than 50% of the voting stock.

Taking:  A taking or voluntary conveyance during the Term hereof of all or part of the Leased Property, or any

6.

PM 00897

interest therein or right accruing thereto or use thereof, as the result of, or in settlement of any condemnation or other eminent domain proceeding affecting the Leased Property whether or not the same shall have actually been commenced.

Term:  Collectively, the Fixed Term and the renewal terms, or any of them, as the context may require.

Unavoidable Delays:  Delays due to strikes, lock-outs, inability to procure materials, power failure, acts of God, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or other causes beyond the control of Lessee, provided that lack of funds shall not be deemed a cause beyond the control of Lessee.

Year:  A twelve (12) month period commencing on the Commencement Date or on an annual anniversary date thereof, as the case may be.

7.

PM 00898

# ARTICLE III

3.1. Basic Rent. Lessee shall pay to Lessor in lawful money of the United States of America which shall be legal tender for the payment of public and private debts at Lessor's address set forth above or at such other place in the United States or to such other persons, firms or corporations as Lessor from time to time may designate in writing, a net basic rental for the Leased Property during the Term which shall accrue as set forth in this Section 3.1 and shall be payable as set forth in Schedule B. Basic rent shall accrue during the Fixed Term at the rate of $1,017,802.77 for each semi-annual period. Such accrued basic rent is hereinafter referred to as "Basic Rent". Amounts in respect of Basic Rent during the Term shall be paid in arrears by Lessee to Lessor in immediately available funds in the amounts set forth in Schedule B in consecutive semi-annual installments commencing on the date occurring six months after the Commencement Date and continuing thereafter on the first day of April and October each year, through and including April 1, 2003, or, if such day is not a Business Day, then on the next Business Day prior to such date, so that Lessor shall receive immediately available funds in such location in the United States as Lessor may designate on each such date. Lessee shall remain fully and unconditionally liable for the difference between (a) accrued Basic Rent under this Lease and (b) rent payments actually made in accordance with Schedule B (the aggregate amount of such difference, from time to time, "Deferred Rent"). At such time as any rent payment made in accordance with Schedule B is in excess of accrued Basic Rent for a period in respect of which such rent payment is made, Lessee's unconditional liability for Deferred Rent shall thereupon be reduced by the amount of such excess. If for any reason this Lease shall terminate prior to the date on which the Fixed Term is to expire, on the date of such termination Lessee shall pay to Lessor in immediately available funds, in addition to any other amounts Lessee may be required to pay to Lessor by the terms and provisions of this Lease, all unpaid Deferred Rent. The Basic Rent shall be paid absolutely net to Lessor, so that this Lease shall yield to Lessor the full amount of the Basic Rent over the Term, all as more fully set forth in Article V.

8.

PM 00899

3.2.  Additional Rent.  In addition to the Basic Rent, Lessee shall also pay and discharge as additional rent (collectively, the "Additional Rent") all other amounts, liabilities, obligations and Impositions which Lessee assumes or agrees to pay under this Lease, and in the event of any failure on the part of Lessee to pay any of the foregoing, every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof and Lessor shall have all legal, equitable and contractual rights, powers and remedies provided either in this Lease or by statute or otherwise as in the case of non-payment of the Basic Rent.  If any installment of Basic Rent or Additional Rent shall not be paid within five (5) days after its due date, Lessee shall pay Lessor on demand, as Additional Rent, a late charge (to the extent permitted by law) computed at the Overdue Rate (or at the maximum rate permitted by law, whichever is the lesser) on the amount of such installment, from the due date of such installment to the date of payment thereof; provided, however, no late charge shall be payable in respect of any item of Additional Rent unless Lessee shall have had knowledge of the existence and the amount payable therefor prior to the due date thereof.

3.3.  Prepayment of Basic Rent.  Anything hereinabove to the contrary notwithstanding, if (i) Lessor or Merrill Lynch Leasing Inc. shall not make a Rental Deficiency Deposit in accordance with the terms of (and as described in) that certain Lease Rental Security Agreement, dated as of April 1, 1983, among Lessor, Lessee and Merrill Lynch Leasing Inc., the parent company of Lessor, or (ii) if such deposit is made by Merrill Lynch Leasing Inc. and the payment of such deposit is avoided, reduced or refunded in whole or in part as a preference by virtue of any provisions of United States federal bankruptcy, insolvency or liquidation laws, or any other similar law of any governmental unit, Lessee agrees to prepay Basic Rent hereunder in an amount equal to the difference, if any, between the debt service due on Lessor's Note for the applicable semi-annual installment due thereunder and the Basic Rent otherwise due under this Lease for the corresponding date.  If the Rental Deficiency Deposit is not made in accordance with subparagraph (i) above, such prepayment of Basic Rent shall be made in immediately available funds on or before the due date for the applicable semi-annual installment of debt service on Lessor's Note; if such Deposit is avoided, reduced or refunded in whole or in part in accordance with subparagraph (ii) above, such prepayment of Basic Rent shall be made in immediately available funds promptly upon notice thereof given to Lessee.  Any failure by Lessee to make any prepayment of Basic Rent as provided

9.

PM 00900

## ARTICLE IV

4.1.  Payment of Impositions.  Subject to Article XIII relating to permitted contests, Lessee shall pay, or cause to be paid, all Impositions before any fine, penalty, interest or cost may be added for non-payment, such payments to be made directly to the taxing authorities where feasible, and will promptly, upon request, furnish to Lessor copies of official receipts or other satisfactory proof evidencing such payments.  Lessee's obligation to pay such Impositions shall be deemed absolutely fixed upon the date such Impositions, respectively, become a lien upon the Leased Property or any part thereof.  If any such Imposition may, at the option of the taxpayer, lawfully be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Lessee may pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and in such event, shall pay such installments during the Term hereof as the same respectively become due and before any fine, penalty, premium, further interest or cost may be added thereto.  Lessee, at its expense, shall prepare  and file all tax returns and reports in respect of any Imposition as may be required by governmental authorities. If any refund shall be due from any taxing authority in respect of any Imposition paid by Lessee, the same shall be paid over to or retained by Lessee if no Event of Default shall have occurred hereunder.  If an Event of Default shall have occurred which has not been waived prior to the time of receipt of any such refund, the same shall be applied in the manner specified in Article XVI of the Indenture.

4.2.  Notice of Impositions.  Lessor shall give prompt notice (i) to Lessee of all Impositions payable by Lessee hereunder of which Lessor at any time has knowledge, and (ii) upon request of Lessee, to any taxing authority that all bills for any future taxes and assessments levied during the term of this Lease should be sent directly to Lessee, but Lessor's failure to give any such notice shall in no way diminish Lessee's obligations hereunder to pay such Impositions promptly upon receiving notice thereof.

4.3.  Adjustment of Impositions.  Impositions imposed in respect of the tax-fiscal period during which the Term terminates shall be adjusted and prorated between Lessor and Lessee, whether or not such Imposition is imposed before or after such termination, and Lessee's obligation to pay its prorated share thereof shall survive such termination.

11.

4.4.    <u>Utility Charges</u>.  Lessee shall pay or cause to be paid all charges for electricity, power, gas, oil, water and other utilities used in the Leased Property.

4.5.    <u>Insurance Premiums</u>.  Lessee shall pay or cause to be paid all premiums for insurance coverage required to be maintained pursuant to Article XIV.

12.

PM 00902

ARTICLE V

5. <u>No Termination, Abatement, etc.</u> Except as other-
wise specifically provided in this Lease, Lessee, to the
extent permitted by law, shall remain bound by this Lease in
accordance with its terms and shall neither take any action
to modify, surrender or terminate the same, nor seek nor be
entitled to any abatement, deduction, deferment or reduction
of Rent, or set-off against the Rent, nor shall the respec-
tive obligations of Lessor and Lessee be otherwise affected
by reason of (a) any damage to, or destruction of, the
Leased Property or any portion thereof from whatever cause
or any Taking of the Leased Property or any portion thereof,
(b) the lawful or unlawful prohibition of, or restriction
upon, Lessee's use of the Leased Property or any portion
thereof, the interference with such use by any person,
corporation, partnership or other entity, or by reason of
any eviction by paramount title, or Lessee's acquisition of
ownership of the Leased Property or Lessor's interest
therein otherwise than pursuant to an express provision of
this Lease, (c) any claim which Lessee has or might have
against Lessor or by reason of any default or breach of any
warranty by Lessor under this Lease or any other agreement
between Lessor and Lessee, or to which Lessor and Lessee are
parties, (d) any bankruptcy, insolvency, reorganization,
composition, readjustment, liquidation, dissolution, winding
up or other proceedings affecting Lessor or any assignee or
transferee of Lessor, or any action with respect to this
Lease that may be taken by a trustee or receiver of Lessor
or any assignee of Lessor or by any court in any such
proceeding, or (e) for any other cause whether similar or
dissimilar to any of the foregoing.  To the extent permitted
by applicable law, Lessee hereby specifically waives all
rights, arising from any occurrence whatsoever, which may
now or hereafter be conferred upon it by law to (i) modify,
surrender or terminate this Lease or quit or surrender the
Leased Property or any portion thereof, or (ii) entitle
Lessee to collect any amount due to Lessee from Lessor by
any abatement, reduction, suspension or deferment of the
Rent or other sums payable by Lessee hereunder, except as
otherwise specifically provided in this Lease.  The obliga-
tions of Lessor and Lessee hereunder shall be separate and
independent covenants and agreements and the net Basic Rent
and Additional Rent and all other sums payable by Lessee
hereunder shall continue to be payable in all events unless
the obligations to pay the same shall be terminated pursuant
to the express provisions of this Lease.

13.

PM 00903

## ARTICLE VI

6.1.  Ownership of the Leased Property.  Lessee acknowledges that the Leased Property is the property of Lessor and that Lessee has only the right to the possession and use of the Leased Property upon the terms and conditions of this Lease.

6.2.  Lessee's Equipment.  Lessee may, at its expense, install or assemble or place on the Land or in the Leased Improvements, and remove and substitute, any items of machinery, equipment, furnishings, computers or trade fixtures or other personal property owned or leased by Lessee and used or useful in Lessee's business, including movable walls or partitions (collectively, "Lessee's Equipment"), and Lessee shall remove the same upon the expiration or prior termination of the Term; provided, however, that Lessee shall have no right to remove any item which constitutes a Fixture.  All Lessee's Equipment shall be and remain the property of Lessee, provided that any of Lessee's Equipment not removed by Lessee upon the expiration or earlier termination of this Lease shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without first giving notice thereof to Lessee and without obligation to account therefor.  All costs and expenses incurred in removing, storing and disposing of Lessee's Equipment shall be paid by Lessee.  Lessee shall, at its expense, restore the property to its former condition, and repair all damage to the Leased Property caused by the removal of Lessee's Equipment, whether effected by Lessee or Lessor.  Lessor shall not be responsible for any loss or damage to Lessee's Equipment.

## ARTICLE VII

7.1.  Condition of the Leased Property.  Lessee acknowledges receipt and delivery of possession of the Leased Property and that Lessee has examined title to, and the condition of, the Leased Property prior to the execution and delivery of this Lease and has found the same to be in good order and repair and satisfactory for all purposes hereunder.  Lessee is renting the Leased Property "as is" in its present condition.  LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IN RESPECT OF THE

14.

LEASED PROPERTY OR ANY PART THEREOF, EITHER AS TO ITS FIT-
NESS FOR USE, DESIGN OR CONDITION FOR ANY PARTICULAR USE
OR PURPOSE OR OTHERWISE, AS TO QUALITY OF THE MATERIAL OR
WORKMANSHIP THEREIN, LATENT OR PATENT, OR AS TO LESSOR'S
TITLE THERETO OR OTHERWISE, IT BEING AGREED THAT ALL SUCH
RISKS ARE TO BE BORNE BY LESSEE.  LESSEE ACKNOWLEDGES
THAT THE LEASED PROPERTY HAS BEEN INSPECTED BY LESSEE AND
IS SATISFACTORY TO IT.

   7.2.  Use of the Leased Property.  Lessee may use
the Leased Property for any lawful purpose.  Lessee agrees
that it will not permit any unlawful occupation, business or
trade to be conducted on the Leased Property or any use to
be made thereof contrary to any Legal Requirements or
Insurance Requirements applicable thereto.  Lessee shall not
use or occupy or permit the Leased Property to be used or
occupied, nor do or permit anything to be done in or on the
Leased Property or any part thereof, in a manner that may
make it impossible to obtain fire or other insurance thereon
which Lessee is, or may be, required to furnish hereunder,
or that will cause or be likely to cause structural injury
to any of the Leased Improvements, or that will constitute a
public or private nuisance or waste.


                      ARTICLE VIII


   8.  Compliance with Legal and Insurance Requirements,
Instruments, etc.  Subject to Article XIII relating to
permitted contests, Lessee, at its expense, shall promptly
(a) comply in all material respects with all Legal Require-
ments and in all material respects with all Insurance
Requirements in respect of the use, operation, maintenance,
repair and restoration of the Leased Property, whether or
not compliance therewith shall require structural changes in
any of the Leased Improvements or interfere with the use and
enjoyment of the Leased Property and (b) procure, maintain
and comply with all licenses and other authorizations
required for any use of the Leased Property then being made,
and for the proper erection, installation, operation and
maintenance of the Leased Improvements or any part thereof.


                         15.

## ARTICLE IX

9.1.  <u>Maintenance and Repair</u>.  (a)  Lessee, at its
expense, shall keep the Leased Property and all private
roadways, sidewalks and curbs appurtenant thereto in
good order and repair (ordinary wear and tear excepted),
and subject to the provisions of subsection 15.3(b), with
reasonable promptness, make all necessary and appropriate
repairs thereto of every kind and nature, whether interior
or exterior, structural or non-structural, ordinary or
extraordinary, foreseen or unforeseen or arising by reason
of a condition existing prior to the commencement of the
Term of this Lease (concealed or otherwise).  All repairs
shall, to the extent possible, be at least equivalent in
quality to the original work.  Lessee shall not take or omit
to take any action the taking or omission of which might
materially impair the value or the usefulness of the
Leased Property or any part thereof or commit any waste
of the Leased Property or any part thereof.

(b)  Lessor shall not under any circumstances be
required to build any improvements on the Leased Property,
or to make any repairs, replacements, alterations or renewals
of any nature or description to the Leased Property, whether
ordinary or extraordinary, structural or non-structural,
foreseen or unforeseen, or to make any expenditure whatso-
ever in connection with this Lease, or to maintain the
Leased Property in any way.  Lessee hereby waives, to the
extent permitted by law, the right to make repairs at the
expense of Lessor pursuant to any law in effect at the time
of the execution of this Lease or hereafter enacted.

(c)  Nothing contained in this Lease and no action or
inaction by Lessor shall be construed as (i) constituting
the consent or request of Lessor, expressed or implied, to
any contractor, subcontractor, laborer, materialman or
vendor to or for the performance of any labor or services or
the furnishing of any materials or other property for the
construction, alteration, addition, repair or demolition of
or to the Leased Property or any part thereof, or (ii)
giving Lessee any right, power or permission to contract for
or permit the performance of any labor or services or the
furnishing of any materials or other property in such
fashion as would permit the making of any claim against
Lessor in respect thereof or to make any agreement that may
create, or in any way be the basis for, any right, title,
interest, lien, claim or other encumbrance upon the estate
of Lessor in the Leased Property.

16.

(d)  Unless Lessor shall convey the Leased Property to Lessee pursuant to the provisions of this Lease, Lessee shall, upon the expiration or prior termination of the Term, vacate and surrender the Leased Property to Lessor in the condition in which the Leased Property was originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or required by the provisions of this Lease and except for ordinary wear and tear.

9.2.  Encroachments, Restrictions, etc.  If any of the Leased Improvements shall, at any time, encroach upon any property, street or right-of-way adjacent to the Leased Property, or shall violate the agreements or conditions contained in any restrictive covenant or other agreement affecting the Leased Property, or any part thereof, or shall impair the rights of others under any easement or right-of-way to which the Leased Property is subject, then promptly upon the request of Lessor or at the behest of any person affected by any such encroachment, violation or impairment, Lessee shall, at its expense, subject to its right to contest the existence of any encroachment, violation or impairment and in such case, in the event of an adverse final determination, either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation or impairment, whether the same shall affect Lessor or Lessee or (ii) make such changes in the Leased Improvements and take such other actions as shall be necessary to remove such encroachment and to end such violation or impairment, including, if necessary, the alteration of any of the Leased Improvements.  Any such alteration shall be made in conformity with the requirements of Section 10.1.


ARTICLE X


10.1.  Alterations, Substitutions and Replacements. Lessee, at its expense, may at any time and from time to time make alterations of the Leased Improvements or any part thereof and substitutions and replacements for the same (collectively, "Alterations"), provided that (a) the market value of the Leased Property shall not be reduced or its usefulness impaired, (b) the work shall be done expeditiously and in a good and workmanlike manner, (c) the plans and specifications for any single alteration with

17.

PM 00907

an estimated cost in excess of $250,000 shall be approved in
writing by Lessor, such approval not to be unreasonably
withheld; provided, however, that if the Lessee shall not
have received either approval or rejection of any such plans
and specifications within 60 days after delivery of the same
to Lessor, such plans and specifications shall be conclu-
sively deemed approved for all purposes hereof; (d) Lessee
shall comply with all Legal Requirements and Insurance
Requirements, if any, applicable to the work, (e) except in
the case of Alterations estimated to cost less than $250,000,
unless Lessee's Shareholders' Equity exceeds $100,000,000,
no work on such Alterations shall commence unless Lessee
shall have first furnished Lessor with such surety bonds or
other security acceptable to Lessor as shall assure that
the cost of completing such Alterations shall be met, and
(f) Lessee shall promptly pay all costs and expenses and
discharge any and all liens arising in respect of the work.
All Alterations shall immediately become and remain the
property of Lessor, shall be deemed part of the Leased
Property, and shall be subject to all of the terms and
provisions of this Lease.  Except with the prior written
consent of Lessor, which consent shall not be unreasonably
withheld, no Alterations shall be made which would tie in
or connect any Leased Improvements on the Leased Property
with any other improvements on property adjacent to the
Leased Property (including, without limitation, the tie-ins
of buildings or other structures or utilities).

   10.2.  Salvage.  All materials which are scrapped
or removed in connection with the making of either Altera-
tions permitted by Section 10.1 or repairs required by
Article IX may be dealt with by Lessee as its own property
and Lessee shall be entitled to all salvage resulting
therefrom.

   10.3.  Construction of Additional Facilities.  Subject
to the requirements of Section 10.1, Lessee, at its expense,
may at any time hereafter construct Additional Facilities.
Until the expiration or earlier termination of this Lease or
until the cost of such Additional Facilities is financed by
Lessor pursuant to Article XI, beneficial title for tax
purposes to any Additional Facilities shall remain solely
in Lessee and Lessee alone shall be entitled to deduct all
depreciation on Lessee's income tax returns with respect to

18.

PM 00908

such Additional Facilities.  In case the estimated cost of such Additional Facilities exceeds $250,000 the same must be constructed under the supervision of a qualified architect or engineer, and prior to the commencement of any work thereon, if the estimated cost thereof exceeds $250,000, notice of the amount of such estimate shall be given to Lessor in writing.

## ARTICLE XI

11.1.  Reimbursement of Additional Facility Cost.  If no Event of Default shall have occurred that has not been waived, Lessee, at any time and from time to time during the Fixed Term, may request Lessor (a "Request") to provide funds, in amounts not less than Two Hundred Fifty Thousand ($250,000) Dollars for each Request, to pay all or any portion of the cost of Additional Facilities constructed during the twelve-month period immediately preceding, or to be constructed during the twelve-month period subsequent to, the date of any such Request, and not reimbursed pursuant to this Article; provided, however, that no funds shall be required to be advanced pursuant to any such Request until construction of such Additional Facilities has been substan- tially completed.  The cost of the Additional Facilities reimbursed to Lessee under this Article XI (the "Additional Facility Cost"), for all purposes of this Lease, may include (a) the cost of construction of the Additional Facilities, including site acquisition, preparation and improvement, materials, labor, supervision, design, engineering and architectural services, the cost of any Fixtures, the cost of construction financing and miscellaneous costs approved by Lessor, (b) if agreed by Lessor in writing, in advance, the cost to purchase or to lease (but only during the construction period) of any land contiguous to the Leased Property for the purpose of placing thereon the Additional Facilities or any portion thereof or for providing means of access thereto, or parking facilities therefor, including the cost of surveying the same, (c) the cost of insurance, real estate taxes, water and sewer charges and other carry- ing charges for such Additional Facilities during construc- tion, (d) cost of title insurance, (e) fees and expenses of counsel, (f) filing, registration and recording taxes and fees, (g) documentary stamp taxes, if any, and (h) the amounts payable by Lessee to Lessor pursuant to Section 11.5.  In no event shall the portion of the Additional Facility Cost comprised of land, if any, materials, labor charges and fixtures be less than ninety percent (90%) of the total amount of such cost.

19.

PM 00909

11.2.  Each Request shall be accompanied by an Officer's Certificate setting forth (a) a description of the Additional Facilities, (b) in reasonable detail, either the Additional Facility Cost or an estimate thereof, and (c) the willingness of Lessee to amend this Lease upon reimbursement of the Additional Facility Cost by executing and delivering an amendment (the "Lease Amendment") to this Lease to provide for (i) payment of additional annual Basic Rent ("Additional Basic Rent") during the balance of the Fixed Term in an amount which will amortize the Additional Facility Cost over such period, together with interest thereon as hereinafter provided, (ii) increase the Cost of the Leased Property by the amount of the Additional Facility Cost and (iii) such other matters as may be necessary or appropriate.

11.3.  Lessor may, but shall be under no obligation to, obtain the necessary funds to meet the Request.  Within forty-five (45) days after receipt of the Request, Lessor shall advise Lessee whether or not Lessor is prepared to reimburse the Additional Facility Cost and, if so, the interest rate and other payment terms on which the Additional Basic Rent would be based, together with any other terms and conditions upon which Lessor would be willing to effect such reimbursement.  If the Request has been denied or withdrawn, this Lease shall continue in full force and effect without modification.

11.4.  If Lessor has agreed to do so, Lessor shall reimburse Lessee, or cause Lessee to be reimbursed, for the Additional Facility Cost, but only upon compliance by Lessee with all of the requirements of the Lending Institution, if any, advancing all or any portion of the Additional Facility Cost for funding its commitment and, in addition, upon delivery by Lessee to Lessor and such Lending Institution, if any, of the following:

(a)  an Officer's Certificate, accompanied by a certificate of the supervising architect or engineer as to the matters specified in clauses (i) and (iii) below, confirming the Additional Facility Cost specified in the Request and certifying that (i) the Additional Facilities have been (A) constructed in compliance with all applicable Legal Requirements and Insurance Requirements and all bills for labor and materials in connection with the construction thereof have been paid in full except for amounts specified therein, if any, as to which arrangements have been made for prompt

20.

PM 00910