# M

# (Part 1 of 2)

payment after receipt of funds from Lessor and prior to
the expiration of any retainage period provided for in
the applicable contract and (B) completed in accordance
with plans and specifications prepared for Lessee, and
approved by Lessee, in a good and workmanlike manner,
in conformity with good construction and engineering
practice; (ii) the Additional Facilities have been
accepted by Lessee for all purposes of this Lease and
there has been no material damage to the Additional
Facilities nor is any condemnation or eminent domain
proceeding pending with respect thereto; (iii) all
permits, licenses and certificates (including permanent,
unconditional certificates of occupancy) which are
necessary to permit the use of the Additional Facili-
ties in accordance with the provisions of this Lease
have been obtained and are in full force and effect;
(iv) under applicable zoning and use laws, ordinances,
rules and regulations the Additional Facilities may be
used for the purposes contemplated by Lessee and all
necessary subdivision approvals have been obtained; (v)
there are no unsatisfied mechanics' or materialmen's
liens outstanding or threatened to the knowledge of
Lessee against the Leased Property, Additional Facili-
ties or the land referred to in clause (b) of Section
11.1 arising out of or in connection with such construc-
tion, other than those being contested by Lessee
pursuant to Article XIII; (vi) any mechanics' or
materialmen's liens being contested by Lessee will be
promptly paid by Lessee if such contest is resolved in
favor of the mechanic or materialman; (vii) construc-
tion of such Additional Facilities has not impaired the
value of the Leased Property; (viii) there exists no
Default hereunder, and no defense, offset or claim
exists with respect to any sums to be paid by Lessee
hereunder, and, if applicable (ix) any exceptions to
Lessor's title to the land referred to in clause (b) of
Section 11.1 do not materially interfere with the
intended use of the Additional Facilities by Lessee;

     (b)   the Lease Amendment duly executed, acknowl-
edged and delivered by Lessee, in form and substance
satisfactory to Lessor, amending this Lease to (i)
provide for the Additional Basic Rent, (ii) increase
the Cost of the Leased Property by the amount of the
Additional Facility Cost, (iii) add to the description

21.

PM 00911

of the Land any land purchased in connection with the Additional Facilities thereon, as referred to in clause (b) of Section 11.1 and (iv) make such other changes herein as may be necessary or appropriate under the circumstances;

(c)  a deed conveying title to Lessor to any land acquired for the purpose of the Additional Facilities, as referred to in clause (b) of Section 11.1, free and clear of any liens or encumbrances except those approved by Lessor, accompanied by a final as-built survey thereof satisfactory to Lessor;

(d)  endorsements to the outstanding policy of title insurance covering the Leased Property satisfactory in form and substance to Lessor (i) updating the same without any additional exception except as may be permitted by Lessor, and (ii) increasing the coverage thereof by an amount equal to the Additional Facility Cost (except to the extent covered by the owner's policy of title insurance referred to in subparagraph (e) below);

(e)  if appropriate, (i) an owner's policy of title insurance insuring fee simple title to any land conveyed to Lessor pursuant to subparagraph (c) free and clear of all liens and encumbrances except those approved by Lessor and (ii) a loan policy of title insurance satisfactory in form and substance to any Lending Institution advancing any portion of the Additional Facility Cost and its counsel;

(f)  an M.A.I. appraisal of the Leased Property indicating that the value of the Leased Property exceeds the Cost by an amount not less than the Additional Facility Cost; and

(g)  such other certificates (including, but not limited to, endorsements increasing the insurance coverage, if any, at the time required by Section 14.1), documents, opinions of counsel, surveys, certified copies of duly adopted resolutions of the Board of Directors of Lessee authorizing the execution and delivery of the Lease Amendment and any other instruments as may be reasonably required by Lessor and any Lending Institution advancing the Additional Facility Cost.

22.

PM 00912

11.5.  Upon making a Request to finance the Additional Facilities, whether or not such financing is actually consummated, Lessee shall pay or cause to be paid all reasonable costs and expenses of Lessor and any Lending Institution which has committed to finance the Additional Facility Cost paid or incurred by them in connection with the financing of the Additional Facilities, including, but not limited to, (i) the fees and expenses of their respective counsel, (ii) all printing expenses, (iii) the amount of any filing, registration and recording taxes and fees, (iv) documentary stamp taxes, if any, (v) title insurance charges, appraisal fees, if any, (vi) rating agency fees, if any, and (vii) commitment fees, if any, charged by any Lending Institution advancing or offering to advance any portion of the Additional Facility Cost.

## ARTICLE XII

12.  Liens.  Subject to Article XIII relating to contests, Lessee shall not directly or indirectly create or allow to remain and will promptly discharge at its expense any lien, encumbrance, attachment, title retention agreement or claim upon the Leased Property or any attachment, levy, claim or encumbrance in respect of the Basic Rent or Additional Rent provided under this Lease, not including, however, (a) this Lease, (b) such of the matters, if any, set forth in Schedule A as shall at the time be in effect and applicable to the Leased Property, (c) restrictions, liens and other encumbrances which are consented to in writing by Lessor, or any easements which do not (1) unduly interfere with the use of the Leased Property or (2) materially impair the value thereof, provided that Lessee shall first have delivered an Officer's Certificate to Lessor certifying as to the matters set forth in clauses (1) and (2), (d) liens for those taxes of Lessor which Lessee is not required to pay hereunder, (e) subleases permitted by Article XXV, (f) liens for Impositions or for sums resulting from noncompliance with Legal Requirements so long as (1) the same are not yet payable or are payable without the addition of any interest, fine or penalty or (2) such liens are in the process of being contested as permitted by Article XIII, and (g) liens of mechanics, laborers, materialmen, suppliers or vendors for sums either disputed or not yet due, provided that (1) the payment of such sums shall not be postponed under any related contract for more than

23.

PM 00913

sixty (60) days after the completion of the action giving
rise to such lien and such reserve or other appropriate
provisions as shall be required by law or generally accepted
accounting principles shall have been made therefor or (2)
any such liens are in the process of being contested as
permitted by Article XIII.

24.

PM 00914

## ARTICLE XIII

13. <u>Permitted Contests</u>.  Lessee, on Lessor's behalf, but at Lessee's expense, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any Imposition or any Legal Requirement or Insurance Requirement or any lien, encumbrance, charge or claim not otherwise permitted by Article XII, provided that (a) in the case of an unpaid Imposition, lien, encumbrance, charge or claim, the commencement and continuation of such proceedings shall suspend the collection thereof from Lessor and from the Leased Property, (b) neither the Leased Property nor any rent therefrom nor any part thereof or interest therein would be in any immediate danger of being sold, forfeited, attached or lost, (c) in the case of a Legal Requirement, Lessor would not be in any immediate danger of civil or criminal liability for failure to comply therewith pending the outcome of such proceedings, (d) Lessee shall deliver to Lessor and its counsel an opinion of Lessee's counsel to the effect set forth in clauses (a), (b) and (c), to the extent applicable; provided however, that the requirement of delivery of such opinion of Lessee's counsel may be waived by the Lessor upon written request of the Lessee, (e) in the case of a Legal Requirement and/or an Imposition, lien, encumbrance or charge, Lessee shall give such reasonable security as may be demanded by Lessor to insure ultimate payment of the same and to prevent any sale or forfeiture of the Leased Property, the Basic Rent and any Additional Rent by reason of such non-payment or noncompliance, provided, however, the provisions of this Section 13 shall not be construed to permit Lessee to contest the payment of Basic Rent, Additional Rent (except as to permitted contests concerning the method of computation or the basis of levy of any Imposition or the basis for the assertion of any other claim) or any other sums payable by Lessee to Lessor hereunder, (f) in the case of an Insurance Requirement, any coverage required by Article XIV shall be maintained, and (g) if such contest be finally resolved against Lessor or Lessee, Lessee shall, as Additional Rent due hereunder, promptly pay the amount required to be paid, together with all interest and penalties accrued thereon, or comply with the applicable Legal Requirement or Insurance Requirement. Lessor, at Lessee's expense, shall execute and deliver to Lessee such authorizations and other documents as may reasonably be required in any such contest, and, if

25.

PM 00915

reasonably requested by Lessee or if Lessor so desires, Lessor shall join as a party therein. Lessee shall indemnify and save Lessor harmless against any liability, cost or expense of any kind that may be imposed upon Lessor in connection with any such contest and any loss resulting therefrom.


## ARTICLE XIV


14.1. Insurance. So long as this Lease remains in effect and the Shareholders' Equity of Lessee is in excess of One Hundred Million ($100,000,000) Dollars, Lessee may self-insure (pursuant to a prudent program of self-insurance with adequate reserves therefor in such amount as would conform to the requirements of generally accepted accounting principles) against the risks and in the amounts hereinafter described and shall not be required to maintain insurance hereunder. If the Shareholders' Equity of Lessee falls below the above amount, Lessee agrees to maintain at all times and at its expense insurance, with deductible provisions not in excess of $500,000 (or if the Shareholders' Equity of Lessee falls below $10,000,000, then the deductible provisions shall not exceed $50,000), covering the Leased Property as follows: (a) fire, with extended coverage, vandalism and malicious mischief endorsements (commonly known as "all risk" coverage) and insurance against other risks customarily insured against with property similar to the Leased Property, such insurance to be in each case in an amount not less than the full insurable value (actual replacement cost less the costs of land excavation, foundations and footings) of the Leased Property, (b) comprehensive liability insurance in the amount of at least $5,000,000 each occurrence with respect to bodily injury and property damage combined, (c) adequate explosion insurance with respect to steam or pressure vessels or similar apparatus, if any, located on the Leased Property, (d) flood insurance in an amount equal to the full insurable value (as defined in clause (a) above) of the Leased Property or the maximum amount available, whichever is less, if the area in which the Leased Property is located has been designated by the Secretary of Housing and Urban Development as having special flood hazards, and if flood insurance is available under the National Flood Insurance Act, (e) upon request of Lessor, earthquake insurance in an amount not less than the full insurable value (as defined in clause (a) above) of the Leased Property, (f) during the period when any addition, alteration, construction, installation or demolition is

26.

PM 00916

being made to any part of the Leased Improvements, contin-
gent liability, and public liability insurance, and (g) such
other or additional insurance with respect to the Leased
Property and in such amounts as Lessor from time to time may
reasonably request against such other hazards which at the
time are commonly insured against in respect of property
similar to the Leased Property.  Lessee may effect all
coverage required herein under its blanket insurance
policies, if available thereunder, and all such policies
shall be written by companies presently or hereafter
insuring the properties of Lessee; provided, however, that
(i) any such policy of blanket insurance either shall
specify therein, or Lessee shall furnish Lessor a written
statement from the insurer under such policy so specifying,
the amount of the total insurance allocated to the Leased
Property, which amount shall not be less than the amount
required pursuant to this Article XIV, (ii) any policy of
blanket insurance hereunder shall comply in all respects
with the other provisions of this Article XIV, and (iii) the
protection afforded Lessor and Lessee under any such policy
of blanket insurance shall be no less than that which would
have been afforded under a separate policy or policies
relating only to the Leased Property.  Except for policies
issued by the Underwriters at Lloyds or by a company provid-
ing Lessee with substantial insurance coverage for similar
types of risks on a substantial portion of its assets,
unless Lessor shall otherwise agree, such insurance shall be
written by companies (i) having a Bests' policyholder's
rating of A or better, (ii) in the Bests' Class XV financial
size category, and (iii) authorized to do insurance business
in the state in which the Leased Property is located.

    14.2.  Policy Provisions and Certificates.  The in-
surance maintained by Lessee under Section 14.1 shall name
Lessor and Lessee, as insureds, as their respective interests
may appear, as loss payees.  The insurance maintained by
Lessee under clauses (a), (b), (c), (d), (e) and (f) of
Section 14.1 shall provide that all property losses insured
against shall be adjusted by Lessee (subject to Lessor's
approval of final settlement of estimated losses of Two
Hundred Fifty Thousand ($250,000) Dollars or more) and that
the proceeds thereof shall be paid to Lessor, to be applied
in the manner hereinafter set forth in Sections 15.1 and
15.3.  All insurance maintained by Lessee shall provide that
(a) no cancellation or reduction thereof shall be effective
until at least thirty (30) days after receipt by Lessor and
Lessor's Assignees, if any, of written notice thereof, and

PM 00917

(b) all losses shall be payable notwithstanding any act or negligence of Lessor or Lessee or their respective agents or employees which might, absent such agreement, result in a forfeiture of all or part of such insurance payment and notwithstanding (i) the occupation or use of Leased Property for purposes more hazardous than permitted by the terms of such policy, (ii) any foreclosure or other action or proceeding taken pursuant to any provision of the Indenture upon the happening of an event of default thereunder or (iii) any change in title or ownership of the the Leased Property or any part thereof.  Lessee shall, within fifteen days after the same first becomes due hereunder, furnish to Lessor certificates for the insurance required by Section 14.1, and not less than thirty (30) days before the expiration of any such insurance, certificates evidencing the replacement or renewal thereof.

14.3.  _Subrogation_.  In respect of any real or personal property located in, at or upon the Leased Property, and in respect of the Leased Property itself, Lessee and Lessor each hereby releases, to the extent permitted by law, the other from any and all liability or responsiblity to the other or anyone claiming by, through or under either party, by way of subrogation or otherwise, for any loss or damage caused by fire or any other casualty whether or not such fire or other casualty shall have been caused by the fault or negligence of either party or anyone for whom said person may be responsible.  If generally available from insurance carriers, Lessee shall require its fire, extended coverage and other casualty insurance carriers to include in Lessee's policies a clause or endorsement whereby the insurer waives any rights of subrogation against Lessor.  Nothing contained in this subsection is intended to reduce or otherwise modify the obligations of Lessee pursuant to the provisions of Article XXIV of this Lease.

14.4.  _Other Insurance_.  Lessee shall not take out separate insurance concurrent in form or contributing in the event of loss with that required by this Article XIV to be furnished by Lessee unless Lessor is included therein as a named insured as its interests may appear, with loss payable as in this Article provided.  Lessee shall immediately notify Lessor whenever any such separate insurance is taken out and shall deliver the policy or policies or duplicates thereof, or certificates evidencing the same as provided in this Article.

28.

PM 00918

ARTICLE XV

15.1.  Notice of Damage, Destruction or Taking; Condemnation Awards.  In case of any material damage to or destruction of the Leased Property or any part thereof, or in case of any Taking, Lessee shall forthwith give notice thereof to Lessor.  If Lessor shall be advised by the condemning authority of a proposed Taking, Lessor shall forthwith give notice thereof to Lessee, but its failure to do so shall not affect the rights of the parties as set forth in this Article XV.  In case of any such Taking, Lessor shall be entitled to all awards or payments on account thereof, and Lessee hereby irrevocably assigns to Lessor all rights of Lessee to any such award or payment and irrevocably authorizes and empowers Lessor in the name of Lessee or otherwise, in the event Lessee fails so to do, to file and prosecute, or to participate in, at Lessee's expense, what would otherwise be Lessee's claim for any portion of such award or payment, and to collect, receipt for and retain the same, except as hereinafter provided. Notwithstanding the foregoing, Lessee shall have the right to participate in, at Lessee's expense, any such proceeding. Any such awards or payments shall be paid over to a commercial bank or trust company or other institution selected by Lessor and satisfactory to Lessee (the "Bank"), to be held in escrow and applied as hereinafter provided.  All costs and expenses of the Bank shall be paid by Lessee.  Unless an Event of Default shall have occurred, all sums so received by Lessor or the Bank, as the case may be, shall be applied in accordance with the provisions of Section 15.3, except that any such sums received with respect to a Taking for temporary use shall be applied in accordance with the provisions of Section 15.2.  If an Event of Default shall have occurred and shall not have been waived at the time of receipt of any such award or payment, the same shall be paid to and retained by Lessor.  Lessee shall pay all costs and expenses, including attorneys' fees, incurred by Lessor in connection with any such Taking and the seeking and obtaining of any award or payment in respect thereof. For the purposes of this Lease, all amounts paid pursuant to any agreement with any condemning authority in settlement of any condemnation or other eminent domain proceeding affecting the Leased Property shall be deemed to constitute an award made in such proceeding whether or not the same shall have actually been commenced.  For the purposes of this Article, the terms "net proceeds" and "net awards" shall mean, respectively, those amounts payable to Lessor or Lessee

29.

PM 00919

pursuant to Section 15.2 and Section 15.3 hereof in respect
of (i) any insurance proceeds resulting from any damage to
or destruction of the Leased Property or any part thereof,
or (ii) any awards in connection with any Taking thereof, in
each case, less all costs and expenses, including attorneys'
fees, incurred in connection with the seeking and obtaining
of any such proceeds or awards.

15.2.  Taking for Temporary Use.  In case of a Taking
for temporary use (i.e. a period not exceeding 365 days),
there shall be no termination, cancellation or modification
of this Lease, and Lessee shall continue to perform and
comply with (except as such performance and such compliance
may be rendered impossible by reason of such Taking) all of
its obligations under this Lease and shall in no event be
relieved of its obligation to pay punctually all Rent or any
other charges payable hereunder.  Lessor shall pay the net
awards received by it (whether by way of damages, rent or
otherwise) by reason of such Taking to Lessee, if no Event
of Default shall have occurred which has not been waived.
If an Event of Default shall have occurred which has not
been waived, all funds received by the Lessor by reason of
such Taking shall be held by the Lessor as security for
Lessee's obligation to pay rental hereunder.

15.3.  Other Taking; Damage or Destruction; Repair
or Replacement.  (a)  Except as otherwise provided in
subsection 15.3(b), in case of any damage to or destruction
of the Leased Property or any part thereof, or in case of
any Taking other than for temporary use, Lessee shall, at
its expense, promptly commence and complete with due dili-
gence (subject to Unavoidable Delays) the replacement and
repair of the Leased Property in order to restore it as
nearly as practicable to the value and condition thereof
immediately prior to such damage, destruction or Taking,
whether or not the insurance proceeds or the award for the
Taking shall be sufficient for such purpose.  If the cost of
restoring the Leased Property as estimated by an independent
architect or engineer, which estimate shall be obtained by
Lessee and delivered to Lessor prior to commencement of
restoration, shall exceed the net awards or net proceeds
available therefor, Lessee shall expend its own funds to the
extent of such excess before making application for receipt
of such proceeds or awards as hereinafter provided.  In such
event, the net proceeds of insurance and the net awards for
the Taking received by Lessor or the Bank, as the case may
be, shall if no Event of Default shall have occurred which
has not been waived, be paid to Lessee (or as Lessee may

30.

PM 00920

direct), from time to time (but not more often than monthly)
as the Leased Property is replaced or repaired, in amounts
equal to the cost of such replacement and repair, upon
delivery to Lessor of an Officer's Certificate and a certi-
ficate of an engineer or architect satisfactory to Lessor
certifying, in each case, the amount to be paid (which may
represent amounts theretofore paid by Lessee in the effec-
tuation of such repairs or replacements and not reimbursed
hereunder or amounts due and payable by Lessee therefor, or
both). Upon completion of construction, Lessee shall
deliver to Lessor (i) a copy of a permanent, unconditional
certificate of occupancy for the Leased Property and (ii) an
Officer's Certificate and a certificate of an engineer or
architect satisfactory to Lessor certifying to the comple-
tion of the repair or replacement of the Leased Property,
the payment of the cost thereof in full, and the amount of
such cost, and upon receipt of such certificates by Lessor,
any balance of such insurance proceeds not required to be
held or applied in accordance with the preceding sentence,
shall be paid over to Lessee, and any balance of such
condemnation awards or other payments not required to be
held or applied in accordance with the preceding sentence
shall be retained by Lessor. In the event of a Taking of
such character as not to require any repair or replacement
of the Leased Property, any net award or other payment for
such Taking shall be retained by Lessor, and if such net
award is in excess of $50,000, the entire net award shall
be applied by Lessor in prepayment of Lessor's Note in
the inverse order of the scheduled payments due thereon
and following such prepayment, the installments of Basic
Rent shall be reduced by amounts appropriate to reflect
such award applied to the installments of Basic Rent in the
inverse order of their due dates, and Lessor and Lessee
shall enter into a supplement to this Lease providing for
appropriate adjustments to Schedule B and Exhibit I to
reflect such reduction in Basic Rent. If an Event of
Default shall have occurred which has not been waived prior
to the time of Lessor's receipt of any insurance proceeds
or awards or other payment for a Taking pursuant to this
Section 15.3(a), the same shall be applied in the manner
specified in Article XVI of the Indenture. If Lessee
elects to self-insure in accordance with the provisions
of Section 14.1 and in the event of a casualty then, in
any such event, Lessee shall deliver to Lessor, if required
pursuant to the provisions of Section 15.3(a) to deliver
the proceeds of insurance to Lessor, an amount equal to
the amount estimated by an engineer or architect satis-
factory to Lessor necessary to repair and restore the
Leased Property. Said amount shall be deemed net pro-
ceeds (as such term is referred to in Section 15.3(a))

31.

and shall be subject to the provisions with respect
thereto, except that any excess proceeds remaining after
restoration of the Leased Property shall be returned to
Lessee.

(b)  In case of any Substantial destruction or Taking of
a Substantial portion of the Leased Property during the Fixed
Term hereof (other than a taking for temporary use as de-
scribed in Section 15.2 hereof), Lessee, if no Event of Default
shall have occurred and not have been waived, may, within
one hundred eighty (180) days from the date of such damage,
destruction or Taking, give Lessor (i) notice of termination
of this Lease as to the Leased Property accompanied by an
offer to purchase the Leased Property (including the net
amount of the award or insurance proceeds, as the case may
be) on the first Payment Date occurring not less than two
hundred ten (210) days after the date of such notice (the
"Purchase Date") for a purchase price equal to the amount
set forth in Exhibit I hereto opposite the Basic Rent
payment date number corresponding to the Purchase Date, (ii)
an Officer's Certificate describing the event giving rise to
such termination and stating that Lessee has determined that
there has been a Substantial loss and stating the nature of
the loss, (iii) notice that Lessee has discontinued all use
and occupancy of any floor space rendered untenantable and
(iv) a letter agreement that notwithstanding the termination
of this Lease or any other matter, Lessee has discontinued
use of the Leased Property in its business operations or
will discontinue such use on or before the Purchase Date and
will not use the Leased Property for one (1) year thereafter
for the purposes for which it was being used immediately
prior to any such damage, destruction or Taking.  A "Sub-
stantial" loss or Taking shall be deemed to have occurred if
(i) more than 50% of the floor space in the Leased Improve-
ments (excluding any floor space constituting a parking
garage facility) on the Leased Property shall have been
damaged or destroyed by fire or other casualty; such floor
space shall have been rendered, in Lessee's reasonable
opinion, untenantable by such damage or destruction; and
restoration of such space shall not be, in Lessee's reason-
able opinion, economically feasible, or (ii) if more than
20% of the area of the parcel of Land described in Schedule
A hereto as part of the Leased Property shall be the subject
of a Taking or (iii) if existing rights of access between
the Land and the adjoining road(s) are the subject of a
Taking and alternate, and substantially equivalent, means of
access to and from the Land are not available.  In the event
a loss is not deemed Substantial, Lessee may still give
Lessor notice of termination of this Lease, accompanied by
an offer to purchase the Leased Property for the price and

32.

PM 00922

on the Payment Date specified above, if in the good faith judgment of Lessee, as reflected in an Officer's Certificate delivered to Lessor within 180 days after such damage, destruction or Taking, the Lessee determines that such loss renders continued occupancy or use of the remainder of the Leased Property economically unsound, and the Lessor consents in writing to the termination of the Lease.

If Lessor accepts such offer, or fails to reject the same by written notice given at least thirty (30) days prior to the Purchase Date, Lessor shall, upon receipt from Lessee of the purchase price provided for above and any Rent (including any Deferred Rent) due and payable under this Lease (including the installment of Basic Rent due on the Purchase Date), (a) convey the Leased Property to Lessee on the Purchase Date in accordance with the provisions of Article XIX and (b) pay over or assign to Lessee the net award or net insurance proceeds, as the case may be, and this Lease shall thereupon terminate.

If Lessor rejects Lessee's offer to purchase the Leased Property by written notice given at least thirty (30) days prior to the Purchase Date, this Lease shall terminate on the Purchase Date, provided Lessee shall not then be in Default under this Lease and shall have paid all Rent (including Deferred Rent) due on the Purchase Date, and Lessor shall retain all condemnation awards or proceeds of any insurance policies (or if Lessee then be self-insuring the Leased Property, Lessee shall pay over to the Lessor amounts equal to what would have been such proceeds under the policies described in Section 14.1) and any other payment to which it may be entitled.

(c)  In the event either a Taking or destruction specified in subsection (b) shall occur during any renewal term provided for in Article XX hereof, Lessee may give Lessor not less than ninety (90) days prior written notice of termination of this Lease and, upon payment by Lessee to Lessor of all Rent due hereunder prorated to the date of termination, this Lease shall terminate upon the date fixed in such notice.  In such event Lessor shall retain all proceeds of any insurance policies or condemnation awards (or if Lessee then be self-insuring the Leased Property, Lessee shall pay over to the Lessor amounts equal to what would have been such proceeds under the policies described in Section 14.1).

33.

PM 00923

## ARTICLE XVI

16.  <u>Termination of Lease upon Discontinuance of
Operations on the Leased Property</u>.  (a)  If, in the good
faith judgment of Lessee, the Leased Property becomes
uneconomic or unsuitable for Lessee's then use and occupancy,
and Lessee has discontinued use of the Leased Property in
its business operations or will discontinue such use within
a period of six months after the date of the Officer's
Certificate hereinafter referred to and will not use the
Leased Property for one year thereafter, all as set forth in
an Officer's Certificate delivered to Lessor, Lessee, if no
Event of Default shall have occurred which has not been
waived, may, at any time after the expiration of the tenth
Year, but only during the Fixed Term hereof, give Lessor
notice of termination of this Lease as to the Leased Property
accompanied by an offer to purchase the Leased Property on
the first Payment Date (the "Economic Termination Purchase
Date") occurring not less than three hundred sixty (360)
days after the date of such offer for a purchase price equal
to the amount set forth in Exhibit I hereto opposite the
Basic Rent payment date number corresponding to the Economic
Termination Purchase Date.

(b)  If Lessor accepts such offer, or fails to reject
the same by written notice given not less than ninety (90)
days prior to the Economic Termination Purchase Date, Lessor
shall, upon receipt from Lessee of the purchase price
provided for above and any Rent (including Deferred Rent)
due and payable under this Lease (including the installment
of Basic Rent due on the Economic Termination Purchase
Date), convey the Leased Property to Lessee on the Economic
Termination Purchase Date in accordance with the provisions
of Article XIX and this Lease shall thereupon terminate.

(c)  If Lessor rejects Lessee's offer to purchase
the Leased Property by written notice given not less than
ninety (90) days prior to the Economic Termination Purchase
Date, this Lease shall terminate on the Economic Termination
Purchase Date, provided Lessee shall not then be in Default
hereunder and shall have paid all Rent (including Deferred
Rent) due on the Economic Termination Purchase Date.

34.

PM 00924

ARTICLE XVII

17.  Events of Default.

17.1.  If any one or more of the following events (individually, an "Event of Default") shall occur:

(a)  if Lessee shall fail to make payment of any Basic Rent or Additional Rent payable by Lessee under this Lease when the same becomes due and payable and such failure shall continue for a period of ten (10) days after notice thereof, or

(b)  if Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure shall continue for a period of thirty (30) days after notice thereof, unless such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if Lessee proceeds promptly and with due diligence to cure the failure and diligently completes the curing thereof, or

(c)  if Lessee shall make a general assignment for the benefit of its creditors, or shall file a voluntary petition in bankruptcy, or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking, consenting to, or acquiescing in reorganization, arrangement, adjustment, composition, liquidation, dissolution or similar relief under any present or future statute, law or regulation, or shall file an answer admitting or failing to deny the material allegations of a petition against it for any such relief, or shall admit in writing its inability to pay its debts as they mature, or

(d)  if any proceeding against Lessee seeking any of the relief mentioned in clause (c) of this Section shall not have been stayed or dismissed within ninety (90) days after the commencement thereof, or

(e)  if a trustee, receiver or liquidator of Lessee or of any substantial part of its properties or assets, or of Lessee's estate or interest in the Leased Property, shall be appointed with the consent or acquiescence of Lessee, or if any such appointment, if not so consented to or acquiesced in, shall remain unvacated or unstayed for a period of ninety (90) consecutive days, or

35.

PM 00225

(f)  if Lessee shall be liquidated or dissolved, or shall begin proceedings toward such liquidation or dissolution, or shall, in any manner, permit the sale or divestiture of substantially all its assets (other than in connection with (1) a merger or consolidation of Lessee into, or a sale of substantially all of Lessee's assets to, another corporation provided that the survivor of such merger or the purchaser of such assets shall assume all of Lessee's obligations under this Lease by a written instrument, in form and substance reasonably satisfactory to Lessor accompanied by an opinion of counsel, reasonably satisfactory to Lessor and addressed to Lessor stating that such instrument of assumption is valid, binding and enforceable against the parties thereto in accordance with its terms (subject to usual bankruptcy and other creditors' rights and equitable exceptions), and provided further that immediately after giving effect to any such merger, consolidation or sale the Lessee or other corporation (if not the Lessee) surviving the same shall have a Consolidated Net Worth not less than 90% of the Consolidated Net Worth of Lessee immediately prior to such merger, consolidation or sale all as to be set forth in an Officer's Certificate and delivered to Lessor within a reasonable period of time after such merger, consolidation or sale, or (2) a sale of any Significant Subsidiary or a sale of substantially all of its assets to any person, or (3) a merger or consolidation of a Significant Subsidiary into, or a sale or other disposition of substantially all the assets of a Significant Subsidiary to any other Subsidiary, which after such merger, consolidation, sale or other disposition, will be a Significant Subsidiary, or a corporation which, after giving effect to such merger, consolidation, sale or other disposition will be a Significant Subsidiary, or the liquidation or dissolution of any Significant Subsidiary after any such merger, consolidation, sale or other disposition described in this clause (3), or (4) a transfer or divestiture of any portion of the assets of Lessee or any Significant Subsidiary, provided that immediately after giving effect to any such transfer or divestiture the Lessee shall have a Consolidated Net Worth not less than 90% of the Consolidated Net Worth of the Lessee immediately prior to such transfer or divestiture all as to be set forth in an Officer's Certificate of Lessee and delivered to Lessor within a reasonable period of time after such transfer or divestiture.  In

36.

PM 00926

the event of a sale of assets described in (2) above, the Lessee shall deliver to Lessor an Officer's Certificate, certifying that the Lessee has determined in its good faith judgment, that the consideration received in connection with the sale was equivalent to the fair value thereof, provided, however, that no such Officer's Certificate need be delivered if such sale was effectuated to comply with any law, governmental rule or order of any court or governmental agency to which Lessee may be subject), or

(g)  if the estate or interest of Lessee in the Leased Property or any part thereof shall be levied upon or attached in any proceeding and the same shall not be vacated or discharged within ninety (90) days after commencement thereof (unless Lessee shall be contesting such lien or attachment in good faith in accordance with Article XIII hereof), or

(h)  if, except as a result of damage, destruction or a Taking, Lessee ceases operations on the Leased Property for a period in excess of 150 days without complying in all material respects with the provisions of Section 9.1 and providing for guards or other security measures reasonably necessary to protect the Leased Property from vandalism or other damage, or

(i)  if the then current use or occupancy of the Leased Property shall be permitted pursuant to then applicable zoning laws only for so long as such use or occupancy shall be continued, and Lessee shall discontinue such use or occupancy without the prior written consent of Lessor, except in the event such use or occupancy is rendered impossible due to a Taking of, or damage to, the Leased Property and is involuntarily discontinued by Lessee pursuant to Section 15.3(b), or

(j)  if any of the material representations or warranties made by Lessee in this Lease or in any other document, certificate or instrument delivered in connection therewith proves to be untrue in any material respect, or

37.

PM 00927

(k)  default shall be made by the Lessee in the payment of any installment of interest, when and as the same shall become due and payable, on any bond, debenture, note or other evidence of indebtedness for borrowed money of, or assumed by, the Lessee and such default shall continue for the grace period, if any, provided for therein, or default shall be made by the Lessee in the payment of the principal or premium, if any, of any such bond, debenture, note or other evidence of indebtedness for borrowed money when and as the same shall become due and payable, whether at maturity, by declaration, upon redemption, or otherwise, and such default shall continue for the grace period, if any, as provided for therein, and the time for payment of such interest, principal or premium shall not have been effectively extended; provided, however, that for the purposes of this clause (k), the Lessee shall not be deemed in default if (A) the aggregate of any such payments of interest, principal and premium shall be less than the sum of $10,000,000 or (B) it shall be contesting in good faith its liability for the payment of the installment of interest or of principal or premium in question, and shall have been advised in writing by its counsel, which counsel shall be acceptable to Lessor, that, in such counsel's opinion, it has a meritorious defense thereto and a copy of such opinion shall have been addressed and delivered to Lessor, or

(l)  there shall be rendered against the Lessee final judgment for the payment of money in excess of $1,000,000 and the Lessee shall have failed to satisfy such judgment or to appeal therefrom (or from the order, decree or process pursuant to which such judgment was granted, passed, entered or affirmed) and to obtain a stay of execution thereof within the period prescribed by law for appeals, and to have such judgment discharged within 15 days after the expiration of such period or the period of any such stay, whichever shall later expire,

then, and in any such event, Lessor may terminate this Lease by giving Lessee not less than ten (10) days' notice of such termination and upon the expiration of the time fixed in such notice, the Term shall terminate and all rights of Lessee under this Lease shall cease.  Lessor shall have all rights at law and in equity available to Lessor as a result of Lessee's breach of this Lease.

38.

PM 00928

Lessee shall, to the extent permitted by law, pay as Additional Rent all costs and expenses incurred by or on behalf of Lessor, including, without limitation, reasonable attorneys' fees and expenses, as a result of any Event of Default hereunder.

No Event of Default (other than a failure to make payment of money) shall be deemed to exist under clause (b) during any time the curing thereof is prevented by an Unavoidable Delay provided that upon the cessation of such Unavoidable Delay, Lessee shall remedy such default without further delay.

17.2  If an Event of Default shall have occurred and not been waived, whether or not this Lease has been terminated pursuant to Section 17.1, Lessee shall, to the extent permitted by law, if required by Lessor so to do, immediately surrender the Leased Property to Lessor and quit the same, and Lessor may enter upon and repossess the Leased Property from Lessee by summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all personal property from the Leased Property. Lessor shall be under no liability for or by reason of any such entry, repossession or removal.

17.3.  If an Event of Default shall have occurred, and not been waived whether or not this Lease has been terminated pursuant to Section 17.1, Lessor, without notice to Lessee, may, but shall be under no obligation to, relet the Leased Property or any part thereof for the account of Lessee, in the name of Lessee or otherwise, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the then current Term) and on such conditions (which may include concessions or free rent) and for such purposes as Lessor may determine, and may collect, receive and retain the rents resulting from such reletting.

17.4.  Neither (a) the termination of this Lease pursuant to Section 17.1, (b) the repossession of the Leased Property, (c) the failure of Lessor to relet the Leased Property, (d) the reletting of all or any portion thereof, nor (e) the failure of Lessor to collect or receive any rentals due upon any such reletting, shall relieve Lessee of its liability and obligations hereunder, all of which shall survive any such termination, repossession or reletting.  In the event of any such termination, Lessee shall forthwith pay to Lessor all Rent due and payable to and

39.

PM 00929

including the date of such termination (including all Deferred Rent accrued and unpaid to the date of termination).  Thereafter, semi-annually on the days on which the Basic Rent would have been payable under this Lease if the same had not been terminated and until the end of what would have been the then current Term in the absence of such termination, Lessee, at Lessor's option, shall pay Lessor as and for liquidated and agreed current damages (it being agreed that it would be impossible to accurately determine actual damages) for Lessee's default:

（i）  an amount equal to the Basic Rent, Deferred Rent and Additional Rent that would have been payable by Lessee hereunder if the Term had not been terminated, less

（ii）  the net proceeds, if any, of any reletting of the Leased Property or any portion thereof, after deducting all of Lessor's expenses in connection therewith, including, without limitation, repossession costs, brokerage commissions, attorneys' fees and expenses and any repair or alteration costs and expenses incurred in preparation for such reletting.

17.5.  At any time after the termination of this Lease pursuant to Section 17.1, whether or not Lessor shall have collected any current damages pursuant to Section 17.4, Lessor, at its option, shall be entitled to recover from Lessee and Lessee will pay to Lessor on demand as and for liquidated and agreed final damages for Lessee's default (it being agreed that it would be impossible or extremely difficult to accurately determine the actual damages), and in lieu of all current damages provided in Section 17.4 beyond the date to which the same shall have been paid,

（a）  the sum of (i) any past due Rent together with a late charge thereon (to the extent permitted by law) computed from the due date thereof to the date of payment of such liquidated damages at the Overdue Rate (or at the maximum rate permitted by law, whichever is the lesser), (ii) the remaining payments of Basic Rent and Deferred Rent (which would otherwise have become due during the remainder of the then current Term but for such termination) as of the later of the date to which Basic Rent and Deferred Rent shall have been paid or the date to which Lessee shall have paid current damages pursuant to Section 17.4 discounted to the date of payment at the rate of 10% per

40.

PM 00930

annum calculated on a semi-annual basis, together with
a late charge thereon computed from the later of such
dates to the date of payment of such liquidated damages
at (to the extent permitted by law) the Overdue Rate
(or at the maximum rate permitted by law, whichever is
the lesser), and (iii) an amount equal to the Addi-
tional Rent and other charges (as reasonably estimated
by Lessor) which would be payable hereunder from such
date for what would have been the then unexpired
current Term had the same not been terminated, dis-
counted to the date of payment at the rate of 10% per
annum, calculated on a semi-annual basis, less

    (b)  the then fair net rental value of the Leased
Property (determined as set forth in Article XXXV
hereof) for the period from the date of payment of such
liquidated damages to the date which would have been
the then expiration date of the then current Term had
this Lease not been terminated (after deducting all
reasonable estimated expenses to be incurred in connec-
tion with reletting of the Leased Property, including,
without limitation, repossession costs, brokerage
commissions, attorneys' fees and expenses and repair
and alteration costs and expenses) discounted to
the date of payment at the rate of 10% per annum during
the then unexpired current Term calculated on a semi-
annual basis.

If any statute or rule of law shall validly limit the
amount of such liquidated final damages to less than the
amount above agreed upon, Lessor shall be entitled to the
maximum amount allowable under such statute or rule of
law.

    17.6.  If an Event of Default shall have occurred and
not been waived during any Term hereof, Lessee may forthwith
offer (and failing to do so, Lessee shall be deemed to have
offered) to purchase the Leased Property on the first Basic
Rent payment date occurring thirty (30) days after the date
specified in a notice of termination of this Lease given
to Lessee, for an amount equal to the greater of (i) the
Fair Market Value of the Leased Property or (ii) any amount
owing under and secured by any Indenture, in each case, plus
all Rent then due and payable (including the installment of
Basic Rent due on the purchase date) as of the date of
purchase; thereafter, Lessor shall promptly notify Lessee
of its acceptance or rejection of such offer and failing to
give such notice shall be deemed to have accepted the same;

PM 00931