# M

# (Part 2 of 2)

and upon such acceptance, Lessor shall convey the Leased Property to Lessee on the date fixed therefor in accordance with the provisions of Article XIX, upon receipt of the purchase price therefor, and this Lease shall thereupon terminate.  Any purchase by Lessee of the Leased Property pursuant to this Section shall be in lieu of the liquidated damages specified in Section 17.5.

    17.7.  If this Lease is terminated pursuant to Section 17.1, Lessee waives, to the extent permitted by applicable law, (a) any right which may require Lessor to sell, lease or otherwise use its interest in the Leased Property or any portion thereof in mitigation of Lessor's damages as set forth in this Article XVII, (b) any notice of re-entry or of the institution of legal proceedings to that end, (c) any right of redemption, re-entry or repossession, (d) any right to a trial by jury in the event of summary proceedings to enforce the remedies set forth in this Article XVII, (e) the benefit of any laws now or hereafter in force exempting property from liability for rent or for debt, and (f) any other rights which might otherwise limit or modify any of Lessor's rights or remedies under this Article XVII.

## ARTICLE XVIII

    18.  Lessor's Right to Cure Lessee's Default.  If Lessee shall fail to make any payment or perform any act required to be made or performed under this Lease, Lessor, after notice to and demand upon Lessee, and without waiving or releasing any obligation or Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Lessee, and may, to the extent permitted by law, enter upon the Leased Property for such purpose and take all such action thereon as, in Lessor's opinion, may be necessary or appropriate therefor.  No such entry shall be deemed an eviction of Lessee.  All sums so paid by Lessor and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with a late charge thereon (to the extent permitted by law) at the Overdue Rate (or at the maximum rate permitted by law, whichever is the lesser) from the date on which such sums or expenses are paid or incurred by Lessor, shall be paid by Lessee to Lessor on demand.

PM 00932

ARTICLE XIX

19.  Provisions Relating to Purchase of the Leased
Property.  In the event Lessee purchases the Leased Property
or any portion thereof from Lessor pursuant to any of the
terms of this Lease, Lessor shall, upon receipt from Lessee
of the applicable purchase price, together with full payment
of any unpaid Rent (including Deferred Rent) due and payable
on or before the date of the purchase, execute and deliver
to Lessee, or cause to be executed and delivered to Lessee,
on the purchase date, an appropriate general warranty deed
(except that in the event the grantee of any such deed is
not The Kroger Co., such deed shall be a limited warranty
deed) conveying title to the Leased Property (or the appro-
priate portion thereof) to Lessee free and clear of any liens
and encumbrances that have been created by Lessor without
consent of Lessee, other than those that Lessee has agreed
hereunder to pay or discharge, and free and clear of
the lien of any Indenture.  The purchase price shall be paid
to Lessor or as Lessor may direct, in federal or other
immediately available funds without deduction or offset for
any cause whatsoever.  Lessor may, at the time of delivery
of the deed, use the purchase price or any portion thereof
to clear the title of any encumbrances or interests.  All
expenses of such conveyance, including, without limitation,
the cost of title examination, broker's fees, if any,
attorneys' fees incurred by Lessor in connection with such
conveyance and release, transfer taxes and recording fees,
taxes and other charges shall be paid by Lessee.

ARTICLE XX

20.  Renewal Terms.  Provided the Lease shall be in
full force and effect, if no Event of Default shall have
occurred, Lessee is hereby granted the right to renew
this Lease for six (6) five (5) year optional renewal
terms which renewal shall be automatic without any action
required of Lessee or Lessor; provided, however, that if
Lessee shall desire to refrain from exercising its option to
renew, it shall do so by giving written notice to Lessor of
its intention not to renew at least three hundred thirty
(330) days prior to the termination of the then current
Term.  Lessee may not exercise, nor shall Lessee be deemed
to have exercised, its option for more than one renewal term
at a time.  During each such renewal term, all of the terms
and conditions of this Lease shall continue in full force
and effect except that (a) the net annual Basic Rent payable
during each renewal term shall be $744,400.00, payable in
equal semi-annual installments, in arrears, and (b) the
number of renewal terms permitted hereunder shall be reduced
by one upon the expiration of each renewal term for which
Lessee has exercised its option.

43.

ARTICLE XXI

21.  Holding Over.  If Lessee shall for any reason remain in possession of the Leased Property after the expiration of the Term or earlier termination of the Term hereof, such possession shall be as a month-to-month tenant during which time Lessee shall pay as rental, the aggregate of (i) Basic Rent on the first day of each month at a rate equal to one-twelfth of the amount of annual Basic Rent accrued during the last Year of the preceding Term, (ii) all Additional Rent and (iii) all other sums, if any, payable by Lessee pursuant to the provisions of this Lease.  During such period of month-to-month tenancy, Lessee shall be obligated to perform and observe all of the terms, covenants and conditions of this Lease, but shall have no rights thereunder other than the right, to the extent given by law to month to month tenancies, to continue its occupancy and use of the Leased Property.  Nothing contained herein shall constitute the consent, express or implied, of Lessor to the holding over of Lessee after the expiration or earlier termination of this Lease.

ARTICLE XXII

22.  No Recourse To Lessor.  No recourse shall be had against the Lessor, or its employees, officers, directors or shareholders for any claim based on any failure by the Lessor in the performance or observance of any of the agreements, covenants or provisions contained in this Lease. In the event of any such failure, recourse shall be had solely against the Leased Property.

ARTICLE XXIII

23.  Loss of Benefit.  The loss of or decrease in the enjoyment and beneficial use of the Leased Property in consequence of the damage or destruction thereof by fire, the elements, casualties, thefts, riots, wars or otherwise, or in consequence of foreclosures, attachments, levies or executions (other than by Lessor and those claiming from, through or under Lessor) shall be borne by Lessee, and Lessor shall in no event be answerable or accountable therefor.  None of the events mentioned in this Section shall entitle Lessee to any abatement of Basic Rent or Additional Rent, except as specifically provided herein.

44.

PM 00934

## ARTICLE XXIV

    24.  <u>Indemnification by Lessee</u>.  Lessee shall protect, indemnify, save harmless and defend Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses) imposed upon or incurred by or asserted against Lessor by reason of:  (a) the acquisition and ownership of, or the holding of any security interest in, the Leased Property, (b) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Leased Property or adjoining sidewalks, (c) any use, misuse, non-use, condition, maintenance or repair of the Leased Property, (d) any Impositions (except as set forth below), (e) any failure on the part of Lessee to perform or comply with any of the terms of this Lease, and (f) the non-performance of any of the terms and provisions of any and all existing and future subleases of the Leased Property to be performed by the landlord thereunder.  Any amounts which become payable by Lessee under this Section shall be paid within ten (10) days after liability therefor on the part of Lessee is determined by litigation or otherwise, and if not timely paid, shall bear a late charge (to the extent permitted by law) at the Overdue Rate (or at the maximum rate permitted by law, whichever is the lesser) from the date of such determination to the date of payment.  Lessee, at its expense, shall contest, resist and defend any such claim, action or proceeding asserted or instituted against Lessor or may compromise or otherwise dispose of the same as Lessee sees fit.  Nothing herein shall be construed as indemnifying Lessor or its representatives or assigns against their own affirmative negligent acts or willful misconduct.  Lessee's liability for a breach of the provisions of this Article arising during the Term hereof shall survive any termination of this Lease.  Nothing contained in this Lease shall be construed to require Lessee to pay (1) any net income tax imposed on Lessor or any other person or (2) any transfer or net revenue tax of Lessor or Lessor's Assignees, if any, except to the extent that any such tax, assessment, levy or charge set forth in clause (1) or clause (2) may be levied, assessed or imposed as a total or partial substitute for a tax, assessment, levy or charge upon the Leased Property, the Basic Rent, the Additional Rent or any part of any thereof or interest therein which Lessee would otherwise have been required to pay.

45.

PM 00935

## ARTICLE XXV

25.1.  **Subletting and Assignment; Attornment.**  Lessee may sublet all or any part of the Leased Property or assign its interest under the Lease as to the Leased Property at any time, provided that (a) in the case of a subletting, the sublease shall comply with the provisions of Section 25.2, (b) in the case of an assignment, the assignee shall assume in writing and agree to keep and perform all of the terms of this Lease on the part of Lessee to be kept and performed and shall be, and become, jointly and severally liable with Lessee for the performance thereof, (c) an original counterpart of each such sublease and assignment and assumption, duly executed by Lessee and such sublessee or assignee, as the case may be, in form and substance satisfactory to Lessor, shall be delivered promptly to Lessor, and (d) in case of either an assignment or subletting, Lessee shall remain primarily liable, as principal rather than as surety, for the prompt payment of the Rent and for the performance and observance of all of the covenants and conditions to be performed by Lessee hereunder.

25.2.  **Attornment.**  Lessee shall insert in each sublease permitted under Section 25.1 provisions to the effect that (a) such sublease is subject and subordinate to all of the terms and provisions of this Lease and to the rights of Lessor hereunder, (b) in the event this Lease shall terminate before the expiration of such sublease, the sublessee thereunder will, at Lessor's option, attorn to Lessor and waive any right the sublessee may have to terminate the sublease or to surrender possession thereunder, as a result of the termination of this Lease, and (c) in the event the sublessee receives a written notice from Lessor or Lessor's Assignees, if any, stating that Lessee is in Default under this Lease, the sublessee shall thereafter be obligated to pay all rentals accruing under said sublease directly to the party giving such notice, or as such party may direct.  All rentals received from the sublessee by Lessor or Lessor's Assignees, if any, as the case may be, shall be credited against the amounts owing by Lessee under this Lease.

**46.**

PM 00936

ARTICLE XXVI

26. Officer's Certificates and Financial Statements.
(a)  At any time and from time to time upon not less than
thirty (30) days prior written request by Lessor, Lessee
shall furnish to Lessor an Officer's Certificate certifying
any or all of the following as requested, (i) that this
Lease is unmodified and in full force and effect (or that
this Lease is in full force and effect as modified and
setting forth the modifications) and the dates to which the
Basic Rent and all Additional Rent have been paid, (ii)
that, to the knowledge of Lessee, there are no proceedings
pending or threatened against Lessee before or by any court
or administrative agency which, if adversely decided, would
be reasonably likely to materially and adversely affect the
financial condition or operations of Lessee, or, if any such
proceedings are pending or threatened to the knowledge of
Lessee, specifying and describing the same, and (iii) to the
best knowledge of Lessee there exists no default on the part
of Lessor under this Lease, nor has any Rent been prepaid,
nor does there exist any off-set or defense to the payment
of the Rent by Lessee (or if any of the foregoing is not true
and accurate, then such certificate shall set forth the excep-
tions thereto).  Any such certificate furnished pursuant to
this Section may be relied upon by Lessor and any prospective
purchaser of the Leased Property.  Lessee will also furnish
Lessor, upon request of Lessor, an Officer's Certificate cer-
tifying the amount of the Consolidated Net Worth of Lessee, as
shown on the most current consolidated balance sheet of Lessee
and its consolidated subsidiaries as sent to its stockholders.

(b)  Lessee shall furnish the following statements
to Lessor:

(i)  within 120 days after the end of each of
Lessee's fiscal years, and together with the annual
audit report furnished in accordance with clause (ii),
an Officer's Certificate stating that to the best of
the signer's knowledge and belief after making due
inquiry, Lessee is not in Default in the performance
or observance of any of the material terms of this
Lease, or if Lessee shall be in Default in any material
respect to its knowledge, specifying all such Defaults,
the nature thereof, and the steps being taken to remedy
the same,

(ii)  with reasonable promptness, copies of all
financial statements and reports which Lessee shall
send to its stockholders, and copies of each Form 10-K,
Form 10-Q and Form 8-K which Lessee shall file with the
Securities and Exchange Commission or any governmental
agency substituted therefor, and

47.

PM 00937

(iii) with reasonable promptness, such other
information, consistent with the disclosure require-
ments of the federal securities laws, respecting
the financial condition and affairs of Lessee as Lessor
may reasonably request, from time to time.


ARTICLE XXVII


27. Lessor's Right to Inspect. Lessee shall permit
Lessor and its authorized representatives to inspect the
Leased Property during usual business hours, and, except in
emergencies, at a time reasonably satisfactory to Lessee upon
reasonable prior notification and, except in emergencies,
such inspection shall not materially affect Lessee's opera-
tion of the Leased Property.


ARTICLE XXVIII


28. No Waiver by Lessor; Foreclosure. No failure by
Lessor to insist upon the strict performance of any term
hereof or to exercise any right, power or remedy consequent
upon a breach thereof, and no acceptance of full or partial
payment of Rent during the continuance of any such breach,
shall constitute a waiver of any such breach or of any such
term. To the extent permitted by law, no waiver of any
breach shall affect or alter this Lease, which shall con-
tinue in full force and effect with respect to any other
then existing or subsequent breach. No Event of Default
shall be deemed waived by Lessor unless such waiver shall
be set forth in writing and delivered to Lessee. No fore-
closure, sale or other proceeding under the Indenture shall
effectuate a termination of this Lease or discharge or
otherwise affect the obligations of Lessee hereunder.


ARTICLE XXIX


29. Remedies Cumulative. To the extent permitted
by law, each legal, equitable or contractual right, power
and remedy of Lessor now or hereafter provided either in
this Lease or by statute or otherwise shall be cumulative
and concurrent and shall be in addition to every other
right, power and remedy and the exercise or beginning of
the exercise by Lessor of any one or more of such rights,
powers and remedies shall not preclude the simultaneous or
subsequent exercise by Lessor of any or all of such other
rights, powers and remedies.

PM 00938

## ARTICLE XXX

30. <u>Acceptance of Surrender</u>.  No surrender to Lessor of this Lease or of the Leased Property or any part thereof or of any interest therein shall be valid or effective unless agreed to and accepted in writing by Lessor and no act by Lessor or any representative or agent of Lessor, other than such a written acceptance by Lessor, shall constitute an acceptance of any such surrender.

## ARTICLE XXXI

31. <u>No Merger of Title</u>.  There shall be no merger of this Lease or of the leasehold estate created hereby by reason of the fact that the same person, firm, corporation or other entity may acquire, own or hold, directly or indirectly, (a) the Lessee's interest in this Lease or the leasehold estate created hereby or any interest in this Lease or such leasehold estate and (b) the Lessor's interest in this Lease or the fee estate in the Leased Property or any interest therein.

## ARTICLE XXXII

32. <u>Conveyance by Lessor</u>.  If Lessor or any successor owner of the Leased Property shall convey the Leased Property other than as security for a debt, Lessor or such successor owner, as the case may be, shall thereupon be released from all future liabilities and obligations of the Lessor under this Lease as to the Leased Property and all then existing and future liabilities and obligations shall thereupon be binding upon the new owner, subject to the provisions of Article XXII.

## ARTICLE XXXIII

33. <u>Quiet Enjoyment</u>.  So long as Lessee shall pay all Rent as the same becomes due and shall fully comply with all of the terms of this Lease and fully perform its obligations hereunder, Lessee shall peaceably and quietly have, hold and enjoy the Leased Property for the Term hereof, free of any claim or other action by Lessor or anyone claiming by, through

49.

PM 00939

or under Lessor, but subject to all of the terms and condi-
tions hereof and all liens and encumbrances of record. No
failure by Lessor to comply with the foregoing covenant shall
give Lessee any right to cancel or terminate this Lease or
abate, reduce or make a deduction from or offset against the
Rent or any other sum payable under this Lease, or to fail
to perform any other obligation of Lessee hereunder.

## ARTICLE XXXIV

34. <u>Notices</u>.  All notices, demands, requests, consents,
approvals and other communications hereunder shall be in
writing and delivered, telegraphed or mailed (by registered
or certified mail, return receipt requested and postage
prepaid), addressed to the respective parties, as follows:

(a)  if to Lessee:

THE KROGER CO.
1014 Vine Street
Cincinnati, Ohio 45202

Attention:  Treasurer

(b)  if to Lessor:

BALKHOUSE PROPERTIES CORP.
c/o Merrill Lynch Leasing Inc.
One Liberty Plaza
165 Broadway
New York, New York  10080

Attention:  President

or to such other address as either party may hereafter desig-
nate, and shall be effective upon receipt if hand delivered
or upon expiration of five days after the day of mailing.

## ARTICLE XXXV

35. <u>Lessee's Purchase Option</u>.  Provided no Event of
Default has occurred which has not been waived on or prior
to April 1, 2003, or the date of expiration of any renewal
term hereof for which Lessee has exercised its renewal option,
as the case may be, and provided further, that this Lease is
in full force and effect on such date, on the day following
the expiration date of the Fixed Term or of any renewal term
of this Lease for which Lessee has exercised its option, Lessee
may, at its option, upon at least three hundred sixty (360) days'

50.

*separate interests (?)  how does (?) Hart matter (?)*

prior notice to Lessor, purchase the Leased Property on such date for an amount equal to the fair market value thereof determined without regard to this Lease established by appraisal as set forth in Article XXXVI.  Any such purchase shall be completed in the manner provided in Article XIX.

*FMV determined by contract right?*

### ARTICLE XXXVI

36.  Appraisers.  In the event that Lessee desires to purchase the Leased Property pursuant to the provisions of Article XXXV, Lessee shall include in the notice of exercise of its option given pursuant to Article XXXV the name of a person selected to act as appraiser on its behalf. Within 20 days after receipt of any such notice, Lessor shall by notice to the Lessee appoint a second person as appraiser on its behalf, each of whom shall be a qualified member of the American Institute of Real Estate Appraisers, or any successor of such Institute, or if such organization or successor shall no longer be in existence, a recognized national association or institute of appraisers.  Each appraiser so appointed shall be instructed to determine independently within 50 days of the making of such request the Fair Market Value of the Leased Property as of the date of Purchase.  If only one appraiser shall have been so appointed within 20 days of the giving of such notice, or if two appraisers shall have been so appointed but only one such appraiser shall have made such determination within 50 days of the giving of such notice, then the determination of such appraiser shall be final and binding upon the parties. If two appraisers shall have been appointed and shall have made their determinations within the respective requisite periods set forth above and if the difference between the amounts so determined shall not exceed 10% of the lesser of such amounts, then the Fair Market Value shall be an amount equal to 50% of the sum of the amounts so determined.  If the difference between any such amounts so determined shall exceed 10% of the lesser of such amounts, then such two appraisers shall have 20 days to appoint a third appraiser, but if such appraisers fail to do so, then either party may request the American Arbitration Association or any successor organization thereto to appoint an appraiser within 20 days of such request, and both parties shall be bound by any appointment so made within such 20 day period.  If no such appraiser shall have been appointed within such 20 days or within 90 days of the original request for a determination of Fair Market Value, whichever is earlier, either Lessee or Lessor may apply to any court having jurisdiction to

51.

PM 00941

have such appointment made by such court.  Any appraiser
appointed by the original appraisers, by the American
Arbitration Association or by such court shall be instructed
to determine, within 30 days after its appointment, the Fair
Market Value of the Leased Property (as described above) as
shall not have been determined within ten per cent (10%) by
the first two appraisers in accordance herewith.  If the
third appraisal shall exceed the higher of the first two
appraisals, the Fair Market Value so determined shall
be said higher of the first two appraisals; if the third
appraisal shall be less than the lower of such appraisals,
the Fair Market Value shall be said lower of the first two
appraisals.  In all other cases, the Fair Market Value shall
be equal to the third appraisal.  This provision for deter-
mination by appraisal shall be specifically enforceable to
the extent such remedy is available under applicable law,
and any such determination of the Fair Market Value here-
under shall be final and binding upon the parties as the
Fair Market Value of the Leased Property, except as other-
wise provided by applicable law.  All costs attributable to
any such appraisal shall be borne by Lessee.

## ARTICLE XXXVII

37.  <u>Investment Tax Credit</u>.  Lessor agrees to elect,
in accordance with Section 48(d) of the Internal Revenue
Code of 1954, as amended, or any successor statute thereto
(the "Code"), and the regulations promulgated thereunder, to
treat Lessee as having purchased all such eligible property
in the Leased Property as may be designated by Lessee in
order that Lessee may obtain the benefit of the credit, if
any, allowed or allowable with respect thereto under Section
38 of the Code.  Lessor makes no representations or warran-
ties with respect to the availability of the credit to the
Lessee or the efficacy of such election.  Lessor's sole
responsibility in this regard shall be to execute the
documents required to effect the election, which documents
shall be prepared in their entirety by Lessee and to provide
Lessee with such information as may be reasonably requested
by Lessee to prepare such documents.  In addition, Lessor
agrees that it and its assignees will not claim the credit
provided by Section 38 of the Code for any property included
in the Leased Property.

52.

PM 00942

## ARTICLE XXXVIII

38. <u>Miscellaneous</u>. Anything contained in this Lease to the contrary notwithstanding, all claims against, and liabilities of, the Lessee arising prior to any date of termination of this Lease shall survive such termination. If any term or provision of this Lease or any application thereof shall be invalid or unenforceable, the remainder of this Lease and any other application of such term or provision shall not be affected thereby. If any late charges provided for in any provision of this Lease are based upon a rate in excess of the maximum rate permitted by applicable law, the parties agree that such charges shall be fixed at the maximum permissible rate. Neither this Lease nor any provision hereof may be changed, waived, discharged or terminated except by an instrument in writing and in recordable form signed by Lessor and Lessee. All the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. The headings in this Lease are for convenience of reference only and shall not limit or otherwise affect the meaning hereof. This Lease shall be governed by and construed in accordance with the laws of the State in which the Land is located.

## ARTICLE XXXIX

39. <u>Memorandum of Lease</u>. Lessor and Lessee shall, promptly upon the request of either, enter into a short form memoranda of this Lease, in form suitable for recording under the laws of the state in which the Leased Property is located, in which reference to this Lease shall be made.

53.

PM 00943

IN WITNESS WHEREOF, the parties have caused this Lease to be executed by their respective officers thereunto duly authorized.

BALKHOUSE PROPERTIES CORP.

Attest:

_____
Assistant Secretary

By: _____
                    Vice President

THE KROGER CO.

Attest:

_____
Assistant Secretary

By: _____
                    Vice President

54.

SCHEDULE A

All that certain tract or parcel of land, lying and
being situated in Hays County, Texas and being Lot One(1),
San Marcos Distribution Center, according to the map or plat
thereof of record in Volume 2, page 272, Plat Records of
Hays County, Texas.

Subject to:

1.   All taxes and assessments not yet due and payable.

2.   Easement in favor of Southwestern Bell Telephone
Company, recorded in Volume 214, page 404, Hays County Deed
Records.

3.   Easement in favor of Lower Colorado River Authority,
recorded in Volume 174, Page 487, Hays County Deed Records.

4.   Channel Easement granted to the State of Texas, recorded
in Volume 176, page 319, Hays County Deed Records.

5.   The grant by Mellie B. Williams to Marjorie Williams
Bennett, for and during the latter's natural life only, the
sole and exclusive right and liberty of the use of the
septic tank and its field lines located upon the subject
property, with liberty from time to time with workmen to
enter upon that portion of the subject property where said
septic tank and field lines are located to replace, repair,
clean and maintain said septic tank and field lines, as set
out in instrument dated April 20, 1982, of record in Volume
374, page 621, Hays County Deed Records.

6.   Twenty foot utility easement as shown on map or plat of
said subdivision, of record in Volume 2, page 272 Plat
Records of Hays County, Texas.

7.   Twenty foot roadway easement as shown on map or plat of
said subdivision, of record in Volume 2, page 272, Plat
Records of Hays County, Texas.

8.   Easement in favor of Lower Colorado River Authority,
dated July 20, 1982, of record in Volume 381, page 461, Hays
County Deed Records.

9.   Unrecorded easement for recently constructed telephone
lines along the entire Northeast line of subject property.

10.  Any state of facts as may be revealed by Survey of Pro-
Tech Engineering Group, Inc., dated November 18, 1982.

PM 00946

SCHEDULE B

## Basic Rent Payments

Basic Rent payments shall be made semi-annually in accordance with the provisions of Section 3.1 of this Lease in amounts determined by multiplying $9,305,000.00 times the Basic Rent payment percentages set forth below for the payment periods indicated.

| Payment Period | Basic Rent Payment Percentage |
|---|---|
| 1 to 1 | 5.587889% |
| 2 to 11 | 1.497196% |
| 12 to 20 | 5.992961% |
| 21 to 30 | 7.641251% |
| 31 to 31 | 12.270680% |
| 32 to 32 | 49.523473% |
| 33 to 33 | 11.153303% |
| 34 to 34 | 48.405895% |
| 35 to 35 | 10.035725% |
| 36 to 36 | 47.288318% |
| 37 to 37 | 8.918147% |
| 38 to 38 | 46.170740% |
| 39 to 39 | 7.800569% |
| 40 to 40 | 45.053162% |

(Continued on next page

-1-

PM 00947

## SCHEDULE B CONTINUED

### Deferred Rent

The amount of Deferred Rent accruing under this Lease shall be determined by multiplying $9,305,000.00 times the Deferred Rent percentages set forth below for the payment periods indicated.

| Payment Period | Deferred Rent Percentage |
|---|---|
| 0 | 5.350346277 % |
| 1 | 14.791385065 |
| 2 | 24.232423852 |
| 3 | 33.673462640 |
| 4 | 43.114501427 |
| 5 | 52.555540214 |
| 6 | 61.996579002 |
| 7 | 71.437617789 |
| 8 | 80.878656577 |
| 9 | 90.319695364 |
| 10 | 99.760734152 |
| 11 | 104.705987836 |
| 12 | 109.651241521 |
| 13 | 114.596495206 |
| 14 | 119.541748891 |
| 15 | 124.487002575 |
| 16 | 129.432256260 |
| 17 | 134.377509945 |
| 18 | 139.322763630 |
| 19 | 144.268017315 |
| 20 | 147.565001634 |
| 21 | 150.861985953 |
| 22 | 154.158970273 |
| 23 | 157.455954592 |
| 24 | 160.752938912 |
| 25 | 164.049923231 |
| 26 | 167.346907551 |
| 27 | 170.643891870 |
| 28 | 173.940876190 |
| 29 | 177.237860509 |
| 30 | 175.905215199 |
| 31 | 137.319772296 |
| 32 | 137.104909764 |
| 33 | 99.637249639 |
| 34 | 100.539759884 |
| 35 | 64.189677537 |
| 36 | 66.209765560 |
| 37 | 30.977260991 |
| 38 | 34.114926792 |
| 39 | |
| 40 | |

-2-

SM

PM 00948

EXHIBIT I

The purchase price to be paid by Lessee in the event it purchases the Leased Property pursuant to either Section 15.3(b) of the Lease or Article XVI of the Lease shall be determined by multiplying $9,305,000.00 times the purchase price percentages set forth below for the payment periods indicated:

| Payment Period | Purchase Price Percentages |
|---|---|
| 0 | 131.144789017 |
| 1 | 133.449117331 |
| 2 | 131.084705650 |
| 3 | 139.964681657 |
| 4 | 137.262970312 |
| 5 | 146.219711012 |
| 6 | 143.539716983 |
| 7 | 152.577250436 |
| 8 | 149.921451295 |
| 9 | 159.043854014 |
| 10 | 156.436098736 |
| 11 | 165.644415061 |
| 12 | 162.748797572 |
| 13 | 166.823384832 |
| 14 | 163.941354273 |
| 15 | 167.799941130 |
| 16 | 171.908661062 |
| 17 | 176.168883678 |
| 18 | 180.590217498 |
| 19 | 185.182880346 |
| 20 | 189.957738148 |
| 21 | 192.866008912 |
| 22 | 195.980317440 |
| 23 | 199.313730907 |
| 24 | 202.880145097 |
| 25 | 206.694337186 |
| 26 | 210.772021617 |
| 27 | 215.129909315 |
| 28 | 219.785771110 |
| 29 | 224.758504780 |
| 30 | 229.403737524 |
| 31 | 233.435170875 |
| 32 | 187.338954577 |
| 33 | 191.158378850 |
| 34 | 144.077850634 |
| 35 | 146.110762520 |
| 36 | 100.000000000 |
| 37 | 100.000000000 |
| 38 | 100.000000000 |
| 39 | 100.000000000 |
| 40 | 100.000000000 |

SM

PM 00949

STATE OF *Ohio*      )
                     :  ss.:
COUNTY OF *Hamilton* )

Before me, the undersigned, a Notary Public in and for said State and County, on this day personally appeared _*Lawrence T. Keller*_____, known to me to be the person whose name is subscribed in the foregoing instrument as a Vice President of THE KROGER CO., an Ohio corporation, and acknowledged to and before me that he executed the same for the purposes and consideration therein expressed, and as a free act and deed of said corporation, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _5_ day of _*April*_, 1983.

_*Nancy F. Spalding*_____
Notary Public in and for
the said County and State

[Seal]

My Commission Expires:

NANCY F. SPALDING
Notary Public, State of Ohio
My Commission Expires Dec. 26, 1983

PM 00950

STATE OF _New York_ )
                       : ss.:
COUNTY OF _New York_ )


    Before me, the undersigned, a Notary Public in and

for said State and County, on this day personally appeared

_Pamela Prenzo_                                  , known to me

to be the person whose name is subscribed in the foregoing

instrument as a Vice President of BALKHOUSE PROPERTIES CORP.,

a Tennessee corporation, and acknowledged to and before me

that he executed the same for the purposes and consideration

therein expressed, and as a free act and deed of said cor-

poration, and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _5th_ day of

_April_ , 1983.


                         _Nereida Lugo_
            ─────────────────────────────────
            Notary Public in and for
            the said County and State

                         NEREIDA LUGO
                    Notary Public, State of
                        No. 24-4501870
                     Qualified in Kings C
[Seal]          Certificate filed in New York County
                    Commission Expires March 30, 1985
My Commission Expires:


─────────────────────────────