

```
                                          Kroger
                                          III.1
                                          Texas
                                          5735/A/1-15
                                          5/26/83
```

## TWO PARTY AGREEMENT

This Agreement made as of the 1st day of June, 1983 by and among MALESE FOODS CORP., a Delaware corporation having an office at 666 Old Country Road, Garden City, New York 11530 ("Master Lessee"), and BALKHOUSE ASSOCIATES, a Tennessee limited partnership having an address c/o Merrill Lynch Leasing Inc., One Liberty Plaza, 165 Broadway, New York, New York 10080 ("Partnership").

### W I T N E S S E T H :

WHEREAS, the Partnership is the owner of the land ("Land"), more particularly described in Exhibit A annexed hereto and made a part hereof and the improvements now existing on the Land ("Improvements"); and

WHEREAS, the Partnership, as lessor, has entered into a lease ("Master Lease") of even date herewith with Balkhouse Properties Corp. (the "Corporation"), as lessee, covering among other things, the Land and Improvements (collectively, the "Premises"); and

WHEREAS, the Corporation is the lessor under a certain lease, dated as of April 1, 1983 with The Kroger Co.,

PM 00826

as lessee (the "Occupancy Tenant") also covering the Premises (the "Occupancy Lease"); and

WHEREAS, by assignments of even date herewith, the Corporation has assigned its interest in the Master Lease and the Occupancy Lease to Master Lessee; and

WHEREAS, the Occupancy Lease is an encumbrance on the Premises prior to the positions of the parties hereto; and

WHEREAS, Sections 15.3(b), 17.6 and Article XVI of the Occupancy Lease contain certain options exercisable by the Occupancy Tenant to make purchase offers which the Master Lessee may accept or reject; and

WHEREAS, Article XXXV of the Occupancy Lease grants the Occupancy Tenant a purchase option which the Master Lessee may not reject; and

WHEREAS, under Section 10.3 of the Occupancy Lease, Occupancy Tenant may build additions to the Improvements or additional improvements upon the Land; and

WHEREAS, the parties hereto desire to insure that in any such events that the interest of the Master Lessee in the Master Lease ("Master Lessee's Interest") and the interest of the Partnership in the Premises ("Partnership's Interest") be bound in accordance with the terms and conditions hereof;

NOW THEREFORE, for valuable consideration the receipt and sufficiency of which are acknowledged each to the other, the parties hereto covenant and agree as follows:

-2-

PM 00827

1. <u>Notice of Rejectable Offer, Option Exercise or Addition</u>. Immediately following the receipt by Master Lessee of any offer to purchase as set forth in Sections 15.3(b), 17.6 or Article XVI of the Occupancy Lease ("Rejectable Offer") or, upon the exercise of the purchase option pursuant to Article XXXV of the Occupancy Lease ("Purchase Option") by the Occupany Tenant or immediately following the receipt by Master Lessee of any notice by the Occupancy Tenant under Section 10.3 of the Occupancy Lease, Master Lessee shall deliver photostatic copies of all notices, certificates, agreements, offers or other communications given by the Occupancy Tenant in the making or exercising of any of aforesaid to the Partnership.

2. <u>Acceptance or Rejection of Rejectable Offers</u>.

(a) Upon Master Lessee's receipt of a Rejectable Offer, Master Lessee will immediately give notice thereof to the Partnership and furnish the Partnership with pertinent information and documentation received from the Occupancy Tenant or in connection therewith. Master Lessee will, by no later than ninety (90) days following receipt of a Rejectable Offer (except with respect to a Rejectable Offer made or deemed made pursuant to Section 17.6, in which case, Master Lessee will promptly, within the meaning thereof as prescribed in said Section 17.6, following receipt of such Rejectable Offer), notify the Partnership of its decision to either accept or reject the Rejectable Offer. If Master Lessee decides to reject the

-3-

Rejectable Offer, Master Lessee must, together with its notice of rejection to Partnership, provide the evidence of security specified in (b) below. The failure of Master Lessee to so notify Partnership shall be deemed to be Master Lessee's acceptance of the Rejectable Offer.

(i) If Master Lessee elects to reject the Rejectable Offer as provided above, Master Lessee shall, simultaneously with Master Lessee's notice to Partnership as provided above, send the appropriate notice to the Occupancy Tenant under the Occupancy Lease rejecting the Rejectable Offer.

A. Partnership shall then, within the remaining time period set forth in the applicable provision of the Occupancy Lease, accept or reject the Rejectable Offer and send notice of its election to Master Lessee.

I. If the Partnership rejects the Rejectable Offer, the Occupancy Lease shall terminate pursuant to the terms thereof and the respective interests of Partnership and Master Lessee shall remain unaffected. The Master Lessee shall be entitled to receive the Deferred Rent, and any net award or net proceeds shall be paid to and retained by the Partnership as its property.

-4-

II. If the Partnership accepts the Rejectable Offer, the Occupancy Lease shall terminate pursuant to the terms of the Occupancy Lease, and simultaneously with the termination of the Occupancy Lease, Partnership and Master Lessee shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease and the Partnership shall convey its interest in the Premises to Master Lessee or Master Lessee's designee by an appropriate deed with covenants against grantor's acts in proper form for recording. Master Lessee shall pay all charges incident to such conveyances, including counsel fees, escrow fees, recording fees, title insurance premiums and all applicable taxes (other than any net income taxes of Partnership) which may be imposed by reason of such conveyance and the delivery of such instruments. Partnership shall receive from Master Lessee and retain as the Partnership's

-5-

property the balance of the purchase price which would otherwise have been paid by the Occupancy Tenant, after satisfaction of the existing Indenture on the Premises. The Deferred Rent shall be paid to Master Lessee, and any net award or net proceeds shall be paid to and retained by the Partnership as its property. The Master Lessee shall retain its rights under the Occupancy Lease for damages on account of Basic Rent, Additional Rent and Deferred Rent. The rent payable to Partnership under the Master Lease with respect to the Premises shall be apportioned as of the date of termination of the Occupancy Lease.

(ii) If Master Lessee wishes to accept the Rejectable Offer or is deemed to have accepted the Rejectable Offer, then:

    A. Partnership shall, within the remaining time period set forth in the applicable provision of the Occupancy Lease, accept or reject the Rejectable Offer. If Partnership decides to reject the Rejectable Offer, Partnership must, together with Partnership's notice of rejection to Master Lessee, provide

PM 00831

the evidence of security specified in (b) below. The failure of Partnership to so notify Master Lessee shall be deemed to be Partnership's acceptance of the Rejectable Offer.

    I.  If the Partnership rejects the Rejectable Offer, then the Master Lessee shall, immediately upon the receipt by Master Lessee of notice from Partnership of Partnership's decision to reject the Rejectable Offer, send the appropriate notice to Occupancy Tenant under the Occupancy Lease rejecting the Rejectable Offer.  The Occupancy Lease shall terminate pursuant to its terms and Master Lessee and the Partnership shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease.  Partnership shall pay all charges incident to such assignment, including counsel fees, escrow fees, recording fees, title insurance premiums and all applicable taxes which may be imposed by reason of such conveyance and the delivery of such assignment.  The Deferred Rent (and under section 17.6, payment of Basic Rent due on the purchase

PM 00832

date as therein provided) shall be paid to Master Lessee and any net award or net proceeds, if applicable, shall be paid to and retained by the Partnership as its property.

II. If Partnership accepts, or is deemed to have accepted the Rejectable Offer, then Master Lessee shall immediately send the appropriate notice to the Occupancy Tenant under the Occupancy Lease accepting the Rejectable Offer. The Occupancy Lease shall terminate pursuant to its terms and Master Lessee and Partnership shall execute and deliver a surrender of lease to release the Premises from the Master Lease, and Partnership shall simultaneously convey its interests in the Premises to the Occupancy Tenant or its designee by appropriate deed as provided in the Occupancy Lease. The Deferred Rent shall be paid to Master Lessee. Partnership shall receive the balance of the purchase price paid by the Occupancy Tenant,

-8-

after satisfaction of the existing Indenture on the Premises.

(b) Upon the rejection of a Rejectable Offer, the party responsible for the rejection of the Rejectable Offer must furnish security in form and substance satisfactory to the other party hereto, for the obligation to refinance the Mortgage on a non-recourse basis and to pay the other party the sums it would have received had the Rejectable Offer been accepted. For the purposes of this Agreement, the "party responsible" for the rejection of a Rejectable Offer shall be:

(i) Master Lessee, if the rejection occurs pursuant to subparagraph 2(a)(i) hereof; and

(ii) Partnership, if the rejection occurs pursuant to subparagraph 2(a)(ii)(A)(I) hereof.

3. <u>If Purchase Option Exercised</u>. If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease, Partnership shall be obligated to sell and convey Partnership's Interest in the Premises to Occupancy Tenant simultaneously with the sale of the Master Lessee's Interest in the Premises to Occupancy Tenant by the Master Lessee. Partnership and Master Lessee shall execute and deliver a partial

PM 00834

surrender of lease to release the Premises from the Master Lease. Partnership's Interest and Master Lessee's Interest in the Premises shall be sold and conveyed in accordance with Article XIX of the Occupancy Lease, subject, however, to compliance with the following:

    (a) In determining the purchase price pursuant to Article XXXVI of the Occupancy Lease, the Partnership shall select an appraiser in accordance with said Article XXXVI as though Partnership were Master Lessee (Master Lessee hereby acknowledges that Master Lessee has no interest in this determination of fair market value and will execute and deliver such documents as Partnership shall require to be delivered to Occupany Tenant to effectuate the selection of such appraisers); and

    (b) The purchase price paid by Occupancy Tenant shall be disbursed as follows:

    (i) to Master Lessee, in the event the Purchase Option is exercised at the expiration of the Fixed Term, an amount equal to: the then present value (based on the Overdue Rate) of the right to receive, for the 2 year period immediately following the Fixed Term, the difference between (A) the fixed rent under such Occupancy Lease as though the Occupancy Tenant had extended the term of such Lease for the first renewal term, and (B) the Basic Rent payable for such period for the Premises under the Master Lease; and

PM 00835

(ii) the balance, if any, to the Partnership.

If the Purchase Option is exercised at the end of any renewal term under the Occupancy Lease, Master Lessee shall receive no part of the proceeds of such sale.

4. <u>Addition Financing</u>.  If Occupancy Tenant gives notice under Section 10.3 of the Occupancy Lease of Occupancy Tenant's intention to build and finance Additional Facilities, Master Lessee agrees to take no action with regard thereto without the prior written consent of Partnership, which consent Partnership may unreasonably withhold, provided only that the same would not constitute a default by Master Lessee under said Article 10.3.  Master Lessee further agrees that the owner of any Additional Facility shall be the Partnership or Partnership's designee and that Master Lessee shall enter into a modification to the Master Lease corresponding to any modifications to the Occupancy Lease executed pursuant to Article XI of the Occupancy Lease.

Partnership agrees to execute any and all documents as may be reasonably required by Master Lessee in order to effectuate the financing referred to in Article XI of the Occupancy Lease, provided that neither Partnership nor any of its partners shall be personally liable for payment of any indebtedness or for performance of any obligation.

5. <u>Distribution Upon Foreclosure</u>.  If, upon a foreclosure of the Indenture or a proceeding in lieu of such foreclosure, the proceeds of any sale or transfer of the

-11-

Premises pursuant to such proceeding exceed the amount then due the holders of the notes secured thereby ("Excess Proceeds"), the Excess Proceeds shall be paid to the Partnership. Master Lessee hereby acknowledges that Master Lessee has no interest in such Excess Proceeds.

6. <u>Additional Covenants</u>. So long as the Indenture presently encumbering the Premises is outstanding, no rejection of a Rejectable Offer shall be effective unless the prior written consent of the holder thereof has been obtained therefor

Master Lessee agrees and covenants to and with the Partnership that Master Lessee shall not (i) consent to or approve any matter which under the terms of the Occupancy Lease requries such consent or approval, or (ii) take any action which under the terms of the Occupancy Lease is subject to Master Lessee's satisfaction without Master Lessee first obtaining the Partnership's prior written consent or approval therefor, which consent or approval shall not be unreasonably withheld.

7. <u>Notices</u>. All notices which may be given under this Agreement shall be deemed to be properly given if sent by United States certified or registered mail, postage prepaid, return receipt requested to the respective address hereinabove stated or at such other address as the addressee shall have furnished to the addressor in writing.

8. **Bind and Inure**. Except as otherwise expressly provided herein, this Agreement and all the terms, conditions, covenants, provisions and agreements herein contained shall be binding upon and inure to the benefit of the Partnership and the Master Lessee and their respective successors in title; provided, however, that upon a conveyance of the Premises by the Partnership, the Partnership shall be relieved of any further liability for performance of its obligations hereunder.

9. **Limitation of Liability**. No partner of the Partnership shall be personally liable for the performance or observance of the Partnership's obligations hereunder, all such liability being limited to the assets of the Partnership.

10. **Conveyances**. Any party required to convey its interest in the Premises pursuant to paragraphs 2 or 3 hereof need not convey any better title to its interest than existed on the date hereof, and the party entitled to receive such conveyances shall accept same; subject, however, to all charges, liens, security interests and encumbrances on the Property and all applicable legal requirements, but free of the lien of the Indenture and charges, liens, or encumbrances created by or resulting from the acts of the party making such conveyances without the consent of the other parties.

11. **Definitions**. Any capitalized term used herein

PM 00838

which is not defined herein and is defined in the Occupancy Lease shall have the same meaning herein as therein.

  12. <u>Governing Law</u>. The law of the state in which the Premises are located shall govern this document.

  Executed under seal as of the day and year first above written.

BALKHOUSE ASSOCIATES

By: ML Balkhouse Properties Corp.
   a Tennessee corporation,
ATTEST:       its General Partner

_____  By: _____ [Seal]
Loretta Campbell       Pamela Franza
Assistant Secretary      Vice President


ATTEST:       MALESE FOODS CORP.

_____  By: _____ [Seal]
Howard Kadish       Herman Brickner
Secretary        Vice President

-14-

PM 00839

STATE OF NEW YORK )
               : ss:
COUNTY OF NEW YORK)


   Before me, the undersigned authority, on this 2nd day of June, 1983, personally appeared Pamela Franza and Loretta Campbell, the Vice President and Assistant Secretary, respectively, of ML BALKHOUSE PROPERTIES CORP., a Tennessee corporation, and a general partner of BALKHOUSE ASSOCIATES, a Tennessee limited partnership, known to me to be the persons whose names are subscribed to the foregoing instrument and to me known to be such Vice President and Assistant Secretary of said corporation and acknowledged to me that they executed the foregoing instrument for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said Balkhouse Associates.

          Name: *Sherry L. Maldonado*
          [Stamp]

          SHERRY L. MALDONADO
          No. 24-4696015
[Raised Seal] Notary Public, State of New York
          Qualified in Kings County
          Term Expires March 30, 1985


STATE OF NEW YORK )
               : ss:
COUNTY OF NEW YORK)


   Before me, the undersigned authority, on this 2nd day of June, 1983, personally appeared Herman Brickner and Howard Kadish, the Vice President and Secretary, respectively, of MALESE FOODS CORP., a Delaware corporation, known to me to be the persons whose names are subscribed to the foregoing instrument and to me known to be such Vice President and Secretary of said corporation and acknowledged to me that they executed the foregoing instrument for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said corporation.

          Name: *Sherry L. Maldonado*
          [Stamp]

          SHERRY L. MALDONADO
          No. 24-4696015
[Raised Seal] Notary Public, State of New York
          Qualified in Kings County
          Term Expires March 30, 1985


     Drafted by and when recorded, return to
        Steven D. Bloom, Esq.
      c/o Robinson, Silverman, Pearce,
        Aronsohn & Berman
         230 Park Avenue
       New York, New York 10169

## EXHIBIT A

All that certain tract or parcel of land, lying and being situated in Hays County, Texas, and being Lot One (1), San Marcos Distribution Center, according to the map or plat thereof of record in Volume 2, page 272, Plat Records of Hays County, Texas.

PM 00841