UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: 0-1-02 439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | Sherman, M.J. |
| v. | : | |
| | : | **DEFENDANT'S REPLY MEMORANDUM** |
| Malease Foods Corp., formerly | : | **IN SUPPORT OF MOTION FOR LEAVE** |
| known as Malese Foods Corp., | : | **TO FILE MOTION TO DISMISS** |
| | : | **KROGER'S DAMAGE CLAIM** |
| Defendant. | : | |

_____

**I.  Introduction**

Malease respectfully submits this reply memorandum in support of its motion for leave to dismiss Kroger's claim for consequential damages. Under the well-settled principles of Hadley v. Baxendale, Kroger's claim for future lost profits is factually and legally insufficient. The defenses which would be offered at trial are the same as those presented on Malease's motion, and we respectfully request that as a matter of judicial economy the Court allow Malease to submit its motion.

**ARGUMENT**

**II.  Kroger's Damage Claim Fails as a Matter of Law**

Although Kroger acknowledges that it is bound by the settled law restricting recovery of future lost profits as consequential damages, it does not apply the law to

the facts of this case. Thus, at pages 6-7 of its opposition, Kroger basically contends that any time we have a contract of sale, a breaching party has limitless and wide-open liability for all damages which might be claimed <u>regardless</u> of the language of the agreements between the parties. According to Kroger, nothing is excluded and everything is foreseeable and contemplated. Thus, a claim for loss of use of money, loss of future business profits from an advantageous sale which might be made 20 years later and anything else that Kroger can think of as damages are recoverable regardless of the prohibition against such recovery in the operative leases.

If Kroger's position were correct, then there would never be any limitation on consequential damages as everything is foreseeable simply because the aggrieved party contends that it is so. This is not the law, and acceptance of Kroger's argument would entirely eviscerate the principles of <u>Hadley</u> v. <u>Baxendale</u> as set forth in the cases cited in Malease's memorandum. Indeed, as held by the Court in <u>Great Earth International Franchising Corp.</u> v. <u>Milks Development</u> cited by Malease at page 11 of its memorandum, "Most of the leading cases which have decided on claims of future lost profits have ruled that they are not recoverable." As noted by the Court, every party entering into a commercial contract does so with the intention of earning a profit. The critical distinction which Kroger fails to acknowledge is "that the parties must contemplate not turning a profit, but rather 'the particular damages' owing to lost

2

profits should the deal turn sour (311 F.Supp.2d at 434-435).

At all relevant times, Kroger was in the grocery business. It was not a real estate speculator, and nothing in the operative agreements even remotely indicates or infers that Malease contemplated or assumed liability for limitless future profits which Kroger might have made from speculative real estate activities 20 years down the road pursuant to a contract of sale made <u>after</u> Kroger knew that Malease did not believe it was obligated to sell.

Moreover, the specific language of the Kroger lease clearly negates any notion that the parties contemplated consequential damages of any form in favor of Kroger.

### III.  Kroger's Sole Recourse is Against the Leased Property

As Malease explained at pages 9-10 of its memorandum, the language of the lease clearly precludes a recovery of lost profits and provides that Kroger's recourse for any claim of breach is available <u>solely</u> against the leased property. Should Kroger ultimately prevail in this action, then it will be entitled to full recourse against the leased property as Malease will unquestionably discharge its obligation to convey.

Had the parties even remotely considered wide open liability for future lost profits, then we would not see the language of no recourse to lessor embodied in Article XXII of the lease nor would we have the complete exclusion of consequential damages found in Article XXIII which provides that any loss of or decrease in

enjoyment or beneficial use of the leased property as a result of destruction by fire, the elements, casualties, thefts, riots, wars, <u>or otherwise</u> or in consequence of foreclosures, attachments, levies or executions shall be borne by Kroger and that Malease would in no event be answerable or accountable therefor. Indeed, according to Article XXIII if one of these events occurs, and Kroger sustains damage, it is still <u>not</u> entitled to any abatement of rent.

Faced with this unequivocal language, Kroger attempts to avoid its impact by recourse to a footnote in its memorandum (at page 9) where Kroger conveniently ignores the catch all phrase "or otherwise" embodied in Article XXIII.

Similarly, as shown at page 10 of Malease's memorandum, the survival of claims language in Article XXXVIII (lease, p. 53) operates entirely in favor of Malease and against Kroger. The survival language benefits Malease only, and there is no corresponding provision concerning survival of a consequential damages claim in favor of Kroger.

The inescapable conclusion is that nothing in the lease agreement itself even remotely contemplates let alone entitles Kroger to consequential damages for lost business profits in any form. In fact, even if consequential damages are sustained as a result of any of the occurrences set forth in Article XXIII, <u>none of those events entitles Kroger to any abatement of rent.</u> If Kroger could not obtain an abatement of rent for

deprivation or interference with its use of the property, then how can it possibly claim consequential damages of any kind.

### IV.  Kroger's Admitted Failure to Comply With Texas Law

At pages 12-13 of its memorandum, Malease set forth the governing principles of Texas law which specifically provide that Malease was entitled to know <u>from the complaint</u> the details concerning the manner in which the profits arose, the receipts that Kroger allegedly would have derived but for the failure of Malease to comply with the contract as well as the expenses incurred.

The Kroger complaint contains none of this information and merely alleges at paragraph 44 that: "Because of Defendant Malease's breaches, Kroger has been damaged in an amount to be determined at trial."

The allegations in Kroger's complaint are plainly insufficient to even begin to comply with the requirements of Texas law, and by its conspicuous silence on the point, Kroger admits that this is so. For this reason alone, Kroger's claim for lost business profits from a possible sale of the Texas facility must be dismissed.

### V.  Kroger's Failure to Comply With FRCP 26(a)(1)(B) and 37

At pages 13-15 of its memorandum, Malease showed that although this action was commenced on June 14, 2002, the first time the Kroger/Butt agreement was produced was almost two years later as an exhibit on Kroger's summary judgment

motion filed on February 27, 2004. At all relevant times, Kroger must have known that the Butt agreement was the keystone of its damage claim and that pursuant to Rule 26, it was obligated to disclose that agreement without awaiting a discovery request.

But we need not stop here.

At the outset of discovery, Malease specifically reminded Kroger of its initial disclosure obligations. In compliance with the provisions of FRCP 26(a)(1), and by letter dated April 10, 2003 (Exhibit "A" hereto), Malease made its designations. Although Malease had no obligation to do so, Malease went on at page 3 of that letter to tell Kroger:

> We expect that as part of its initial disclosure in accordance with Rule 26 Kroger will provide all documents arising out of, relating to or concerning the transactions described in the July 24, 2001 letter from Balkhouse Associates and Kroger to Malease. This would include <u>any and all documents from the first moment that the transaction was contemplated, conceived, communicated or discussed through and including the date of production.</u> (emphasis added).

Finally, Malease concluded its letter with the statement:

> Of course, nothing in the foregoing specification is intended to in any way limit the obligations of Kroger as imposed by FRCP 26(a)(1).

In complete disregard of Rule 26 and despite Malease's direct reference thereto, Kroger willfully defaulted in disclosing this key damages document. Remarkably, it now attempts to excuse its conduct by contending at page 11 of its memorandum that the burden was on Malease to demand production of the Butt agreement as Kroger blithely contends that: "It is not Kroger's job to make Malease's case for it."

While it is not Kroger's job to make Malease's case, it certainly is Kroger's job to make its own case by complying with the Federal Rules relating to discovery as well as the substantive requirements of Texas law concerning allegation and specification of damage.

Indeed, if Kroger's glib interpretation of the automatic disclosure requirements of FRCP 26(a) is correct, then the Supreme Court wasted its time in adopting the rule. What Kroger fails to comprehend here is that production of the Kroger/Butt agreement would not have made Malease's case for it, but it certainly was a crucial document for Kroger's case which should have been produced as part of its automatic disclosure obligation at the outset of the lawsuit and not almost two years later for the first time as an exhibit to its motion for summary judgment.

**VI.   Conclusion**

Malease respectfully submits that on both the facts and the law, Kroger's claim for consequential damages consisting of future lost profits resulting from an asserted inability to sell the Texas property pursuant to a contract made after the breach is legally insufficient. The provisions of the lease concerning no recourse against Malease, no consequential damages for loss of benefit of the lease, and no survival of any claims in favor of Kroger after termination could not be clearer (lease, pp. 44 and 53) .

Likewise, Kroger's failure to allege the specifics of its claimed damages in accordance with Texas law operates as a separate and distinct basis for denial of recovery.

Finally, Kroger's failure to produce the Butt agreement as part of its automatic disclosure requirements under FRCP 26 precludes its reliance upon that document.

Kroger has the burden of proof on its damage claim. The contentions and defenses offered by Malease in its proposed motion are the same as those that would be used at

trial. Malease respectfully submits that there is no need for a trial here and that as a matter of judicial economy this Court should grant its motion.

Respectfully submitted,

 /s/ R. Gary Winters
R. Gary Winters 0018680
Attorneys for Defendant
McCASLIN, IMBUS & McCASLIN
Suite 900 Provident Bank Building
632 Vine Street
Cincinnati, Ohio 45202-2442
Telephone No.: 513-421-4646
Telefax No.:    513-421-7929
Email:    RGWinters@mimlaw.com

OF COUNSEL:

Robert W. Cinque, Esq.
CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.:    212-759-7737
Email:        CINQUE845@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2004, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ R. Gary Winters
R. Gary Winters   0018680
Attorney for Defendant
Suite 900 Provident Building
632 Vine Street
Cincinnati, OH 45202-2442

                      (513) 421-4646 Telephone
                      (513) 421-7929 Facsimile
                      [rgywinters@mimlaw.com](mailto:rgywinters@mimlaw.com)

Case 1:02-cv-00439-SSB-TSB   Document 57   Filed 10/15/2004   Page 12 of 12