UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| The Kroger Co., | : | Case No.: 0-1-02 439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | Sherman, M.J. |
| v. | : | |
| | : | **MEMORANDUM OF MALEASE** |
| Malease Foods Corp., formerly | : | **FOODS CORP. IN OPPOSITION** |
| known as Malese Foods Corp., | : | **TO KROGER MOTION TO SHOW** |
| | : | **CAUSE TO COMPEL MALEASE** |
| Defendant. | : | **TO RELINQUISH ITS INTEREST IN** |
| | | **THE PROPERTIES PRIOR TO ENTRY** |
| _____ | | **OF FINAL JUDGMENT** |

**I.   Introduction**

There is no question but that in its Order of July 27, 2004, this Court granted Kroger's motion for summary judgment on Counts II and III of its complaint and granted specific performance of the Purchase Options.

Kroger now brings this motion to show cause claiming that (a) Malease is in civil contempt of this Court's summary judgment order, or (b) in the alternative requesting leave to obtain a mandatory injunction requiring Malease to immediately convey its rights in the subject properties upon terms unilaterally dictated by Kroger prior to entry of final judgment and without regard to the rights and liabilities of the parties as set forth in the operative agreements.

Conspicuously omitted from the exhibits submitted by Kroger on its motion to

show cause is the letter from its attorney Scott D. Phillips, Esq. dated August 23, 2004 (Exhibit "A" hereto) which forms the linchpin for Kroger's claim that Malease is in contempt. In relevant part the letter from Kroger's attorney states:

> Following up Judge Beckwith's Order regarding Summary Judgment in the above-referenced case, I would like to schedule the closing on the three properties subject to the purchase options as soon as possible. The Kroger Company would like a closing date of October 1, 2004 and cooperation with updating the title information, should such cooperation become necessary.
>
> With respect to funds that would have been due to Mr. Kadish at the closing had he conveyed the property on time in April 2003, Kroger will deposit those funds in escrow with the Clerk of Court for the Southern District of Ohio pending the outcome of the damages trial, which has yet to be set.

Kroger now asks that this Court hold Malease in contempt because it did not comply with the requests in Kroger's letter. There is no basis in fact or in law for Kroger's contempt application.

This Court did not order a closing date of October 1, 2004 nor did anything in its Order granting summary judgment purport to modify the terms of the operative agreements between the parties. Notably, the letter from Kroger's attorney is entirely silent as to the amount to be paid to Malease, the formula for its calculation, the adjustments if any to be made at closing, title issues and any other matters which may

affect purchase price and other terms of closing.

In his letter, Mr. Phillips goes on to unilaterally decree that Kroger is to be granted a *de facto* attachment of whatever funds might be due Malease by deposit in the registry of the Court pending the outcome of the damages trial.

It seems only fair that before asking this Court to find Malease in contempt, Kroger should have brought all relevant facts concerning Malease's alleged contempt of the Phillips letter to the attention of the Court. Nothing in this Court's Order on the summary judgment motion allows Kroger to abrogate the provisions of the various agreements between the parties by fiat.

There is also the matter of the presently pending motion by Malease to dismiss Kroger's damage claim. Without awaiting any determination by this Court, Kroger is simply proceeding on the basis that it will prevail on this issue and the only question is the amount of its recovery. Malease of course vigorously disagrees with Kroger's assertion of any right to damages, and this matter will be resolved either by decision of the Court on Malease's dismissal motion or after trial and verdict.

Perhaps most significant here is the fact that a grant of mandatory injunctive relief without a stay or indeed an opportunity to seek a stay pursuant to FRCP 62(c), compelling Malease to convey its valuable property rights in these three unique parcels of commercial real estate could effectively deprive or seriously infringe upon Malease's

fundamental right of appeal.

## II.     Argument

At the outset of this litigation, Malease moved to dismiss pursuant to FRCP 12(b)(2) for lack of jurisdiction over the person. At page 7 of its September 22, 2003 Order denying the motion, this Court framed the issue as follows:

> Thus, the jurisdictional issue in this case essentially comes down to whether Malease's acceptance of an assignment of a lease from Balkhouse Properties and consequent collection of rent payments from Kroger through cooperation of the Two Party Agreements come within the long-arm statute and satisfy the requirements for due process. Although it is a close question, given that Kroger is only required to establish a prima facie case of jurisdiction, the Court finds that both requirements are met in this case.

With utmost deference and respect for this Court, Malease respectfully continues to maintain that what the Court denominates as a close question concerning the ambit of the long-arm statute and the requirements of due process should have been resolved in favor of Malease. Recognizing that this Court's Order denying the motion to dismiss was interlocutory, Malease acknowledged that it had to wait until a final appealable order and judgment is entered before it proceeds to the Sixth Circuit. Malease respectfully contends that the exercise of jurisdiction in this case presents a significant constitutional issue and that the determination by this Court exceeds the outer limits of

jurisdiction as set forth by Supreme Court precedent.

This brings us to the very significant issue that absent a stay, a grant of the relief that Kroger seeks in the context of a decree of specific performance of unique realty could have the effect of depriving or perhaps severely infringing upon the fundamental due process rights of Malease to appeal both the jurisdictional issue as well as the grant of summary judgment. By way of illustration, let us assume that Kroger fails to prevail on its damage claim and the Court's Order on summary judgment for specific performance is upheld on appeal. Clearly, Malease will be obligated to convey the real property to Kroger. On the other hand, if there is a reversal and the cross-motion by Malease is granted, or if Malease prevails after trial, then it would be entitled to the continued ownership of its property, and Kroger would then be liable in damages to Malease.

Malease recognizes that depending upon the outcome of the damages portion of the case, there will come a point in the litigation where a final judgment will be entered in conformance with this Court's decision on the motion for summary judgment in the form of an appealable Order or Judgment. Between now and then, if the *status quo* is maintained, the three sites will remain exactly as they are, and Malease respectfully contends that the Court should continue the maintenance of the *status quo* until determination of Malease's appeal.

Alternatively, depending upon the outcome of the current matters and the further order of this Court, Malease may seek a stay pending appeal pursuant to FRCP 62(c) in accordance with the test set forth in Nader v. Blackwell, 230 F.3d 833, 834 (6th Cir. 2000):

> The factors to be considered by the court in determining whether a stay pending appeal should issue are: 1) whether the applicant has demonstrated a likelihood of success on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure the other interested parties; and 4) where the public interest lies. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* at 153.

Of direct relevance here is the decision of the Court in A&B Steel Sharing & Processing Inc. v. U.S., 174 F.R.D. 65 (E.D. Tenn. 1996) where the issue was whether a parcel of commercial real estate seized by the IRS could be sold while an appeal was pending from a grant of summary judgment upholding assertion of the government's lien. The Court reviewed the four factors which are applied in the Sixth Circuit and determined that even though the plaintiff had failed to make a strong showing of likelihood of success on the merits of the appeal, the "plaintiff would be irreparably harmed if the subject property, unique commercial real estate is sold during appeal since money damages could not provide an adequate remedy in the event, albeit unlikely, that

6

plaintiff succeeds on appeal.

As noted by the Court:

> In sum, this court finds that the injunction pending appeal should be granted. Plaintiff has demonstrated to this court that it will be irreparably injured if the property is sold pending appeal. If the property is so sold, plaintiff would be limited to a remedy of money damages. Yet, money damages would not provide plaintiff a full and fair remedy. Plaintiff does not seek money damages int his case, but rather seeks to retain parcel of commercial real estate, which is highly distinctive in nature.
>
> In finding that the equities tip in favor of granting an injunction, this court also notes that the government will not be harmed by maintenance of the status quo. This injunction pending appeal merely delays a government sale of the property. Just as the government found a willing and able purchases for the property over one year ago, on August 14, 1996, the government will presumably be able to do so again, after the appeal is decided. Indeed, the government has not provided any reason as to why it would not be able to sell the property in the future. In fact, the property may appreciate such that the government obtains a larger offer for the subject property than it received in the past.

174 F.R.D. at 70-71.

We note that in its memorandum, aside from citing cases involving injunctive relief which are entirely beside the point Kroger meaningfully fails to address the situation presented here. Thus, at page 5 of its memorandum Kroger refers to the

decision in <u>Wayne</u> v. <u>Village of Sebring</u>, 36 F.3d 517, 531 (6th Cir. 1994) and <u>Loschiavo</u> v. <u>City of Dearborn</u>, 33 F.3d 548, 553 (6th Cir. 1994) which simply stand for the proposition that this Court has discretion to enter a permanent injunction in an appropriate case. No one disputes this basic principle of law.

The other case cited by Kroger, <u>Walgreen Co.</u> v. <u>Sara Creek Property Co.</u>, 966 F.2d 273, 274 (7th Cir. 1992) is a decision from the Seventh Circuit upholding the authority of the district court to enforce an exclusivity clause in a shopping center lease so as to prevent the owner of the center from leasing to a competitor of Walgreen.

Nothing in these cases offers any guidance here. In contrast, as Malease has shown that where as here we are dealing with unique commercial real property, entirely different equitable considerations arise and different rules apply.

As previously stated, Malease genuinely believes that the exercise of *in personam* jurisdiction in this case violates settled precedent of the United States Supreme Court. We anticipate that in response to this motion, Kroger will once again complain about the delay and will maintain that Malease should simply forego all rights of appeal. Malease is not prepared to sacrifice the fundamental right of every litigant to seek appellate review.

At this point, Malease would like to note one additional point. Subsequent to learning of Malease's rejection of Kroger's exercise of the purchase options, Kroger

apparently persuaded Butt to enter into a contract to purchase the San Marcos, Texas facility for the sum of $15 million representing an enormous windfall profit to Kroger. We recognize that Kroger is anxious to conclude that transaction as soon as possible, and this is quite understandable. However, the desire of Kroger to earn a huge profit quickly must give way to the basic constitutional rights of every litigant to seek appellate review. Not every denial of a jurisdictional motion is affirmed, and the same certainly holds true with respect to a grant of summary judgment by the District Court.[1] Depending upon the outcome of the appellate process, the possibility exists that Malease may ultimately prevail. If prior to the resolution of any appeal Butt were to accept a conveyance from Kroger, then this raises the specter of the equitable remedy of restitution.

The Supreme Court has held that as a general rule, "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." Arkadelphia Milling Co. v. St. Louis S.W. Railway Co., 249 U.S. 134, 145, 39 S. Ct. 237, 63 L.Ed. 517 (1919).

A determination of whether and to what extent restitution is available is

---

[1] Indeed, Kroger could have easily obviated the jurisdictional issue by bringing suit against Malease in one of the available forums where the Court would have unquestionably had jurisdiction over the person of Malease.

grounded in the essential equity jurisdiction of the Court and its flexibility to tailor each decree to the necessities of each specific case. Hecht Co. v. Bowels, 321 U.S. 321, 329, 64 S. Ct. 587, 88 L.Ed. 754 (1944).

The facts involved here are unique in that the Butt/Kroger agreement did not come into existence until <u>after</u> Kroger knew, and presumably Butt either knew or certainly should have known of Malease's rejection of Kroger's option exercise. Assuming that with full knowledge of the dispute, Butt nevertheless entered into a purchase agreement with Kroger, then as a matter of equity and application of the principles of restitution as annunciated by the Supreme Court could result in a reconveyance to Malease of the property previously sold by Kroger to Butt.

Obviously, there are a host of permutations and combinations which might eventuate here, and Malease certainly makes no prediction as to the probable outcome other than to reaffirm its strongly held belief that the Court lacked jurisdiction over its person and that a minimum issues of fact existed precluding a grant of summary judgment to either side.

### III.  Conclusion

Kroger's application for contempt based upon the refusal of Malease to comply with the terms of the August 23, 2004 letter from Kroger's attorneys is entirely

groundless.

While there are many options available here, Malease respectfully suggests that the next thing to be accomplished is resolution of the legal sufficiency and vitality of Kroger's claim for consequential damages. Once this is achieved, then we should have available a final appealable Judgment or Order terminating this litigation.

Given that we are dealing here with title to unique commercial real estate, Malease respectfully contends that the *status quo* be maintained pending determination of the appeal, and Malease stands ready and willing to promptly and expeditiously seek such a stay either from this Court or the Sixth Circuit as appropriate depending upon the outcome of the present proceedings.

          Respectfully submitted,

           /s/   R. Gary Winters
          R. Gary Winters 0018680
          Attorneys for Defendant
          McCASLIN, IMBUS & McCASLIN
          Suite 900 Provident Bank Building
          632 Vine Street
          Cincinnati, Ohio 45202-2442
          Telephone No.: 513-421-4646
          Telefax No.:   513-421-7929
          Email:   RGWinters@mimlaw.com

OF COUNSEL:

Robert W. Cinque, Esq.

CINQUE & CINQUE, P. C.
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone No.: 212-759-5515
Telefax No.:    212-759-7737
Email:           CINQUE845@aol.com

## CERTIFICATE OF SERVICE

    I hereby certify that on the 15th day of October, 2004, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        s/ R. Gary Winters
        R. Gary Winters   0018680
        Attorney for Defendant
        Suite 900 Provident Building
        632 Vine Street
        Cincinnati, OH 45202-2442
        (513) 421-4646 Telephone
        (513) 421-7929 Facsimile
        rgywinters@mimlaw.com