UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE KROGER CO., | : | Case No.: C-1-02-439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | |
| v. | : | **THE KROGER CO'S MEMORANDUM** |
| | : | **REGARDING THE APPROPRIATE** |
| | : | **AMOUNT OF SUPERSEDEAS BOND** |
| MALEASE FOODS CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**I. Supersedeas Bond is Designed to Secure the Value of the Judgment**

The Kroger Co.'s ("Kroger") moved this Court to require Defendant Malease Foods Corp. ("Malease") to show cause why they refuse to obey this Court's Order in this case dated July 27, 2004. The Court's Order granted this Motion on November 23, 2004 and required that the parties file a memorandum within ten days of the November 23 Order setting forth positions with regard to the appropriate amount for the supersedeas bond under F.R.C.P. 62 in the event that Defendant Malease Foods Corp. took an immediate interlocutory appeal of its July 27, 2004 requirement to relinquish its rights to the subject properties in this lawsuit, rather than relinquish its rights in the properties. In either case, Malease can no longer be permitted to ride the appellate fence while neither taking an appeal nor relinquishing the properties as ordered.

F.R.C.P. 62 establishes an appellant's right to a stay and also an appellee's right to have bond posted. Because of this dual protective role, full supersedeas bond should be required in all but the most extraordinary circumstances.[1]

A supersedeas bond is designed to "secure the value of the judgment."[2] Therefore, the appropriate amount of the supersedeas bond that should be required of Malease is the monetary equivalent to the judgment that Malease relinquish its rights in the three subject properties.

To arrive at the monetary equivalent to the judgment that Malease relinquish its rights in the three subject properties, this Court directed the parties to examine the Two-Party Agreements at paragraph 3(a). Paragraph 3(a) establishes a formula for setting the fair market value of the properties at the time of the exercise of the options, in conjunction with the original Lease Agreements.

On page 10 of the Two-Party Agreement[3], paragraph 3(a) states:

(a) In determining the purchase price pursuant to Article XXXVI of the Occupancy Lease,[4] the Partnership shall select an appraiser in accordance with said Article XXXVI as though Partnership were Master Lessee (Master Lessee hereby acknowledges that Master Lessee has no interest in this determination of fair market value and will execute and deliver such documents as Partnership shall require to be delivered to Occupany [sic] Tenant to effectuate the selection of such appraisers); and * * *

Thus, the purchase price of the three properties is the start point for determining the proper amount of the supersedeas bond. Of course, the purchase price of the three properties is

---

[1] *Hamlin v. Charter Twp. of Flint,* 181 F.R.D. 348 (E.D. Mich, 1998), *affirmed in part, reversed in part on other grounds, remanded*, 165 F.3d 426 (6th Cir. 1999). *See, also, Hoge v. Honda of America Mfg., Inc.,* 2003 U.S. Dist. LEXIS 4068 (S.D. Ohio, Feb. 28, 2003), (attached as Exhibit A).
[2] *J.Perez & CIA., Inc. v. United States,* 747 F.2d 813 (1st Cir. 1984).
[3] Exhibit O to The Kroger Co.'s Memorandum in Opposition to Defendant's Motion for Leave to File its Motion to Dismiss The Kroger Co.'s Damages Claim.
[4] Article XXXVI of the Occupancy Lease provides the method for selecting Appraisers and for having those appraisers arrive at the fair market value of the combined properties. See Exhibit M, page 51-52 to The Kroger Co.'s Memorandum in Opposition to Defendant's Motion for Leave to File its Motion to Dismiss The Kroger Co.'s Damages Claim.

known, because Kroger purchased the properties from Balkhouse on June 29, 2001.[5] The purchase price on June 29, 2001 was $37,179,666.50.[6]

From this $37+ million purchase price, it is possible to determine the value of the amount of the judgment—the value of clear title to the three properties. The amount of the judgment is equivalent to Kroger's ability to alienate these properties for profit, or to use the value of the properties as collateral for financing. The amount of the judgment also includes the time value of money element to these abilities dating from April 1, 2003.

**II. Value of the Judgment for the Texas Property**

With respect to the property in Texas, that amount is the value of the agreement that Kroger has already made with H.E. Butt whereby H.E. Butt would purchase the property for $11,000,000.00 as of April 1, 2003. That deal is currently being held up by Malease, and has been since April 1, 2003.[7] Kroger runs the risk of losing that deal due to the passage of time. It is a real risk and it would be appropriate for the bond to include the entire $11,000,000.00 amount due to this risk. Malease would be liable for $11,000,000 minus any future sale price of that property, because under Paragraph 7(b) of the Kroger and H.E. Butt Purchase Agreement H.E. Butt can terminate the terms of the agreement in the event of default by Kroger.[8] If this deal falls through because of Malease's unreasonable delay in relinquishing its interest in the Texas property, Kroger will have lost the entire value of that deal.[9]

---

[5] June 29, 2001 Purchase Agreement between Kroger and Balkhouse, Exhibit I to Kroger's Motion for Summary Judgment and included herein for ease of reference as Exhibit B to this Memorandum. Authenticated by Edward N. Waldvogel in his affidavit attached as Exhibit E.
[6] June 29, 2001 Purchase Agreement between Kroger and Balkhouse, Exhibit I to Kroger's Motion for Summary Judgment and included herein for ease of reference as Exhibit B to this Memorandum.
[7] April 12, 2002 Agreement between Kroger and HEB Grocery Company, LP, attached as Exhibit C. Authenticated by Edward N. Waldvogel in his affidavit attached as Exhibit E.
[8] October 30, 2003 Expert Report of Jon Libbert, attached as Exhibit D; April 12, 2002 Agreement between Kroger and HEB Grocery Company, LP, Paragraph 7(b), attached as Exhibit C.
[9] April 12, 2002 Agreement between Kroger and HEB Grocery Company, LP, attached as Exhibit C.

Currently, Kroger has been unable to have access to the $11,000,000 purchase price from H.E. Butt for the Texas property since April 1, 2003. The loss of the use of this money at Kroger's current reinvestment rate of 12 percent, minus the actual rent received in lieu of the lost use of this money was a monthly net loss of $61,875.00.[10] The total was $433,125.00 for April 1, 2003 through October 30, 2003 with compounded interest.[11] The continuing cost of these losses until the sale is closed is $95,770.42 per month for each month after October 30, 2003, with compounding interest.[12]

Thirteen months have passed since October 30, 2003. Starting with the $433,125.00, adding the principal amount of $95,770.42 per month and monthly compound interest for thirteen months equals $1,828,686.40 as of November 30, 2004. If this continues through December 31, 2005, the total cost to Kroger will be $3,416,966.20. If Malease takes an appeal, it will surely go longer than December 31, 2005. Therefore, Kroger believes it is conservative, but reasonable to set the bond attributable for the Texas property at $3,416,966.20.

**III. Value of the Judgment for Combined Kentucky and Tennessee Properties**

A rough estimate of the fair market value of the combined properties in Tennessee and Kentucky are easily obtained by subtracting the H.E. Butt sale price of the Texas property, ($11,000,000.00), from the sale price of all three properties, $37,179,666.50. That simple subtraction makes the value of the combined Tennessee and Kentucky properties $26,179,666.50.

With respect to the properties in Tennessee and Kentucky, there is no current deal to sell those properties in place. However, Kroger is unable to use the $26,179,666.50 value of those

---

[10] October 30, 2003 Expert Report of Jon Libbert, attached as Exhibit D.
[11] October 30, 2003 Expert Report of Jon Libbert, attached as Exhibit D.
[12] October 30, 2003 Expert Report of Jon Libbert, attached as Exhibit D.

properties as collateral to obtain financing and unable to increase the value of the properties by making improvements on the properties.

Kroger could speculate as to the loan-to-value ratio at current interest rates, and then attempt to take its internal rate of return for a profit, but it would be highly speculative and again would require a financing expert's opinion. Having $26,179.666.50 in potential collateral tied up for two years unnecessarily has a large cost, but whether that cost is $3,000,000.00, $5,000,000.00, $7,000,000.00 is up for debate.

Kroger is willing to stem this debate in the interest of expediency by requesting only a bond on the lost value attributable to the Texas property--$3,416,966.20. This is a very rough and very conservative approximation[13] of the amount of the specific performance ordered in July. Kroger urges that the $3,416,966.20 should be the full amount of the supersedeas bond.

### IV. Malease's Argument that Kroger Should Post a Bond is Without Merit

Malease derives its dwindling leverage over Kroger by holding these properties hostage. By holding the master lease interests, Malease prevents Kroger from alienating the properties or using them as collateral to obtain financing, and deters Kroger from increasing their value by performing improvements. The important issue for setting a supersedeas bond is the value of the judgment—in this case—the value of the July order for specific performance requiring Malease to relinquish its master lease interests to Kroger as required by the Purchase Options in the Lease Agreements. The value of the judgment is clear title to these properties vesting in Kroger, and that is the value that the supersedeas bond should cover under Rule 62.

---

[13] Conservative, because the $37,179.666.50 purchase price between Kroger and Balkhouse is a year earlier than April 1, 2003, and therefore likely lower than the value of the properties would be on April 1, 2003; because the Texas damages do not include a number for the potential that H.E. Butt will undo the $11,000,000.00 deal; and because the damages do not include a figure for the lack of the use of the $26,179.666.50 value for the Kentucky and Tennessee properties as collateral for financing.

Malease attempts to recast this court's November Order for a supersedeas bond based on its July Order for specific performance as an order for an injunction conditioned on a bond posted by Kroger. A close reading of the July Order, however, makes it quite clear that specific performance is required—"Malease is therefore compelled under the leases to sell its leasehold interests in the subject properties to Kroger" (p.19) and "summary judgment is appropriate on Count II of Kroger's complaint, which seeks specific performance of the purchase options, and Count III of Kroger's complaint, which claims that Malease breached its obligation to convey the leases to Kroger upon exercise of the purchase option. Accordingly, Kroger's motion for summary judgment on Counts II and III of the complaint is well-taken and is GRANTED." (p.19-20).

A close reading of the November Order makes it quite clear that it is Malease who must post an appropriate bond to secure Kroger's judgment for the specific performance—"the Court agrees with Kroger that Malease should be required to either post an appropriate bond or proceed as soon as it is practical to convey its leaseholds to Kroger in accordance with the Court's order" (p.3).

Malease's confusion apparently stems from its inability to discern the remedy of specific performance on a contract from equitable injunctive relief. All of the cases that Malease cites in support of its position are cases where a court has conditioned an equitable injunction upon the posting of a bond, rather than the enforcement of a contract.[14] However, this is a case where the remedy is specific performance of the valid enforcement of terms of a contract.[15] The

---

[14] *W.R. Grace & Co. v. Local Union* 759, 461 U.S. 757, 103 S.Ct. 2177 (1983); *Russell v. Farley*, 105 U.S. 433, (1882); *Commerce Tankers Corp. v. National Maritime Union*, 553 F.2d 793 (2d Cir. 1977), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400 (1977).

[15] *See, e.g., B&B Trucking, Inc. v. U.S. Postal Service*, 363 F.3d 404, 414-415 (6th Cir. 2004), *citing Ingersoll-Rand Co. v. United States*, 250 U.S. App. D.C. 412, 780 F.2d 74 (D.C. Cir. 1985) ("The Plaintiff sought declaratory and injunctive relief * * * [but] we find that the essence of I-R's claim is a request for specific performance of the original contract.")

supersedeas bond in this case is to protect the value of the judgment while Malease receives a stay in order to perfect an appeal.[16]

Following this court's July Order, Kroger wrote to Malease in August, requesting a closing date of October 1, 2004. Malease refused, stating that "we will not have a closing soon." In its Memorandum in Opposition, Malease makes only one argument—that it is not required to comply with this Order until the damages portion of the case is completed and it has taken an appeal.

But this Court recognized in its November Order that Malease is free to perfect an interlocutory appeal of the July order under 28 U.S.C. 1292(a). Malease must simultaneously seek a stay and post its supersedeas bond—which is the point of the Court ordering the simultaneous memoranda regarding the bond. F.R.C.P. 62(c); F.R.C.P. 62(d). At that point, Malease must choose—post the bond and perfect the appeal, or agree to a closing and relinquish the master lease interests to Kroger.

Whichever choice is made, Malease should be given a very short time frame to comply. Kroger is suffering great financial harm on a daily basis, as Malease freely admits at page 9 of its Memorandum in Opposition and as demonstrated in Kroger's Motion to Show Cause and in this Memorandum. Kroger is incurring sizeable damages every day that Malease delays due to the amount of money at stake.

**V. Conclusion**

For the many reasons stated in its Motion to Show Cause, Kroger respectfully requests that this Court set a supersedeas bond at $3,416,966.20, with an Order to post the bond and perfect an appeal within 30 days of the Order. Alternatively, Malease may agree with Kroger to

---

[16] *J.Perez & CIA., Inc. v. United States,* 747 F.2d 813 (1st Cir. 1984).

a closing date within that same 30 days. The closing date should be no further away than 60 days from the date of the Order.

Additionally, Kroger respectfully requests that the Court grant a trial date on the damages issue as soon as is practicable.

Respectfully submitted,

/s/ Scott D. Phillips
Scott D. Phillips  (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:

Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion and Memorandum in Support was filed electronically and has been sent by ordinary United States mail, postage prepaid on this 3rd day of December, 2004 to:

R. Gary Winters, Esq.
McCaslin, Imbus & McCaslin
900 Provident Bank Building
632 Vine Street
Cincinnati, OH 45202-2442

Robert W. Cinque, Esq.
Cinque & Cinque
845 3rd Avenue, Suite 1400
New York, NY  10022

/s/ Scott D. Phillips

CINlibrary/1457365.1