# EXHIBIT C

## AGREEMENT

This Agreement made the 12th day of April, 2002, between The Kroger Co., an Ohio corporation ("Kroger") and HEB Grocery Company, LP, a Texas limited partnership, as successor in interest to H. E. Butt Grocery Company, a Texas corporation ("HEB").

## WITNESSETH:

Whereas, Balkhouse Properties Corp. ("Balkhouse"), as lessor, and Kroger entered into that certain Lease dated as of April 1, 1983, as amended by (i) that certain Consent to Sublease, dated January 18, 1992, (ii) that certain Consent to Conveyance Agreement (the "Conveyance Agreement") among Balkhouse Associates, a Tennessee limited partnership (the "Partnership"), Malese Foods Corp., a Delaware corporation ("Malese"), Kroger, HEB, and Suntrust Bank, Nashville, National Association ("Trustee"), dated as of August (undated), 1998 and (iii) that certain Agreement Regarding Additional Facility dated as of December 3, 1999 (the "Agreement Regarding Additional Facility") by and among the Partnership, Malese, Kroger and HEB (collectively, the "Operating Lease"), covering the Leased Property located in the City of San Marcos, Hays County, Texas, as more particularly described in Section 1 of the Operating Lease (including all of Kroger's right, title and interest in, to and under the Additional Warehouse Facility [as defined in the Agreement Regarding Additional Facility], the "Leased Property");

Whereas, as of June 1, 1983 (i) Balkhouse conveyed its fee interest in the Leased Property to the Partnership, subject to the Operating Lease, and (ii) the Partnership entered into that certain lease dated as of June 1, 1983 between the Partnership, as lessor, and Balkhouse, as lessee, which lease covered, among other things, the Lease Property (such Lease, as amended, the "Master Lease");

Whereas, as of June 1, 1983 Balkhouse assigned to Malese (i) its interest as lessor under the Operating Lease and (ii) its interest as lessee under the Master Lease;

Whereas, the Partnership and Malese entered into that certain Two Party Agreement dated as of June 1, 1983 (the "Two Party Agreement");

Whereas, on December 4, 1990, Kroger, as sublandlord, and HEB, as subtenant, entered into a Sublease ("Sublease") with respect to the Leased Property; and

Whereas, paragraph 8 of the Sublease provided HEB a right to purchase the Leased Property upon certain terms and conditions to which reference is made as if set forth fully in this Agreement; and

Whereas, HEB has given notice to Kroger of its exercise of the right to purchase the Leased Property and has agreed that, in lieu of an appraisal as provided in the Lease, the purchase price for the Leased Property is $11,000,000.00; and

I:\4428\4425\AGREEMENT\HEBUTT.DOC

Whereas, The Kroger Co. acquired from the Partnership fee title to the Leased Property, subject to certain encumbrances, and Kroger has given notice to Malese of Kroger's intention to acquire the rights of Malese upon the end of the fixed term of the Lease on April 1, 2003 and has agreed to convey the Leased Property to HEB on the terms set forth herein and has further agreed that, in lieu of an appraisal as provided in the Lease, the purchase price for the Leased Property is $11,000,000.00; and

Whereas, The Kroger Co. conveyed the Leased Property, subject to certain encumbrances, to Kroger Texas, L.P. pursuant to a Special Warranty Deed dated January 11, 2002.

Now, therefore, for good and valuable consideration, the parties agree as follows:

1. **Agreement to Sell and Convey**. On April 1, 2003 (the "Closing Date"), Kroger will cause Kroger Texas, L.P. to convey to HEB good and indefeasible title to the Leased Property by a special warranty deed subject only to the matters set forth on Exhibit "A" attached hereto and any other matter arising out of the act or omission of HEB (the "Permitted Exceptions"). At such time, Kroger and HEB will terminate the Sublease and Kroger agrees to cause to be terminated the Operating Lease, the Master Lease, the Two Party Agreement and any other leases or agreements affecting the Leased Property other than the Permitted Exceptions as well as causing the release of all memorandums of record in the Real Property Records in Hays County, Texas reflecting the Operating Lease, the Master Lease and/or the Two-Party Agreement. Kroger agrees to provide HEB with evidence reasonably acceptable to HEB of the foregoing terminations and releases. Notwithstanding anything herein to the contrary, Kroger shall have the right to adjourn Closing for a period of up to fifteen (15) days by delivering written notice to HEB on or before the Closing Date, in the event that any condition precedent to Closing not within the sole control of Kroger remains unsatisfied as of the Closing Date; provided that any such conditions precedent shall be satisfied by Kroger and Closing shall occur within said fifteen (15) day period. No rent shall be payable by HEB under the Sublease during any such adjournment of the Closing Date.

2. **Terms as set forth in Article XIX of the Operating Lease**. Except as expressly provided herein, the conveyance shall be in accordance with the provisions of Article XIX of the Operating Lease to which reference is made as if set forth fully herein.

3. **Earnest Money; Purchase Price**. Within five (5) days of the execution of this Agreement by HEB and Kroger, HEB agrees to deposit the sum of $100,000.00 with Alamo Title Company, 112 E. Pecan Street, Suite 125, San Antonio, Texas 78205, Attention J. Christopher Varley (the "Title Company"), to be held as earnest money securing HEB's obligations hereunder (the "Earnest Money"). The total consideration for HEB's purchase of the Leased Property shall be $11,000,000.00, of which the Earnest Money shall be a part. The Title Company shall, immediately following receipt, deposit the Earnest Money in an interest bearing account and

I:\4428\4425\AGREEMENT\HEBUTT.DOC

maintain such account until the Earnest Money is disbursed in accordance herewith.

4. **Notices**. All notices contained herein shall be written and shall be delivered either in person or by recognized overnight courier, or certified mail, return receipt requested. The date of service of notice shall be the date on which a party has been personally served with the same or such notice has been deposited in the office of the United States Postal Service.

Notices to Kroger shall be directed to:

>    The Kroger Co.
>    1014 Vine Street
>    Cincinnati, OH 45202-1100
>    Attn: James E. Hodge, Vice President
>    Real Estate Department

with a copy to:

>    The Kroger Co. Law Department
>    1014 Vine Street
>    Cincinnati, OH 45202-1100

Notices to H.E.B. shall be directed to:

>    HEB Grocery Company, LP
>    P.O. Box 839955
>    San Antonio, TX 78283-3955
>    Attn: Vice President of Real Estate
>    Facsimile: (210) 938-7633

with a copy to:

>    Akin, Gump, Strauss, Hauer & Feld, L.L.P.
>    300 Convent Street, Suite 1500
>    San Antonio, Texas 78205
>    Attn: Stephen L. Golden
>    Facsimile: (210) 224-2035

Either party may change the address to which its notices are to be delivered by notifying the other party in writing of such new address.

5. **Kroger's Obligations on the Closing Date**. Upon the Closing Date, Kroger shall do the following:

    (a) **Deed**. Execute, acknowledge and deliver to HEB a special warranty deed conveying good and indefeasible title to that portion of the Leased Property which constitutes real property and appurtenances to HEB subject only to the Permitted Exceptions;

I:\4428\4425\AGREEMENT\HEBUTT.DOC

(b) <u>Bill of Sale</u>. Execute and deliver to HEB a blanket assignment and bill of sale, assigning and conveying to HEB title to all personal property covered by this Agreement, free and clear of all liens and encumbrances, other than the Permitted Exceptions;

(c) <u>Terminations and Releases</u>. Cause to be terminated and released all of the matters required to be terminated or released by paragraph 1 of this Agreement.

(d) <u>Non-Foreign Affidavit</u>. Deliver to HEB an affidavit meeting the requirements of Section 1445 of the Internal Revenue Code, executed and sworn to by Kroger, confirming that Kroger is not a "Foreign Person" as defined therein;

(e) <u>Tax Certificates</u>. Deliver to HEB, at HEB's sole cost, tax certificates or reasonable evidence that all taxes due and payable for the Leased Property through December 31, 2002 have been paid in full, provided that delivery of such tax certificates shall not be a condition precedent to Closing if the taxes have not been paid in full as a result of HEB's failure to make any payment required pursuant to the Sublease; and

(f) <u>Title Policy</u>. Kroger shall furnish at HEB's expense an owner's title policy issued by Title Company in a form prescribed by the Board of Insurance Commissioners of Texas with underwriters and co-insurance limits approved by HEB. The policy shall be in the amount of the purchase price or in such other amount as may be determined by HEB and shall guarantee that HEB's title to the Leased Property is good and indefeasible subject only to the following exceptions: (i) the Permitted Exceptions, (ii) taxes for the current year and subsequent years; and (iv) shortages in area.

(g) <u>Other Documents</u>. Cause to be executed and delivered to the Title Company such other documents may be reasonably required to consummate this transaction.

6. **<u>HEB's Obligations on the Closing Date</u>**. Upon the Closing Date, HEB shall do the following:

(a) <u>Purchase Price</u>. Pay the purchase price to Kroger as hereinabove provided;

(b) <u>Other Documents</u>. Cause to be executed and delivered to the Title Company such other documents may be reasonably required to consummate this transaction.

I:\4428\4425\AGREEMENT\HEBUTT.DOC

7. **Default**. (a) <u>By HEB.</u> In the event HEB should fail to perform its obligations herein for any reason, except default by Kroger or the failure of Kroger to satisfy any of the conditions to HEB's obligations set forth herein, Kroger shall be entitled, as its sole and exclusive alternative remedies, to either (i) terminate this Agreement and receive or retain the Earnest Money whereupon neither party shall have any obligations hereunder, such sum being agreed upon as liquidated damages for the failure of HEB to perform the duties, liabilities and obligations imposed upon it by the terms and provisions of this Agreement and because of the difficulty, inconvenience and uncertainty of ascertaining actual damages or (ii) enforce specific performance of this Agreement. No other damages, rights or remedies shall in any case be collectible, enforceable or available to Kroger other than as provided in this paragraph, and Kroger agrees to accept and take the Earnest Money as Kroger's total damages and relief hereunder in such event. No delay or omission in the exercise of any right or remedy accruing to Kroger upon any breach by HEB under this Agreement shall impair such right or remedy or be construed as a waiver of any such breach theretofore or thereafter occurring. The waiver by Kroger of any condition or the breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any other condition or of any subsequent breach of the same or any other term, covenant or condition herein contained.

(b) <u>By Kroger</u>. In the event that Kroger should fail to consummate the transactions contemplated herein for any reason, except due to HEB's default or the failure of HEB to satisfy any of the conditions to Kroger's obligations set forth herein, HEB may: (i) enforce specific performance of this Agreement, (ii) terminate this Agreement, in which event the Earnest Money shall be forthwith returned to HEB whereupon neither party shall have any obligations hereunder, or (iii) pursue any other remedy available at law or in equity. No delay or omission in the exercise of any right or remedy shall impair such right or remedy or be construed as a waiver of any such breach theretofore or thereafter occurring. The waiver by HEB of any condition or of any subsequent breach of the same or any other term, covenant or condition herein contained shall not be deemed to be a waiver of any other condition or of any subsequent breach of the same or any other term, covenant or condition herein contained.

8. **Representations and Warranties.** (a) <u>Kroger's Representations and Warranties</u>. Kroger hereby makes the following representations and warranties to HEB:

(i) <u>Authority</u>. This Agreement and all other documents delivered by Kroger to HEB prior to or upon the Closing Date, which have been executed by Kroger, (A) have been or shall be duly authorized, executed and delivered by Kroger; (B) are legal, valid, and binding obligations of Kroger; (C) are enforceable in accordance with their respective terms (except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, or other principles relating to or limiting the rights of contracting parties

I:\4428\4425\AGREEMENT\HEBUTT.DOC

generally); and (D) to the best of Kroger's knowledge, do not violate any provisions of any agreements to which Kroger is a party or which affect the Leased Property.

(ii) <u>Bankruptcy</u>. Kroger has not filed or been the subject of any filing or petition under the Federal Bankruptcy Law or any insolvency laws, or any laws for composition of indebtedness or for the reorganization of debtors.

(iii) <u>Injunctions</u>. No injunctions, restraining orders or court orders of any kind have been issued which would prohibit the consummation of the transaction contemplated by this Agreement.

(b) <u>HEB's Representations and Warranties</u>. HEB hereby makes the following representations and warranties to Kroger:

(i) <u>Authority</u>. This Agreement and all other documents delivered by HEB to Kroger prior to or upon the Closing Date, which have been executed by HEB, (A) have been or shall be duly authorized, executed and delivered by HEB; (B) are legal, valid, and binding obligations of HEB; (C) are enforceable in accordance with their respective terms (except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, moratorium, or other principles relating to or limiting the rights of contracting parties generally); and (D) to the best of HEB's knowledge, do not violate any provisions of any agreements to which HEB is a party or which affect the Leased Property.

(ii) <u>Bankruptcy</u>. HEB has not filed or been the subject of any filing or petition under the Federal Bankruptcy Law or any insolvency laws, or any laws for composition of indebtedness or for the reorganization of debtors.

(iii) <u>Injunctions</u>. No injunctions, restraining orders or court orders of any kind have been issued which would prohibit the consummation of the transaction contemplated by this Agreement.

9. **Conditions Precedent**. The following matter shall constitute conditions precedent to HEB's obligations to close the transaction contemplated hereby:

(i) Kroger shall have performed, in all material respects, all of its obligations hereunder;

(ii) there shall be no matters of record affecting the Leased Property other than the Permitted Exceptions; and

(iii) Kroger's representations and warranties shall be true and correct in all material respects.

In the event that any of the foregoing conditions precedent have not been satisfied by the Closing Date, HEB may elect to (i) extend the Closing Date until such time

I:\4428\4425\AGREEMENT\HEBUTT.DOC

as such conditions have been satisfied, (ii) terminate this Agreement whereupon the Earnest Money shall be returned to HEB or (iii) pursue any other remedy available to HEB hereunder, under the Sublease or at law or in equity.

10. **Modification**. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument in writing signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

11. **Applicable Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, and venue shall be in Bexar County, Texas.

12. **Memorandum**. HEB shall have the right, at its sole cost and expense, to record a Memorandum of this Agreement in the Real Property Records of Hays County, Texas.

13. **Headings**. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

14. **Binding Effect**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, executors, administrators, successors and assigns.

15. **Counterparts**. This Agreement may be executed in any number of counterparts and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one Agreement.

16. **Severability**. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

17. **Time of Essence**. Time is of the essence of this Agreement.

18. **Legal Holidays**. Notwithstanding anything herein to the contrary, if the final date of any period, any date of performance or any deadline date which is set forth in this Agreement falls on a Saturday, Sunday or federal legal holiday, then such date shall be extended to the next following date which is not a Saturday, Sunday or federal legal holiday.

19. **Tax-Deferred Exchange**. (a) If HEB requests, Kroger shall cooperate with HEB in effecting HEB's exchange under §1031 of the Code pursuant to

which HEB will acquire the Leased Property; provided, however, (i) the exchange shall be at no expense to Kroger; (ii) the exchange shall not delay the Closing Date for transfer of the Leased Property; and (iii) Kroger shall not be required to acquire title to any proposed exchange properties or to incur any liability to accommodate HEB's exchange. HEB shall indemnify, defend and hold Kroger harmless from and against any and all claims, demands, costs and expenses which Kroger may sustain or incur resulting from the consummation of the transfer of the Leased Property as a §1031 exchange rather than a sale.

(b)   If Kroger requests, HEB shall cooperate with Kroger in effecting Kroger's exchange under §1031 of the Code pursuant to which Kroger will sell the Leased Property; provided, however, (i) the exchange shall be at no expense to HEB; (ii) the exchange shall not delay the Closing Date for transfer of the Leased Property; and (iii) HEB shall not be required to acquire title to any proposed exchange properties or to incur any liability to accommodate Kroger's exchange. Kroger shall indemnify, defend and hold HEB harmless from and against any and all claims, demands, costs and expenses which HEB may sustain or incur resulting from the consummation of the transfer of the Leased Property as a §1031 exchange rather than a sale.

20.   **Further Assurances**. HEB and Kroger agree to execute all documents and instruments reasonably required in order to consummate the purchase and sale herein contemplated.

IN WITNESS WHEREOF, this Agreement is executed as of the date first written above.

WITNESSES:

THE KROGER CO.

By: _____
    Senior Vice President

HEB GROCERY COMPANY, LP, a Texas limited partnership

By: _____
    Todd A. Piland, Senior Vice President

I:\4428\4425\AGREEMENT\HEBUTT.DOC

## JOINDER

Kroger Texas, L.P., a Texas limited partnership, the owner of fee title to the Leased Property, hereby joins in the foregoing Agreement and acknowledges the terms and conditions set forth therein.

Kroger Texas, L.P., a Texas limited partnership

By: *Thomas P. O'Brien*
Name: Thomas P. O'Brien
Title: Vice President
KRGP Inc.
General Partner

I:\4428\4425\AGREEMENT\HEBUTT.DOC