**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THE KROGER CO., | : | Case No.: C-1-02-439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALEASE FOODS CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**THE KROGER CO.'S TRIAL BRIEF**

---

**I.     FACTUAL BACKGROUND**

This case is a contract case on a sale-leaseback agreement.  It involves Kroger's option to purchase Malease's leasehold interest in three industrial facilities—one in Texas, one in Tennessee and one in Kentucky.  In its Complaint, Kroger requested a declaration of specific performance under Counts I and II ordering Malease to convey its leasehold interests to Kroger. This Court granted that relief on Kroger's Motion for Summary Judgment in its order dated July 27, 2004.

Kroger also requested money damages in Count III of the Complaint for Malease's breach of the lease agreements, specifically, the purchase options.  Kroger specifically pled:

43. Defendant Malease's actions are in violation of the April leases and constitute a breach of the Leases.

44. Because of Defendant Malease's breaches, Kroger has been damaged in an amount to be determined at trial.  (Complaint at 43-44).

This Court held in its July 27, 2004 Order that "Kroger gave timely notice to Malease of its intent to exercise its purchase options under the subject leases and that its exercise of the purchase options was valid."

The Court further stated: "The Court also believes that the above findings compel a conclusion that summary judgment is appropriate on Count II of Kroger's complaint, which seeks specific performance of the purchase options, and Count III of Kroger's complaint, which claims that Malease breached its obligation to convey the leases to Kroger upon exercise of the purchase option.  Accordingly, Kroger's motion for summary judgment on Counts II and III of the complaint is well-taken and is **GRANTED**."

Finally, the Court stated: "Finally, although Kroger moves for summary judgment on the issue of its damages.  The Court believes that a more appropriate course is to set the matter for trial on the issue of damages."

This is the sole issue for this trial—the amount of damages that is appropriate for Malease to pay Kroger for its breach of the purchase options.

## II.    CLAIM FOR DAMAGES AGAINST DEFENDANT MALEASE FOODS CORP.

Under each of the three lease agreements, Kroger held a purchase option that required that Malease convey its leasehold interests on April 1, 2003.  Malease still has not conveyed its interests to Kroger, even today, March 3, 2005.  It is this failure that is the basis for Kroger's damages claim.

Kroger has a pending agreement with Texas grocery chain H.E. Butt under which H.E. Butt is to purchase the San Marcos, Texas property for $11 million dollars.  This agreement cannot be consummated until Malease conveys its leasehold interest as ordered by this Court—

2

both in an Order on July 27, 2004, and then again in an Order on Kroger's Motion to Show Cause, dated December 7, 2004.

Meanwhile, Kroger is losing its return on investment while that deal is held up by Malease. The amount of that return on investment for the sale of the San Marcos, Texas property is the subject of this trial.

## III.   LEGAL ISSUES ALREADY RESOLVED BY THIS COURT

Following this Court's Order dated July 27, 2004, Malease filed for leave to move the Court a second time to dismiss Kroger's damages claim. The Court denied Malease this relief in its Order dated November 23, 2004. The Court stated: "In its Motion, Malease argues that Kroger's damages claim should be dismissed because under Texas law, Kroger cannot recover lost future profits as result of its breach, that Kroger did not plead special damages with the specificity required by Texas law, and because Kroger allegedly did not comply with its discovery obligations by not producing the Kroger/Butt contract supporting its damage claims."

In response, the Court stated: "The Court notes that Malease had ample opportunity to raise each of these arguments during the summary judgment phase of this case. In its earlier pleadings addressing Kroger's damages claims, Malease contented itself with attacking the accuracy and reliability of the opinion of Kroger's expert on damages. (See Doc. No. 45, at 16-17). Malease has not proffered an explanation for not raising these arguments earlier."

The Court held: "Therefore, in the Court's opinion, Malease has waived the right to have the Court consider these arguments at this time."

3

Accordingly, this Court already has held that Malease waived these three defenses prior to trial:

(1) Malease's disputed argument that Kroger's damages claim should be dismissed because under Texas law, Kroger cannot recover lost future profits as result of its breach,

(2) Malease's disputed argument that Kroger did not plead special damages with the specificity required by Texas law, and

(3) Malease's disputed argument that Kroger allegedly did not comply with its discovery obligations by not producing the Kroger/Butt contract supporting its damage claims.

Because the Court has already held that Malease waived these arguments, Kroger intends to object any time that Malease attempts to raise these defenses during the trial. It is Kroger's position that Malease waived these defenses when it did not raise them on summary judgment, and the Court has already agreed in the November 23, 2004 Order.

The case law on this issue is clear. Rule 16 of the Federal Rules of Civil Procedure declares that once a court-ordered schedule is in place, and a party fails to comply with the scheduling order, the district court has the discretion to "make such orders with regard thereto as are just." The pertinent law to apply on procedural matters is Sixth Circuit law and the law of this Court. See, e.g., *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998), cert. denied, 525 U.S. 810, 142 L.Ed.2d 32, 119 S.Ct. 42 (1998).

The Sixth Circuit has clearly stated on numerous occasions that it will uphold the district court's exercise of its discretion under Rule 16. *Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749 (6th Cir. 2003). The *Estes* court stated, "Rule 16 of the Federal Rules of Civil Procedure . . . grants district courts wide latitude to impose sanctions for failure to comply with their scheduling orders." Citing *Clarksville-Montgomery County School System v. United States*

4

*Gypsum Co.,* 925 F.2d 993, 998 (6th Cir. 1991), the *Estes* court stated, "The district court has discretion to impose whatever sanction it feels is appropriate, under the circumstances."

In *Riley v. Littell Intl, Inc.*, 1999 U.S. App. LEXIS 15130 (6th Cir., July 1, 1999), the Sixth Circuit stated, "If a party fails to comply with the scheduling order, the district court, upon motion or sua sponte, may make such orders with regard thereto as are just."

In *Pena v. Hamilton & McDonald, P.C.*, 1987 U.S. Dist. LEXIS 15739 (E.D. Mich., Nov. 24, 1987), the court held, "Due to the untimeliness of the instant motion, the Court must first determine whether it should consider the motion. Fed. R. Civ. P. 16(f) governs the failure to comply with scheduling orders. Under that rule, the Court "may make such orders with regard [to the noncompliance] as are just." The court considered whether a delay of less than a day due to circumstances beyond the control of the defendant filing the motion would make dismissal of defendant's slightly untimely motion just.

Therefore, this Court was justified in its November 23, 2004 Order. Malease failed to comply with the Court's scheduling order, and its penalty was a waiver of its newly-brought, overly-late defenses.

Waiver is "abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This Court enjoys discretion to find a waiver "if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994); See, also, *Brown v. Crowley*, 312 F.3d 782, 787-88 (6th Cir. 2002). In *Kennedy v. City of Cleveland,* 797 F.2d 297, 300 (6th Cir. 1986), cert. denied, 479 U.S. 1103 (1987), the Sixth Circuit stated, "It also follows that the right is one which can be lost by failure to timely assert it." In a footnote, the Sixth Circuit noted,

5

"Even the exercise of constitutional rights may be limited by procedural rules." *Kennedy,* 797 F.2d 297, 300 at fn. 5.  "It is entirely proper for a trial judge in such cases as this to establish a time for the filing of motions challenging the sufficiency of pleadings * * * ." *Kennedy, supra.* "Plainly, if the trial judge places reasonable limits upon the time within which to challenge the sufficiency of the pleadings, the failure of the defendant to take advantage of the opportunity can and should normally work as a waiver of the right, at least absent some appealing reason for making an exception." *Kennedy, supra.*

Here Malease waived these late defenses.  Malease had ample opportunity to assert every defense it wished before the March 1, 2004 dispositive motion deadline that was extended to April 7, 2004 at Malease's request.  Failing on its motion and receiving this Court's November 23, 2004 Order that these defenses were waived has not stopped Malease.  Malease now attempts to get these defenses reintroduced into the case at trial.

After an inexcusable six-month delay beyond the dispositive motion cut-off before even raising these defenses, the Court properly found that Malease waived these defenses that it could have and should have raised earlier either in its Answer or in its Motion for Summary Judgment. Malease's failure precludes it from raising these defenses now, at trial, after the Court has already found that Malease waived these defenses.  Allowing Malease to reassert these waived defenses is prejudicial to Kroger's rights under its damages claim.  Kroger has suffered through multiple delays raised by Malease's roadblocks and new theories throughout this case—to permit Malease to re-raise issues that were laid to rest in November would be extremely prejudicial at this stage on the eve of trial.

**IV.     LEGAL ISSUES TO BE DECIDED BY THE COURT IN THE EVENT THAT MALEASE IS PERMITTED TO RAISE ITS PREVIOUSLY-WAIVED DEFENSES**

Although Malease has waived these defenses and the Court has so ruled previously in its November 23, 2004 Order, Malease intends to raise these three defenses once again at trial. Therefore, Kroger presents the following case law to govern in the event that the Court decides to permit Malease to proceed with these defenses.

Kroger agrees with Malease that under the applicable choice of law, Texas law applies to matters of substantive law in this case.  See, e.g., *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998), cert. denied, 525 U.S. 810, 142 L.Ed.2d 32, 119 S.Ct. 42 (1998).

**A. Are Kroger's damages a claim for future profits that should be disregarded under Texas law?**

Kroger's damages are real, easily determined and past, as Malease's breach was effective April 1, 2003 and continues on to this very day.  There are "future" damages, in the sense that the harm goes forward from trial, and as long as Malease refuses to convey its leasehold interests as ordered by this Court.  But these are not speculative damages—they are as easily determined as those damages that have already occurred.

Under Texas law, future damages that are certain to occur in the future as a result of the loss or harm are recoverable, so long as there is a satisfactory basis for determining the damages. *See, e.g., Helena Chem. v. Wilkins*, 47 S.W.3d 486, 505, 44 Tex. Sup. Ct. J. 675 (Tex. 2001); *Geo Viking, Inc. v. Tex.-Lee Operating Co.,* 817 S.W.2d 357, 360-61 (Tex. App.—Texarkana 1991); *Kiewit Tex. Min. Co. v. Inglish*, 865 S.W.2d 240, 245-46 (Tex. App.—Waco 1993).

Here, some of the damages are past—the loss on the expected return on investment from the sale of the San Marcos, Texas property to H.E. Butt for $11 million on April 1, 2003 can be counted from April 1, 2003 to the present.  The rest of the damages are future—the loss on the

same expected return on investment from the present until Malease conveys its leasehold interest and the sale to H.E. Butt is consummated.

The return on investment of this deal is not idle speculation.  There is an agreement, and the amount that H.E. Butt is paying for the San Marcos property is $11 million.  Even Malease would have to admit that Kroger can expect a return on investment of its $11 million—the evidence that Kroger will present is designed to establish what that return would have been from April 1, 2003 to the present that Kroger has lost, as well as what that return would be going forward until Malease conveys the property.

Accordingly, Kroger's claims are for past and future profits, but neither should be disregarded under Texas law.

**B. Was Kroger required as a matter of law to plead special damages under Texas law?**

In its tardy August 2004 motion, Malease cited *Beasley Motor Co., Inc. v. Woodward*, 154 S.W.2d 691, 693 (Ct. App. Tex. 1941).  This Texas Court stated, "the damages which the plaintiff is entitled to recover are such as arise according to the ordinary course of the matters involved which bring about the consequences resulting from the breach of the contract, or such damages as reasonably may have been in the contemplation of the parties at the time the contract was made."

Malease then went on to say that Malease could not have contemplated these damages when it entered its contract with Balkhouse because it could not anticipate that Kroger would enter a sale contract with H.E. Butt after Malease breached its obligation to relinquish its interests under the purchase option.  This is tantamount to saying that Malease should be permitted to hold Kroger and H.E. Butt hostage with its willful breach of the lease because it

8

could not anticipate that Kroger would want the unalienable use of its property—including the opportunity to sell it.

The fact is, and contrary to Malease's disingenuous suggestions, Malease was well aware of the fact that H.E. Butt wanted to purchase the San Marcos, Texas property. Mr. Kadish has been an owner and developer of similar properties for more than 40 years and owns similar properties in more than 30 states. (See Declaration of Lawrence Kadish dated April 7, 2004 at ¶2, attached as Exhibit K to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). Mr. Kadish was well aware that H.E. Butt wanted to buy the San Marcos, Texas property. In fact, Mr. Kadish stated that *he* entered a contract to sell the property to H.E Butt subject to Mr. Kadish acquiring clear title to that property. (See Deposition of Lawrence Kadish dated January 21, 2004 at p.97-98, attached as Exhibit L to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). It is a discredit to Mr. Kadish to suggest that he could not have possibly contemplated the possibility that Kroger would enter an sales agreement with H.E. Butt with respect to the San Marcos, Texas property, and that sales agreement would be executed when Kroger obtained clear title.

The purpose of awarding compensatory damages in breach of contract actions is to compensate for damages actually incurred by placing the Plaintiff in the position it would have occupied had the contract been fulfilled in accordance with its terms. *Press v. Davis*, 118 S.W.2d 982, 993 (Tex.Civ.App.—Ft. Worth 1938); *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940); *King v. Acker*, 725 S.W.2d 750, 756 (Tex. App.—Houston 1987); *McAllen Coca Cola Bottling Co., Inc. v. Alvarez*, 581 S.W.2d 201, 205 (Tex. Civ. App.—Corpus Christi 1979). *See, also, Plough v. REI, Inc*., 1993 U.S. App. LEXIS 29809 (6th Cir. 1993).

Kroger agrees with Malease that under Texas law, breach of contract damages fall into one of two categories: (1) "direct" or "general" damages or (2) "consequential" or "special" damages. *Hycel, Inc. v. American Airlines, Inc.,* 328 F.Supp. 190, 193 (S.D. Tex. 1971). But Kroger disagrees about the categorization of the damages that it asserts against Malease. The damages are not "speculative lost profits"—the damages are the lost use of Kroger's $11 million that it should have received on April 1, 2003. Despite Malease's attempts to characterize it differently, money lost on the breached contract itself is classified as "direct" damages. *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471 (Ct. App. Tex. Eastland 2003).

Under Texas law, compensatory damages are divided into two categories: general and special damages. General damages are those actual damages that are the necessary and usual result of the wrong that is the subject of the complaint. *Meyers v. Moody*, 693 F.2d 1196, 1214 (5th Cir. [Tex.] 1982), *cert. denied* 464 U.S. 920 (1983). General damages are conclusively presumed by law to have been foreseen or contemplated by the wrongdoer to be a consequence of the wrongful act. *Anderson Dev. Corp. v. Coastal States, Etc.*, 543 S.W.2d 402, 405 (Tex.Civ.App.—Houston 1976); *Sterling Projects, Inc. v. Fields*, 530 S.W.2d 602, 605 (Tex.Civ.App.—Waco 1975).

Special damages are actual damages that arise naturally, but not necessarily from a wrongful act. Special damages always grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not the other, and follow the injury as the natural and proximate consequence by reason of the particular circumstances or conditions. *Hycel, Inc. v. American Airlines, Inc.*, 328 F.Supp. 190, 193 (S.D.Tex. 1971).

Special damages must be showed to have been contemplated or foreseen by the parties. *Sherrod v. Bailey*, 580 S.W.2d 24, 28 (Tex.Civ.App.—Houston 1979); *Hess Die Mold v. Am.*

10

*Plasti-Plate Corp.*, 653 S.W.2d 927, 929 (Tex.App.—Tyler 1983).  Special damages must be specially pleaded to be recovered.  Tex. R.Civ.P. 56.  Thus, Texas law limits special damages to those that are not too remote, uncertain, conjectural, or speculative.  *Meyers v. Moody*, 693 F.2d 1196, 1214 (5th Cir. [Tex.] 1982), *cert. denied* 464 U.S. 920 (1983).

Here, the money that Kroger lost is clearly explained in Mr. Libbert's expert report.  (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims).  Mr. Libbert's report asserts two areas of loss—(1) the difference in rent that Kroger could collect based on Malease's refusal to relinquish its interest in the San Marcos, Texas property, which has been resolved by this Court's Order of July 27, 2004, and (2) the loss associated with the fact that Kroger did not have access to the $11,000,000.00 sale price for purposes of reinvesting it in the market place.  Both of these components are the direct result of Malease's breach, and it is the second category that is the subject of this damages trial.

Because Malease has directly caused these losses with its breach of the purchase option in the lease, it is classified as "direct" damages.  These damages are neither speculative nor imagined.  They are the direct result of Malease's breach and can be easily measured based on the $11 million purchase price of the San Marcos property—a deal that remains pending until Malease conveys its interest and Kroger can complete the deal.

The recovery of compensatory damages requires that the damages caused by the wrong could have been foreseen or contemplated by the wrongdoer.  *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942).  An injury is shown to be foreseeable if a person of ordinary intelligence and prudence would have reasonably anticipated it under the circumstances.  *Clark v. Waggoner*, 452 S.W.2d 437, 439-440 (Tex. 1970); *Commonwealth of*

*Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942). The foreseeability element does not require that the wrongdoer foresee the precise course of the consequences of his wrongful act; it need only appear that the wrongdoer could or should have reasonably anticipated that the injury would probably result from the wrongful conduct. *Clark v. Waggoner*, 452 S.W.2d 437, 439-440 (Tex. 1970); *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942).

Therefore, the jury must decide, based on a preponderance of the evidence presented, whether there is an amount of money that the Plaintiff Kroger lost as a foreseeable result of the Defendant Malease's breach of its obligation to convey the subject leaseholds to the Plaintiff Kroger and award the Plaintiff Kroger those damages. It is enough if the evidence shows the extent of the damage as a matter of just and reasonable inference, although the result is only approximate. *Walker v. Consumers Power Co.*, 824 F.2d 499 (6th Cir. 1987). If the jury finds that there are compensable damages and an award is granted, the award should take into account interest from the date damages accrued. *Walker v. Consumers Power Co.*, 824 F.2d 499 (6th Cir. 1987).

### C. Did Kroger fail to produce the Kroger/Butt contract supporting its damage claims, precluding Kroger from using the contract as an Exhibit at trial?

This is trampled ground, and this Court has already read briefing on this issue and held that Malease waived this objection in the Order dated November 23, 2004. Yet Malease indicated during the final pretrial conference that it intended to raise this issue once again in a Motion in Limine.

It should be noted at the outset that Kroger asked specifically for damages in the Complaint; Malease did nothing except deny in its Answer that damages were due. (Amended

12

Answer and Counterclaim of Defendant Malease Foods Corp., dated October 31, 2003, attached as Exhibit B to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims).

Kroger identified its experts on September 30, 2003, including Kroger's damages expert, Jonathan Libbert, one month before Malease even answered the Complaint. (See Plaintiff's Designation of Experts, attached as Exhibit C to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). Kroger provided Malease with Jonathan Libbert's expert report on damages on October 30, 2003, a day before Malease's Amended Answer, per the Court's Order, plus a granted two-week extension. (See cover letter on Plaintiffs' Expert Reports, including Jonathan Libbert report, dated October 30, 2003, attached as Exhibit D to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). Jonathan Libbert's report discusses the damages that Kroger is claiming in detail. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). In the report, Mr. Libbert made specific reference to a "signed agreement is in place for $11,000,000.00" and thus, it is disingenuous for Malease to suggest that it had no idea that there was any such agreement.

Malease made no effort to obtain the agreement until after the discovery cut-off. From October 30, 2003 to the close of discovery, on February 1, 2004, Malease could have requested documents related to Jonathan Libbert's report at any time, but did not do so. Malease did request that the discovery deadline be extended, having wasted the entire period between October 30, 2003 to February 1, 2004. Kroger acquiesced to an extension, entered by the Court to give Malease through February 27, 2004. (See Letter dated February 5, 2004, attached as

Exhibit F to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims).

Malease, however, still did not request any documents pertaining to damages until February 13, 2004—two weeks past the discovery deadline. These documents were provided early—on February 25, 2004—in order to gie Malease time to prepare for its deposition of Mr. Libbert. (See Letter dated February 25, 2004, attached as Exhibit G to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). These documents included the Kroger/H.E. Butt contract that Malease complained about at the final pretrial conference. (LIB000031-42).

Malease had the documents February 25 and Kroger's Motion for Summary Judgment on February 27, yet Malease did not depose Mr. Libbert until March 3, 2004. Malease deposed Mr. Libbert for exactly fifteen minutes, but did not ask any questions with respect to the damages calculations, or the consummated transactions that were the basis for the damages calculations. Malease instead asked only about potential tax implications to the requested damages. (Transcript of Deposition of Jonathan Libbert, dated February 27, 2004, attached as Exhibit H to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). Subsequently, Malease filed its Motion for Summary Judgment, but failed to address damages in any way. (Malease's Motion for Summary Judgment, dated April 9, 2004, attached as Exhibit I to Kroger's Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims).

So any complaint that Malease may make about Kroger's document production was caused purely by Malease's lack of diligence. Malease failed to inform itself of the contents of Mr. Libbert's expert report, which included ample reference to the contract for $11,000,000.00. (See Jonathan Libbert expert report, dated October 30, 2003, attached as Exhibit E to Kroger's

14

Memorandum in Opposition to Malease's Motion to Dismiss Damages Claims). Malease failed to request documents it believed that it needed in discovery. Malease failed to depose Mr. Libbert in a meaningful way. Malease was not even able to comply with the discovery deadline set four months after Mr. Libbert's expert report was provided to Malease.

Malease completed its own Motion and Memorandum Contra to Kroger's motion on April 7, 2004—a month later than the original scheduling order required—and filed its reply on May 17, 2004. Malease had all of this additional time to make its arguments on damages, but did not do so. Any of Malease's defenses could have been asserted in its April 7, 2004 Motion for Summary Judgment. In fact, it was incumbent upon Malease to raise its defenses in that Motion. Nothing new has been discovered since February 2004.

Therefore, for Malease to claim that this contract should not be permitted at trial and that Malease did not get a copy of the contract until after Malease had deposed Mr. Libbert and discovery had closed is false. Malease's lack of diligence is the real problem that has caused Malease's discovery complaints.

### D. Does Jonathan Libbert qualify as an expert witness in this trial on damages?

Malease asserts that Kroger violated Rule 26 of the Federal Rules of Civil Procedure by failing to produce the contract between Kroger and H.E. Butt until February, and therefore, Kroger is precluded from making its damages claims. This is factually incorrect—Kroger did not violate Rule 26.

Rule 26(a) of the Federal Rules of Civil Procedure requires that an expert witness provide a written report containing (1) "a complete statement of all opinions to be expressed and the basis and reasons therefor," and (2) "any exhibits to be used as a summary of or support for the opinions." *See, also, Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882 (6th Cir. 2004).

Mr. Libbert's report contains a complete statement of his opinions that he will express at the damages trial, and his summary spreadsheet exhibit to support those opinions—just as the rule requires.  (See Jonathan Libbert expert report, dated October 30, 2003).

Kroger provided everything that it was required to provide under the rules.  Kroger provided all documents required by Rule 26 or requested by Malease—including many documents that were completely irrelevant but nevertheless requested in a long and wild fishing expedition for some nefarious purpose on Kroger's part.

An expert witness who follows a profession may express his or her opinion because of special education, knowledge and experience.  Such testimony is admitted to assist the jury in understanding the evidence or in determining a fact in issue.  1 OJI 5.70.

In this case, Kroger's counsel will ask questions of its expert witness, Mr. Libbert.  Mr. Libbert is permitted to assume that certain facts were true and to give an opinion based upon the assumptions.  *Id.*  It is for the jury to determine whether the assumed facts on which Mr. Libbert based his opinion are true.  *Id.*  If any assumed fact was not established by a preponderance of the evidence, it is for the jury to determine the effect of that failure on the value of the opinion provided by the expert.  *Id.*  It is also for the jury to determine the weight to give such facts or data on which Mr. Libbert based his opinions.  *Id.*

In deciding what weight to give to the testimony of the experts, the jury should consider the expert's skill, experience, knowledge, veracity, and familiarity with the facts of the case.  *Id.*

The key is whether Mr. Libbert will assist the jury in understanding the evidence or in determining a fact in issue.  Because Mr. Libbert is professionally knowledgeable as a certified public accountant and auditor familiar with return on investments and calculating the loss associated with a projected return on investment that is not realized.  These qualifications are

amply demonstrated by his resume, and he will provide initial testimony to demonstrate his competency as an expert witness at trial.  From there, it is for the jury to determine what weight to give his testimony.

## V.    KROGER'S WITNESSES AND EXHIBITS

### A. Witnesses

Kroger will call Edward N. Waldvogel, a Kroger Vice President familiar with the facts of this case, including (1) Malease's refusal to honor Kroger's purchase options, (2) Kroger's pending sale of the San Marcos, Texas property to H.E. Butt, (3) Kroger's internal rate of return on investments, and (4) the actual amount of loss to Kroger associated with Kroger's inability to complete that sale based on Kroger's internal rate of return.

Kroger will also call Jonathan Libbert, an expert witness who has calculated damages in this case in line with the expert report that Mr. Libbert wrote and Kroger sent to Malease on October 30, 2003.  Mr. Libbert's numbers will be updated from that date to the date of trial.

### B. Exhibits

Kroger intends to use the following exhibits:

JX1 – Lease between Balkhouse Properties and Kroger dated April 1, 1983.

PX1—Expert Report of Jonathan Libbert, dated October 30, 2003.
Malease objects – failure to comply with FRCP 26 and 37.

PX2—Agreement between Kroger and H.E. Butt, dated April 12, 2002.
Malease objects – failure to comply with FRCP 26 and 37.

Kroger will use the following exhibits only to the extent necessary in rebuttal:

PX3—Declaration of Lawrence Kadish, dated April 7, 2004.
Malease objects – relevance.

PX4—Deposition of Lawrence Kadish, dated January 21, 2004.
Malease objects – relevance.

17

PX5-20—reserved if needed for rebuttal or impeachment

## VI.    DAMAGES

Kroger's expert report demonstrates two components to Kroger's damages.  One of these components is lost rent, and one of these components is the lost return on investment dating from Malease's breach on April 1, 2003.

The Court's Order dated July 27, 2004 took care of the lost rent component.  Kroger was able to recoup it's potential for lost rent when it escrowed money in the Court and that money was returned to Kroger following the July 27, 2004 Order.

With respect to the remaining component—the sole remaining issue for trial—Mr. Waldvogel will provide the foundation for Kroger's standard return on investment, as well as the factual background for Malease's breach, Kroger's contract with H.E. Butt, the amount Kroger would receive in the H.E. Butt contract—$11 million, and Kroger's internal rate of return on investment.  Mr. Waldvogel will state the amount of money that Kroger believes that it lost on Malease's breach since April 1, 2003.

Mr. Libbert will take this information and using his CPA and auditor skills, he will calculate for the jury Kroger's lost return on investment.  Mr. Libbert will further answer questions regarding the certainty with which Kroger would have received this return on its $11 million.

## VII.    VOIR DIRE ISSUES FOR THE JURY

Kroger has no particular or unique concerns with respect to the jury.  There are some standard areas that Kroger respectfully requests that the Court explore with the jurors.  Those areas are:

a) Whether any of the jurors knows any of the counsel representing either Kroger or Malease.

b) Whether any of the jurors, their family members or any of their close friends have been involved in litigation in which Frost & Jacobs or Frost Brown Todd represented a party. If so, what type of case, who was the attorney, what was the juror's experience in the case and would it affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

c) Whether any of the jurors, their family members or any of their close friends have been involved in litigation in which McCaslin, Imbus & McCaslin represented a party. If so, what type of case, who was the attorney, what was the juror's experience in the case and would it affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

d) Whether any of the jurors, their family members or any of their close friends have been involved in litigation in which Cinque & Cinque represented a party. If so, what type of case, who was the attorney, what was the juror's experience in the case and would it affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

e) Whether any of the jurors knows anything about any lawsuits or disputes in which Kroger or Malease are involved that would make it difficult to be fair to either party in this case. If so, what type of case, who was the attorney, what was the juror's experience in the case and would it affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

f) Whether any of the jurors work for Kroger now or have worked for Kroger in the past. If so, what is or was his or her position, and would the relationship with Kroger affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

g) Whether any of the jurors work for a company that does business with Kroger or has done business with Kroger in the past.  If so, what was the nature of the business and would the relationship with Kroger affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

h) Whether any of the jurors have family or close friends that work for Kroger now or have worked for Kroger in the past.  If so, who is that person, what is or was his or her position, what is the juror's relationship to that person, and would the relationship with Kroger affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

i) Whether any of the jurors work for Malease or Mr. Lawrence Kadish now or have worked for Malease or Mr. Kadish in the past.  If so, what is or was his or her position, and would the relationship with Malease or Mr. Kadish affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

j) Whether any of the jurors work for a company that does business with Malease or Mr. Kadish or has done business with Malease or Mr. Kadish in the past.  If so, what was the nature of the business and would the relationship with Kroger affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

k) Whether any of the jurors have family or close friends that work for Malease or Mr. Lawrence Kadish now or have worked for Malease or Mr. Lawrence Kadish in the past.  If so, who is that person, what is or was his or her position, what is the juror's relationship to that person, and would the relationship with Malease or Mr. Kadish affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

l) Whether any of the jurors have any experience with Kroger or otherwise formed an opinion about Kroger that would affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

m) Whether any of the jurors, their family members or close friends are or were a CPA, auditor, financial planner, or accountant.

n) Whether any of the jurors, their family members or close friends are or were working in real estate.

o) Whether any of the jurors is familiar with the term "return on investment."

p) Whether any of the jurors know Mr. Edward Waldvogel, who will be a witness in this case.  If so, would the relationship with Mr. Waldvogel affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

q) Whether any of the jurors know Mr. Jonathan Libbert, who will be an expert witness in this case.  If so, would the relationship with Mr. Libbert affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

r) Whether any of the jurors have served on a jury before.  If so, what type of case was it, when was the case heard, were the jurors in that case able to reach a verdict, and is there anything about service on that jury that would make the juror reluctant to serve on this jury.

s) Whether any of the jurors have personal or business reasons that would make it burdensome to serve on this jury.

t) Whether any of the jurors have ever been a party to a lawsuit.  If so, what kind of case was it, was the juror a plaintiff or defendant, what happened, and would that lawsuit affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

21

u) Whether any of the jurors has ever hired an attorney or worked with a law firm in the past.  If so, when was it, what was the matter, was the juror happy with the work that was done, and would that experience affect the juror's ability to hear evidence, comply with the jury instructions and render a fair verdict.

v) Whether any of the jurors have any health problems that would make it difficult to sit for several hours at a time and listen to evidence in this case.  Whether any of the jurors will have any trouble seeing and hearing the witnesses and evidence presented in this case.

Kroger would like to ask individual questions of the jurors as well regarding their background—employment history, education, family composition, hobbies, and residence location.

Respectfully submitted,

/s/ Scott D. Phillips
Scott D. Phillips  (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:

Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Trial Brief has been sent by ordinary United States mail, postage prepaid on this 3rd day of March, 2005 to:

R. Gary Winters, Esq.                          Robert W. Cinque, Esq.
McCaslin, Imbus & McCaslin                     Cinque & Cinque
900 Provident Bank Building                    845 3rd Avenue, Suite 1400
632 Vine Street                                New York, NY  10022
Cincinnati, OH 45202-2442

/s/ Scott D. Phillips

1483918.1

23