# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
KENNETH J. MURPHY
CLERK

03 APR 29 PM 2: 39

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

Kroger Company,
    Plaintiff,

Civil Action No: C-1-02-439

vs.

**CALENDAR ORDER**
(Beckwith, J.; Sherman, M.J.)

Malease Foods Corporation,
    Defendant

This case shall proceed as follows:

1. Deadline for Motion for Leave to Amend Complaint and add parties: 5/1/03

2. Discovery deadline:    2/1/04

   Deadline to identify plaintiff experts:    10/1/03
   Deadline to produce plaintiff expert reports:    10/15/03
   Plaintiff to file a Notice of Compliance within 10 days of latest above date

   Deadline to identify defendant experts:    12/1/03
   Deadline to provide defendant expert reports:    12/15/03
   Defendant to file a Notice of Compliance within 10 days of latest above date

   Parties to exchange witness lists and testimony summary:    12/15/03

3. Dispositive motion deadline:    3/1/04

4. Final Pretrial Conference before Judge Beckwith on or after 7/1/04

5. The parties will be ready for Trial before Judge Beckwith on or after 8/2/04

Jack Sherman, Jr.
United States Magistrate Judge

# EXHIBIT B

# FROST BROWN TODD LLC

|  |  |  |
|---|---|---|
| DOUGLAS R. DENNIS<br>ddennis@fbtlaw.com<br>(513) 651-6727 | 2200 PNC Center<br>201 E. Fifth Street<br>Cincinnati, Ohio 45202-4182<br>(513) 651-6800<br>Facsimile (513) 651-6981<br>www.frostbrowntodd.com | February 25, 2004 |

**VIA OVERNIGHT DELIVERY**
Robert W. Cinque, Esq.
Cinque & Cinque, P.C.
845 Third Avenue
New York, NY 10022

    Re:    *The Kroger Co., v. Malease Foods Corp. f/k/a Malese Foods Corp.*

Dear Bob:

    Attached please find a set of documents pertaining to your February 13, 2004 e-mail request for copies of the documents reviewed by Jonathan D. Libbert in connection with his October 30, 2003 report.

                                                        Sincerely,

                                                        Douglas R. Dennis

DRD
CinLibrary/1373207.1

**OHIO • KENTUCKY • INDIANA • TENNESSEE**

# EXHIBIT C

# AGREEMENT

This Agreement made the 12th day of April, 2002, between The Kroger Co., an Ohio corporation ("Kroger") and HEB Grocery Company, LP, a Texas limited partnership, as successor in interest to H. E. Butt Grocery Company, a Texas corporation ("HEB").

## WITNESSETH:

Whereas, Balkhouse Properties Corp. ("Balkhouse"), as lessor, and Kroger entered into that certain Lease dated as of April 1, 1983, as amended by (i) that certain Consent to Sublease, dated January 18, 1992, (ii) that certain Consent to Conveyance Agreement (the "Conveyance Agreement") among Balkhouse Associates, a Tennessee limited partnership (the "Partnership"), Malese Foods Corp., a Delaware corporation ("Malese"), Kroger, HEB, and Suntrust Bank, Nashville, National Association ("Trustee"), dated as of August (undated), 1998 and (iii) that certain Agreement Regarding Additional Facility dated as of December 3, 1999 (the "Agreement Regarding Additional Facility") by and among the Partnership, Malese, Kroger and HEB (collectively, the "Operating Lease"), covering the Leased Property located in the City of San Marcos, Hays County, Texas, as more particularly described in Section 1 of the Operating Lease (including all of Kroger's right, title and interest in, to and under the Additional Warehouse Facility [as defined in the Agreement Regarding Additional Facility], the "Leased Property");

Whereas, as of June 1, 1983 (i) Balkhouse conveyed its fee interest in the Leased Property to the Partnership, subject to the Operating Lease, and (ii) the Partnership entered into that certain lease dated as of June 1, 1983 between the Partnership, as lessor, and Balkhouse, as lessee, which lease covered, among other things, the Lease Property (such Lease, as amended, the "Master Lease");

Whereas, as of June 1, 1983 Balkhouse assigned to Malese (i) its interest as lessor under the Operating Lease and (ii) its interest as lessee under the Master Lease;

Whereas, the Partnership and Malese entered into that certain Two Party Agreement dated as of June 1, 1983 (the "Two Party Agreement");

Whereas, on December 4, 1980, Kroger, as sublandlord, and HEB, as subtenant, entered into a Sublease ("Sublease") with respect to the Leased Property; and

Whereas, paragraph 8 of the Sublease provided HEB a right to purchase the Leased Property upon certain terms and conditions to which reference is made as if set forth fully in this Agreement; and

Whereas, HEB has given notice to Kroger of its exercise of the right to purchase the Leased Property and has agreed that, in lieu of an appraisal as provided in the Lease, the purchase price for the Leased Property is $11,000,000.00; and

I:\4425\4425\AGREEMENT\HEBUTT.DOC

LIB 000031

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| THE KROGER CO., | Case No.: C-1-02-439 |
| Plaintiff, | Beckwith, J. |
| | Sherman, M.J. |
| v. | |
| MALEASE FOODS CORP., | |
| Defendant. | |

## EXPERT REPORT OF JONATHAN LIBBERT ON BEHALF OF THE KROGER CO.

The purpose of this report is to summarize my present analysis and conclusions related to the above matter. The opinions stated herein are as of the date of this report and I will reserve the right to further address additional matters or issues that arise as the case continues.

I was retained by the plaintiff to review documents and materials relating to three (3) sale-leaseback transactions with Balkhouse for three of Kroger's existing industrial facilities located in Bowling Green, Kentucky, Murfreesboro, Tennessee, and San Marcos, Texas. I was informed that defendant Malease Foods Corp. had rejected Kroger's exercise of a purchase option on each of the properties and that this action had resulted in Kroger's inability to complete a sale of the San Marcos property to the H. E. Butt Grocery Company. This transaction was scheduled for closing on or about April 1, 2003.

The main purpose of my review was to determine the amount of damages caused by the refusal of Malease to allow Kroger's exercise of the purchase option, both as to the present time and also in the future.

In order to reach my conclusions, I have examined a large collection of documents and materials, including the complaint filed in this case, the sale-leaseback documents and various items of correspondence between the parties.

### QUALIFICATIONS AND COMPENSATION:

My background and qualifications are set forth in the attached curriculum vitae. My fee for this engagement is based upon an hourly rate of $175.00 per hour, plus expenses.

### EXPERT REPORT OF JONATHAN LIBBERT ON BEHALF OF THE KROGER CO. – PAGE 2

**OPINIONS:**

I have calculated the amount of damages caused by refusal of Malease in two parts. These calculations are shown on the enclosed Exhibit A. The first part is the difference in monthly rent that Kroger has been able to collect due to this situation. If the lease for the San Marcos property had been renewed under normal business conditions by H. E. Butt Grocery Company, the rent would have been substantially higher that the amount that is currently being charged under the conditions that exist. That amount was computed to be $237,267.94 for the time period of April 1, 2003 through October 30, 2003.

The second part is the loss associated with the fact that Kroger did not have access to the $11,000,000.00 purchase price for purposes of reinvesting it in the market place. For this purpose, I have assumed a threshold rate for capital investments of 12 percent and calculated the monthly cost. From this cost, I then subtracted the actual rent received in lieu of the lost opportunity on the $11,000,000.00. The net result is a monthly effect of $61,875.00 and $433,125.00 for April 1, 2003 through October 30, 2003.

The continuing cost until the sale is closed is the sum of $33,895.42 per month from the first part and $61,875.00 from the second part for a total of $95,770.42 per month.

In addition to the above ongoing costs, there is also the obvious exposure to a sizable loss being incurred if the sale of the San Marcos property is not finalized within a reasonable time and the buyer backs out of the transaction. Since a signed agreement is in place for $11,000,000.00, any future sale for less than that amount would result in additional damages.

**CONCLUSION:**

In conclusion, it is my opinion to a reasonable degree of certainty that Kroger has suffered losses to date of $670,392.94 and continues to be damaged at the rate of $95,770.42 per month. It is also my opinion that should the proposed sale of the San Marcos property not be closed within a reasonable period of time, it may be subject to an additional loss as described above.

Sincerely you,

*[signature]*

Jonathan D. Libbert, CPA, CFE

October 30, 2003
Enclosure

2

|  | Financial Analysis<br>Kroger v. Malease Foods Corp. | Exhibit A<br>Printed:<br>10/23/03<br>3:26 PM |

| | |
|---|---:|
| Monthly rent for San Marcos, TX warehouse under original sublease - first renewal | $82,020.42 |
| Monthly rent for San Marcos, TX warehouse under agreement effective 04-01-03 | (48,125.00) |
| Monthly decrease in rent due to failure to close | $33,895.42 |
| Months from 04-01-03 to date of report (10-30-03) | 7.00 |
| Calculated Loss from decreased rent to date | $237,267.94 |
| | |
| Selling price of San Marcos, TX warehouse to H. E. Butt Grocery Company | $11,000,000.00 |
| Annual "threshold" rate for capital investments | 12% |
| Annual return on investment for funds from sale | $1,320,000.00 |
| Monthly return | $110,000.00 |
| Less rental per agreement of 04-01-03 per above | (48,125.00) |
| Net monthly effect | $61,875.00 |
| Months from 04-01-03 to date of report (10-30-03) | 7.00 |
| Calculated Loss from inability to sell property to date | $433,125.00 |
| | |
| Calculated Total Loss to Date | $670,392.94 |
| | |
| **CONTINUING LOSS:** | |
| Monthly decrease in rent due to failure to close | $33,895.42 |
| Monthly Loss from inability to sell property | 61,875.00 |
| Total Montly Continuing Loss | $95,770.42 |

Prepared by Johnson, Cambra & Libbert, Inc.

# EXHIBIT E

LAW OFFICES
## CINQUE & CINQUE, P.C.
845 THIRD AVENUE
NEW YORK, NEW YORK 10022



ROBERT W. CINQUE
JAMES P. CINQUE

MEMBERS OF NY & CA BARS

TELEPHONE: (212) 759-5515
TELEFAX: (212) 759-7737

April 10, 2003

VIA FACSIMILE - 513-651-6981

Scott D. Phillips, Esq.
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202

> Re: The Kroger Co. v. Malease Foods Corp.
> f/k/a Malese Foods Corp.
> Case No.: 0-1-02 439

Dear Mr. Phillips:

In accordance with the agreement reached during our conference on April 1, 2003, my client Malease Foods Corp. hereby makes the following designations pursuant to FRCP 26(a)(1):

1. April 1, 1983 lease of facility in Bowling Green Kentucky - Complaint ¶11.

2. April 1, 1983 lease of facility in Murfreesboro, Tennessee - Complaint ¶11.

3. April 1, 1983 lease of facility in San Marcos, Texas - Complaint ¶11.

4. June 1, 1983 conveyance by Balkhouse of fee simple title to each of the sites to Balkhouse Associates - Complaint ¶17.

5. June 1, 1983 single lease agreement between Balkhouse and Associates for all sites - Complaint ¶17.

6. June 1, 1983 Balkhouse assignment under June lease to Malease - Complaint ¶18.

CINQUE & CINQUE, P. C.

Page Two
To: S. Phillips
Re: Kroger/Malease
April 10, 2003

  7-9. June 1, 1983 two party agreement between Malease and Associates for each of the three sites - Complaint ¶ 19.

  10. Deed of trust from Balkhouse Properties Corp. to Neil E. Newsome dated as of April 1, 1983.

  11. October 23, 1990 letter from Guerry Jordon of Guaranty Title & Abstract Company to Valerie Garber of Kroger.

  12. May 26, 1983 indemnity and impleader agreement between Balkhouse and Associates.

  13. May 31, 1983 lessee's estoppel certificate.

  14. May 26, 1983 collateral assignment of leases between Malease and Balkhouse Associates.

  15. May 31, 1983 assignment and assumption of lease rental security agreement.

  16. May 26, 1983 appointment and assumption agreement.

  17. May 26, 1983 confirmatory assignment of lease.

  18. June 1, 1983 consent to assignment of lease from Balkhouse Associates to Balkhouse and Malease.

  Since Kroger has copies of all of these documents in its file I am not producing any at this time. Of course, if you are missing anything just let me know.

CINQUE & CINQUE, P. C.

Page Three
To: S. Phillips
Re: Kroger/Malease
April 10, 2003

      We expect that as part of its initial disclosure in accordance with Rule 26 Kroger will provide all documents arising out of, relating to or concerning the transactions described in the July 24, 2001 letter from Balkhouse Associates and Kroger to Malease. This would include any and all documents from the first moment that the transaction was contemplated, conceived, communicated or discussed through and including the date of production.

      For purposes of clarification, the term "document" shall be interpreted in its broadest sense so as to include, without limitation: all writings of every kind, including the originals and all non-identical copies, whether different from the originals by reason of a notation made on such copies or otherwise, whether printed, recorded, reproduced or written by hand, which are now or have been in your actual or constructive possession, custody or control, including, but not limited to: invoices; debit memos; correspondence; letters, forms; agreements; applications; manuals; guidelines, leases; title insurance policies and commitments; mortgages; assignments; deeds; books; statements of policy and procedures; telegrams and other communications set or received; printouts; calendars, diaries, drafts; tables; computations; ledgers; notes; summaries; digests or any other record or records of any conference, meeting, visits, interviews and telephone conversations; incident or loss reports; balance sheets; employment records; test reports; financial and statistical data, including but not limited to financial statements, tabulations and balance sheets; canceled checks; checkbooks; checkbook stubs; check ledgers; analysis, surveys; transcripts of testimony and written statements; affidavits; printed matter (including published articles, brochures, newspaper advertisements and speeches); customer account statements; lien waiver; purchase and sale requirements; releases; order slips; wire orders; confirmations and other wire communications. The term "documents" also includes all photographs, films, audio recordings, video recordings, tapes, data compilations, computer records, electronic mail, and electromagnetic files, however produced, reproduced or stored.

CINQUE & CINQUE, P. C.

Page Four
To: S. Phillips
Re: Kroger/Malease
April 10, 2003

      To the extent that the definition of "document" typically used by your firm in a Rule 34 request is broader than the definition I have set forth, I shall be happy to adopt your firm's definition.

      Of course, nothing in the foregoing specification is intended to in any way limit the obligations of Kroger as imposed by FRCP 26(a)(1).

Sincerely yours,

ROBERT W. CINQUE

RWC:kc

cc: R. Gary Winters, Esq.
    (Via Facsimile - 513-421-7929)