```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

The Kroger Company,            )
                               )
            Plaintiff,         )  Case No. 1:02-CV-439
                               )
     vs.                       )
                               )
Malease Food Corporation,      )
                               )
            Defendant.         )

O R D E R

This matter is before the Court on Defendant Malease Food Corporation's motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and the Court's sua sponte motion for a new trial pursuant to Rule 59(d) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's motion for judgment as a matter of law is not well-taken and is **DENIED**; within ten (10) days of the date of this order, Plaintiff shall elect whether to accept a new trial on the amount of damages or a remittitur to a final award of damages of $440,000.

This case came before the Court on March 16, 2005 for a jury trial on the amount damages due Plaintiff The Kroger Company as a result of Defendant Malease Food Corporation's breach of an agreement to convey its leasehold interest to Kroger. Kroger's theory of the case was that Malease's breach prevented it from obtaining clear title to the property in question, so that it could in turn sell the property to a third party, the H.E. Butt Company. Kroger's claim for damages was the loss of the return

of investment that it claims it would have received on the proceeds of the sale of the property to H.E. Butt.

The evidence at trial consisted of the testimony of Kroger's Vice President of Capital Investments, Edward Waldvogel, and Kroger's damages expert, Jonathon Libbert. Additionally, the Court admitted two exhibits, the lease agreement and Kroger's sale agreement with H.E. Butt. Mr. Waldvogel testified that when Kroger has a cash inflow, it invests the money by doing one of three things: buying back Kroger stock, paying down debt, or making new capital investments, such as building new stores. Mr. Waldvogel further testified that Kroger has a target rate of return on investments of about 18-19% and that Kroger has achieved that goal since 1988. On the other hand, Mr. Waldvogel admitted that a 18-19% return on investment was a long-term achievement that was not certain to be realized. Despite his naked assertion that Kroger is able to achieve returns of this magnitude, Mr. Waldvogel was unable to produce any internal documents or records or public filings with quantifiable data which substantiated this claimed rate of return. Additionally, Mr. Waldvogel failed to explain how buying back stock, paying down debt, or making new capital investments results in Kroger's claimed 18-19% return of investment. On cross-examination, Mr. Waldvogel admitted that Kroger stock has declined about 20% since the breach occurred two years ago and that its profit margin on grocery store operations is about 2%. In calculating an amount of damages, Mr. Libbert simply accepted Mr. Waldvogel's statement

that Kroger consistently achieves an 18% per cent return on investment, seemingly arbitrarily picked 12% as a more conservative estimate of Kroger's return on investment, and then determined that Kroger's damages from the breach were $2,250,000. Although Mr. Libbert testified that he verified that Mr. Waldvogel's statement that Kroger's return on investment was 18%, he did not explain how he verified it or what documents he relied on to verify the statement.

Malease timely moved for judgment as a matter of law at the close of Kroger's case-in-chief. No other evidence was presented. The Court took Malease's motion under submission pending the jury's verdict. The jury found that Kroger had suffered damages from Malease's breach and awarded Kroger $1,125,000.

In ruling on motion pursuant to Rule 50 of the Federal Rules of Civil Procedure, the Court must review the evidence in the light most favorable to the non-moving party. <u>Gray v. Toshiba America Consumer Products, Inc.</u>, 263 F.3d 595, 598 (6th Cir. 2001). Under this standard, the Court cannot reverse the jury's determination that Kroger incurred damages as a result of Malease's breach of the agreement. Viewed in the light most favorable to Kroger, the evidence showed that because of Malease's breach, $11,000,000 was absent from Kroger's investment pool which, at a minimum, could have been reinvested into its retail operations and more likely than not would have returned about 2%. Therefore, because the evidence sustains a finding

that Kroger suffered damages as a result of the breach, Malease's motion for judgment as a matter of law is not well-taken and is **DENIED.**

Nevertheless, the evidence at trial, even viewed in the light most favorable to Kroger, did not support a finding that Kroger's damages amounted to $1,125,000. As the Court instructed the jury, in order to recover lost profits, Kroger was required to present "objective facts, figures, or data from which they may be ascertained with a reasonable degree of certainty and exactness." Kroger failed to present any objective facts, figures, or data from which the jury could ascertain with any degree of certainty that its return on investment is 18%. The only evidence in support of this claim was Mr. Waldvogel's unsubstantiated testimony. Mr. Libbert's damage estimate was based only on Mr. Waldvogel's unsubstantiated claim of an 18% return on investment. Moreover, there was no objective evidence or data from which the jury could have concluded that Kroger's damages amount to $1,125,000, which, based on Mr. Libbert's estimate, is about a 6% return on investment. The only objective data on Kroger's profits was Mr. Waldvogel's testimony in which he admitted that Kroger's public filings accurately state that its profit on grocery operations was about 2%.

Rule 59(d) of the Federal Rules of Civil Procedure provides:

> No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion.

> After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court shall specify the grounds in its order.

In this case, the jury's award of $1,125,000 in damages was clearly against the manifest weight of the evidence presented at trial. Therefore, pursuant to Rule 59(d), the Court sua sponte moves that this matter be retried on the issue of Kroger's damages, unless Kroger accepts a remittitur to a final award of damages of $440,000. This amount is the equivalent of a 2% return on $11,000,000 for the two year period since the breach of the agreement. Kroger must elect whether to accept the remittitur or retry the issue of damages within ten (10) days of the date of this order. See Woodbridge v. Dahlberg, 954 F.2d 1231, 1233 (6th Cir. 1992)(on motion for new trial, the trial court must set aside a verdict that is against the clear weight of the evidence); Farber v. Massillon Bd. of Ed., 917 F.2d 1391, 1396 (6th Cir. 1990) ("[E]ven if remittitur had been appropriate here, a forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error, requiring this court to reverse and reinstate the verdict.").

In addition to the above issues, the Court notes that there remains outstanding a dispute regarding the conveyance of the leasehold to Kroger in accordance with the Court's prior order and a motion by Kroger to show cause and for sanctions for

failure to comply with the order. Doc. No. 66. This dispute also prevents the case from reaching closure.

Accordingly, the Court orders that the issues of a new trial and/or remittitur, and the motion to show cause be set for a status/settlement conference with Magistrate Judge Black at a time convenient for all parties, but not later than 45 days from the date of this order.

**IT IS SO ORDERED**

Date March 31, 2005                                  s/Sandra S. Beckwith
                                           Sandra S. Beckwith, Chief Judge
                                              United States District Court