UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE KROGER CO., | : | Case No.: C-1-02-439 |
| | : | |
| Plaintiff, | : | Beckwith, J. |
| | : | |
| v. | : | **THE KROGER CO'S AMENDED MOTION** |
| | : | **TO SHOW CAUSE AND FOR SANCTIONS** |
| | : | **AND MEMORANDUM IN SUPPORT** |
| MALEASE FOODS CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |

     The Kroger Co.'s ("Kroger") previously moved this Court to require Defendant Malease Foods Corp. ("Malease") to show cause why they refused to obey this Court's Order in this case dated December 7, 2004. The Order requires Malease to convey its leasehold interests in the subject properties to Kroger no later than February 5, 2005, or sixty days after the order. However, Malease has failed to close, instead bickering over terms and items it wished to add to the closing documents, then providing radio silence ever since.

     Since then, Kroger requested leave to file an amended Motion to Show Cause against Mr. Lawrence Kadish, the individual who controls Malease, in order to get some action, and that motion was granted on May 12, 2005. Because Mr. Kadish and his company Malease remain in violation of the Court's Orders, Kroger respectfully requests that sanctions be leveled against Mr. Kadish directly.

     This motion is supported by the attached Memorandum in Support and attachments that evidence the dialogue between Kroger and Malease.

                    Respectfully submitted,

                    /s/ Scott D. Phillips
                    Scott D. Phillips  (0043654)
                    Trial Attorney for Plaintiff
                    FROST BROWN TODD LLC
                    2200 PNC Center
                    201 East Fifth Street
OF COUNSEL:            Cincinnati, Ohio 45202
                    (513) 651-6983

Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

As the court will recall, this case involves The Kroger Co.'s ("Kroger") option to purchase three industrial facilities in Texas, Kentucky and Tennessee in which Malease Foods Corp. ("Malease") has leasehold interests. This court entered an order[1] on December 7, 2004 giving Malease thirty days to agree with Kroger on a closing date, and sixty days from the date of the order to close on the property interests.

Attorneys for Kroger and Malease quickly agreed to a closing date of January 15, 2005.[2] Attorneys for Kroger sent the closing documents to Malease for review.[3] Malease, however, decided that it wanted to alter the closing documents and make additions that are not provided under the terms of any of the contracts.[4] Kroger responded promptly.[5] Since then, Kroger has not received a response from Malease, and now, far more than the sixty days from the December 7, 2004 date of this Court's Order has lapsed without a closing. In fact, 60 days plus another 125 days has elapsed, as of the date of the filing of this Motion. And yet there is no date in sight where Malease has indicated any intent to comply with the Order.

Malease has made no effort to seek relief from this court's order, and has failed to comply with it. As a result, sanctions are appropriate against Malease, and against the decision-maker who is actively violating the Court's Orders, Mr. Lawrence Kadish.

**II.    Malease is in Civil Contempt of this December 7, 2004 Order**

---

[1] For the Court's convenience, a copy of the Order is attached as Exhibit A.
[2] See e-mail between counsel dated December 14, 2004 and December 15, 2004, attached as Exhibit B.
[3] See letter from Kroger's counsel dated January 7, 2005, plus closing documents, attached as Exhibit C.
[4] See letter from Malease's counsel dated January 11, 2005, attached as Exhibit D.
[5] See letter from Kroger's counsel dated January 14, 2005, attached as Exhibit E.

Malease has refused to convey its master lease interest in the properties, in direct violation of this court's December 7, 2004 order.

18 U.S.C.S §401 (2004) states:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

Here, Malease's continual refusal to convey to Kroger its interest in the subject properties is disobedience of this Order and Malease's conduct is punishable by sanctions.

"The basic proposition [in contempt proceedings] is that all orders and judgments of courts must be complied with promptly." *Maness v Meyers*, 419 U.S. 449, 458, 42 L. Ed. 2d 574, 95 S.Ct. 584 (1975). Specifically addressing injunctions, the United States Supreme Court stated: "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself, or by a higher court, its orders based on its decision are to be respected, and disobedience of them is punished." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 55 L. Ed. 797, 31 S.Ct. 492 (1911).

"[A]lthough civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983). "[C]ivil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained." *Downey v. Clauder*, 20 F.3d 681, 685 (6th Cir. 1994).

Here, where Mr. Kadish is actively refusing to attend a closing and convey its master lease interests in the subject properties, Kroger is being unjustly denied access to the purchase price of the San Marcos, Texas property, and the enjoyment of free title to the Kentucky and Tennessee properties. Because Mr. Kadish has refused to close on these properties through Malease, he is actively disobedient to this Court's Order.

**IV.    Malease's Willful Disobedience Has Cost Kroger Damages**

There is no explanation that would allow Mr. Kadish to refuse to convey the properties to Kroger without violating the December 7, 2004 Order. Mr. Kadish is the sole decision-maker for Malease.[6] As such, the sole decision-maker for Malease, Mr. Lawrence Kadish, should be made to bear sanctions in order to ensure compliance with the order.

As stated, Kroger continues to suffer the loss of the use of $11 million that it will receive from H.E. Butt when Kroger delivers clear title on the San Marcos, Texas site. Kroger continues to suffer the loss associated with clear title to the Kentucky and Tennessee properties. Kroger is prejudiced by this delay that Malease introduced in its attempt to gain leverage over Kroger at this late stage in the case. Until forced to do something, Mr. Kadish has made it abundantly clear that he intends to do nothing—even when there is a court that has already ordered his company to convey property interests to Kroger.

Because Mr. Kadish refuses to convey the properties without putting extraordinary conditions that are neither contemplated in the Court's Orders nor in the applicable contracts on the closing, he should face sanctions for violating the court's order. One way to determine the sanctions[7] is to examine the damages decided by the jury.

---

[6] See page 6, lines 3-18 from the Deposition of Lawrence Kadish dated January 21, 2004, attached as Exhibit F.
[7] The court has discretion to determine sanctions as it sees fit. This is just one suggestion.

Kroger's expert report on damages stated the monthly net cost at $61,875.00.[8] For simplicity sake, ignoring compounding and ignoring the value of regaining clear title to the properties in Kentucky and Tennessee, this number can be converted into a daily rate by dividing by thirty. The number is $2,062.50 per day at 12 percent. The jury divided this number in half to six percent in determining the damages, and the court further cut the number to two percent. If we simply take the Court's remittitur percentage for purposes of sanctions, $2,062.50 per day can be divided by six—which is $343.75 per day.

Taking just the time from the agreed closing date, January 15, 2005 to today, May 20, 2005, that is 125 days and counting. 125 days at $343.75 per day is $42,968.75—and counting, with another $343.75 per day that Mr. Kadish fails to effect the closing. This is the sanction that Kroger would propose as most equitably reached by the Court in the damages trial and under these circumstances—$42,968.75 as of May 20, 2005, plus $343.75 per day until Malease conveys its property interest.

### V.     Mr. Kadish Should Be Made To Pay The Sanctions Directly

Malease's counsel represented to Kroger's counsel that Malease did not have any assets except the leasehold interest in the properties. This is also borne out by Mr. Kadish himself at his deposition, where he was asked, "Does Malease own any other assets other than those you just described [the property interests]?"

Mr. Kadish answered, "Not that I recall."

He was asked, "Who are the shareholders or owners of Malease?"

Mr. Kadish responded, "Lawrence Kadish."[9]

---

[8] Malease has no damages expert and no damages expert report in this case.
[9] See page 6, lines 3-18 from the Deposition of Lawrence Kadish dated January 21, 2004, attached as Exhibit F.

Therefore, Malease continues to refuse obey the court with impunity, as it believes that it is judgment-proof both from the trial award and also from any sanction for its refusal to convey its leasehold interests. It is for the court to change Mr. Kadish's—and Malease's—behavior.

**VI.     Conclusion**

For the reasons stated, Kroger respectfully requests that this Court enforce its Order, by sanctioning Malease in the amount of $42,968.75 through May 20, 2005, plus $343.75 per day until Malease conveys its master lease interest in all three properties.

Respectfully submitted,

/s/ Scott D. Phillips_____
Scott D. Phillips  (0043654)
Trial Attorney for Plaintiff
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6983

OF COUNSEL:

Douglas R. Dennis (0065706)
FROST BROWN TODD LLP
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
(513) 651-6727

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion and Memorandum in Support has been sent by ordinary United States mail, postage prepaid on this 20th day of May, 2005 to:

R. Gary Winters, Esq.
McCaslin, Imbus & McCaslin
900 Provident Bank Building
632 Vine Street
Cincinnati, OH 45202-2442

Robert W. Cinque, Esq.
Cinque & Cinque
845 3rd Avenue, Suite 1400
New York, NY  10022

/s/ Scott D. Phillips_____