# EXHIBIT E



OHIO · KENTUCKY · INDIANA · TENNESSEE

W. Russell Wilson
rwilson@fbtlaw.com
513-651-6733

January 14, 2005

**Via Fax and Ordinary Mail**

Robert W. Cinque, Esq.
Cinque & Cinque, P.C.
845 Third Avenue
New York, NY 10022

    Re:    The Kroger Co. v. Malease Foods Corp.

Dear Mr. Cinque:

    Thank you for your letter of January 11th. I have addressed your concerns in the order presented.

1.    Regarding the calculation of the $170,562.25, you must first refer to the formula contained in Section 3(b) of the Two Party Agreement which provides that:

> The purchase price paid by Occupancy Tenant shall be disbursed as follows:
>
>     (i)    to Master Lessee, in the event the Purchase Option is exercised at the expiration of the Fixed Term, an amount equal to: the then present value (based on the Overdue Rate) of the right to receive, for the 2 year period immediately following the Fixed Term, the difference between (A) the fixed rent under such Occupancy Lease as though the Occupancy Tenant had extended the term of such Lease for the first renewal term, and (B) the Basic Rent payable for such period for the Premises under the Master Lease; and
>
>     (ii)    the balance, if any, to the Partnership.

The "Overdue Rate" is defined at 13.75% in Article II of the Leases dated April 1, 1983, and is incorporated pursuant to Section 11 of the Two Party Agreement. The annual rent due after April 1, 2003 under these leases is set forth in Article XX in each lease, in the following

2200 PNC Center, 201 East Fifth Street    Cincinnati, Ohio 45202-4182    (513) 651-6800 • (513) 651-6981 fax    www.frostbrowntodd.com

1073

Robert W. Cinque, Esq.
January 14, 2005
Page 2

amounts: Kentucky -- $781,600; Tennessee -- $634,000; and Texas -- $744,400 (for a total of $2,160,000). The semi-annual payments due from Master Lessee under the Master Leases dated June 1, 1983 are $1,030,000, or $2,060,000. Consequently, the amounts to be reduced to a present value are four payments of $50,000 each. While I do not have the software to independently check Kroger's calculation, presumably either your client or its accountant does.

2.     I respectfully disagree with your statement that the damages are speculative. The Court has already ruled that your client has breached its obligations to transfer its interests in the three properties and a trial has been scheduled solely for the purpose of determining the amount of those damages. Given that Kroger's current demand exceeds the $170,562.25 by a substantial amount and your client likely has no assets other than its interests in these three properties, it is not reasonable to expect Kroger to pay the funds directly to Malease Foods, Inc.

3.     The reference to consideration is appropriate and commonly used for transfers of this kind. Regardless, paying funds into the Court would constitute consideration notwithstanding the fact that no money was directly received by Malease Foods, Inc. at this time.

4.     I must confess that I do not understand this comment. Please provide a specific suggestion for Kroger to consider.

5.     Rather than reference either Ohio or New York law, I propose that we reference the law of the state in which the various properties are located, so that the assignment of the property in Kentucky would be governed by Kentucky law, etc.

Although not numbered, your suggestion to include a reference to the ongoing appeal is not acceptable to Kroger. Judge Beckwith's order simply requires your client to convey its interests in the properties, not to convey its interests subject to any appeal that it may file. Kroger can adequately address this issue with any prospective purchaser without including any such provisions in the assignment documents.

Sincerely,

FROST BROWN TODD LLC

By: /s/ W. Russell Wilson
    W. Russell Wilson

cc:   R. Gary Winters, Esq.
      Scott D. Phillips, Esq.
      Douglas R. Dennis, Esq.

Frost Brown Todd LLC
ATTORNEYS