RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

1: 02-cv-439

THE KROGER COMPANY,

*Plaintiff-Appellee,*

v.

MALEASE FOODS CORP.,

*Defendant-Appellant.*

No. 04-4512

FOR YOUR INFORMATION

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00439—Sandra S. Beckwith, Chief District Judge.

Argued: December 8, 2005

Decided and Filed: February 9, 2006

Before: MOORE, ROGERS, and McKEAGUE, Circuit Judges.

___

## COUNSEL

**ARGUED:** Robert W. Cinque, CINQUE & CINQUE, New York, New York, for Appellant. Scott D. Phillips, FROST, BROWN & TODD, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Robert W. Cinque, CINQUE & CINQUE, New York, New York, R. Gary Winters, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, for Appellant. Douglas R. Dennis, FROST, BROWN & TODD, Cincinnati, Ohio, for Appellee.

___

## OPINION

___

McKEAGUE, Circuit Judge. Defendant Malease Foods Corporation appeals the district court's November 23, 2004, order requiring Malease to convey its leasehold interest in certain properties to plaintiff, The Kroger Company, or in the alternative, to post an appropriate bond pending appeal. This order followed the partial grant of Kroger's motion for summary judgment, wherein the district court found that Kroger had properly exercised purchase options on the subject properties.

Prior to the September 23, 2004, order, Malease had filed an unsuccessful motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Because the exercise of personal jurisdiction was integral to the order on appeal, the panel has reviewed this issue and concludes that the district court erred in its denial of defendant's motion to dismiss. Therefore, this case is remanded to the district court for entry of an order to dismiss, without prejudice, for lack of personal

1

jurisdiction pursuant to the Ohio long-arm statute. Further, it follows that the order for injunctive relief must be vacated.

# I. FACTUAL AND PROCEDURAL HISTORY

## A. Facts

The facts underlying this controversy are complex. On April 1, 1983, The Kroger Company ("Kroger"), an Ohio corporation, entered into three sale-leaseback transactions with Balkhouse Properties Corporation ("Balkhouse Properties"), a Tennessee corporation. Sale-leaseback transactions involve the sale of a piece of real property, usually by a high credit owner to an investor. The original owner then leases the property back. The properties involved in this case are three industrial facilities located in Bowling Green, Kentucky; Murfreesboro, Tennessee; and San Marcos, Texas. As a result of the transactions, Balkhouse Properties became the fee-simple owner of the properties and Kroger was the lessee.

The three lease agreements were essentially identical, with variances based only on square footage and other specifics relevant to the individual properties. Each lease was for a twenty-year term, with possible extension for a total of thirty years. Each lease included an option for Kroger to purchase the real property at the end of the twenty-year term.

On June 1, 1983, Balkhouse Properties conveyed fee simple interests in the properties to Balkhouse Associates. Then, Balkhouse Properties entered into a lease agreement wherein it leased the properties back from Balkhouse Associates. On the same occasion, Balkhouse Properties assigned all its rights under the lease agreements with Balkhouse Associates to Malease Foods Corporation ("Malease"), a Delaware corporation with its principal place of business in New York City. Malease and Balkhouse Associates then entered into three separate "Two-Party Agreements" which were identical in form, relating to each piece of property. Each Two-Party Agreement divided the respective property interests, with Malease having the rights as master lessee and Balkhouse Associates being the fee simple owner.

The Two-Party Agreements also acknowledged Kroger's purchase options. Each agreement allocated the rights and responsibilities with respect to the option between Balkhouse Associates and Malease, in the event that Kroger exercised the option. Each agreement states:

> If a Purchase Option is exercised pursuant to Article XXXV of the Occupancy Lease, Partnership [Balkhouse Associates] shall be obligated to sell and convey Partnership's interest in the Premises to Occupancy Tenant [Kroger] simultaneously with the sale of the Master Lessee's [Malease's] Interest in the Premises to Occupancy Tenant by the Master Lessee. Partnership and Master Lessee shall execute and deliver a partial surrender of lease to release the Premises from the Master Lease. Partnership's Interest and Master Lessee's Interest in the Premises shall be sold and conveyed in accordance with Article XIX of the Occupancy Lease, subject however, to compliance with the following . . . [the rest discusses the determination and pay out of the purchase price].

Two-Party Agreement, June 1, 1983.

As a result of these transactions, Balkhouse Associates held fee simple title to each property, Malease held the Master lessee interest and was the primary tenant, and Kroger was Malease's sub-tenant. This relationship continued until 2001, when Kroger purchased the fee simple interest in each of the properties from Balkhouse Associates. Along with the properties, Kroger was assigned the leases and the Two-Party Agreements between Malease and Balkhouse Associates. This

purchase was not conducted under the terms of the option, but was negotiated separately two years ahead of the time provided for under the purchase options. This resulted in Kroger becoming the lessor to Malease, who continued to be the master lessee to its tenant, Kroger. Kroger paid rent to Malease, and Malease, in turn, paid rent to Kroger. On February 18, 2002, Kroger notified Malease by letter that it intended to purchase the master lessee's rights under the terms of the original lease between Kroger and Balkhouse Properties at the expiration of the lease term on April 1, 2003. Malease refused to allow Kroger to exercise the option, contending that Kroger's purchase of the property from Balkhouse Associates rendered the purchase options void:

> As noted in your notice letter, and in the 'Notice dated July 24, 2001' to which you refer, The Kroger Co., is already the owner of the subject properties, having purchased the same outside the scope of the 'Purchase Options.' By your actions in purchasing these properties, and without regard to and outside the scope of the Purchase Options and in disregard of the interests of Malease Foods Corp., you negated and repudiated and rendered the Purchase Options meaningless, null and void.

Malease letter to Kroger, March 14, 2002. Malease's refusal to honor the lease purchase options precipitated this litigation.

### B. Procedural History

On June 14, 2002, Kroger filed a complaint in the Southern District of Ohio, seeking a declaratory judgment that it had validly exercised its rights under the purchase options to acquire the leases at issue. Kroger relied on 28 U.S.C. § 1332 for jurisdiction over Malease, stating that all parties are diverse and the amount in controversy exceeds $75,000. The complaint also alleged anticipatory breach and requested an order for specific performance of the options. Malease filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction on January 27, 2003. An order denying the motion was entered on September 22, 2003.

Malease filed an answer with counterclaims on October 3, 2003. Malease requested a declaratory judgment that Kroger's attempt to exercise the options was invalid. The counterclaim also alleged that Kroger's purchase of the properties from Associates was null and void, requiring that the transaction be rescinded. Finally, Malease sought money damages for the rent it claims was due because of an automatic renewal of the leaseholds.

The parties then filed cross-motions for summary judgment. Kroger moved for summary judgment on its claims for declaratory judgment, breach of contract, and specific performance, as well as each of Malease's counterclaims.[1] Malease moved for summary judgment on its declaratory judgment claim, requesting that the court find that Kroger did not validly exercise its purchase options, and that the master leases automatically renewed. Malease also moved to recover the back rent due as a result of the alleged automatic renewal of the leases.

The district court granted in part and denied in part Kroger's motion for summary judgment on July 27, 2004. The court awarded Kroger declaratory judgment, finding that Kroger had properly exercised its rights under the agreements, and denied Malease's corresponding request for a declaratory judgment. The court also granted Kroger's request for specific performance of the purchase options, and held that Malease's actions amounted to a breach of its obligation to convey

---

[1] Kroger also raised an "unjust enrichment" claim in its motion for summary judgment. However, the issue was never briefed and the court denied Kroger's motion on this issue.

the leases in accordance with the purchase options. Rather than granting Kroger's motion for a calculation of damages, the court ordered the matter set for trial.

In response to the district court order, Malease filed a motion to dismiss Kroger's damages claim on July 27, 2004. Kroger filed a motion to show cause, or for injunctive relief on September 19, 2004. The district court granted Kroger's motion on November 23, 2004, finding that Malease's motion was untimely, and requiring the parties to submit memoranda concerning the amount of bond Malease was to provide while pursuing its appellate rights. However, Malease elected to convey its leaseholds to Kroger, but requested that Kroger post a bond pending appeal. The district court denied this request. The court ordered a closing date for the leaseholds within sixty days of the order dated December 7, 2004.

Malease filed this interlocutory appeal on December 2, 2004, appealing the district court's November 23, 2004, order which granted Kroger's motion to show cause, or in the alternative for leave to request injunctive relief, and denied Malease's motion for leave to file a motion to dismiss Kroger's damages claim. As part of this appeal, both parties have briefed and argued the district court's denial of Malease's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## II. JURISDICTION

The district court exercised subject matter jurisdiction, based on the parties diversity of citizenship pursuant to 28 U.S.C. § 1332. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1), because the question on appeal involves the grant of injunctive relief. While the denial of Defendant's motion to dismiss for lack of personal jurisdiction is not specifically referred to in the notice of appeal, the district court's order holding that it may exercise personal jurisdiction is inextricably linked to the order being appealed, and therefore is proper for review. *See* JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 203.32 [3][a] (3d ed. 2005) ("The court considers the order appealed from as well as any other orders and any other questions, although themselves interlocutory and not otherwise appealable, that underlie, and that are inextricably involved with the order being appealed.") *See also Brown & Williamson Tobacco Corp. v. F.T.C.*, 717 F.2d 963, 964 (6th Cir. 1983) ("It is elementary that an appeal from the denial of injunctive relief brings the whole record before the appellate court and that the 'scope of review may extend further [than the immediate question on which the District Court ruled] to allow disposition of all matters appropriately raised by the record, including entry of a final judgment.'") *Id.* (citing 16 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3921 (1977)).[2]

## III. ANALYSIS

The district court denied the defendant's Rule 12(b)(2) motion to dismiss, finding that the exercise of jurisdiction over Malease comported with the requirements of the Ohio long-arm statute and the requirements of constitutional due process. Because personal jurisdiction is a threshold determination linked to any subsequent order issued by the court, we must determine whether the exercise of jurisdiction over Malease was proper before deciding whether the district court erred in the injunctive order.

---

[2]*See also* 16 WRIGHT & MILLER FEDERAL PRACTICE AND PROCEDURE, § 3921.1 for additional discussion concerning the appellate scope of review for interlocutory appeals under 28 U.S.C. § 1292(1)(a), including review of in personam jurisdiction.

## A. Personal Jurisdiction

### 1. Standard of Review

This court reviews de novo a district court's denial of a Rule 12 (b)(2) motion to dismiss for lack of personal jurisdiction. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir. 1994). The district court exercised personal jurisdiction in this diversity case without an evidentiary hearing. In such a case, the burden is on the plaintiff to make a prima facie showing that jurisdiction over the defendant is proper. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). The court need only find that plaintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss. *See Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).[3]

### 2. Discussion

In order to establish jurisdiction over a non-resident corporation in a federal diversity matter, the defendant must be shown to meet one of the criteria enumerated in the Ohio long-arm statute, OHIO REV. CODE ANN. § 2307.382, and be within the bounds of constitutional due process. *See Reynolds*, 23 F.3d at 1115. Here, the district court did not have personal jurisdiction over Malease under the Ohio long-arm statute. It is therefore unnecessary to reach the constitutional issues.

*(a) The Ohio long-arm statute*

The district court found that Kroger made a prima facie showing that jurisdiction over Malease was proper under the Ohio long-arm statute. The court stated:

> Malease's acknowledgment of Kroger's rights and assumption of duties to Kroger as a landlord put Malease and Kroger in a quasi-contractual relationship or perhaps even makes Kroger a third-party beneficiary to the Two Party Agreements. In any event there was some kind of business relationship between Malease and Kroger. In addition, Malease's receipt of rent payments from Kroger over a twenty-year period means that Malease "had dealings" with Kroger within the meaning of the long arm statute.

Order of district court, September 22, 2003.

In this appeal, Malease asserts that the district court erred in exercising jurisdiction over Malease pursuant to OHIO REV. CODE §2307.382(A)(1). This provision states "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's [t]ransacting any business within the state; . . . . *Id.* In *Kentucky Oaks Mall v. Mitchell's Formal Wear*, 559 N.E.2d 477 (Ohio 1990), the Ohio Supreme Court discussed the parameters of § 2307.382(A)(1). The court found that the broad wording of the statute permits jurisdiction over non-resident defendants who are transacting any business in Ohio. The Court stated that "transact":

> means 'to *prosecute negotiations*; to carry on business; *to have dealings* . . . .The word embraces *in its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve*

---

[3] If an evidentiary hearing is held, the plaintiff is required to meet the "preponderance of the evidence standard." *See Serras,* 875 F.2d at 1214.

*business negotiations* which have been either wholly or partly brought to a conclusion . . . .'

*Id.* at 479 (emphasis in original) (citation omitted).

The *Kentucky Oaks* court determined that the defendant, Mitchell's Formal Wear ("Mitchell's") was transacting business within the scope of the long-arm statute. Mitchell's, a Georgia corporation, negotiated a lease agreement with an Ohio-based limited partnership, Kentucky Oaks Mall Company ("Kentucky Oaks"). The transaction involved the lease by Mitchell's of warehouse space owned by Kentucky Oaks, located in Kentucky. After negotiating the terms by telephone, Mitchell's executed a ten-year lease in Georgia and returned it via mail to Kentucky Oaks in Ohio. *Id.* at 480.

The Ohio Supreme Court held that the lease arrangement was "transacting" business within the purview of this section of the Ohio long-arm statute. Even though Mitchell's had no presence in Ohio and the leased space was located in Kentucky, the court stated that "[u]ndoubtedly, both parties sought the benefit of each other's bargain in hopes of realizing a pecuniary gain." *Id.* The court summarized its ruling stating, "[a]ccordingly, we hold that a commercial non-resident lessee, for purposes of personal jurisdiction, is 'transacting any business' within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio." *Id.*[4]

Kroger relies on *Kentucky Oaks* to demonstrate that jurisdiction over Malease is proper. While there are similarities between *Kentucky Oaks* and the instant facts, there are also substantial differences. In *Kentucky Oaks*, Mitchell's directly negotiated the terms of the lease with Kentucky Oaks. In contrast, Malease never entered into *any* negotiations with Kroger regarding the terms of the lease, let alone direct negotiations. Instead, Malease became involved with Kroger simply by virtue of the assignment of the leases from Balkhouse. In essence, Malease was one step removed from the bargaining process, so it cannot be said that Malease directly sought the benefit of the bargain for purposes of mutual pecuniary gain, because Malease did not negotiate the lease with Kroger originally.

Further, the primary contacts between Kroger and Malease were the rent checks sent from Ohio by Kroger to Malease in New York. As Malease points out, the rent checks could have been sent from the warehouse locales, or any other place in the United States. The fact that Kroger chose to send rent checks from their corporate office in Ohio does not constitute doing business in Ohio by Malease. While Malease did assume the landlord duties pursuant to the lease assignments, all required duties were performed at the out-state facilities, not in Ohio. The entire course of dealing between these entities occurred outside the state of Ohio. Finally, Malease has never maintained an office, a bank account, a telephone listing, or any kind of presence in Ohio.

Moreover, the party's roles in *Kentucky Oaks* are the opposite of those here. Kentucky Oaks was the Ohio resident, and the landlord of the Kentucky property. In negotiating for rental of the space, Mitchell's intentionally entered into a transaction involving an Ohio landlord, to whom they were required to pay rent in Ohio. In addition to rent payments, Mitchell's submitted maintenance costs, annual reports, association fees, and sales reports to Kentucky Oaks in Ohio. *Kentucky Oaks*, 599 N.E.2d at 481-82. Kentucky Oaks also maintained some control over the retail sale and rental operation in Kentucky, and Mitchell's was required to obtain Kentucky Oaks' approval for many

---

[4] The *Kentucky Oaks* lease contained a Kentucky choice of law provision. The Ohio Supreme Court noted that notwithstanding the provision, Mitchell's had engaged in the minimum contacts necessary for the court to exercise personal jurisdiction. *Kentucky Oaks Mall*, 559 N.E.2d at 482.

activities. The court noted that Mitchell's failure to pay rent under the lease would "undoubtedly cause foreseeable injuries" in Ohio. *Id.* Malease had no such relationship with Kroger.[5]

Kroger relies on the February 14, 2003, affidavit signed by Thomas P. O'Brien, Assistant Secretary of The Kroger Company, to show that Malease had sufficient contacts with Kroger in Ohio. O'Brien conclusorily states that Kroger has communicated with Malease "wherein Kroger has sent correspondence from Ohio to Malease, and received correspondence in Ohio from Malease." Assuming for the sake of argument that such correspondence might make a difference, however, the record is devoid of any correspondence from Malease to Kroger, except for the March 14, 2002, letter stating that Malease was unwilling to comply with the purchase option.[6] The O'Brien affidavit, standing on its own, is inadequate to establish a prima facie showing that Malease was sufficiently transacting business in the State of Ohio to claim jurisdiction under the Ohio long-arm statute.

The *Kentucky Oaks* court held that a non-resident lessee transacts business for purposes of the long-arm statute when the lessee engages in negotiations, and through the course of dealing becomes obligated to make payments to an Ohio lessor. *See id.* at 480. This is not the case here. Malease did not engage in negotiations with Kroger, nor did they have ongoing contacts with the State of Ohio. Malease simply did not establish the type of contacts warranting the exercise of jurisdiction over an out-of-state corporation in Ohio such as were the basis of the holding in *Kentucky Oaks*.

We further recognize that when the Ohio Supreme Court decided *Kentucky Oaks*, the court relied on *Wright International Express, Inc. v. Roger Dean Chevrolet, Inc.*, 689 F. Supp. 788 (S.D. Ohio 1988), a federal district court opinion holding that a lease between a non-resident and a resident provided sufficient contacts under the long-arm statute.[7] In *Wright*, the district court found that an international defendant had transacted business for purposes of the Ohio long-arm statute by entering into a contract with a resident to lease an Ohio-based aircraft. The court found that the defendant established adequate contacts with the state when it intentionally took actions that created a relationship with the resident. *See id.* at 790. In *Wright*, the court held that the contacts required to exercise personal jurisdiction over the defendant cannot be the result of the unilateral activity of the resident. This "insures that the defendant has become involved in the forum state through actions freely and intentionally undertaken by the defendant and prohibits jurisdiction where all contacts with a state result entirely from decisions made by the plaintiff." *Id.* at 790 (citing *Southern Machine Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 382-83 (6th Cir. 1968)).

The facts in *Wright* are readily distinguishable from the facts in this case. In *Wright*, the non-resident corporation negotiated and entered into the lease agreement directly with an Ohio corporation, and the leased property was located in Ohio. *Wright*, 689 F. Supp. at 790. Malease never entered into any lease relationship in the State of Ohio.

We also note that at the time the *Wright* decision was made, the Sixth Circuit had observed that the reach of the Ohio long-arm statute was as broad as the limits of constitutional due process.

---

[5] Malease sent rent checks into Ohio following Kroger's re-purchase of the real properties, the unilateral act of Kroger. These rent payments cannot be relied upon to support the exercise of jurisdiction over Malease in Ohio.

[6] During oral argument, Kroger was unable to identify any additional evidence of contacts initiated by Malease that would support the exercise of jurisdiction.

[7] The *Kentucky Oaks* opinion also cites out of circuit opinions that are beyond the scope of this analysis. 559 N.E.2d at 480 (Ohio 1990).

*See id.*, citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972). Subsequently, the Sixth Circuit has overruled this portion of *In-Flight Devices*, recognizing that the Ohio Supreme Court determined that the relevant portion of the long-arm statute *did not* reach the limits of the Due Process Clause. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)).[8] This recognition militates in favor of an even narrower application of the holding in *Kentucky Oaks*, rather than the broader interpretation that Kroger asserts.

In its brief, Kroger cites *Goldstein* to support its assertion that the term "transacting any business" has been given a broad construction in Ohio. "Because the [t]ransacting any business phrase is so broad, the statute and the rule have engendered cases which have been resolved on 'highly particularized fact situations, thus rendering any generalization unwarranted.'" *Goldstein*, 638 N.E.2d at 544, quoting *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* 624 N.E.2d 1048, 1052 (Ohio 1994). Kroger urges a broad interpretation of the "transacting any business" requirement of Ohio's long-arm statute in this case. However, in view of *Goldstein's* instruction that the Ohio long-arm statute does not extend to the full limits of due process, it is inappropriate to apply an expansive reading to the remainder of the holding.

In contrast, Malease relies on *Krutowsky v. Simonson*, 672 N.E.2d 219 (Ohio App. 1996), to support its position that personal jurisdiction does not extend to Malease. In *Krutowsky*, the Ohio Court of Appeals held there was no jurisdiction over a non-resident who had entered into a contract for the repair of a resident's Rolls Royce. *See id* at 222. The court held that Simonson never purposely availed himself of the privilege of acting in Ohio, because Krutowsky made the initial contact after seeing an advertisement in a magazine published outside of Ohio. Krutkowsky took the automobile to Illinois, where Simonson performed the repairs. Krutkowsky's agent made payment for the work in Illinois. "The only intentional contact Simonson had with Ohio was the mailing of invoices and reports to Ohio and also calling Krutowksy in Ohio to occasionally give updates on the work. Such actions without more do not rise to the level of minimum contacts." *Id.* (citation omitted).

*Krutowsky* is instructive in our case. Like Simonson, Malease never entered Ohio with the intention of engaging in a business agreement with Kroger, and the bulk of the contacts with the forum were generated by Kroger. All of Malease's duties under the agreements were conducted outside of Ohio. In fact, Malease had even less contact with Ohio than Simonson, because Simonson directly negotiated and entered into the contractual agreement with Krutkowsky.

Based on the holding in *Krutowsky*, it is evident that Malease had inadequate contacts with Ohio to be subject to personal jurisdiction under the long-arm statute. Further, Kroger's reliance on *Kentucky Oaks* is misguided because the facts in this case are markedly different. We find that extending the holding of *Kentucky Oaks* in order to find in personam jurisdiction here would impermissibly expand the reach of Ohio's long-arm statute.

---

[8] In *Cole*, a non-resident defendant entered into a contract with an Ohio resident after negotiating and executing a surety agreement via telephone calls and letters. The court held that the actions of the non-resident created substantial enough contacts with Ohio to place him within the reach of the long-arm statute. "If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). We note that *Cole* is inapposite to our case, because Malease initiated no contacts with Ohio.

*(b) Constitutional due process*

Because we find that Malease did not establish the minimum contacts necessary for the district court to exercise jurisdiction under the Ohio long-arm statute, it is unnecessary for us to engage in the constitutional due process inquiry.

## IV. CONCLUSION

Having determined that the district court lacked jurisdiction over Malease, the denial of Malease's Rule 12(b)(2) motion to dismiss is **REVERSED,** and the case is **REMANDED** to the district court for an entry of an order of **DISMISSAL**, without prejudice, for lack of personal jurisdiction. Further, on **REMAND**, the order granting Kroger's motion to show cause, or in the alternative for leave to request injunctive relief must be **VACATED** due to the district court's lack of jurisdiction over Malease.